UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAKIR MARIS ABDULLAH,<br>　　Plaintiff,<br><br>　　　　v.<br><br>FRANCIS A. FORD, et al.,<br>　　Defendants. | )<br>)<br>)<br>)<br>)　　C.A. No. 05-11539-DPW<br>)<br>)<br>) |

MEMORANDUM AND ORDER

WOODLOCK, D.J.

For the reasons set forth below: (1) Plaintiff's Motion to Proceed *in forma pauperis* (#1) is denied without prejudice to resubmittal accompanied by his prison account statement for the relevant time period; (2) The Treasurer's Office at Old Colony Correctional Center shall provide this Court with Plaintiff's prison account information as directed in this Memorandum and Order; (3) Plaintiff's Motion to Affect [sic] Service of the Complaint (#2) is denied without prejudice; (4) Defendant Reverend Daniel Izzo is dismissed as a Defendant in this action; and (5) summonses shall not issue as to Defendants Francis A. Ford, Clerk of Court for Worcester County and Assistant Clerk of Court Catherine Brennan, pending resolution of the filing fee issues.

FACTS

On July 15, 2005, Plaintiff Shakir Maris Abdullah, a/k/a Dennis Shelton, a prisoner at Old Colony Correctional Center, ("Old Colony"), filed a civil rights action, a Motion/Application to proceed *in forma pauperis* accompanied by his prison account statement (#1), and a Motion to Affect [sic] Service of the Complaint (#2). Plaintiff names three Defendants: (1) Francis A. Ford, Clerk of Court for Worcester County; (2) Assistant Clerk of

Court Catherine Brennan, and (3) Reverend Daniel Izzo, of the Cryonic Life Insurance Corporation, Department of Resurrection, located in New York. Plaintiff does not specify his cause of action, nor is the Complaint entirely coherent. The crux of the Complaint, however, can be gleaned from the various exhibits provided in support. Essentially, Plaintiff alleges conversion by the two Worcester County Superior Court clerks of funds he claims were donated by him to the court for the purpose of establishing a legal fund. He also claims fraud by Reverend Izzo, the individual who he allegedly gave him the funds to initiate the donation.

More specifically, since 1991 Plaintiff has been incarcerated by the Department of Corrections and is serving a life sentence. He alleges that, in an attempt to secure funds to retain legal counsel to contest his criminal conviction, he placed a "Justice Denied Legal Ad on the Friends Beyond the Wall website." Compl. at ¶ 6. The posting solicited funds or monies to be donated to a general legal defense fund, which, in turn, would provide funds to pay for counsel to pursue his challenge to his criminal conviction.

On December 5, 2004, Plaintiff received a response to his internet request, in the form of a Christmas card from Defendant Reverend Daniel Izzo. Plaintiff contends this card contained a $100,000 Federal Reserve bank note for the purpose of establishing a legal fund with the Court. Id. at ¶ 7. On December 6, 2004, Plaintiff mailed a copy of the note and the Christmas card to the Clerk of Court of Worcester County, with instructions to create a legal defense fund in his name. Id. at ¶ 8. Plaintiff received no reply, other than an initial request for the docket number of the pertinent case. After six weeks, Plaintiff alleges he again mailed the Clerk of Court and Reverend Izzo, inquiring about the establishment of his legal fund. Id. at ¶¶ 9-10. On February 28, 2005, Plaintiff received a letter from Defendant Brennan stating that the Court did not have a

legal fund.  Plaintiff also alleges that in that return letter, there was enclosed a fake one million dollar bill ($1,000,000).  Id. at ¶¶ 11-13.  Plaintiff claims that the $100,000 note he initially sent to the Clerk's Office[1] was never returned, id. at ¶ 14, and that no explanation was provided regarding "what happen['ed]" to two Fidelity bank notes totaling $100,000, which he had also previously sent to the Clerk's Office.  Id. at ¶ 15.

It appears that Plaintiff believed that the one million bill ($1,000,000) was valid United States currency, and so proceeded to contact Attorney Gordon W. Spencer, in order to hire him to represent Plaintiff in his challenge to his criminal conviction.  Id. at ¶ 16.  However, upon review of the one million bill ($1,000,000), Attorney Spencer notified Plaintiff that, in fact, the one million bill ($1,000,000) was not genuine currency.  Attorney Spencer pointed out that the document stated it was from "Millionaire Bank USA" (as opposed to "United States Federal Reserve System") and that the document stated it was "not legal tender...", and, more tellingly, that it was from "the Department of 'Funny Money.'"  See Exhibit E, Letter from Attorney Spencer dated May 2, 2005.

Plaintiff at this point realized that the one million bill ($1,000,000) sent to him by Defendant Brennan was indeed a fake.  Compl. at ¶¶ 18-19.  Plaintiff then wrote to Defendant Ford regarding the receipt of the fake bank note, seeking an explanation.  Id. at ¶ 20.  He also wrote to Defendant Izzo several times regarding the original bank notes.  Id. at ¶ 21.  On June 16, 2005, Plaintiff received a letter from Defendant Brennan again informing Plaintiff that the Clerk's Office does not establish legal defense funds, and that there had not been a legal fund

---

[1] I observe an apparent inconsistency between ¶ 8, which refers to "a copy of the One Hundred Thousand Dollar ($100,000) bank note" (emphasis supplied) being sent and ¶ 14 which seems to suggest the original note itself was sent.

established for him.  Id. at ¶ 22.

In sum, Plaintiff alleges that Defendant Reverend Izzo may have intentionally provided him with a fake bank note in the amount of $100,000.  He further claims that Defendants Ford and Brennan stole this bank note, along with another $100,000 in Fidelity Corporation bank notes (from an unspecified source), and instead returned to him a fake one million bill ($1,000,000).  Id. at ¶¶ 14–15.  He also claims that, in light of the donation he believed to have been made, he withdrew his posting on the website, but subsequently re-posted it.  See Exibit B, at 2, Letter from Plaintiff to Francis A. Ford, dated May 9, 2005.

Plaintiff seeks $275,000 in damages, including $25,000 from each Defendant, for the "mental anguish and emotional stress" which these events have caused.  Id. at ¶ 25; ¶¶ 28-29.  He also requests that Defendants Brennan and Ford return the bank notes in the total sum of $200,000.  Id. at ¶ 26.  Additionally, Plaintiff states that if Defendant Izzo did indeed provide Plaintiff with a fake $100,000 bank note, that he be required to pay Plaintiff $100,000 for his legal defense.  Id. at ¶ 27.

## ANALYSIS

I.      Motion to Proceed *In Forma Pauperis*

A party bringing a civil action must either (1) pay the $250.00 filing fee when filing the complaint, or (2) file an Application to Proceed Without Prepayment of Fees.  See 28 U.S.C. §§ 1914(a) (filing fees), 1915 (proceedings *in forma pauperis*).  Where the plaintiff is a prisoner, an application for waiver of prepayment of the filing fee must be accompanied by a document certifying the amount of funds on deposit to the plaintiff's credit at his institution of incarceration.  28 U.S.C. § 1915(a)(2).  Unlike other civil litigants, prisoner plaintiffs are not

entitled to a complete waiver of the $250 filing fee, notwithstanding the grant of *in forma pauperis* status. Rather, prisoner plaintiffs must pay the full amount of the filing fee, although such payments may be made in installments, payable through their prison accounts in accordance with the provisions of § 1915(b).

Here, Plaintiff has submitted his inmate prison transaction statement, but has failed to submit a certified copy of his prison account statement for the six month period preceding the filing of the Complaint, as required. Accordingly, his motion to proceed *in forma pauperis* is denied without prejudice to resubmittal upon filing of a certified prison account statement for the relevant time period.

II.     Order to Treasurer's Office to Provide Prison Account Information

In order to facilitate Plaintiff's compliance with the above directive, and to facilitate this Court's determination of eligibility for *in forma pauperis* status, an Order for information regarding the Plaintiff's prison account information to the Treasurer's Office at Old Colony Correctional Center will enter.

III.    Plaintiff's Complaint is Subject to Screening

Because Plaintiff is a prisoner and has sought to proceed *in forma pauperis*, he is subject to the Prison Litigation Reform Act. The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to

proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Section 1915A also authorizes the Court to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

A district court may also dismiss a complaint *sua sponte,* regardless of whether or not payment of the filing fee has been received, where the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption. Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001) (citations omitted); cf., Bell v. Hood, 327 U.S. 678, 682-83 (946)(observing that dismissal for lack of subject-matter jurisdiction may result if the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or...is wholly insubstantial and frivolous."); Tyler v. Carter, 151 F.R.D. 537, 540 (S.D.N.Y. 1993)(court could *sua sponte* dismiss complaint under standards for *in forma pauperis* actions even though plaintiff paid the filing fee).

Plaintiff's pleadings must be construed generously. Hughes v. Rowe, 449 U.S. 5, 9

(1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept., 209 F.3d 18, 23 (1st Cir. 2000).  However, even under a broad reading, construing the factual allegations in the light most favorable to the Plaintiff, the claim against Defendant Reverend Izzo is subject to dismissal for the reasons stated below.

IV.     Failure to Comply with Fed. R. Civ. P. 8(a) and
        Failure to State a Claim Upon Which Relief Can Be Granted As to Defendant Izzo

Plaintiff's claim against Defendant Reverend Izzo is subject to dismissal for failure to plead a cognizable claim as required under Rule 8(a) of the Federal Rules of Civil Procedure.  Rule 8(a) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense," Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  "In a civil rights action ..., the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores PuertorriqueZos en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal ... minimal requirements are not tantamount to nonexistent requirements." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Here, with respect to Defendant Izzo, Plaintiff's Complaint fails to meet even the minimum pleading standards required under Rule 8(a).  The Complaint consequently fails to set forth a claim upon which relief can be granted.  As noted previously, Plaintiff fails to state the

legal basis for any claim against Defendant Izzo, a private citizen. Plaintiff has merely asserted that his "Legal Claim" is "based on the adverse treatment he has been subjected to and the mental anguish and emotional stress he has experience [sic] throughout this ordeal...," Compl. ¶ 25, and that his claim against Defendant Izzo is for $100,000 "....if it's concluded that he participated in deceiving the plaintiff with counterfeit money." Id. at ¶ 27. Plaintiff also seeks to enforce the $100,000 donation for his legal defense. As discussed more fully below, none of these assertions give rise to a cognizable claim against Defendant Izzo.

    1.   The Fidelity Notes

With respect to the $100,000 in Fidelity notes, Plaintiff has failed to set forth with any specificity that he had an ownership or other vested interest in those notes, nor has he indicated the source of those notes. It does not appear that Defendant Izzo has any connection to those two Fidelity notes, and Plaintiff does not seek to recover on those notes from Defendant Izzo. Plaintiff asserts these notes were sent to the Defendant clerks; however, there is no nexus between those Fidelity notes and the Defendant Izzo. Accordingly, Plaintiff has not stated any claim against Defendant Izzo with respect to these two notes.

    2.   The $100,000 Note Donated by Defendant Izzo

Unlike the two Fidelity Notes, Plaintiff does provide information as to the derivation of the alleged $100,000 Federal Reserve Note. This is said to be from Reverend Daniel Izzo, received with a Christmas card. However, the documents Plaintiff has submitted in support of the Complaint raise substantial factual questions as to whether or not actual legal tender was given, despite what may have been a *bona fide* attempt by Defendant Izzo to make a legitimate monetary donation. In fact, even Plaintiff himself has questioned whether that $100,000

donation was genuine.[2]

Moreover, the attachment in support of the Complaint shows a letter to "prison officials" dated November 19, 2004, apparently sent by Defendant Izzo, which indicates that Izzo himself questioned the validity of the note he sent. The letter states, in relevant part:

> Concerning the American Art Classic (AAC) $10,000 Note Specimen series 2004 and or a worthless Stock Certificate. I mailed a letter to some prisoners because last week USA Today had an Internet news story concerning America's 2.2 Million People in US Jails, the article had a link to "Prison Pen Pals" with names and Prison addresses of @65 people seeking Legal and or monetary help ....I wrote to this group asking them to ask the Court to endorse the specimen note under USC Title 12 sec 412 and Deposit the note with the Court Clerk for a Legal Fund (and to some a Trust and Text to Speech Software for Courts and Prisons.) If the Court has Special Drawing Right certificates/powers it maybe [sic] able to establish a limited Legal Fund Trusts under USC Title 12 sec 412. I did want to inform the prisoners that I hold bearer instruments that the Court could use as collateral under USC Title 12 sec 342 In the form of National Bank Notes or Guaranteed National Bank Notes. I do not know much about prison or that other Trust programs do exist, my goal is to provide the Courts with Text to Speech Software and a possible EXHILE OF PRISONER program to volunteer mining prison work camps in one of America's 1000s of abandoned silver mines. As a member of the clergy I thought I should do something productive for the Courts and possible [sic] the prisoners. It seems the entire mailing was a failure because [of] the novelty note. If you have the $10,000 note specimen and or stock certificate you can keep it or throw it away.

Exhibit, letter dated November 4, 2004.

In another exhibit referencing 12 U.S.C. § 342, there is a handwritten notation from Defendant Izzo which reads **"PS You can throw out donation if you like; no reply needed."** Exhibit to Complaint.

Further, on the February 4, 2005 letter exhibit submitted by the Plaintiff in support of the Complaint (from Plaintiff to Defendant Ford), there is a handwritten notation which appears to

---

[2]There is some discrepancy in the record with respect to whether the note was a $10,000 note or a $100,000 note. Both amounts are listed within the exhibits.

be from Defendant Izzo, indicating: "I do not know Petitioner. The Donation is for the Court for "General Legal Fund." Exhibit to Complaint, Letter dated February 4, 2004. As noted above, the letter from Defendant Izzo references his intention to create a fund for Text to Speech Software and possibly for a release program for prisoners to work in mines. There is no indication that the alleged funds were meant for Plaintiff's personal use or benefit to pay for counsel to challenge to his criminal conviction.

In light of this, regardless of whether the spurious donation was genuine or not, Plaintiff has failed to set forth facts demonstrating that he has any claim against Defendant Izzo. He does not allege, for instance, that there was any contractual agreement or bailment relationship with Defendant Izzo, nor has Plaintiff given any *bona fide* consideration for the donation, or pled that there was reasonable reliance.

In order to enforce a charitable subscription or a charitable pledge (an oral or written promise to do certain acts or to give real or personal property to a charity or for a charitable purpose) a party must establish that there was promise to give some property to a charitable institution and that the promise was supported by consideration or reliance. King v. Trustees of Boston University, 420 Mass. 52, 55-60 (1995)(declining to adopt the standard in the Restatement (Second) of Contracts § 90 (1981)). "[A] hope or expectation, even though well founded, is not equivalent to either legal detriment or reliance." Id. at 57, n. 4, quoting Congregation Kadimah Toras-Moshe v. DeLeo, 405 Mass. 365, 366-67 (1989). Here, Plaintiff's disappointment in failing to receive funds to pay his attorney's fees does not give rise to a claim against Defendant Izzo, as Defendant Izzo had no duty to provide such funds. Moreover, there are no facts presented whatsoever which link Defendant Izzo to the alleged

actions of the Defendant clerks in sending Plaintiff a fake one million dollar bill ($1,000,000), or in any way conspiring with the clerks for any adverse action against the Plaintiff.

Accordingly, for the reasons set forth above, I find that even under a generous reading of the Complaint, Plaintiff has failed to set forth any cognizable, non-frivolous claim against Defendant Izzo. As such, *sua sponte* dismissal of Plaintiff's claim against Defendant Izzo, without prejudice, is warranted.

V.      Claims Against Defendant Clerks

With respect to Plaintiff's claims against the other two Defendants, Ford and Brennan, I note that there are pleading deficiencies, and, as previously pointed out, substantial questions of fact as to whether any legal tender was actually received by the Defendant clerks from the Plaintiff. However, drawing all reasonable inferences in Plaintiff's favor,[3] I find that he has met the minimum pleading standard under Fed. R. Civ. P. 8(a), to set forth a claim under 42 U.S.C. § 1983 for conversion of funds by state actors (*i.e.,* state court clerks), and therefore I will not dismiss Plaintiff's claims against these Defendants *sua sponte*. I will not, however, permit summonses to issue unless and until the filing fee issues noted in this Memorandum and Order have been resolved. Upon resolution of these issues, a further Order shall issue.

VI.     Motion to Affect [sic] Service of the Complaint

In view of this Memorandum and Order, Plaintiff's Motion to Affect [sic] Service of the Complaint (#2) is denied without prejudice. If the Plaintiff complies with the directives in this

---

[3] See Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir. 1991) ("...the district court must give the plaintiff the benefit of all the suggested facts and must indulge all reasonable inferences in his favor.").

Memorandum and Order with respect to the filing fee issues, and if I find Plaintiff qualifies for *in forma pauperis* status, then a separate Order will issue directing the United States Marshal to effectuate service of the Complaint on the remaining two Defendants, as directed by Plaintiff, with all costs of service to be advanced by the United States Marshal.  The necessary forms will also be provided to the Plaintiff at that time.

## CONCLUSION

ACCORDINGLY, for the foregoing reasons, it is hereby ORDERED:

1. Plaintiff's Motion to Proceed *in forma pauperis* (#1) is denied without prejudice to resubmittal accompanied by a certified copy of his prison account statement;

2. Unless Plaintiff directs otherwise, the Superintendent and/or the Treasurer's Office at Old Colony Correctional Center are ORDERED to provide this Court with a certified copy of Plaintiff's prison account statement within fourteen (14) days of the date of this Memorandum and Order.  Such statement shall include balance information for the six (6) months preceding July 15, 2005 (date the Complaint was filed), and specifically include the following information:  1) the average monthly deposits to Plaintiff's prison account for that six (6) month period; and 2) the average monthly balance in Plaintiff's account  for the six (6) month period immediately preceding July 15, 2005.

3. Plaintiff's Motion to Affect [sic] Service of the Complaint (#2) is denied without prejudice.

4. Defendant Reverend Daniel Izzo is dismissed as a Defendant in this action; and

5. Summonses shall not issue as to Defendants Francis A. Ford, Clerk of Court for Worcester County and Assistant Clerk of Court Catherine Brennan, pending resolution of the filing fee issues.

SO ORDERED.

Dated: January 3, 2006                     /s/ Douglas P. Woodlock
                                           DOUGLAS P. WOODLOCK
                                           UNITED STATES DISTRICT JUDGE