UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
05-11539-DPW

Shakir Maris Abdullah
            Plaintiff

    V.

FRANCIS H. FORD, Clerk
Catherine Brennan, Assistant
Clerk, Reverend Daniel Izzo
            Defendants.

PLAINTIFF'S
Motion For An Order Compelling Discovery

Plaintiff move this court for an order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure compelling Defendants Ford and Brennan Who Refused To Produce Items Requested, to produce for inspection and copying the following which are attached hereto. Plaintiff submitted a written request for these documents pursuant to Rule 34 of the Federal Rules of Civil Procedure on April 5, 2006 but have not yet received the documents.

1) The Defendants Ford and Brennan have submitted Numberous objections as well as 66 exhibits instead of the Requested documents Plaintiff requested. See Defendants Ford and Brennan's Response to Plaintiff's First Request For Production of Documents attached hereto.

1.

2) The Court should allow Plaintiff's Motion for an order compelling discovery or in the alternative allow Plaintiff's Motion for Subpeona Duces Tecum pending before the court because the Defendants Ford and Brennan have confirmed their inability to tell the truth and can no longer be trusted to present the full truth.

3) When Plaintiff initially file the complaint, Plaintiff stated in #8 to the complaint, "that on December 6, 2004 Plaintiff mailed to Clerk of Court Francis A. Ford a copy of the Christmas Card and a copy of the One Hundred Thousand Dollar ($100,000) bank note requesting Clerk Ford to establish a legal fund consistent with the instruction given in the Christmas card."

4) In the Answer and Jury Demand of Defendants Ford and Brennan (attached hereto), Ford and Brennan emphatically and vehemently stated in their answer #8, "Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied."

2.

5) This answer that Defendants Ford and Brennan provided was dishonest and a outright lie. See exhibits SMA 0049-0056 attached hereto.

6) Also stated in plaintiff's complaint at #9, " Then around December 10, 2004 Plaintiff received back the December 6, 2004 letter requesting that he provide the clerk's office with the docket number to his case in which plaintiff did on December 14, 2004."

7) In the Answer and Jury Demand of Defendants Ford and Brennan to plaintiff's complaint at #9, the Defendants Ford and Brennan also emphatically and vehemently stated in their answer that they " are without information and knowledge sufficient to form a belief about the truth of the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied."

8) This answer that Defendant Ford and Brennan provided was also dishonest and a outright lie. See exhibits SMA 0041-0048 attached hereto.

3.

9) Also stated in Plaintiff's complaint at #13, " contained between the pages of these documents Plaintiff Received from Assistant Clerk Catherine Brennan was a brand New One Million Dollar Bill ($1,000,000)."

10) Once again in the Answer and Jury Demand of Defendant Ford and Brennan to Plaintiff's complaint at #13, the Defendant Ford and Brennan emphatically and vehemently stated in their answer that they " are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied."

11) This answer that Defendant Ford and Brennan provided was also laced with dishonesty and untruthfulness and a outright lie. See exhibits SMA 0037-0040 attached hereto.

12) But more importantly, all the SMA exhibits thus far submitted and attached hereto appears and shows that the handwritings therein of Mr. Izzo have been either tampered with or forged altogether.

4.

13) Plaintiff also stated in the complaint at #15, " Nor did Assistant Clerk Catherine Brennan mention what happen to the two Fidelity Corporation notes totaling (ONE Hundred Thousand Dollar) send in addition to what plaintiff had already sent to Francis A. Ford for the establishment of a general legal fund. "

14) Defendants Ford and Brennan stated in their Answer and Jury Demand to Plaintiff's complaint at #15, emphatically and vehemently that they " are without information and knowledge sufficient to form a belief about the truth of the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied. "

15) This answer like the others provided by Defendants Ford and Brennan were deliberately calculated and build on falsehood and lies. See exhibits SMA 0063 - 0066.

16) Because the Defendants Ford and Brennan Answer and Jury Demand responses to plaintiffs complaint are interlaced with deception, lies, falsehood and dishonesty and because plaintiff

5.

Requested the court in Plaintiff's Reply to Defendants Ford and Brennan Answer and Jury Demand to take into account any instances that the Plaintiff prove that Defendants Ford and Brennan have been deliberately dishonest when answering Plaintiff's complaint; while evaluating Defendants Fifth Affirmative Defense. The court should now take into consideration imposing serious action against the Defendants Ford and Brennan for their deception, lies, falsehood and dishonesty.

17) The first request of the interrogatories are Necessary to determine whether or not the defendans Ford and Brennan have deposited large sums of money in either of the accounts Plaintiff have sought to be examined and if so, where did they receive it from?

18) The second request of the interrogatories are Necessary for Plaintiff to be aware of the Clerks practices in making deposits to banks and disbursements within the Clerks office. Plaintiff's incarceration limits his ability to make any meaningful investigations and have to rely significantly on the discovery procedures.

6.

19) The third and final Request of the inter-
Rogatories are Necessary to Review the deposits
made by the clerks office to the bank from December
14, 2004 to this present day/date or at least up
until May 2005 when Plaintiff filed the initial
complaint with the Clerk's Office. The Defendants
Ford and Brennan have been completely dishonest
about the $100,000 dollar bank note they received
from Plaintiff until recently. (See SMA 0049-
0056 and SMA 0041-0048). Further, exhibit
SMA 0049 seems to suggest that the Clerks
Office made bank note deposits under USC
Title 12 sec 342 and USC 12 sec 412 as early as
December, 2004. However the Defendants Ford
and Brennan did not inform Plaintiff that
their office did Not establish legal funds until
February 28, 2005 and then sent Plaintiff a
fake $1,000,000 dollar bill which the Defendants
Ford and Brennan Now admit to. (See all SMA
exhibits attached hereto). These facts among
others warrant the issuing for an order to
compell discovery of the clerks office deposits
and withdrawal (disbursements) from December 14,
2004 to at least May 2005 or in the alternative
issue the subpeona duces tucum pending with the
court. Plaintiff also Requests that the court
take into consideration his pending motion for
appointment of counsel while Ruling on this
motion to assist him in this matter.

7.

Respectfully submitted,
Shakir Maris Abdullah, Pro Se
Shakir Maris Abdullah, Pro Se
Old Colony Correction Center
One Administration Road
Bridgewater, MA. 02324


CERTIFICATE OF SERVICE

I, Shakir Maris Abdullah, Pro Se, hereby
certify that on May 23, 2006, I served
a copy of the Plaintiffs Motion For an
Order Compelling Discovery upon Ernest
L. Sarason Jr. Assistant Attorney General,
One Ashburton Place, 18th Floor, Boston, MA. 02108


Shakir Maris Abdullah Pro Se


8.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

CIVIL ACTION NO.

2006 MAY 25    05-11539 - DPW

U.S. DISTRICT COURT
DISTRICT OF MASS.

Shakir Maris Abdullah
            Plaintiff

V.

Francis H. Ford, Clerk
Catherine Brennan, Assistant
Clerk, Reverend Daniel Izzo
            Defendants.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff hereby requests that Defendants produce for inspection and copying, the documents and tangible things identified below within thirty (30) calendar days of the service of this document request.

1. Any and all Bank Accounts, Saving Account, checking Account, Retirement Account, 401(k) Account, Mutual Fund Account, Bond Account, Annuities, Life Insurance payments, Trust Account owned and or accessed by the Defendants from December 14, 2004 through and including the date of your response to this Request.

1.

**REQUEST NO. 2**

Any and all policies, procedures, regulations, instructions, notes, memoranda, internal communications and directives the clerk's office and employees use in making deposits and withdrawals to and from banks from December 14, 2004 through and including the date of your response to this request.

**RESPONSE NO. 2**

Defendants Ford and Brennan object to this document request as it seeks information protected by c. 66A. Defendants Ford and Brennan further object to this document request as being overly broad and unduly burdensome, and not likely to lead to discoverable evidence. Without waiving such objection, Defendants Ford and Brennan state that all documents relevant to plaintiff's claim in their possession have been produced to the plaintiff, Bates Numbered SMA 0001-0066.

**REQUEST NO. 3**

Any notes, documents, letters, memoranda, files, records, record books, logs, reflecting all deposits and withdrawals that was made within the clerk's office from December 14, 2004 through and including the date of your response to this request.

**RESPONSE NO. 3**

Defendants Ford and Brennan object to this document request as it seeks information protected by c. 66A. Defendants Ford and Brennan further object to this document request as being overly broad and unduly burdensome, and not likely to lead to discoverable evidence. Without waiving such objection, Defendants Ford and Brennan state that all documents relevant to plaintiff's claim in their possession have been produced to the plaintiff, Bates Numbered SMA 0001-0066.

Respectfully Submitted,
FRANCIS FORD,
CATHERINE BRENNAN,

THOMAS F. REILLY
ATTORNEY GENERAL

Ernest L. Sarason, Jr., BBO # 441980
Assistant Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
(617) 727-2200   x 3220

Dated: May 8, 2006

## CERTIFICATE OF SERVICE

I, Ernest L. Sarason, Jr., hereby certify that on May 8, 2006, I served a copy of the above **Responses to Request for Production of Documents** upon the pro se plaintiff, by mailing a postage pre-paid copy to:

Shakir Maris Abdullah
Old Colony Correctional Center
One Administration Road
Bridgewater, MA  02324

Ernest L. Sarason, Jr.
Assistant Attorney General

4

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SHAKIR MARIS ABDULLAH,<br>Plaintiff, | )<br>)<br>)<br>) |  |
| v. | )<br>) | C.A. NO. 05-11539-DPW |
| FRANCIS H. FORD, Clerk, CATHERINE<br>BRENNAN, Assistant Clerk, and REVEREND<br>DANIEL IZZO,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) |  |

## ANSWER AND JURY DEMAND OF DEFENDANTS FRANCIS FORD AND CATHERINE BRENNAN

Now comes the Defendants, Francis Ford ("Ford") and Catherine Brennan ("Brennan"), and answer the Complaint, paragraph by paragraph, as follows:

### CIVIL COMPLAINT

1.     To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

### PARTIES

2.     The allegations in this paragraph are statements of identity which require no response.

3.     The allegations in this paragraph are statements of identity which require no response. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

4.     The allegations in this paragraph are statements of identity which require no response. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

1

5.    The allegations in this paragraph are statements of identity which require no response. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

## FACTS

6.    Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

7.    Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

8.    Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

9.    Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

10.    Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

11.    Defendants Ford and Brennan admit the allegations in this paragraph.

12.    Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in

this paragraph call for a conclusion of fact or law, they are hereby denied.

13.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

14.  Defendants Ford and Brennan deny the allegations in this paragraph.

15.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

16.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.

17.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.

18.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.  To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

19.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.

20.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.

21.  Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph.

22.  Defendants Ford and Brennan admit that Defendant Brennan sent Plaintiff a letter on

3

June 16, 2005 stating that the Clerk's Office does not establish legal funds. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

23. Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

24. Defendants Ford and Brennan are without information or knowledge sufficient to form a belief about the truth of the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

25. Defendants Ford and Brennan deny the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

### PRAYER FOR RELIEF

26. Defendants Ford and Brennan deny the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

27. Defendants Ford and Brennan deny the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

28. Defendants Ford and Brennan deny the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

29. Defendants Ford and Brennan deny the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

30. Defendants Ford and Brennan deny the allegations in this paragraph. To the extent the allegations in this paragraph call for a conclusion of fact or law, they are hereby denied.

4

All allegations that are not admitted nor denied are hereby denied.

## AFFIRMATIVE DEFENSES

Further answering the plaintiff's complaint, Defendants Ford and Brennan asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

Defendants Ford and Brennan are immune from suit for civil rights violations in their official capacities as clerks of court as they are state officials, and the state has not waived its Eleventh Amendment immunity and therefore may not be subjected to suit in federal court.

### SECOND AFFIRMATIVE DEFENSE

Defendants Ford and Brennan are immune from suit for civil rights violations in their individual capacities by the doctrine of qualified immunity.

### THIRD AFFIRMATIVE DEFENSE

This claim is barred as Plaintiff has failed to plead a federal cause of action, and this Court has no subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### FOURTH AFFIRMATIVE DEFENSE

This claim is barred as Plaintiff has failed to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### FIFTH AFFIRMATIVE DEFENSE

The Defendants, Francis Ford and Catherine Brennan, hereby give notice that they intends to rely upon such other and further defenses that may become available or apparent during discovery proceedings in this case and hereby reserve the right to amend this answer to assert any such defense.

## JURY DEMAND

The Defendants, Francis Ford and Catherine Brennan, hereby request a trial by jury as to

all issues, claims and defenses asserted in this action.

Respectfully Submitted,

FRANCIS FORD,
CATHERINE BRENNAN,
By Their Attorney,

/s/ Ernest L. Sarason, Jr.
Ernest L. Sarason, Jr., BBO # 441980
Assistant Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
(617) 727-2200   x 3220

Dated: March 30, 2006

## CERTIFICATE OF SERVICE

I, Ernest L. Sarason, Jr., hereby certify that on March 30, 2006, I served a copy of the
above **Answer and Jury Demand** upon the pro se plaintiff, by mailing a postage pre-paid copy
to:

Shakir Maris Abdullah
Old Colony Correctional Center
One Administration Road
Bridgewater, MA  02324

/s/ Ernest L. Sarason, Jr.
Ernest L. Sarason, Jr.
Assistant Attorney General

6

Francis A. Ford
Clerk/Magistrate
Worcester County Superior Court
2 Main Street
Worcester, MA. 01608

Shakir Maris Abdullah
OCCC
One Administration Rd.
Bridgewater, MA. 02324

FILED **Copy**
CLERKS OFFICE

2006 MAY 25  P 1:45

U.S. DISTRICT COURT
DISTRICT OF MASS.

December 6, 2004

(I don't know)
Petitioner

SMA 0049

Dear Mrs. Ford:

Enclosed please find my Justice Denied legal
'd I had placed on the internet seeking legal
assistance or donations.

In response to this request I received the enclosed
note for the Court Clerk to endorse and deposit
with the Court Clerk for a legal Fund on my behalf.

I have also provided herein a copy of the message that
accompanied the Note directing me to forward this item
o you that I may have a legal Fund established to
resolve the ~~matter~~ ~~do~~ ~~me~~ ~~the~~ my Justice Denied
legal Ad.   General Legal Fund

To the Court:

Deposit under USC Title 12 sec 342
National Bank Notes as, For
the Same Collected under USC 12 sec 412
Dr Dan 170

Once this process is completed by your office would you please notify me forthwith.

Thank you for your time and attention into this very important matter.

Sincerely yours,

Shakir Maris Abdullah

CC: File

2.

SMA 0050

# Justice Denied — Legal Ads

## Unresolved Events





Dear Readers:

My name is Shakir Maris Abdullah, and I'm writing about unresolved events that occurred at my August 1991 trial. I have attached as an exhibit a four-page letter, which was written by my trial attorney Greg T. Schubert, that essentially provides many details about these events (condensed into one page below).

As this letter indicate there was a Sergeant Dennis Towner of the Worcester Police Department having a sexual relationship with a Naomi Papale who was believed to have fathered Ms. Papale's two children, Kara and Dennis Papale.

On two separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester City Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon inquiry of Naomi Papale's children birth records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papale. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further investigation was conducted on the issue at that time and I was subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. Labitch that there was "no record on file" for Dennis Papale and indicated that there may have been a name change through adoption and or marriage. I have these documents available for anyone's inspection.

In fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17/89. He further stated, in his affidavit that a clerk at the Bureau of Vital Statistics told him that Kara Papale, dob 05/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never instructed to proceed to the police internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naomi Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*(Letter from Trial Attorney):*

### PROCTOR, RASNICK & GOEWEY
COUNSELLORS AT LAW
TEN MECHANIC STREET · SUITE 300
WORCESTER, MASSACHUSETTS 01608

JOHN H. GOEWEY
MARVIN P. RASNICK
GREG T. SCHUBERT

TELEPHONES
AREA CODE 508
798-9706
788-2034
798-2040

TELECOPIER
508 798-4692

William J. Leahy, Esquire
Chief Counsel
Committee for Public Counsel Services
Suite 600
80 Boylston, Street
Boston, MA. 02116

SMA 0051

RE: DENNIS SHELTON   AKA SHAKIR MARIS ABDULLAH
    Murder Conviction / Appeal Decisions

Worcester Superior Court 90-1148-50-51

Dear Mr. Leahy:

At the suggestion of Diane Hanson I am writing to outline what matters are presently unresolved with regard to this case. Dennis Shelton was originally charged with the murder [felony murder theory] and armed robbery of one, Greg White. He was also charged with armed assault with intent to rob and assault and battery with a dangerous weapon [Handgun] of Naomi Papale. These alleged events occurred several hours apart and at different locations.

I am the third counsel appointed to Mr. Shelton. Previously he was represented by James Gribowski and Bernard Grossberg pursuant to Committee appointment. I have just finished an eight day trial by combat with the Commonwealth and more significantly Associate Justice James P. Donohue.

Prior to trial I filed extensive motions for relief under Rule 9 [a] [3] and 9 [d] [Misjoinder and prejudicial joinder]. I attempted to have these motions heard and decided two weeks prior to trial. Donohue, who was specially assigned, denied this request off the record. On the opening day of trial Judge Donohue would not allow me to be adequately heard [if at all] on these motions [which were of a crucial nature to the case]. Without the Papale incident, the Commonwealth was without any evidence to prove Mr. Shelton had a gun. Additionally, I had filed a motion for a 48 hour continuance due to the Commonwealth informing me of a new alleged admission witness [morning of trial] and another witness who had changed her testimony entirely and thereon gave very incriminating new testimony [she later recanted her alleged new testimony and endorsed her initial testimony at the trial]. This motion was denied summarily—the 9 & d motions were held under advisement. I indicated that that ruling was unacceptable to the defense. After a particularly bitter [but always respectful] exchange between myself and his honor, he denied all my pre-trial in limine motions. I declined to start the trial without Single Justice review. To say that his honor was incensed is an considerable understatement.

Justice Wilkins was of no assistance upon my Chapter 211; 3 petition. He wouldn't even assist me pursuant to my law clerk who had practicing papers, but who Judge Donohue would not allow to participate at side bar conferences. I can only imagine the reception I would have had with Justice Nolan! The trial commenced with the selection of a all white jury. There were no black persons in the 85 person venire. Perhaps this is a matter that Mr. Harris might inquire into and take appropriate action.

The Commonwealth proceeded on a theory of felony murder. At the conclusion of the Commonwealth's case, I moved for a directed finding on the armed robbery indictment of Greg White. This motion was granted after much argument. Thereon, by implication, so would the murder indictment die of consequential causes. The Commonwealth argued at length after the ruling that there was not sufficient evidence to submit the case to the jury on premeditation and malice aforethought or any theory other than felony murder. The judge then informed the Commonwealth that if it did not wish to proceed under his new theory of the case, he would direct on the murder. The Commonwealth—lights flashing chose to adopt Judge Donohue's new theory—wholeheartedly. The defense was now locked into further battle with both the Commonwealth and the bench.

The defense through some client information supplied by pimps of which I am friendly, informed me that Ms. Papale, who had testified as to the second alleged incident which connected my client with a gun, had in fact, been having sexual relations with the chief operations officer of the Worcester Police Department Vice Squad for a long period of time.

www.friendsbeyondthewall.com/ppbtw/ads-male/a/abdullah shakir w51043 leg.html

SMA 0052

This information was particularly significant in light that Ms. Papale had, at the probable cause hearing, invoked her fifth amendment privilege some twenty-two times and prior to her testimony, I had sought a ruling to ascertain whether she would invoke her privilege, now at the trial. The A.D.A. and her counsel [a former A.D.A.] who stood with her throughout her testimony agreed that she would not if no questions were asked about her children and their father. I assented to this in good faith and in compliance with conduct beyond reproach, as I had no reason to believe said line of inquiry was relevant.

I immediately alleged the newly discovered information and accompanying prosecutorial misconduct and moved for dismissal thereon. The Court was oblivious. The Court did order both Sgt. Dennis Towner and Ms. Papale back for a voir dire examination. Towner denied sexual relations but admitted to dating, refusing to end his relationship with Ms. Papale such that he was relieved of his vice squad position [he maintained his rank upon transfer], paternity of Ms. Papale's youngest child [coincidentially named Dennis], and denied a police internal affairs investigation. Ms. Papale took the fifth amendment upon advise

of counsel as to sexual relations, admitted having numerous criminal charges squelched by Towner and denied paternity as to the child named Dennis. The Court informed counsel that it would not allow inquiry into sexual relations between the two before the jury. Objection was noted and I did not call these witnesses as part of the defense. I have good reason to believe that both of these individuals perjured themselves and cannot in writing commit my reasons for this view. Suffice it to say this matter may provide an excellent basis for Rule 30 relief.

The defense demonstrated by both expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary Commonwealth witness, Holmes could not have heard or seen the client as alleged. His own common law wife disputed his testimony and she was in a position to much better hear or see Mr. Shelton—her testimony had him leaving the crime scene prior to the alleged admission by Shelton. Further, we produced evidence that he [Holmes] had been threatened by the police and gave new evidence against Mr. Shelton only upon such duress. The defense also offered unrefuted evidence of two individuals that had motive and opportunity to commit the murder—one being detained by the police on the night of the killing because he physically matched the victim's description and was clothed in black sweat shirt and black sweat pants.

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he identified his assailant as 5' 11' black male, wearing a black sweatshirt and black sweatpants. He further stated that he did not know his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. White. The EMT's characterized White as alert and fully conscious when he gave those statements.

Suffice it to say, that if I had not been obliterated by guilty verdicts of this ilk in the past, I would have put both Sgt. Towner and Papale back on the stand. It was my decision at the time that they represented an insurance policy against any murder conviction. I believe that decision was correct and still maintain its correctness. Presently, the major question confronting the Committee is to make a decision as to whether to await appellate review which might well elicit a Mazza or Salemme type decision or move on Rule 30 relief upon proof of the perjury. I must inform you that Mr. Shelton has throughout this case insisted upon his innocence. Personally I have never been accused of naivete—I must point out that the likelihood of this is upon the evidence substantially in his favor. This bothers me greatly. In fact—more than greatly.

SMA 0053

I believe that if the case goes to the Appeals Court than new highly experienced appellate counsel should be appointed. This would best protect Mr. Shelton should I have erred seriously somewhere. If the Rule 30 route is endorsed then I would like to continue in this representation. I am accutely aware of budget considerations and that this defense is already been immensely expensive for the Committee. I have over 200 hours involved. Private investigation expenses are going to be high--Mr. Lajoie was extremely valuable and much of the demonstrative evidence presented was a result of his total dedication to this case. My clerk will also cost some additional expense.

As an aside, the Worcester County District Attorney is now not giving probable cause hearings [serious felonies] is only going to further raise investigative expenses substantially. At least, those decisions will not haunt me. I recommend that a transcript be ordered immediately and procurred with all due haste. My personal opinion is that reversible error is rife throughout these proceedings, but a new trial may not be what best serves Mr. Shelton and the time attendent to that end may require him to remain incarcerated even longer than the 19 months be has presently served awaiting trial.

I believe this gives you a broad overview of the situation. I will make myself available in Boston to you or Mr. Speer on specifics anytime this week if you believe further discussion would be fruitful. Bottomline--I'm frustrated over my present impotence. I realize that this is an occupational hazard, but it does not quell my anger at this result.

Very truly yours,

Greg T. Schubert

Dated: August 16, 1991
GTS/mk
cc: Theodore Harris, Esq.

*Write to me at:*

Shakir Maris Abdullah
#W51043
MCI - Cedar Junction
PO Box 100
South Walpole, MA 02071

**Send Email**



Justice Denied
Main Section

SMA 0054

# UNITED STATES OF AMERICA

Search

TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 412

## § 412. Application for notes; collateral required

*Release date: 2004-03-18*

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 92, 342 to 348, 349 to 352, 361, 372, or 373 of this title, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of sections 348a and 353 to 359 of this title, or bankers' acceptances purchased under the provisions of said sections 348a and 353 to 359 of this title, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under sections 348a and 353 to 359 of this title. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of Federal Reserve banks.



County Clerk                    County Judge

REGISTERED:

**SMA 0055**

County Treasurer

As we thank God
for his many blessings this
Christmas,
let us also pray for
Peace on Earth.

Have a Merry Christmas
and Blessed New Year!



**Cryonic Life Insurance Company**

**Rev Dan Izzo**
Dept. of General Resurrection

512 Onondaga Ave
Syracuse, NY 13207



Mi, ask the Court
to endorse the
Note under
USC Title 12 sec 412
and Deposit it
with the
Court Clerk
for a legal
Fund

SMA 0056

FRANCIS A. FORD
CLERK OF THE COURT
ROOM 21 - COURT HOUSE
  2 MAIN STREET
WORCESTER, MASSACHUSETTS
    01608-1176

FILED
IN CLERKS OFFICE

2006 MAY 25  P 1:45

U.S. DISTRICT COURT
DISTRICT OF MASS.04

Shakir Maris Abdullah
OCCC
One Administration Rd.
Bridgewater, MA. 02324

RE: Shakir Maris Abdullah
    aka Dennis Shelton
    # 90-1148-1150-1151

**FILED**
DEC 2 0 2004
ATTEST
Frans a Ford
CLERK

Dear Mrs. Ford:

  Enclosed please find my Justice Denied Legal
Ad I had placed on the internet seeking legal
assistance or donations.

  In response to this request I received the enclosed
Federal Note for the Court Clerk to endorse and
deposit with the Court Clerk for a legal Fund on
my behalf.

                    /.

                                        SMA  0041

I have also provided herein a copy of the message that accompanied the Federal Note directing me to forward this currency to you that I may have a Legal Fund established on my behalf.

Once this process is completed by your office I would request that NO funds be withdrawn from this account by anyone without my approval and signature.

Thank you for your time and attention to this very important matter and I look forward to to reply.

Sincerely,

Shakir Mais Abdullah
aka Dennis Shelton
90-1148-1150-1151

CC: File
Rev. Dan Izzo

SMA 0042

# Justice Denied—Legal Ads

**Unresolved Events**





Dear Readers:

My name is Shakir Maris Abdullah, and I'm writing about unresolved events that occurred at my August 1991 trial. I have attached as an exhibit a four-page letter, which was written by my trial attorney Greg T. Schubert, that essentially provides many details about these events (condensed into one page below).

As this letter indicate there was a Sergeant Dennis Towner of the Worcester Police Department having a sexual relationship with a Naomi Papale who was believed to have fathered Ms. Papale's two children, Kara and Dennis Papale.

On two separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester City Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon inquiry of Naomi Papale's children birth records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papale. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further investigation was conducted on the issue at that time and I subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. E abitch that there was "no record on file" for Dennis Papale and indicated that there may have been a name change through adoption and or marriage. I have these documents available for anyone's inspection.

In fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17/89. He further stated, in his affidavit that a clerk at the Bureau of Vital Statistics told him that Kara Papale, dob 05/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never instructed to proceed to the police internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naomi Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*(Letter from Trial Attorney):*

**PROCTOR, RASNICK & GOEWEY**

JOHN H GOEWEY
MARVIN R. RASNICK
GREG T SCHUBERT

COUNSELLORS AT LAW
TEN MECHANIC STREET · SUITE 300
WORCESTER, MASSACHUSETTS 01608

TELEPHONES
AREA CODE 508
798-0706
798-2034
798-2040

TELECOPIER
508 798-4882

William J. Leahy, Esquire
Chief Counsel
Committee for Public Counsel Services
Suite 600
80 Boylston Street
Boston, MA. 02116

**RE: DENNIS SHELTON   AKA SHAKIR MARIS ABDULLAH**
**Murder Conviction / Appeal Decisions**

SMA 0043

Worcester Superior Court 90-1148-50-51

Dear Mr. Leahy:

At the suggestion of Diane Hanson I am writing to outline what
matters are presently unresolved with regard to this case. Dennis
Shelton was originally charged with the murder [felony murder theory]
and armed robbery of one, Greg White. He was also charged with armed
assault with intent to rob and battery with a dangerous
weapon [Handgun] of Naomi Papale. These alleged events occurred several
hours apart and at different locations.

I am the third counsel appointed to Mr. Shelton. Previously he
was represented by James Gribowski and Bernard Grossberg pursuant to
Committee appointment. I have just finished an eight day trial by combat
with the Commonwealth and more signifigantly Associate Justice James P.
Donohue.

Prior to trial I filed extensive motions for relief under Rule 9
[a] [3] and 9 [d] [Misjoinder and prejudicial joinder]. I attempted to
have these motions heard and decided two weeks prior to trial. Donohue,
who was specially assigned, denied this request off the record. On the
opening day of trial Judge Donohue would not allow me to be adequately
heard [if at all] on these motions [which were of a crucial nature to
the case]. Without the Papale incident, the Commonwealth was without any
evidence to prove Mr. Shelton had a gun. Additionally, I had filed a
motion for a 48 hour continuance due to the Commonwealth informing me of
a new alleged admission witness [morning of trial] and another witness
who had changed her testimony and thereon gave very
incriminating new testimony [she later recanted her alleged new
testimony and endorsed her initial testimony at the trial]. This motion
was denied summarily—the 9 a & d motions were held under advisement. I
indicated that that ruling was unacceptable to the defense. After a
particularly bitter [but always respectful] exchange between myself and
his honor, he denied all my pre-trial in limine motions. I declined to
start the trial without Single Justice review. To say that his honor was
incensed is an considerable understatement.

Justice Wilkins was of no assistance upon my Chapter 211, 3
petition. He wouldn't even assist me pursuant to my law clerk who had
practicing papers, but who Judge Donohue would not allow to participate
at side bar conferences. I can only imagine the reception I would have
had with Justice Nolan! The trial commenced with the selection of a all
white jury. There were no black persons in the 85 person venire. Perhaps
this is a matter that Mr. Harris might inquire into and take appropriate
action.

The Commonwealth proceeded on a theory of felony murder. At the
conclusion of the Commonwealth's case, I moved for a directed finding on
the armed robbery indictment of Greg White. This motion was granted
after much argument. Thereon, by implication, so would the murder
indictment die of consequential causes. The Commonwealth argued at
length after the ruling that there was not sufficient evidence to submit
the case to the jury on premeditation and malice aforethought or any
theory other than felony murder. The judge then informed the
Commonwealth that if it did not wish to proceed under his new theory of
the case, he would direct on the murder. The Commonwealth—lights
flashing chose to adopt Judge Donohue's new theory—wholeheartedly. The
defense was now locked into further battle with both the Commonwealth
and the bench.

The defense through some client information supplied by pimps of
which I am friendly, informed me that Ms. Papale, who had testified as
to the second alleged incident which connected my client with a gun, had
in fact, been having sexual relations with the chief operations officer
of the Worcester Police Department Vice Squad for a long period of time.

SMA 0044

This information was particularly significant in light that Ms. Papale had, at the probable cause hearing, invoked her fifth amendment privilege some twenty-two times and prior to her testimony, I had sought a ruling to ascertain whether she would invoke her privilege, now at the trial. The A.D.A. and her counsel (a former A.D.A.) who stood with her throughout her testimony agreed that she would not if no questions were asked about her children and their father. I assented to this in good faith and in compliance with conduct beyond reproach, as I had no reason to believe said line of inquiry was relevant.

I immediately alleged the newly discovered information and accompanying prosecutorial misconduct and moved for dismissal thereon. The Court was oblivious. The Court did order both Sgt. Dennis Towner and Ms. Papale back for a voir dire examination. Towner denied sexual relations but admitted to dating, refusing to end his relationship with Ms. Papale such that he was relieved of his vice squad position [he maintained his rank upon transfer], paternity of Ms. Papale's youngest child [coincidentially named Dennis], and denied a police internal affairs investigation. Ms. Papale took the fifth amendment upon advise

of counsel as to sexual relations, admitted having numerous criminal charges squelched by Towner and denied paternity as to the child named Dennis. The Court informed counsel that it would not allow inquiry into sexual relations between the two before the jury. Objection was noted and I did not call these witnesses as part of the defense. I have good reason to believe that both of these individuals perjured themselves and cannot in writing commit my reasons for this view. Suffice it to say this matter may provide an excellent basis for Rule 30 relief.

The defense demonstrated by both expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary Commonwealth witness, Holmes could not have heard or seen the client as alleged. His own common law wife disputed his testimony and she was in a position to much better hear or see Mr. Shelton—her testimony had him leaving the crime scene prior to the alleged admission by Shelton. Further, we produced evidence that he [Holmes] had been threatened by the police and gave new evidence against Mr. Shelton only upon such duress. The defense also offered unrefuted evidence of two individuals that had motive and opportunity to commit the murder—one being detained by the police on the night of the killing because he physically matched the victim's description and was clothed in black sweat shirt and black sweat pants.

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he identified his assailant as 5' 11' black male, wearing a black sweatshirt and black sweatpants. He further stated that he did not know his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. White. The EMT's characterized White as alert and fully conscious when he gave those statements.

Suffice it to say, that if I had not been obliterated by guilty verdicts of this ilk in the past, I would have put both Sgt. Towner and Papale back on the stand. It was my decision at the time that they represented an insurance policy against any murder conviction. I believe that decision was correct and still maintain its correctness. Presently, the major question confronting the Committee is to make a decision as to whether to await appellate review which might well elicit a Mazza or Salemme type decision or move on Rule 30 relief upon proof of the perjury. I must inform you that Mr. Shelton has throughout this case insisted upon his innocence. Personally I have never been accused of naivete—I must point out that the likelihood of this is upon the evidence substantially in his favor. This bothers me greatly. In fact—more than greatly.

SMA 0045

I believe that if the case goes to the Appeals Court than new
highly experienced appellate counsel should be appointed. This would

best protect Mr. Shelton should I have erred seriously somewhere. If the
Rule 30 route is endorsed then I would like to continue in this
representation. I am accutely aware of budget considerations and that
this defense is already been immensely expensive for the Committee. I
have over 200 hours involved. Private investigation expenses are going
to be high--Mr. Lajoie was extremely valuable and much of the
demonstrative evidence presented was a result of his total dedication
to this case. My clerk will also cost some additional expense.

As an aside, the Worcester County District Attorney is now not
giving probable cause hearings [serious felonies] is only going to
further raise investigative expenses substantially. At least, those
decisions will not haunt me. I recommend that a transcript be ordered
immediately and procured with all due haste. My personal opinion is
that reversible error is rife throughout these proceedings, but a new
trial may not be what best serves Mr. Shelton and the time attendent to
that end may require him to remain incarcerated even longer than the 19
months he has presently served awaiting trial.

I believe this gives you a broad overview of the situation, I
will make myself available in Boston to you or Mr. Speer on specifics
anytime this week if you believe further discussion would be fruitful.
Bottomline--I'm frustrated over my present impotence. I realize that
this is an occupational hazard, but it does not quell my anger at this
result.

Very truly yours,

Greg T. Schubert

Dated: August 16, 1991
GTS/mk
cc: Theodore Harris, Esq.

**Write to me at:**

Shakir Maris Abdullah
#W51043
MCI - Cedar Junction
PO Box 100
South Walpole, MA 02071

**Send Email**

Justice Denied
Main Section

As we thank God
for his many blessings this
Christmas,
let us also pray for
Peace on Earth.

Have a Merry Christmas
and Blessed New Year!



**Cryonic Life Insurance Company**

**Rev Dan Izzo**
Dept of Genaral Resurrection

512 Onondaga Ave
Syracuse, NY. 13207



Mi, ask the Court
to endorse the
Note under
USC Title 12 sec 412
and Deposit it
with the
Court Clerk
for a legal
Fund

# UNITED STATES OF AMERICA

Search

## TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 412

### § 412. Application for notes; collateral required

*Release date: 2004-03-18*

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 92, 342 to 348, 349 to 352, 361, 372, or 373 of this title, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of sections 348a and 353 to 359 of this title, or bankers' acceptances purchased under the provisions of said sections 348a and 353 to 359 of this title, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under sections 348a and 353 to 359 of this title. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of Federal Reserve banks.



REGISTERED:  ✗                County Clerk            ✗  County Judge

**SMA 0048**

✗  *County Treasurer*



General
Legal
Fund,
Court
Donation

FILED
CLERKS OFFICE

2006 MAY 25  P 1:45

U.S. DISTRICT COURT
DISTRICT OF MASS.

Br. Dan Izzo
512 Onondaga Ave,
Syracuse, NY 13207

To Francis Ford
Clerk/Magistrate
Worcester County Superior Court
2 Main Street
Worcester MA
01608

SMA 0037



Joy To The World



SMA 0038



SMA  0039



REGISTERED

SMA 0063

**FIDELITY CORPORATION**

5½% CONVERTIBLE SUBORDINATED DEBENTURE

DUE MAY 1, 1988

REGISTERED

SEE REVERSE FOR
CERTAIN DEFINITIONS

CUSIP 316081 AA 6

FILED
CLERKS OFFICE

2006 MAY 25 P

U.S. DISTRICT
DISTRICT OF

FIDELITY CORPORATION (hereinafter called the "Company"), a corporation of the Commonwealth of Virginia, for value received, hereby promises to pay to

*108000* RU        29181   ·CEDE & CO

or registered assigns, the principal sum of    *134587799*M007922*

DOLLARS

on May 1, 1988, and to pay interest thereon at the rate specified in the title of this debenture from the May 1 or November 1 next preceding the date hereof...

THIS IS ONE OF THE DEBENTURES DESCRIBED IN THE WITHIN MENTIONED INDENTURE.

UNITED STATES TRUST COMPANY OF NEW YORK
AS SUCCESSOR TRUSTEE

BY
ORIZED OFFICER

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

DATED OCT 13 19

IN WITNESS WHEREOF, FIDELITY CORPORATION...

FIDELITY CORPORATION

ATTEST:

SECRETARY        BY        PRESIDENT

SMA 0064

# FIDELITY CORPORATION

## 5½% CONVERTIBLE SUBORDINATED DEBENTURE

## DUE MAY 1, 1988

(CONTINUED)

This debenture is one of a duly authorized issue of debentures of the Company (hereinafter called the "debentures") limited to an aggregate principal amount of $16,000,000 at any one time outstanding, excluding debentures issued in substitution for lost, stolen or destroyed debentures, and all issued or to be issued under and pursuant to and equally entitled to the benefits of an indenture dated as of May 1, 1968 (hereinafter called the "indenture") between the Company and First National City Bank, Trustee (hereinafter called the "Trustee"), to which indenture and any indentures supplemental thereto reference is hereby made for a statement of the rights, duties and immunities thereunder of the Trustee and the rights and limitations of rights thereunder of the holders of the debentures and of the Company.

Subject to the provisions of the indenture, the registered holder hereof at his option may at any time to and including May 1, 1988 (except that if this debenture or a portion hereof shall have been called for redemption, then, as to this entire debenture or the portion hereof so called for redemption, as the case may be, such right shall terminate at the close of business on the date fixed for such redemption, unless the Company shall default in payment due upon such redemption) convert the principal amount of this debenture, or any portion thereof which is an integral multiple of $1,000, into as many fully paid and nonassessable shares of Common Stock, $1 par value, of the Company as the principal amount so to be converted is a multiple of the conversion price of $19.50 per share upon surrender of this debenture to the Company at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, accompanied by written notice of such holder's election to convert and (if so required by the Company or the conversion agent) by instruments of transfer, in form satisfactory to the Company and to the conversion agent, duly executed by the registered holder hereof or by his duly authorized attorney, and transfer tax stamps or funds therefor, if required. Such surrender shall, if made during the period from the close of business on the record date next preceding any May 1 or November 1 to the opening of business on such May 1 or November 1 (unless this debenture or the portion hereof being converted has been called for redemption on a redemption date during such period), also be accompanied by payment in New York Clearing House funds or other funds acceptable to the Company of an amount equal to the interest thereon from the conversion date to the next succeeding interest payment date. The conversion price and the number of shares issuable on conversion are subject to adjustment as provided in the indenture. Subject to the requirement for a payment in the event of conversion after the close of business on a record date as set forth above, no adjustments in respect of interest or dividends will be made upon any conversion. No fractional shares or scrip representing fractional shares will be issued upon any conversion, but an adjustment in cash will be made, as provided in the indenture, in respect of any fraction of a share which would otherwise be issuable upon the surrender of any debenture or debentures for conversion.

The debentures are issuable only as registered debentures without coupons in denominations of $1,000 and integral multiples of $1,000. The debentures may be exchanged for a like aggregate principal amount of debentures of other authorized denominations at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, in the manner and subject to the limitations provided in the indenture, but without payment of any charge other than a sum sufficient to reimburse the Company for any stamp tax or other governmental charge incident thereto.

The transfer of this debenture is registrable by the registered holder hereof or by his attorney duly authorized in writing and, upon surrender of this debenture for registration of transfer at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, a new debenture or debentures, of authorized denominations, for a like aggregate principal amount will be issued to the transferee, subject to the limitations provided in the indenture, but without payment of any charge other than a sum sufficient to reimburse the Company for any stamp tax or other governmental charge incident thereto.

The indebtedness evidenced by the debentures is, to the extent and in the manner provided in the indenture, subordinate and subject in right of payment to the prior payment in full of all Senior Debt (as defined in the indenture) of the Company, whether outstanding at the date of the indenture or thereafter incurred. Each holder of this debenture, by his acceptance hereof, agrees to and shall be bound by all the provisions of the indenture relating to such subordination.

In case a default, as defined in the indenture, shall have occurred and be continuing, the principal hereof may be declared, and upon such declaration shall become, due and payable, and such declaration may in certain events be rescinded by the holders of a majority in aggregate principal amount of the debentures at the time outstanding, all in the manner, with the effect and subject to the conditions provided in the indenture.

No reference herein to the indenture and no provision of this debenture or of the indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and premium, if any, and interest on this debenture at the times and place and at the rate and in the currency herein prescribed.

The indenture contains provisions permitting the Company and the Trustee, with the consent of the registered holders of not less than two-thirds in aggregate principal amount of the debentures at the time outstanding, evidenced as in the indenture provided, to execute supplemental indentures adding any provisions to, or changing in any manner or eliminating any of the provisions of, the indenture; PROVIDED, HOWEVER, that no such supplemental indenture shall (1) extend the fixed maturity of any of the debentures, or reduce the rate or extend the time of payment of interest thereon, or reduce the amount of the principal thereof, or reduce any premium payable on the redemption thereof, or extend the time of payment of or reduce the amount of any sinking fund payment, or impair any right to convert debentures without the consent of each registered holder of debentures affected thereby, or (2) affect the rights of the holders of some of the debentures without similarly affecting the rights of the holders of all the debentures at the time outstanding without the consent of the registered holders of all debentures at the time outstanding, or (3) reduce the percentage of debentures the consent of the registered holders of which is required to approve any supplemental indenture or any waiver hereinafter referred to without the consent of the registered holders of all debentures at the time outstanding, or (4) change or eliminate any of the provisions of the indenture relating to the subordination of the debentures in right of payment to Senior Debt (as defined in the indenture), without the consent of the holder or holders of such Senior Debt. It is also provided in the indenture that the registered holders of a majority in aggregate principal amount of the debentures at the time outstanding may waive on behalf of the holders of all of the debentures, with certain exceptions, any past default under the indenture and its consequences. Any such consent or waiver by the registered holder of this debenture (unless effectively revoked as provided in the indenture) shall be conclusive and binding upon such holder and upon all future holders and owners of this debenture or of any debenture issued in lieu hereof or in exchange herefor, irrespective of whether any notation of such consent or waiver is made upon this debenture.

The debentures are subject to redemption at the option of the Company, upon at least 30 days' notice in the manner provided in the indenture, in whole at any time or from time to time in part, at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, at the applicable percentage of the principal amount so redeemed set forth below, together with accrued interest to the date fixed for redemption:

If redeemed during the twelve-month period ending with the last day of April,

| Year | Percentage of Principal Amount | Year | Percentage of Principal Amount | Year | Percentage of Principal Amount |
|---|---|---|---|---|---|
| 1969 | 105.50% | 1976 | 102.25% | 1983 | 100.50% |
| 1970 | 105.00% | 1977 | 102.00% | 1984 | 100.25% |
| 1971 | 104.50% | 1978 | 101.75% | 1985 | 100.00% |
| 1972 | 104.00% | 1979 | 102.50% | 1986 | 100.00% |
| 1973 | 103.50% | 1980 | 101.25% | 1987 | 100.00% |
| 1974 | 103.00% | 1981 | 101.00% | 1988 | 100.00% |
| 1975 | 102.50% | 1982 | 100.75% | | |

The debentures are also subject to redemption in like manner through the operation of the sinking fund provided for in the indenture on each May 1, commencing May 1, 1976, prior to maturity at 100% of the principal amount thereof, together with accrued interest to the date fixed for redemption.

Every holder hereof agrees that, prior to due presentment for registration of transfer of this d[illegible]e, the Company, the Trustee, any debenture registrar, any paying agent and any conversion agent may deem and treat the re[illegible]ered holder hereof as the absolute owner of this debenture (whether or not the same shall be overdue and notwithstanding any notation of ownership or other writing hereon made by anyone other than the Company, the Trustee or any debenture registrar), for the purpose of receiving payment hereof or on account hereof and for all other purposes (subject to the provisions of the first paragraph appearing on the face hereof respecting any record date), and neither the Company, the Trustee, any debenture registrar, any paying agent nor any conversion agent shall be effected by any notice to the contrary.

No recourse shall be had for the payment of the principal of or premium, if any, or interest on this debenture or of any part hereof, or for any claim based hereon or thereon, or otherwise in any manner in respect hereof, or in respect of the indenture, to or against any incorporator, stockholder, officer or director, past, present or future, as such, of the Company, or of any predecessor or successor corporation, either directly or through the Company or such predecessor or successor corporation, whether by virtue of any constitution or statute or rule of law, or by the enforcement of any assessment or penalty, or in any other manner, all such liability being expressly waived and released by the acceptance hereof and as part of the consideration for the issue hereof.

## NOTICE OF ELECTION TO CONVERT

To FIDELITY CORPORATION:

The undersigned owner elects to convert this Debenture (or the portion specified below) into shares of Common Stock.

Dated:

______________________, 19______

______________________________
Signature

INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER

*Portion to be converted (if less than all): $*

(If the Common Stock or any unconverted portion of the Debenture is to be issued other than in your name, attach written instructions with signature guaranteed. Special instructions for denominations or delivery should also be attached.)

### ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this Debenture, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common

TEN ENT — as tenants by the entireties with right of survivorship and not as tenants in common

JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT—........Custodian........
(Cust) (Minor)
under Uniform Gifts to Minors
Act..................
(State)

Additional abbreviations may also be used though not in the above list.

FOR VALUE RECEIVED the undersigned hereby sells, assigns and transfers to



SMA 0065

SMA 0066

# PENNSYLVANIA COMPANY

## 9% SINKING FUND DEBENTURE DUE 1994

This Debenture is one of a duly authorized issue of Debentures of the Company, designated as its 9% Sinking Fund Debentures due 1994 (hereinafter called the "Debentures"), limited to the aggregate principal amount of $60,000,000, all issued or to be issued under and pursuant to an Indenture dated as of December 1, 1969 (hereinafter called the "Indenture") duly executed and delivered by the Company to Bankers Trust Company, Trustee, to which Indenture and all Indentures supplemental thereto reference is hereby made for a description of the rights, limitations of right, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Debentures.

| | Redemption Date | | Optional Redemption Price |
|---|---|---|---|
| On and after December 1, 1974 and on or before November 30, 1979.... | | | 110 % |
| Thereafter and on or before November 30, 1980.... | | | 106 % |
| Thereafter and on or before November 30, 1981.... | | | 105½% |
| Thereafter and on or before November 30, 1982.... | | | 105 % |
| Thereafter and on or before November 30, 1983.... | | | 104½% |
| Thereafter and on or before November 30, 1984.... | | | 104 % |
| Thereafter and on or before November 30, 1985.... | | | 103½% |
| Thereafter and on or before November 30, 1986.... | | | 103 % |
| Thereafter and on or before November 30, 1987.... | | | 102½% |
| Thereafter and on or before November 30, 1988.... | | | 102 % |
| Thereafter and on or before November 30, 1989.... | | | 101½% |
| Thereafter and on or before November 30, 1990.... | | | 101 % |
| Thereafter and on or before November 30, 1991.... | | | 100½% |

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this Debenture, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common
TEN ENT — as tenants by the entireties
JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — .......... Custodian ..........
                         (Cust)            (Minor)
under Uniform Gifts to Minors
Act .......... 
        (State)

Additional abbreviations may also be used though not in the above list.

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE