UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
SHAKIR MARIS ABDULLAH,                    )
        Plaintiff,                        )
v.                                        )          C.A. NO. 05-11539-DPW
                                          )
FRANCIS H. FORD, Clerk, CATHERINE         )
BRENNAN, Assistant Clerk, and REVEREND    )
DANIEL IZZO,                              )
        Defendants.                       )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF FORD AND BRENNAN'S MOTION FOR RECONSIDERATION OF A PORTION OF THE FEBRUARY 1, 2007 DISCOVERY ORDER, OR IN THE ALTERNATIVE, TO STAY A PORTION OF THAT ORDER

Defendants Ford and Brennan, as the documents filed with this memorandum demonstrate, have complied with all but two portions of the Court's February 1, 2007 order. Specifically, they have produced responses to four additional interrogatories, provided affidavits from Sergeant Kelly and Trooper Conron of the Massachusetts State Police, provided a copy of the Department of Corrections mail/visitor log for the Plaintiff, and will provide the court, for an in camera inspection, the Worcester Superior Court's bank records. By this Motion, Ford and Brennan request that this Court reconsider only that portion of the discovery order that relates to the depositions of Ford and Brennan and the in camera inspection of their personal banking statements for the good cause shown.[1] In the alternative, Ford and Brennan respectfully request that the Court stay that portion of its February 1, 2007 discovery order (the "Order") for a brief period to permit Ford and Brennan to present the Court with a Motion for Summary Judgment which will demonstrate why those portions of the order will not be relevant or material to the outcome of this case, and that the case can be resolved as a matter of law.

_____

[1] Filed with this memorandum are the affidavits, mail log, and interrogatory answers as ordered by the Court.

As the good cause for this request, Defendants state that: (1) at summary judgment, Defendants will argue that Plaintiff's claims are moot because the documents in question can, and will, with the Court's approval, be returned to him so there is no conversion; (2) at summary judgment, Defendants will argue that Plaintiff's damages, if any, are de minimus because the property alleged to have been converted is valueless; (3) the order regarding the personal banking records affects non-parties to this matter, and they should have an opportunity to be heard before disclosure of their personal banking records in consideration of their privacy interests; in addition, the Order's provisions regarding depositions of the Defendants present both legal and logistical issues that have not yet been resolved; and (4) at summary judgment, Defendants will argue that Plaintiff's claim for conversion under 42 U.S.C. §1983 fails as a matter of law, because he has an adequate postdeprivation remedy in the state courts. For these reasons, and especially because the property can be returned to the Plaintiff, the Court should reconsider its Order, or in the alternative, stay the Order to permit defendants Ford and Brennan to file a Motion for Summary Judgment.

## **FACTS**

1. Brennan's Involvement

Sometime in December, 2004 or January, 2005, Defendant Catherine Brennan, an assistant clerk at the Worcester Superior Court, was opening the court's mail when she saw a letter from the plaintiff, Shakir Maris Abdullah. [Brennan Affidavit, ¶2]. The letter contained two debentures[2] – one issued by the Fidelity Corporation and one issued by the Pennsylvania Corporation – and Mr. Abdullah asked the court to deposit them in a bank to fund his legal

---

[2] A debenture is a "long term unsecured debt instrument, issued pursuant to an indenture. A promissory note or bond backed by the general credit and earning history of a corporation…" BLACK'S LAW DICTIONARY, 6th Ed., p. 401.

defense. [Brennan Affidavit, ¶2]. He requested a fund to finance the appeal of his murder conviction. [Conron Affidavit, Exhibit 1]. Knowing that the clerk's office did not have the authority to create such a fund, Ms. Brennan returned the letter and its contents to Mr. Abdullah. [Brennan Affidavit ¶2]

But, within several weeks, Mr. Abdullah again sent the letter with the same contents (including the two debentures) to the Worcester Superior Court clerk's office. [Brennan Affidavit ¶2] Again, Ms. Brennan returned the letter and its contents to Mr. Abdullah at the Old Colony Correctional Center. [Brennan Affidavit ¶2] This was the last Ms. Brennan saw of the letter and the two debentures, until over a year later when Mr. Abdullah sued her. [Brennan Affidavit ¶4]

2.    Clerk's Office Gives Documents to District Attorney

On or about January, 2005, unbeknownst to Ms. Brennan, Mr. Abdullah sent a third letter and the same two debentures (issued by the Fidelity Corporation and the Pennsylvania Corporation) to the Worcester Superior Court clerk's office. [Brennan Affidavit ¶4] This time Corinne Gorman, the First Assistant Clerk of the Worcester Superior Court, and office manager Matt Lefebvre, reviewed the letter and debentures. [Gorman Affidavit ¶¶ 1,2, & 3] Ms. Gorman and Mr. Lefebvre gave them to Superior Court Judge John McCann. [Lefebvre Affidavit ¶ 3]

Judge McCann brought the correspondence and the debentures to the attention of Assistant District Attorney James R. Lemire. [Judge McCann Affidavit ¶¶ 1,2, & 3] Assistant District Attorney (now Superior Court Judge) Lemire then requested a State Police investigation into the authenticity of the debentures, how the plaintiff came to possess them, and whether any crime had been committed. [Judge Lemire Affidavit ¶ 4]

3.      Ford's Involvement

At the time of Mr. Abdullah's correspondence with the court, the Clerk of the Court was defendant Ford.[3] He was aware that the clerk's office had received Mr. Abdullah's correspondence, but had no personal involvement with the matter or specific knowledge of the contents of the correspondence.  Subsequently, Mr. Ford learned at some point that the correspondence, including the debentures, had been turned over to the District Attorney and State Police for investigation.[4]  [Ford Affidavit, ¶¶2-3].

4.      State Police Investigation

In late January 2005, Sergeant Kelly of the Massachusetts State Police assigned Trooper John Conron to the investigation.  [Kelly Affidavit ¶¶ 2 & 3]  First, Trooper Condon inventoried Mr. Abdullah's letter and its contents: two corporate debentures – one issued by the Fidelity Corporation, and the other a Pennsylvania sinking fund debenture – with cancellation marks that Mr. Abdullah received from Brother Dan Izzo of Syracuse, New York; a copy of Mr. Abdullah's online appeal, a copy of United States Code Title 12, Chapter 3, Subchapter XII, Section 412 (image of a $100,000 bill is incorporated in the copy), and a copy of a card from the "Rev. Dan Izzo." [Conron Affidavit ¶¶ 5 & 7]

Trooper Conron conducted a LEAPS/NCIC[5] query concerning the two debentures.  The response to the query was that there was "No Record" for either debenture. [Conron Affidavit ¶ 11]  The Trooper also investigated just how Mr. Abdullah got the debentures.

Trooper Conron learned, from reviewing the materials given to him by Sergeant Kelly, that Mr. Abdullah posted a request for legal donations and assistance in his murder appeal on an

---

[3] Mr. Ford no longer holds that position.  He is now an attorney in private practice.
[4] In fact, Mr. Abdullah refers to Mr. Ford as a female in his complaint. [See Complaint ¶ 3]
[5] LEAPS/NCIC is the Law Enforcement Agencies Processing System / National Crime Information Computer.

Internet website. [Conron Affidavit ¶ 5]  Several months later Brother Dan Izzo, of the Cryonic

Life Insurance Company's Department of General Resurrection, sent him a Christmas card with

the debentures and a copy of a Federal Reserve note enclosed.  [Conron Affidavit ¶ 5; Complaint

¶ 5]  Brother Izzo instructed Mr. Abdullah to send the debentures to the court to set up a legal

defense fund. [Conron Affidavit ¶ 5]  Mr. Abdullah followed Brother Izzo's instruction.

        Trooper Conron interviewed Brother Izzo.  Brother Izzo admitted that he got the

debentures on EBAY two years before, and told the trooper that they no longer had any value.

[Conron Affidavit ¶ 17]

        Brother Izzo's statement that the debentures were valueless was confirmed by Trooper

Conron's independent investigation into the status of the debentures.  [Conron Affidavit, ¶¶8-16]

Trooper Conron learned that the two debentures, one from the Fidelity Corporation and the other

from the Pennsylvania Corporation, had been cancelled, indicating their redemption, in the

1970s.  Because Fidelity Corporation was a Virginia corporation, Trooper Conron contacted the

Virginia Division of Securities and Retail Franchising regarding the debenture issued by the

Fidelity Corporation.  A copy of that debenture is attached hereto as Exhibit 1.  This particular

debenture is a 5 ½ % convertible subordinated debenture that was issued on October 13, 1978 for

one hundred and eight thousand dollars.  It has a serial number of RU29181, and states that it

was issued to CEDE & CO.  While the debenture's due date is May 1, 1988, the cancellation

marks on the debenture indicate it was cancelled four days after it issued: on October 17, 1978.

[Conron Affidavit, ¶15]  In any event, the Fidelity Corporation terminated its existence over

fifteen years ago, on September 4, 1991.  [Conron Affidavit ¶¶ 8 & 9]

        The other debenture, a copy of which is attached hereto as Exhibit 2, was a Pennsylvania

9 % sinking fund debenture with a face value of five thousand dollars.  It was equally valueless.

It had a due date of 1994, but it had been cancelled on January 2 of 1974. [Conron Affidavit ¶¶ 12-16]  Having determined that the debentures had been cancelled and no longer were of value, Trooper Conron concluded his investigation and returned all of the original documents to the District Attorney's Office.  [Conron Affidavit ¶ 20]

5.    Chain of Custody of the Two Debentures In Question

As noted above, Catherine Brennan twice returned Mr. Abdullah's letters with their contents to his attention at Old Colony Correctional Center. [Brennan Affidavit ¶¶ 1-3]  That was the extent of her involvement with his correspondence. [Brennan Affidavit ¶¶3-4]

As previously referenced, in January, 2005, Mr. Abdullah sent the same letter and debentures to the Court for a third time.  This time, First Assistant Clerk Corinne Gorman and office manager Matt Lefebvre gave the letter and debentures to Worcester Superior Court Judge John McCann, who gave it to then-Assistant District Attorney James R. Lemire. [Judge McCann Affidavit ¶¶ 2 & 3]  Lemire gave these documents to Trooper Conron, [Judge Lemire Affidavit ¶ 5], who returned them to the District Attorney's Office at the end of the State Police investigation. [Conron Affidavit ¶ 20]

At this point, then-ADA Lemire returned the originals (including the original cancelled debentures and photocopy of what purported to be a one hundred thousand dollar note) to the Worcester Superior Court clerk's office in an envelope addressed to Clerk Francis Ford. [Judge Lemire Affidavit ¶ 7]  The original material was then placed in a court file. After this suit was filed, on October 6, 2006 Assistant Attorney General Jennifer Laverty went to the Worcester Superior Court and obtained the Court's file, as well as an itemized list of documents, from the Clerk's office.  [Laverty Affidavit ¶¶ 2 & 3]  She then hand-delivered the items, including the debentures, to Cathleen Collins, a paralegal in the Office of the Attorney General in Boston who

placed the file in her desk drawer. [Collins Affidavit ¶¶ 2 & 3]  As of December 22, 2006, Ms.

Collins left the office on extended leave.  Also on or about December 22, 2006, Ernest Sarason,

the attorney assigned to Plaintiff's case, left the office after being appointed to the bench of the

Boston Municipal Court.  The case was then assigned to Assistant Attorney General Anne

Sterman, and she was given the case file.  However, that file did not include the two original

debentures.  [Sterman Affidavit ¶3]  On Friday, February 9, 2007, Ms. Sterman contacted Ms.

Collins to ask a question about the case, and Ms. Collins informed her that there were additional

materials relevant to the case in an envelope in Ms. Collins' desk drawer.  [Sterman Affidavit ¶5]

Ms. Sterman subsequently located the original Worcester Superior Court file (including the

original cancelled debentures and photocopy) in Ms. Collins' desk.  [Sterman Affidavit ¶6] To

date, that file, including the debentures that had originally been sent to the Worcester clerk's

office, remains with Assistant Attorney General Sterman.

6.    <u>The Novelty Note</u>

Brennan and Ford understand that Mr. Abdullah is claiming the loss of the two corporate

debentures.  However, there appears to be a third "currency specimen" that Mr. Abdullah speaks

of.  [Complaint ¶¶ 1,4,5,7]  This is the photocopied one hundred thousand dollar note bearing the

likeness of President Woodrow Wilson that he attached to his complaint. [Also see Exhibit 3 to

plaintiff's response to defendants' answer]   On its face, it is clear that this is not legal tender: it

is what Brother Izzo referred to as a "novelty note."  [Brother Izzo's November 19th, 2004 letter

to Mr. Abdullah's prison mailroom, attached hereto as Exhibit 1.]

Mr. Abdullah refers to this novelty note repeatedly.[6]  All of these claims can easily be resolved. This "novelty note," along with the cancelled debentures, will be provided to this Court for its disposition and return to the Plaintiff.

## ARGUMENT

I.    **Attorneys for the Defendants Have Located And Can Return The Two Original Corporate Debentures That Are The Subject Of This Lawsuit, Rendering the Suit Moot.**

The heart of Plaintiff's case is the allegation that he sent two original corporate debentures to the Worcester Superior Court clerk's office, and that those debentures were never returned to him.  After investigation, the two corporate debentures have been located and with the Court's permission, can be returned to the plaintiff.[7]

When Plaintiff's property is returned, his claims will be moot because the alleged converted property will have been returned, thus no controversy remains.  Federal court jurisdiction lies only where an actual case or controversy exists for resolution by the court.  See U.S. Const. Art. III, §2, cl. 1.  The case or controversy requirement endures throughout the lifetime of an action, so that "Article III considerations require that an actual case or controversy 'must be extant at all stages of review, not merely at the time the complaint is filed.'"  Ramirez v. Sanchez Ramos, 438 F.3d 92, 100 (1st Cir. 2006), quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974).

---

[6] While Mr. Abdullah's complaint is confusing regarding the currency allegedly converted, his discovery has focused in on the novelty note, the "$100,000 photocopy." [See Docket #24: plaintiff's response to answer ¶¶ 2,3,5, & 21, and p. 6 entitled "affirmative defense;" plaintiff's motion to compel inspection and copying of documents p. 6 ¶ 16; plaintiff's motion to compel further answers to defendant Brennan's second set of interrogatories p. 3 ¶ 6; plaintiff's affidavit in support of motion to compel Brennan's answer to interrogatories p. 2 ¶ 2a.  And, most notably, in plaintiff's motion for an order that facts be taken as established he seeks to establish facts regarding one type of currency alone: "did convert the $100,000 Federal Reserve Bank Note [ ]." [p. 1]
[7] Again, if Plaintiff's Complaint is about the photocopied note, that can be returned as well.

To establish mootness, "the challenger must show that, after the case's commencement, intervening events have blotted out the alleged injury and established that the conduct complained of cannot reasonably be expected to recur.  If it is sufficiently plain that intervening events have wiped the slate clean, the case has become moot." Id. (internal citations omitted). Here, Abdullah's sole complaint is that his property was not returned to him after he sent it to the Worcester Superior Court. Upon return of the property, Plaintiff's claimed injury will end, and the controversy will be extinguished.  Defendants ask that this Court stay its Order to allow the Defendants to return the Plaintiff's property and bring a Motion for Summary Judgment on the basis of mootness.

## II.    Plaintiff Cannot Recover Damages For His Conversion Claim Because The Property Alleged to Have Been Converted Has No Value.

At summary judgment, Defendants will show that Plaintiff cannot, as a matter of law, recover damages on his claim for conversion because the corporate debentures can be returned, and have at best de minimus value because the debentures have been cancelled.  [Conron Affidavit, 15]  Summary judgment is appropriate because resolution of the legal issues before the Court will not require any further discovery.

Conversion is the "intentional exercise of dominion and control over personal property or a chattel, that so seriously interferes with the right of another to control that property that the tortfeasor may justly be required to pay the other the full value of the property."  18 AM. JUR. 2d, *Conversion* §1 (2006); RESTATEMENT (SECOND) OF TORTS §222A (1965).  Damages for conversion are the fair market value of the property converted.  18 AM. JUR. 2d, *Conversion* §116 (2006).

Even if the debentures were not returned, the Plaintiff cannot establish that the property at issue had any value, and this is fatal to his claim for damages. Defendants present affidavit testimony demonstrating that the debentures were cancelled and without value. <u>See generally</u> Conron Aff. Reverend Izzo, who provided the debentures to the Plaintiff, has acknowledged that the debentures are valueless. Conron Aff. at ¶17. Trooper Conron's investigation independently concluded that the debentures were valueless. Conron Aff. at ¶15. The debentures had marks indicating their cancellation. <u>Id.</u> Plaintiff cannot prove that the debentures have value, and so cannot, as a matter of law, recover damages on his conversion claim, even if he could argue that he had been deprived of his documents. Further, Plaintiff, on three occasions, gave these documents to the Clerk's office, the third time after knowing that the Clerk's office could not use them for the alleged defense fund. He repeatedly relinquished control of his property. He cannot reasonably maintain, under these facts, that his property was taken from him or that he was intentionally deprived of his property. As such, the defendants will argue at summary judgment that judgment should enter for the Defendants.

### III.  The Individuals' Deposition Testimony and Bank Records Are Not Material Or Relevant Given The Evidence Presented With This Motion.

A.  <u>Bank Records</u>

Depositions of Ford and Brennan by this pro se plaintiff, as well as an in camera review of Ford and Brennan's personal bank records, are not material or relevant to the outcome of this case because the actual documents can be returned, and those documents had no value. Therefore, a review of the personal banking records will not assist the Court in the resolution of this case. In addition, that portion of the Order implicates the privacy rights of non-parties, as several of the accounts are held jointly and there are several accounts that could be responsive to

the Court's order, such as checking, savings, retirement, and investment accounts, for example.

Accordingly, the Order not only has implications for the named Defendants but also for third

parties who hold bank accounts jointly with them and who are not before this Court.[8]  In light of

this fact, Defendants ask the Court to reconsider its Order, and balance the remote possibility of

the banking records' relevance against the invasion of privacy the Order imposes on not only the

named Defendants, but also non-parties.

Third parties' interests may, and should, be considered in limiting discovery. See, e.g.,

Briddell v. St. Gobain Abrasives, Inc., 233 F.R.D. 57, 61 (D.Mass. 2005)  ("Courts have

routinely limited discovery to protect the privacy interests of parties and non-parties alike.");

Bio-Vita, Ltd. et al. v. Biopure Corp. et al., 138 F.R.D. 13, 17 (D.Mass. 1991) ("To obtain

discovery from nonparties, a party must establish that its need for discovery outweighs the

nonparty's interest in nondisclosure."); Blount International, Ltd. v. Schuylkill Energy Resources

Inc., 124 F.R.D. 523, 526 (D.Mass. 1989) ("While discovery is a valuable right and should not

be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the

target of discovery.").  At the February 1 hearing, this Court acknowledged that its order for the

production of the Defendants' banking records was an invasion of privacy, but deemed it a

necessary invasion in order to allow the Plaintiff an opportunity to discover relevant information.

Ford and Brennan ask the Court to reconsider this decision, factoring in the interests of the non-

parties who will be impacted by this decision.

B.    Deposition Testimony

---

[8] Defendant Francis Ford holds several accounts jointly with his wife.  Ford Affidavit ¶ 4.  Defendant Catherine
Brennan holds accounts jointly with her mother.  Brennan Affidavit ¶ 5.  Neither Mr. Ford's wife nor Ms. Brennan's
mother is a party to this action.  Defendants request that these non-parties be given an opportunity to be heard or to
object to the Order.

The depositions of Ford and Brennan, as specified in the Order, present both legal and logistical issues for the parties. The Attorney General's office has made initial inquiries with the Department of Correction (DOC) regarding the Plaintiff's attendance at the Worcester Superior Court for the depositions. However, neither the Commonwealth nor DOC is a party to the case, and only Ford and Brennan in their individual capacities are represented by the Attorney General's Office. DOC has indicated that it may object to the terms of the deposition Order because Mr. Abdullah is being held in a state facility and is ordered to be transported to a state court for the purposes of a federal civil suit.[9] DOC may have a jurisdictional issue, because DOC is not a party to the case. Additionally, DOC may argue that a prisoner's constitutional right of access to the courts is limited to a challenge to his conviction or a challenge to his conditions of confinement and does not extend to a civil lawsuit to recover money damages. DOC has asked who will bear the cost of the DOC personnel that will be required to transport and supervise the Plaintiff at the deposition. Ford and Brennan respectfully submit that this case can be resolved without navigating the legal and logistical elements of their depositions conducted by the plaintiff who is an inmate and is pro se in this matter.

## IV.    Plaintiff Will Be Unable to Sustain His §1983 Claim Because He Has An Adequate Postdeprivation Remedy.

If the Court permits, at summary judgment, Defendants will show that even if the property in question was not returned, and even if the property had value, the Plaintiff will be unable to meet the legal requirements for a claim under 42 U.S.C. §1983, because he was not denied the due process of a state remedy: a tort action in state court.

---

[9] DOC and the Commonwealth reserve the right to present this Court with additional information if the Court denies this motion and orders the depositions to proceed.

12

In <u>Parratt v. Taylor</u>, the Supreme Court held that a deprivation of property by a state actor is not actionable under §1983 if the state, through its tort law, provides "a remedy to persons who believe they have suffered a tortious loss at the hands of the state. 451 U.S. 527, 543 (1981). That state tort law places limits on the tort liability of the state or state actors "does not mean that the state remedies are not adequate to satisfy the requirements of due process." <u>Parratt</u> at 544. Like the plaintiff in <u>Parratt</u>, Mr. Abdullah has a remedy in the Superior Court for conversion. As such, Defendants will argue at summary judgment that Mr. Abdullah cannot sustain a claim in the federal courts under §1983.

## <u>CONCLUSION</u>

Defendants Ford and Brennan respectfully request that this Court reconsider its February 1, 2007 order, inasmuch as it pertains to their depositions and the in camera review of personal banking records, in light of the evidence presented herein. In the alternative, Ford and Brennan request that the Court stay the Order and permit Ford and Brennan to file Motions for Summary Judgment because further discovery will not be necessary to decide the case. As the basis for this request, Defendants state that (1) Plaintiff's claims are moot; (2) Plaintiff is not entitled to damages on his claim for conversion because the property alleged to have been converted is valueless; (3) the privacy interests of affected non-parties militate against disclosure of Defendants' personal banking records; and (4) Plaintiff cannot sustain a claim under 42 U.S.C. §1983 because he has an adequate postdeprivation remedy in the state courts. Defendants seek guidance from this Court as to the appropriate mechanism for returning the Plaintiff's property.

## <u>REQUEST FOR A HEARING</u>

Defendants Francis Ford and Cathleen Brennan respectfully request a hearing on their Motion for Reconsideration. [10]

---

[10] Defendants respectfully request that the hearing not be scheduled for March 2nd or March 5th.

Respectfully Submitted,

FRANCIS FORD and CATHERINE BRENNAN

By their Attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Mary O'Neil
Mary O'Neil, BBO #379430
Anne Sterman, BBO #650426
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
Date:   February 23, 2007          (617) 727-2200 x 2737

## CERTIFICATE OF SERVICE

I, Anne Sterman, hereby certify that on February 23, 2007, I served a copy of the above memorandum upon the pro se plaintiff, by mailing a postage pre-paid copy to:

Shakir Maris Abdullah
Old Colony Correctional Center
One Administration Road
Bridgewater, MA  02324

/s/ Anne Sterman
Anne Sterman
Assistant Attorney General

15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

SHAKIR MARIS ABDULLAH,                      )
      Plaintiff,                              )
v.                                          )          C.A_ NO. 05-1 1539-
                                              DPW

FRANCIS H. FORD, Clerk, CATHERINE          )
BRENNAN, Assistant Clerk, and REVEREND     )
DANIEL IZZO,                                )
      Defendants.                             )

## AFFIDAVIT OF CATHERINE BRENNAN

1. My name is Catherine Brennan. I am an assistant clerk at the Worcester Superior Court_

2. On two occasions, I received correspondence from Shakir Mans Abdullah that enclosed two original corporate debentures.

3. On both occasions, I returned all original materials to Mr. Abdullah.

4. Unbeknownst to me, Mr. Abdullah apparently sent his materials to the Court a third time, at which point I'm told the materials were received by Con nne Gorman and Matt Lefebvre, and passed on to the District Attorney's office by Judge McCann. I was unaware that this transpired until I was told a few days ago

5. I have two personal banking accounts, and **an** additional account jointly with my mother.

**Signed under the pains and penalties of perjury this**          **day of** February, 2007.

_____
Catherine Brennan

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

_____

SHAKIR MARIS ABDULLAH,                        )
     Plaintiff,                                      )

v.                                            )       C.A. NO. 05-11539-DPW

FRANCIS A. FORD, Clerk, CATHERINE             )
BRENNAN, Assistant Clerk, and REVEREND        )
DANIEL IZZO,                                  )
     Defendants.                                     )

**DEFENDANT CATHERINE BRENNAN'S ANSWERS TO
PLAINTIFF'S FOURTH SET OF INTERROGATORIES**

**GENERAL OBJECTIONS**

1.     The Defendant, Catherine Brennan, objects to any interrogatory to the extent that it seeks information protected by the work product doctrine, attorney-client privilege, or any other privilege.

2.     Catherine Brennan objects to any interrogatory to the extent that it seeks to impose discovery obligations that exceed those imposed by the Federal Rules of Civil Procedure.

3.     Catherine Brennan objects to any interrogatory to the extent that it seeks to discover information that is irrelevant and/or is not reasonably calculated to lead to the discovery of admissible evidence.

4.     Catherine Brennan objects to any interrogatory that is not reasonably limited as to time and/or fails to identify the pertinent time period.

5.     Catherine Brennan objects to any interrogatory that is overly broad and/or unduly burdensome.

1

6.      By making these responses, Catherine Brennan does not concede that the information produced is properly discoverable or admissible and the defendant reserves the right to object to additional discovery with respect to the subject matter and to object to the introduction of these responses into evidence. A response made despite a stated objection may not be construed as a waiver of the stated objection and such a response is made in a effort to provide responsive information based on a fair reading of the interrogatory's intended meaning. In addition, Catherine Brennan's discovery and investigation herein are ongoing and the responses set forth here are based upon current information. Catherine Brennan reserves the right to present further or different evidence at hearings or trials on this matter.

7.      Catherine Brennan hereby incorporates each of the preceding objections into each of her specific responses that are set forth below.

8.      Catherine Brennan reserves the right to supplement these responses at a later date as more responsive information becomes available.

**INTERROGATORY NO. 26**

Did Ford or Brennan provide any documents, material or two corporate debentures associated with this matter to a Sergeant Stephen Kelly for investigation at anytime?

**ANSWER NO. 26**

No.

**INTERROGATORY NO.27**

Did Ford or Brennan provide any documents, material or two corporate debentures associated with this matter to Trooper John M. Conron for investigation at anytime?

**ANSWER NO.27**

No.

2

**INTERROGATORY NO. 28**

Did Ford or Brennan provide any documents, material or two corporate debentures associated with this matter to Assistant District Attorney James Lemire for investigation at anytime?

**ANSWER NO. 28**

    No.

**INTERROGATORY NO. 29**

Does Ford or Brennan know of anyone within the Clerk's office that provided any documents, material or two corporate debentures associated with this matter to ADA James Lemire, Trooper John M. Conron and Sergeant Stephen Kelly at anytime?

**ANSWER NO. 29**

    I have been informed that First Assistant Clerk Corinne Gorman and Office Manager Matthew LeFebvre gave the documents to Superior Court Judge John McCann who, I am told, delivered these documents to the Office of the District Attorney.

Signed under the pains and penalties of perjury, this /3ay of February, 2007.

_____
Catherine Brennan

As to Objections:

_____
Mary O'Neil, BBO #
Anne Sterman, BBO #650426
Assistant Attorneys General
One Ashburton Place, 18th Floor
Boston, MA 02108

3

(617) 727-2200 x 2109

4

UNITED STATES DISTRICT CO
FOR THE DISTRICT OF MASSACHUS T

| | | |
|---|---|---|
| | t | |
| SHAKIR MARIS ABDULLAti,<br>    Piaintirr. | t | |
| v. | l | C.A. NO. 05-11539-DPW |
| FRANCIS H. FORD. Clerk. CATHERINE<br>BRENNAN. Assistant Clerk. and REVEREND<br>DANIEL IZZO. | l | |
|     Defendants. | 1<br>1 | |

## <u>AFFIDAVIT OF CATHLEEN COLLINS</u>

1. My name is Cathleen Collins. I am a paralegal in the Office of the Attorney General for the Commonwealth of Massachusetts.

2. In October, 2006, Jennifer Laverty, Assistant Attorney General, brought me the Worcester Superior Court's file regarding Shakir Maris Abdullah's request to establish a legal defense fund on his behalf. This file included two original corporate debentures.

3. I placed the file in my file drawer.

**Signed under the pains and penalties of perjury this ~07 day of February, 2007.**

_____
Cathleen Collins
Paralegal

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| SHAKIR MARIS ABDULLAH, | ) | |
|      Plaintiff, | ) | |
| v. | ) | C.A. NO. 05-11539-DPW |
| | | |
| FRANCIS H. FORD, Clerk, CATHERINE | ) | |
| BRENNAN, Assistant Clerk, and REVEREND | ) | |
| DANIEL IZZO, | ) | |
|      Defendants. | ) | |

## AFFIDAVIT OF TROOPER JOHN M. CONRON

1. My name is John M. Conron. I am currently a Trooper in the Massachusetts State Police, a position I have continuously held for the past seven years.

2. Presently, I am assigned to the State Police Detective Unit for Worcester County, Criminal Section, located at 19 Midstate Drive, Auburn, Massachusetts and have been so for the past two (2) years. Previous assignments have included the Uniform Branch of the State Police, having been assigned to the Northampton and Sturbridge Barracks.

3. During my tenure as a Trooper I have conducted and participated in numerous investigations relative to murder, rape, sexual assault, child abuse, child pornography, computer related crimes, Internet related crimes, and other felony investigations. The following is a detailed record of an investigation I conducted.

4.  On Tuesday, January 25, 2005 at approximately 4:00PM, Sergeant Stephen Kelly advised me of a possible financial crime.

5.  Sergeant Kelly outlined the following facts for me: Shakir Mar's ABDULLAH is prisoner at Old Colony Correctional Center serving a life sentence for murder. ABDULLAH alleges he has been wrongfully convicted and posted an appeal on a website seeking either legal assistance or donations to fight his conviction. In response to his appeal ABDULLAH received two corporate debentures from Brother Dan Izzo of 512 Onondaga Avenue in Syracuse, New York. ADBULLAH forwarded the corporate debentures to the Clerk of Courts and asked the debentures be deposited into a legal fund on his behalf.

6.  I was assigned case number 2005-115-0037 relative to the investigation.

7.  Sergeant Kelly provide me with copies of the corporate debentures, a letter from Shakir Mans Abdullah to the Clerk of the Court of Worcester,' a copy of Shakir Mans Abdullah's online appeal, a copy of United States Code Title 12, Chapter 3, Subchapter XII, Section 412 (a image of $100,000 bill is incorporated in the copy), and a copy of a card from the "Rev Dan Izzo". See Exhibit 1.

8.  On Wednesday, January 26, 2005 I contacted the Virginia Division of Securities and Retail Franchising regarding the debenture issued by the Fidelity Corporation. The debenture states that it is a 5 $\frac{1}{2}$ percent convertible subordinated debenture issued on October 13, 1978 for one hundred and eight thousand dollars. The debenture bears a serial number of RU29181. The debenture appears to be issued to.CEDE & CO. The

2

certificate's issue date reads October 13, 1978. Immediately below the
issue date of the certificate is another date of October 17, 1978. The
certificate also indicates the debenture's due date in May 1, 1988. The
debenture indicates that the Fidelity Corporation is a Virginia company.
The debenture bears an apparent cancellation mark on the right edge of the
paper. The mark consists of a series of holes punched in the paper that
spell out "CITI" and "10 17 78".

9.   At approximately 1153 hours I spoke with Tom Bayly, a senior
investigator for the Virginia State Corporation Commission. At
approximately 1445 hours Mr. Bayly faxed me a copy of series of
documents outlining the history of the Fidelity Corporation.   Most notable
of the documents is the Termination of Corporate Existence issued on
September 4, 1991. See Exhibit 2.

10.   On Thursday, January 27, 2005 I met with Assistant District Attorney
(ADA) James Lemire regarding the corporate debentures. ADA Lemire
handed me the original mailing from ABDULLAH to the Clerk of Courts,
including the two original corporate debentures.

11.   On Friday, January, 28, 2005 and on Tuesday, February 01, 2005 this
affiant conducted LEAPS/NCIC queries relative to the debentures.
LEAPS/NCIC responded with "No Record" for either debenture.   See
Exhibit 3.

12.   On Tuesday, February 01, 2005 at approximately 1420 hours, I contacted
the Delaware Department of State Division of Corporations concerning
the 9 percent Sinking Fund Debenture issued by the Pennsylvania

3

Corporation. The debenture bears a serial number of RV3389. The debenture is issued to W.P. Carr. The certificate indicates the debenture's due date is 1994. The debenture bears an apparent cancellation mark on the lower right hand corner of the certificate. The mark consists of a series of four holes punched through the certificate at, or adjacent to, the signatures of the company's secretary and president. The debenture's issue date appears to be August 28, 1970. The debenture also bears the date January 2, 1974 on the upper right hand corner of the certificate. The debenture indicates the Pennsylvania Company was incorporated in Delaware.

13.   I was advised by the Delaware Division of Corporations that the Pennsylvania Corporation merged with American Premiere Underwriters in 2002. American Premiere Underwriters is a company incorporated in Pennsylvania.

14.   On Wednesday, February 02, 2005 at approximately 1307 hours, I contacted the Pennsylvania Department of State Corporation Bureau. I was informed that the Pennsylvania Corporation had merged with American Premiere Underwriters on October 15, 2002. The representative from the Corporation Bureau was able to tell me that American Premiere Underwriters survived the merger, however, she was unable to tell me whether The Pennsylvania Corporation survived the merger or not. I was provided with the agent information for American Premiere Underwriters. The agent was listed as CT Corporation System 1515 Market Street Suite 1210 Philadelphia, Pennsylvania 19102.

15.     On Thursday, February 03, 2005 at approximately 1144 hours, Trooper Thomas Poirier and I met with Karen Bishop and James Grey of Merrill Lynch at 446 Main Street in Worcester. Mr. Grey, the Operations Controller at the Worcester Merrill Lynch office, was able to tell me that the certificates were authentic.  Additionally, Mr. Grey informed this affiant that the perforations to both certificates indicated their cancellation. Mr. Grey went on to explain a variety of reasons why the certificates might have been cancelled.

16.     1 received a letter from Deutsche Bank that was postmarked on February 4th, 2005. The letter referenced this affiant's request for information relative to the Pennsylvania Company. See Exhibit 4.

17.     On Monday, February 07, 2005 at approximately 0925 hours, I contacted Brother Dan Izzo of 512 Onondaga Avenue in Syracuse, New York. Brother Izzo told me that he had purchased the certificates of corporate debenture on EBAY two years ago. Brother Izzo stated he did not alter or mark any of the certificates; he sent them to prisoners "as is". Brother Izzo acknowledged that the certificates were valueless.

18.     I received a letter from Deutsche Bank that was postmarked on February 9th, 2005. The letter provided information relative to the Pennsylvania Company.  See Exhibit 5.

19.     At the conclusion of my investigation, I wrote a report detailing my findings.  See Exhibit 6.

20.     I returned the original debentures to the District Attorney's Office.

21.    I received a letter from Shakir Maris Abdullah that was postmarked on

September 23 rd, 2006 in Providence, Rhode Island. See Exhibit 7.


**Signed under the pains and penalties of perjury this<u>Lo</u>    day of February, 2007.**

# 2720

i roo er onn lvi. Lonron, *41720*

6

# EXHIBIT 1



I'MELITY CORPORATI(C)IN

50 I~ CONVERTIBLE SU20RDINATIED CIErIENTURF

DCE :,SAY   | 96E

wo"Mwl

TMTWE OF ELECTION 10 CONVIRT

'G; fZuL'L,~:rv C6RpoH-':iClN:

Th~ j-ign-d owner elt:er, :-', _con_-
moo S:ocl.

m 5, "mm V.Md bows-. i"- !

lost 117.121 to'

P,,.,".... f= ÷ -teJ
"di- Sb-

-h  Cuaiaioi-i  Sock ci; dny         no -o   th~Debt:--, is (i_    i-slued
wmt: insi,mu.:t wiih,igr~ g-__.-.d. Sp.ci:wl msz-ficln,

UIli  Gir;  MIN A(:~
ir

FOR VALUE RECEIVED, Be undeowd he"y _du, wyn mij [afu&, z,-
-- tIE.                              i
                                Q - i

-,- --1 1 T

ciat   ";bin      f I'DLLJ:'Y CORI-A.iMUN  alitJ ;rreVtcably constiuro, and -jp,iins

w uaitSJl.f Slts              the wi'h-z: =M-d "Mmin        mun O

D-d:

IHE SIGNATURE TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER.

THE SIGNATURE(S) SHOULD BE GUARANTEED BY A COMMERCIAL BANK OR TRUST COMPANY, OF BY A NEW YORK, BOSTON, MIDWEST, PHILADELPHIA, EAST MORGAN, SOUTHERN OR PACIFIC COAST STOCK EXCHANGE, MEMBER OF FIRM, WHOSE SIGNATURE IS KNOWN TO THE REGISTRAR.

NOTICE

REGISTERED REGISTERED

$5000 $5000

NUMBER

# PENNSYLVANIA COMPANY

9% SINKING FUND DEBENTURE DUE 1994

EXCHANGEABLE FROM NOVEMBER 1, 1970 TO APRIL 12, 1975, INCLUSIVE, UNLESS PREVIOUSLY REDEEMED, FOR SHARES OF COMMON STOCK OF [illegible]

Pennsylvania Company, a corporation organized and existing under the laws of the State of Delaware [illegible], for value received, [illegible]

9% DUE 1994

9% DUE 1994

FIVE THOUSAND DOLLARS [illegible]

[illegible]

DATED: [illegible] 1970

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

[illegible]

Pennsylvania Company

ATTEST BY

# PENNSYLVANIA COMPANY

## 9% SINKING FUND *DEEENTURE CUE 1294,*



*ASBREMATIONS*

FRANCIS A. FORD

Cellook  CV~          -f-

120-iii                    I

IN  0'  1116-                    1-2 -- // -

Shakir Maris Awz-ollah
OCCC
One Administration 41.
Bridgewater, MA.

RE: Shakir Maris Abdullah
    aka Dennis Shelton
    # 90-1148 - 1150 - 1151

FILED

DEC 2 u 29114

"Imej

Enclosed please          .4111  FOR.          / =
          baced                Ae    7'
/- S46, AJf c?.      Clc~"Va    j    S'          -j

IN response to this request I          6J,
Federal Note for the Court Clerk
deposit with the Court Clerk for    A' "?o
My behalf.

17'. I have also provided herein a copy of that accompanied the Federal Note checking we created this currency to Legal Fund established

Once this process is completed by your office I would request that the funds be withdrawn from this account by cutting without my approval and signature.

Thank you for your time a very important matter and I to reply.

Sincerely,

Shakir Abdur Abdullah
aka Marvin BlaCton
90-1148-1150-1151

Red Don

# Justice Denied – Legal Ads

*tiitrewived r='n ntl*




Dear ˡeaders:

*My name is Shakir Marie Abdullah, and I'm writing about unresolved events that occurred at my August 1991 trial. I have attached as an exhibit a four-paq-z '.etter, which was written by my trial attorney Greg T. Schubert, that e_.,sentially proviles many aetaiis about these ev_ -its (condensed into ore page below).*

AS trig lettei' indicate there waS a SeYOeant DeriiliS Towhee of th? Worcester Police Department having a SextiaI rely ti;nsliili with a Naomi Papale who was believed to have fathered MS. Pa6ale'S two children, Kara avid Denriis Papaie.

On *two* separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester *t;lty* Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon ˡnquiry of Naomi Papale's children birta records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papal(. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further ˡnvestigate-in was conducted on the issue at that dine and I WaS subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. Eabitch that there was "no record on file" for Dennis Papale and indicated that there *may* have been a name change ti-rough adoption and or marriage. I have these documents available for anyone's ˡnspection.

ˡn fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17189. He further stated, in his affidavit that a d ark at the Bureau of Vital Statistics told him that . ara Papale, dob OS/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never Instructed to proceed to the police Internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naontl Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*aftor fro.: Tria. Ai:crneyji*

PnocTOr,. P,ws-i-irtc ʟʟ. GoLwr~

| | | |
|---|---|---|
| 3CN4N H GOES I:y | COtndtFEt.ttTRS A: LAW | YELCW4oties |
| laARVsei ʌ. RAS343C" | TIN ait ct+Attic S7R9 ⲧ •9VrTt 340 | AHEA C.OOt 5o. |
| CnrC T SCHUGERY | it'e)Ftt;Y~ 1'T 1;. t l  S$'ACii1:Mr'1¯rji 01+.011 | 1QH 9T09 |
| | | 70-5-203-A |
| | | 7940-s0A4 |

TInKCOPIER
 line  7W+602

wilⁱⁱ3111 .7. Lcaiiy, Esquire
*Chief Covnset*
Crtttltitt    for Public, cowlsel Svzvicet
P-Iito OO
00 i Il3tca  SV'r  t
tco, Win. 02116

ice:  W2'.NXS SMA"CAN    7A-1% SUAKIR RIMS AMFUAR
Iiia der Ctravictio):  % ₄ᵉ  a1 1 i timm

{ i Cm NO =-,.:I:. - SWAC MAW

Buri-,rior

ly:

At tho'sup gestied Of Dwl~ jvant= I ˣ¹¹ Writing to :)Iltlj'nia what Matters are ᵖʳᵉˢᵉⁿᵗˡʸ UnreSGlVed *with regard to this case.* Pearinis n wets originally charged with the nox-dar Ifelony tjorder rJeory) rthbery ci one, Greg White. He was also charqnd with ᵃʳᵐᵉᵈ azauult with intent to rob and assault and battery wV:h a dangerous ʀeapon jHa;w3qLvt1 of Nacxpi- Papale-t. hale alleged events occurred several hourq apart ₄ₗ 0 at ᵈⁱᶠᶠᵉʳᵉⁿᵗ locaticas.

I ˣ¹¹ the third 00unsel ap'Unted to Hr. ST Itoll, Previously he ᵁᶻˢ represeated by Jzures Gribowski and Bernard Gras :berg pursuant to Ccnrdttee appointmknt. T have just finished an eight day trial by combat with the Conrjotw&al th and wore signif igantly Associate Justice ᴶⁱˡᵗᵉᵈ ᴾ *fW11me.*

Prior to trial I filed extensive motions for relief under Rule 9 (a 1 131 and 9 ld I ̩ₜₛ joinder and prej˜diciaL joknder 1. I attempted to have theme motiandw Iᵃafd and deci-dad two ʷᵉᵉᵏ% prior to trial. onMaAe, *wⱼ~ w" specially ossigned, denied US reguzat off tha rucaM. Oa the* opaUng day of tzial jodqe Dooohne ᵠᵠUd ;',ot sallow m to ᵃᶜˀ_uate: y ho axd (if at all j on these motions 1which were of a cmcial nature io *the case]. Without the papole javident, the CuAmoawamlth was withuut nary evidence* ₜₒ prove 14r, Sheh.on had a gun. Additionally, I had filed a Ywtion for a 48 hour continpaDve due to the Commonwealth informing me of a new alleged admission witness ᴵᵐᵒʳⁿⁱᴼⁿᵍ *of* trial l and another *witness* who had changed her Antimony entirely and t=hereon gave very inc̶riminating new testimony .she later recanted her alleged new testimony aml endorvmea her initial t"tiraxiy at the trial I. ʰⁱˢ lufrottlicco was denied sumaoxily--the 9 a & d ᵛᵒboos were hold under adviseoent. I cated that that ruling was unacceptable to the defense. War a parti Mealy bitter !hut always respectfu) exchanQe between myself amid his he=L, he denied all my pre-trial in limixbe motions. I declined to Start the trial without single *Justice reviwa To say that his* ʰᵒⁿᵒʳ was incensed is an ccMderable understatement.

Justice Wilkins was of no assistance upon my Chapter 211, .3 **petition. lie** wouldn't oven assist we pursuant to my *law clerk who had* practicing papers, but w1 o Judge Donohue would not allow to participate at side bar conferences. I can only imagine tie reception I would have had with Justice Nolan! The trial camrjwx-d with the selection of a fnl white ⱼury . libere were no black persons in the 85 person veaire. Ferns this is a matter that hr. Ruvis might irquixe into rind take appropriate action.

van wunsawsalth prooeeded on a theory 10i: felony h1&6-_r. At the camlusicn of tl)e CMOYdealth's case, I uxwed for a directed fiidirig on the arm robbery indictment of Greg White . This motion was granted after much agrument. ?hereon, by implication, so would the murder indictment die of consequential causes. The Commor4wealth argued at le vqM after t1a ME, that t!=e w*s --t sufficient evidmoe to suhrit the case to the jury on premeditation and malice aforetl"I)t or nanny theory other than felony murder. The judge then informed the Commonwealth that if IN did not wish to pros x3 under his new theory of tM case, he would direct on the murder. The Commonwealth--lights flashing cage to Mogp Judge Dowbue's rwal theory"-wholeheomdly. Thhe defense waz Down locked into further battle with both the O~uw.*nwealth sdd **he** h.

The Mfolye though 50me client information supplied by pinyx; of 'Adch I am f ria41 Y, Wowed me tat Ms. Q, le, who had testif Ad as to the sec,-A*.d alleged bicidentt which connected any client with a gin, had in fact, buts having sewal relations with the chief opemtiorls officer of the Worcester Police Moarty ment Vice= Suvtd for a lone norlod of timo-

*This* informtion *was particularxq* gignifiqRht *in light tbat-As. PPapale had, at the pxobable cause* hearing, invoked her fifth amendment privilege sare t~~ tty~** Wis *amx*I prior to he testi=Aiy, I Lad sought, a᷑ to ascertain wbeths she v=ld trm*e her priviler, *erri* at the trial- 'Itv A.D.A. and Mat -euvnsel [a former A.D.A.1 who stood with her through out her bestioctly agreed that she wmad rat if no questi<;ns v-are naked al=t V&-r gullet and ₜteix father. I ass* nted to Ois in good fait and in o:xtplianova with xfrlaxt beycrA reps .t, as T had no reason to believpe said 13-m- of irquirry waz relownt.

1 imq-'diately ᵃˡˡᵉʸⁱ tee newly discovered information caᵢd acccA"nyinq and ran -A for dismAsal thereon. 'Me Court vms oblivitvs. ₙₜ Om~Lt did order *hc.*'b $cjt.    ₕ gear and Ms- Papale back for a voix dire examinatioc'. Towner denied sexual relations but aftdttod to tatinq, refusing to and his relationship with W. Papale such that be was relieved of his vice squad position tNe maintained his rank upon transfer), paternity of Ms. Papala᷑s youngest child [coincidentially tim6d tennis], and denied a police internal Affairs investigation. 15. Papale took the fifth xiWasit upon advise

of counsel as to secual relations, admitted having numerous criminal char aqwWad by lWwwr and denied paternity as to the child r-emn--d Der.nis. The *Court infornx~d counsel that it* ₜ³ⱼ₃ᵥˡᵈ ₜₑₐₜ ₐₗₗₒw ˈᴸᵉᵉ ᵢ⁻ s(_-cual relations between the two before the jury. Objection was noted and I did not call terse witnesses as part of the defense. I have good reason to believe that both of these individozAs perjured themselves and cannot in writing comit my reasons for Otis view. Suffice it to say this matter my provide an excellent basis for RuiL- 30 relief.

T'le defense deironstrated by ball expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary 11im,xvealth witness, Ekrlnes Bald not have heard or seen the client as alleged. His own CCMWn law wife disputed his testimony and she vas in a posit ion to s(Wh better hear or sAe W. shalWwro-Axenr testimmy had hiz leaving the critwe scene prior to Not Allagemd admi"Son bli shaltcn. Fear, wo produced evidenm that We Jliolmeasj had been, threAtened by the police =I gave new evidence. against Mr.. Shel ton only upon such cUress. 11he defense also offered unrefuted evidence of two individuals that had motive and opportunity to omrdt the murder--one be" detained by the pol ice on the night of the killing because he physically matchad the victim's description and was clothed in black sweat shirt an black sweat its- -

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he MAW ied his assailant as 5 ' 11' black male, wearing a black sweatshirt and black s% oAtvants. He            stag that he did not Rmw his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. ate. 'ⁱam; M's characterized twee as alert and fully ccnscious when he gave those stawmmwws. I

Suffice it to say, that if X had not bt        obliterated by guilty verdicts of this -ilk in the past, I would have put both Sgt. 'MCWTÜM and Papale back on the stand. it was my decision at the time that they represented an insurance policy against any rw,d" caiviction. I believe, that dMision was camem lod aill Maintaui its dorXecbr-mms. me-Wglt1Y0 out WMfor yqJWWWMQMX 0ˈMfXCnWJ1g the CcMitwe- is to mko a deçisicu as to b;; aukilit appellate review which Might well elicit     MᴵV.Za or Saleame type decision or move on Rule 30 relief upon proof of tM perjury. I w~mt inform yon that Mr. Shelton has throughout this caste insisted tart his ifumeénce. Personally I have never bem acre d of naivete--I most point out that the likelihood of this is upon title evidence substantially in his favor. This bothers me greatly. In fact--more than qtly.

S,ior A61u1,C-i                                                          A' U33 A

*I belie;e hot if the ease goes to the APPeals* COXt then f0w
I Lqbly axp4rienand appellate counsel should be appobited. his uxA)ld

best Protee't, Mr. Shelton strjkAd I have erred seriotisly sore --where - If ti-
A--Me *30 rate is endorsed* then I would like to continue in this
re?resx-ntation. *I am acavely aware of budget conside-ratims and that*
*this defense is already been ilawswely expensive for the Q~fulittee. I*
Ove aver 200 hco±s involved. Private investigation expenses are going
to be high-Mr- Lajoie was extrWely valuable snd touch of the
3smanstrative evidence presented     s a result of his total dedication
*to this case. My c..erk will* also Cost sme additional can e.

As an asi&, the Worcester County Distriot Attorney ij; now not
jvIng probable cause hearings [serious felonies] is only qo:~tq to
further raise investigative expenses substantially. At least, those
unisions will not haunt m- I             that a transcript be ordered
iwvAlately mid pi ocurred with *all due haste*.  My persona), qainion is
that reversible error is rife tllrot4mt these prongs, Ina: a rAW
**WAI** vey not be Oat best sexes qtr, Sheltcr. and t N time attuvqdent to
end may require him r-n remin ⁴--car  :a  d ev °: ldiq r than he 19
ay               has pre. ent ly serve serve i5~aitiaq trj-'!

I believe this gives you a broad onveovvieev: of the situation, I
will make myself available in Boston to you or Mr. Speer cm specifies
anytloe- *this week: if yco* believe further discussion would be fruitful_
Rottomline-I 'm frustrated over my present iAVoterxx--. I realize that
this *is ;wt* occurpAlawl hazard, but it <u>does</u> not quell my anger at this
result.

Very truly yours,

Greg F. Schubert

Dated:  I  t 16, 1991
GTS*fu*k
= Theodore Harris, Esq.

*Write to fle at:*

Shakir Marts AbdUetaf
VVVSI043
MCI -Cedar )unction
PO Box 100
South 'Nalpole, MA 02071

Send Entail

kNia bal_Av.~Uon



Search

TITLE 12 > CI-1AP YER 3 >  ᴸMCIJIAPTEip X11 > § 412

## 412. Application for notes; coHateral requked

|t

acccrnf:aried with a tender to **C** local Federal Reserve agem of CONNOW W.-I amount equal to dh.2 sum, of the Federal ResEirve. ,sites thus appiic ~: "or and issued pursuM to such" applitcation.

|t~ thus offered    Le mtes, dlra-,Ls, !s of e)~chaarge, or accepts :- es acquired under se~:ticn 92, 342 tc 343, 343 to 352, 361, 371 **ɪх** 373 of this ode, ᵢₓ Wsof ᵉˣᶜʰᵃⁿᵍᵉ aniorse,] by i bark of ;-..y Federal Reserve ᵈˡⁱ 3trict ₐ ᵈ purchased uᴵ idie.r- ᵗʰᵉ proᵥisicr-s of sections 348a anc 353 to 359 cf Ms tit ᴵₑ꜀ₜₒ or b3-n1.k'E:-:rS' acceptances purchased under    e    of    s  t cns 348a and 353 to 359 of Ms title, cᵤ gold certiflcat tes, or Special Drs -iving Right certificates,-or any otligahcons ⁻ʰⁱ⁻ʰ    are direct oUga%ns ch, or are fully guaranteed ᵃˡS to Principal acid interest ᵇʸ, the Unitec States tates or any agei.cʸ thereof, or assets -ₕᵢₐₜ Federal Reserve ranks i-ₙay purchasz or hold under sechomi 348a and 353 to 359 of this title. in no event shall such collateral S꜀L qty be less than the amour,_ of Federal Reserve notes applied- f6 ᵣ. ᵀ⁻ʹ�addi si-aii each day notify the Board of Governors ꜀ᵣ the Federal Reserve Systeim.m of ail issues a.-id .withdrawals of Federal Res&-ve ⁿᵒᵗᵉˢ to aind Ly ᵤᵗⁱe ᶠᵉᵈᵉʳᵃˡ Posove bank to which he is acc-redited. T ht:~ said, Dₒₐᵣ꜀- of Gᴄver--.--'orS or' the Federal Raserve System m.Ey at any timne _ail uper. a ᶠᵉᵈᵉʳᵃˡ Reserve bank for additional sec,-fly to protect, fide F eder a; Reserve notes issued to it. Collateral Mai not be i ʾequᵢʳed' for ᶠᵉᵈᵉʳᵃˡ ᴿᵉˢᵉʳᵛᵉ notes which are held in the vaults of Federal Saserve banks.



CO

512 Onondaga Ave
Syracuse, NY 13207

ugilaak.Rtsay lmauao to ulaa
azzy u¢fa naE -

anal  a48Goruy



' ?1V

,v'g:j1Uf¡

¡t1" s⁽ˡ⁾ (IV'J£', Vfl

',⸗ 9 TI TO        14 $'

Hi, ask the Cou¡t
to enborek the
Note under
DSC Title 12 sect¡l
and Deposit it
wnty the
Cour¢ cler¢
¡t ¢ Rogi
Fund

# EXHIBIT 2

01/26/2005 14:41 FAX 8043719911          ST CORP COMMISSION                    41001.



!WEALTR 0   lit,

Ronald w- Thomas
Director

*Thomas AL couldin*
*Depity Ditectur*

Alafling addrisT
EN 8" 1197
Richmond, VA 23213
Telephone: (804) 371-9051
F= (904) 37j-"11

## STATE CORPORATION COMMISSION
## DIVISION OF SECURITIES AND RETfJ FRANCHISING

PLEASE DELIVER THE FOLLOWING PAGES)

Pages) Including This Cover Page
Cal you have trouble receiving transmission.

**To:**           *00,02ó*

**Fax Number:**

**From:**         Torn Bayly
                  Phone:  040 371-9176
                  Fax:    (804) 371-9911

**Date Sent:**    On: 6 . 05

**Time Sent:**    _____

**Comments:**

45,  ⊿, ,  ∨ 0  tp~'~  A  9!          *delity*
                                      *5X*

*llbr`f-*

                                          7

        7                         *elp*

cO    O        OF      m4IA .

**STATE COitPbftATIOI4. O  ı  SStON**

STATEMENT OF 111i CISTEIIED OFF1(Z  AND AC    OF A CORPORATIO N TIWt HAS
CIIAIYGED T        K

hlte prcscnt ":line III the cnrpttrAtinn io (give cayct name-.>,h n in 9rtkfes of artttndtnnt)

( dcllty Co oratlon ~ - _____

The former name of the cnrporatsen wst (give exact rants 6ltol tt.iti axtides of amsadment)

<u>Fidelity</u> Bankers Kite <u>Insurance</u> Company        _____

*The corporation is incorporated under the laws of the state of.*        *ViMInia*

The addrean of its registered office is

<u>rldelity</u><u>Bankers</u><u>L1fe</u> Build n , Ninth & Main Street , <u>Richmond</u>   23219   , Virginis.
6N¢.abtti            ttl"aa~ti                           (Fost Office)   (Zone)

*'Thc name of the county or city in which its registered offce i-a lncatrd is the'* _____ of
                                                                    City
                                                               tlnsert "couaty" or "city")

<u>Richmond</u>

`)'lhr nanu'    !rai.tctrd a p~nt i~        llarod , F~ichards

lie is a rraidrnt DI Virginia.

He is. ® an officer of the cnrporation or M a director of the corporation or {'] a member of the Virginia State Bar.
Check the applicable square nr spore,.(

*If an officer. state titir:*        *President*

*The address of the registered office and the address of the W inese office of the* registered agent are identical.

*The establishment of the registered office and the appointment of the registered agent were authorized by ss resolu-*
tion duly adopted by the board of directors of the corporation.

The registered office and  agent of the corporation immediately prior to its change of name werct (If there bas
been nn change, write the word "unchanged" on both liner)

_____Unchang<u>ed</u>_____

_____Unchanged_____ Virginis.
!Momt.-rl        fltr s)                           (Post Office)   (Zone)

This statement is executed in the pre'ent name of the corporation by its prtrident or vice-president, echo dechns
under the penaltif-A at perjury that the facts therein stated are true.

Fidelity Corporation

Ry _____
                                    *President*

Nom May not be signed by any officer except the president or a rice-prr,sident.

I

## FIDELITY CORPORATION

*AR TICUS - CF A SWENT'*

Pursuant to section *W."I-SWA Utha A N    V V Irginig of 1150* as amended, we *hereby*

(a)    The *name of* the corporation *is 'fidelity Corporation.*

(h)    The amendment *adppyp        that A rticle (a) of the* Articles of Amendment Restating *the A rticles of* Incorporation *of* Fidelity Bankers life insurance "Conffny,.,' dated- December 31, 1967, be deleted in its entirety and in its mace and stead shall be stibsi-Itotem d LhO following:

The name of the Corporation is Drum Financial Corporation.

(c)    The nnc-ndment was found to be in thee best interest of the corporation by its <u>Board</u>    Directors at its regular. meeting on January 24, 1979; and at which *gWing* such amendment was directed to be submitted to a vote of stockholders at the 1979 Annual Uceting of the Corporation.   'Notice of such stockholders' meeting was given in the manner provided ;for in the Virginia Stock Corporation Act to each stockholder of record entitled to vote, by mailing a notice of such'i6eting with proxy statement and proxy card attached on April 12, 1979. ·  Such notice was accompanied by a copy of the Vropos;d amendment.

(d)    On April 11, 1979,  the-record date established by the Board of Directors for the aforesaid meeting, there were 4,743,371 shares of common stock outstanding and entitled to vote on the amendment_.

(c)    At the Annual Meeting of stockholders, held on May 30, 1979, the amendment was adopted and, in connection therewith, 3,701,379 sharps of the common stock of the corporation were voted for the amendment and  123,277-shares of such common stock were voted against Chu amendment.' VN ·

The amendMent  ff   s rig: change  ire _stated capital.

(g)   The  amendment doe ; too  **effect** a rpseaeement of the
ArCiCIOR of lncorporkiftoiT

DATED;   July 19, 1979

xo ᴹ   11010

_____

l o.qCph MMi.Zo e     C!nlor
Vice President and Secretiry

# COt 1(M { ' OF FG A

## STATE CORPORATION COM'MSSION

gⲦ    OF REGISTERED OFFICE AND AGENT OF A CORPORATION THAT UAS
CHANGED rIS NAME

The present name of the eorpor rion is (give enact name shown iii articles of  smeorlr»rot)

DRUM F NANCIAL CORPORATION

The former name of the corporation wVVas (give exact name shosrn in articles of amendment)

Fidelity Cor poration

71e corporation a incorporated under the 1an^i of the stare of    Virgin

The addre of it3 registered ofScc u

'1z   5rir   t:itikeli.nF~'+th    Main Streets Richmond          23219       t  t
tir~bⲦ        iat~)                                  (F-c dust        t    t

The name of the county or city in which registered oflict is locate,{ is the    Ttsa 4 ˉt..W er ^gam·)    of
r, !df1ril  tlSl

The natnc of its registered agtnr o    Al ran  C   FJsi ache

7le is a rrtident of Virginia_

He i it an officer of the corporation or ᴍ a director of the corporation or ₚ₉ a member of the Virginia State Bar.

[Check the applicable squstre or squar8.l

If an officer, 3ta:e title: _____

The address of the rcgtstcrcd otttc: and the address3 of the businei ofct of the registered agent are identical.

The catabti.shment of the registered office and the appc.ntmcnt of the registered agent sire authorized by a rtsolu-
rion duly adopted by the board of directors of the corporation.

The registered oficc and agent of the corporation immediately prior to its change or name were: (if there has
beert no change. wrirt (tie word "nnchanded" on both lines)

ll nc(lrttii- C l                          _____

—     i-acfianp.no _____
tlr v~kcvl       rttllrve'tl                              tt'C M 0&'3)              t2-smat   Virginie,

Tlm statement mtTst be extetutett ;n ₜₕₑ pUncnt name ₒᵣ ₜₕₑ corporation by my'Anr of rhr, follAing: the chairman
or vlcr'.hasrmJrt   ᵢ he bn1Td Of drrecrUrt ᵣ iFtc prrStient or vtrc-prcndent, who declalee under the penalties or perjury
that -   ·.l ,.-. _' !1°..., A        L'T:!%R Jt FIC1;'% ~IAY iu!%l.

DRUM FINANCIAL CORPORATION

9·   _[signature]_  Title

01!26/2005 11: 6 FAX 8013719911         ST CORP COMMISSION         ☒006



CH' OF ViRG N

COM         ~IN

C1.ERX OF Tmp COMMISSION
P. b. Box 1!01
RIC1ISIONMVIUCHIAlJ7f 1101
(f.O4) IM-17M

STATE CORPORATION    OMMISSION

SEPTEMBER   4, 1991

ALAN G. FLEISCHER
MAIN STREET CENTRE
629 EAST MAIN STREET
RICHMOND, VA   73219

*HOTICV OF TERMINATION OF CORPORATE EXISTENCE*

RE:   DRUM FINANCIAL CORPORATION
ID1   0066853-55

*IN EARLT JUNE OF THIS YEAR, THE STATE CORPORATION COMMISSION MAILED THE ABOVE-HANED CORPORATION A NOTICE OF IMPENDING TERMINA-TION OF CORPORATE EXISTENCE. ACCORDING TO THE RECORDS OF THE COM-MISSION, THE CORPORATION FAILED TO COMPLY BEFORE SEiTNNER I WITH THE STATUTORY REOVIRE3IENTS REFERRED TO IN THE NOTICE. CONSEQUENTLY, OH SEPTEMBER I* OF THIS YEAR, THE CORPORATION~$ EXISTENCE WAS TER-MIHATED BY OPERATION OF LAW.

AMONG OTHER THINGS, THIS TERMINATION MEANS THAT *THE CORPORA-*TION CAN HO LONGER LAWFULLY CONDUCT BUSINESS AND ITS DIRECTORS ARE REQUIRED TO LIQUIDATE ITS BUSINESS AND AFFAIRS.

AS THERE *MIGHT* BE OTHER CONSEQUENCES RESULTING FROM- THE TERMI-*NATION, IT* **IS** SUGGESTED THAT THE CORPORATION, ITS OFFICERS *AND ITS* DIRECTORS *SEEK THE* ADVICE OF COUNSEL.

IF THE *CORPORATION* WISHES TO REINSTATE, IT MAT DO 50 BY COM-*PLYING WITH THE APPLICAALE STATUTES. FOR MORE INFORMATION CQHCER-***MING** REINSTATEMENT. WRITE TO

*STATE CORPORATION COMMI$$IDN*
*CORPORATE OPERATIONS DIVISION*
*P. 0, BOX 1197*
*RICHMOND, VA 23209*
*(801) 786-3733*

05717.

# EXHIBIT 3

Oils

i -    DISPLAY FOR LWCC01 ON ol/~ -1    .04C
   D HOT FOUHO    HSG ID
       REF/    DCA/    SEP/
       SRO/    TV PiBD DER/

       PCIC QUEY"y    W丽    I $^C$    WARDEL

297413    !O?; 8/20®5 1640    S0751/6689.
       . LEAPS WIS'OJJ (JTED ADMIN    MESSAGE
   FOR    : LWO!    UIATE,; 042PL05    TIME: i646
   ACTI.Off z N(') C    RESPONSE

IIlt") RE-CO V

KEYS USED = PS    ₃ RdR 11291 18J . D,BA    18000
MSG NO - $^{in}$ 9006083
C3IS 298532    01/28/2005 16$^4$A    S16189/668").

TSP
**** C30 DISPLAY IVOR iWCC2)l ON 01128i@5 !G:44 EST
 _₊ RECORD NOT FVRIND    HSli ID = (Z.009)6
   KEYS USED =    REF!    0 C A    SEE!    RV3389
       SRG/    /85 DEN!    Hic /

       ROIL ?WRY ₃ 00000000:,5055Y FORWARDED TO HUI(:

0316 296532    01/28i2OOb 1644    S0751/6669.
       A LEAPS UNSOLICITED ADMIN    MESSAGE
   FOR    LWCCO-l    filhl'E 01280~~    ₃-4
   ACTION ₁ ᵤiCD-'l,';IIJFT,-? RESPONSE
   SENT BY;

           q TYfl/BD DIF',tl/,5000.

KEYS USED - US    VAM    55815056
AS'G 1 n

```
TRP
**** CJIS DISPLAY FOR i.WCC01  ON 02/01/05  12:54 EST
*** RECORD NOT FC        MSG ID = QS.0008
 KEYS USED =  REF/        OCA/              SER/          RU29181
              SRG/                   TYP/AG DEN/   100000 RIC/


        WCTC QUERY # 000000008, QUERY FORWARDED TO NCIC


        2005 1254    S075176689.
                    CITED ADMIN        MESSAGE
                              DATE: 020105   TIME: 1254
              H    QUERY
        SEW BY; AFMAWO


  ,.=r hEGUk   h"k"N


      u sE         Ty, I ‰0. 5 E R   J.2_ t8;   bER i
     '401  -     ⟋,
```

```
**** CJIS DISPLAY FOR LWCC01  ON 02/01/05  12:53 EST
*** RECORD NOT FOUND        MSG ID = QS.0007
 KEYS USED =  REF/          CCA/            SER/          Rv3ao"--;
             SRG/                    TYP/AO DEN/   5000 HIG/


            MAC QUERY          '      WMWV' FORWARDED To NCI=._

CJIS 301356   02/01/2005 1253   S0751/6689.
             A LEAPS UNSOLICITED ADMIN     MESSAGE
        FOR   : LWCC01           DATE: 020105
        ACTION : NCIC QUERY RESPONSE
        SENT BY: DCFBIWA00


NO iiMiklhl          9 T",';

KEYS USED. QS .MAMSF3600. NNW OR/
MSG No_  wow?0000080
CJIS 301qW  02/01/05 1254 GBC.
```

MW                 WWAA1  -mly"ow  n    nu -  ～～·-～～

*MATUTI!*

6421  :2HTI    COIO570 **Mlya**                1@13mi  ,
                       MESSAGE      NIWOA GELICIFOSNU SAAEI A
                       '6BS9/IS40S    6421 GOO2/IO/20

**folivy" P&A**

OTOR OT GEGRAWROF YRENT ,I0000000# A YRENT OTOM

vnwA.i

*GUMA'I'I*                                1AAA   ~ CQKT
                       1000  91 ,  to  £mu     ip"vo **JDP QM09A**
                       90/19/70 pq   WAY[1]  NCO 19104[1]  **A!"**

:.. for

```
**** CJIS DISPLAY FOR LWCC01  ON 02/01/05  12:49 EST
*** RECORD NOT FOUND       MSG JD = QS.0002
  KEYS USED =  REF/         OCA/           SER/
               SRG/              TYP/DB OEN/   1


              NCIC QUERY # 000000002,QUERY FORWARDED ro 01:10

CJIS 300299   02/01/2005 1249   S0751/6689.
           A LEAPS UNSOLICITED ADMIN     MESSAGE
         FOR    : LWCC0J               DATE: 020105
         ACTION : NCIC QUERY RESPONSE
         SENT BY: DCFBIWA00

NO RECORD SER/RU29181 TYP/O

KEYS USED = QS  .MANSP3600.."YP if'9,S1-14/RU29J81D1-;W   08
MSG NO = 00000000083
CJIS 300482   02/01/2005 12bk   S168916689,

TRP
     (Als LQ PILhY ~)]i~ i
     RECORD RUIT fa't)W!b          M - go ow"
        USED = NEK/
              bIIM                  foir


          WGIC  WERY 9                      '0'1 WC Ic

r,iMS       Ca2   2 0  125o   ~A 51/6689.
              WH! UNUIM mo ADAIN
         F(JI-I               DATE: _20)  5   TIHE: 1250
         ACTIOR   McII", WiJEWY ROSTIWISE
         SENT BY: DUFAWMOO

         SEMY3389 'fYPIH J WOW

KEYS USED = QS  .MANSP3600.TYP/RT.SER
MSG NO = 00000000080
CJIS 300621   02/01/2005 1251   S1689


   R,LCOid NO. F00-plio        021011olf)
                              = D& 0004             H U291 6 i
   IMYS USED -   AF/      MW              Moslil


                              v

Gj ~: no- ~j   w2/002MI v. .   ! a..!

         RU,1L                DATE: wowna    POP
         AGTION   MAL QW i
         SENT BY: DuFBIWA00

NO RECORD

KEYS USED -                  uw 0 I    h H
1ISG ho v 0040(i  MOOTS'I
Wis 300877   Q&TWoos 04""
```

TRP
**** CJIS DISPLAY FOR LWCC01  ON 02/01/05  12:52 EST
*** RECORD NOT FOUND     MSG ID = QS.0005
 KEYS USED = REF/       OCA/           SER/       RV3389
             SRG/               TYP/RW DEN/    5000 HIC/

                MAC UUM # 000000005, QUERY FORWARDED TO NCIC

CJIS 300877  02/01/2005 1252   50751/6689.
             A LEAPS UNSOLICITED ADMIN     MESSAGE
             FOR  : LWCC01           DATE: 020105   TIME: 1252
             ACTION : NCIC QUERY RESPONSE
             SENT BY: DCFBIWA00

NO RECORD SER/RV3389 TYP/RW DEN/5000.

     USED -- QS  .MAHSP3600.TYP/RW.SER/RV3389.DEN/5000
     "H - AMC000080
LJIS 30IW39  02/01/2005 1252   S1689/6689.

TRP
**** Gils DISPLAY FOR LWCC01  ON 02/01/1                i"ST
*** RECORD NOT FOUND     MSG ID
 KF c  DIED = REF/       OCA/           SET        Know
                                        G.. .    .. .. fir  .. fc

                   ,        00000-              To RGW~

        Won     b-- /V)!/2fro05
                   p!        Lflr S~01-lcil'Ejo
                FOR
                ACTION   NIJU WULR-i
                SENT BY

NO EECUT'i f-i.ikU29181 TYP/Riy

KEYS      - OS   HAHSJ'360-0, TYPi.'Wel.          fo
uSC W.: - 0000(b

# EXHIBIT 4

Deutsche Bank

A-
Tomsnc.""Savm--
rO W.,
A,"oo '"3723C

TROOPER JOHN M CONRON                          February 04, 2005
19 MIDSTATE DRIVE                              File . 48815
AUBURN, m^onn/

RE~

Dear Sir /Mav"w:

We acknowledge receipt of your recent correspondence concerning the issue referenced above.
I/Ve are woi king On Your inquiry and will provide the information requested as soon as possible

                                               Sincerely

                                               CONTROL UNIT
                                               o*n/Nuv*mle
                                               ¦8001735'rrrr

*oz/ r) i L.*        10: 3 5



C  F)

?1STT RROMNEV

**KERRY HE: L.FY**
*tree=r.v.i. rc:mirrRnoR*

*EDWARD A, FIAN,·*
*rECFF7.ι r r*

COLONTLTHOMAS *G. ROIMJI NS*
gp)F.Rr+**n**~snr.A~r

State Police Detective Unit - Worcester
19 Midstate Drive
Auban, MA 01501

To                      Carl Shepherd

Prom:                   Trooper Jolui M. Conron #2:720
                        ᴍassachU:ietis to e Police DetcctiYe tJ:tii - Worcester

Subject:                Pennsylvania Company- Corporate Bond


I am conducting an investigation regarding several corporate bonds that might have been falsely uttered. Through a local Merrill Lynch branch I was able to deteinmine that your company acted as the transfer agent for a corporate debenture issued by the Pennsylvania Company, a Delaware corporation. T believe the certificate I have in evidence is authentic and likely cancelled.   Attached is a copy of the front and back of the corporate debenture. Any information you could provide concerning the history of this particular debenture would be greatly appreciated.

2.     If you are able to locate information concerning this corporate bond please feel free to contact me at the numbers listed on the face sheet of the fax. Thank you for your time and efforts.

*Excellence In Service Through   Quality Policing*

REGISTERED    REGISTERED

**5000**    **5000**

NUMBER    NUMBER
RV  3389    RV  3389

# PENNSYLVANIA COMPANY
## 9% SINKING FUND DEBENTURE DUE 1994

EXCHANGEABLE FROM NOVEMBER 1, 1975 TO APRIL 30, 1979, INCLUSIVE, UNLESS PREVIOUSLY REDEEMED, FOR SHARES OF COMMON STOCK OF NORFOLK AND WESTERN RAILWAY COMPANY.

Pennsylvania Company, a corporation organized and existing under the laws of the State of Delaware (hereinafter called the "Company"), for value received, hereby promises to pay to -W.F. CARR TRUSTEE UTA DTD. 10-15-68 F-S-O M. WEATHERBY CARR-

9%    9%
DUE    DUE
1994    1994

DAT-'b:  LUG 2 8 1970
TRUSTEE: CERIMC&TE    ON
9?;;NKERS    COMPANY

## PENNSYLVANIA COMPANY
### 9". SINKING fUND DEnFNTURE DUE 19,S4

A13BRE-VIAT10fiS

FOR N,\TUF P{CT,(VT.D, the unAer,;snzd hereby  scl15, n5signs  and  fjNnnsf~r:  tiolo

Be within Debenture,  =Tal  Qm rftwreurvict  hc,c6)        wwwKy and n,pWp~;=

ic, tin W" Wd Dchm m r con the books of thi Company. with f—it pn— c r . ( -,      in the

[}A!ed:

NOTICF: The -.;6n.i-rc to this -;gnr;)r,it ryiWc l0r,(,,p<-nd with the name is it appear: upon the f acc of the within Drbent-c ;n every pi,rt!co-,      , ltem6on qr zillr.rrcn,Cmf or any change whrat.vnr.

Awirncv

**EXHIBIT 5**



Deutsché Bank

Deutsche Bank Trust Company Americas
CTAS Operations: Trust & Securities Services
P.O. Box 305050
Nashville, TN 37230

Cornlnontivealth of Massachusetts                    February 9. 2005
Department of State Police                           |⁷1LE7      4881.5
AT-N : Trooper John M. ` onron
t 9 Midstate Drive
Auburn. Ma 0`15M

RE:    PENNSYLVANIA COMPANY
       9%;, S NKING VND DEBENTURE UE 199"

Dear ?'cooper Conron:

Our records do not indicate the issue referenced above. Per the Department of State
website for the State of Pennsylvania, this company submitted documentation for
issolution on '09i" 181'''1964.  For you review enclosed is a copy y of the "Entit' Detaiis ¯ for
Pennsylvania Company

We suggest you contact the Department of State between the hours of Sam -- 5pm
Mlondati' through. Friday at the following.

             Department of State
             Corporation Bureau
             P.O. Box 8722
             Harrisburg, PA      i U3-8⁷y˜
             7ľ 7i  87-105'''

   Please visit our website at Imps:.'wwwass.db.coni'shr for commonly asked questions and standard forms.
        Collateralized Mortgage Obligation rates aie now available on the uiernzi bty typing:
             hops:; .vww.tss db.con>lim r. then agree to the terms and select Deal Inquiry

If" further assistance s required, please contact our office.

Sincerer

Tilda L. Pettis
Security Holder Relations

Trooper John Conlon
Massachusetts State Police
Worcester Detective Unit
19 Mid State **Drive**
*Auburn, MA 01501*                          Sept. 22, 2006


RE:  Need information on an investigation that has eitherr
concluded or never started


Dear Trooper Conlon,

   My **name is Shakir** Maris Abdullah W51043 and I am a state
prisoner.   I **am** trying to recover through litigation in United
States District Court approximately $100,000.00 that was slated
to go to a fund to procure appellate counsel for me and some
others.    The money was allegedly converted, (stolen) by a
Worcester County Court Clerk.
   I was told in writing by one of the suspect clerks,
Catherine Brennan, that she had some discussion with you over
this matter at some unspecified date after February 2006, but
her answer was so vague it might have happened, (if at all)
after May 2005.
    PLEASE.   Could you please write **to** me and try to tell me
the following:

1.   When did the Massachusetts State police stop using the
term CPAC?   (it was in one of Catherine Brennan's answers)

2.   Any details of the alleged conversation between you and
Catherine Brennan concerning the missing $100,000.00?

   I most sincerely thank you in advance for any assistance
you could offer in shedding light on who did this.


                         very truly yours,

                         Shakir Maris Abdullah W51043
                         O.C.C.C.
                         One Administration Rd.
                         Bricdgewater, MA 02324

**EXHIBIT** 7

Corporate Records Application                                          Page 1 of



DOS Homeuage

## Entity De its

**Request**
- *New* Request

**Free Search**
- General flame Search
- *aid* Name Search
- orphan Search

### Basic Entity Information

| | |
|---|---|
| Entity Type | WITHDRAWN INCORPORATED BUSINESS |
| Entity Name | PENNSYLVANIA COMPANY |
| **Entity No.** | 272714 |
| Filing Date | 01/21/1954    Letter of Consent    No |
| Address | 43 HAVERFORD STATION RD |
| | HAVERFORD Pennsylvania USA |
| County | Montgomery    Jurisdiction    PA |
| Purpose | BROAD |
| Limited Authority | No |

### Instrument History

| Doc Type | Microfill11V | Micro ;r Start | Micro4r trncl | Filing Date | C:oiTlm .nt |
|---|---|---|---|---|---|
| STATEMENT OR CERT. OF SUMMARY OF RECORD | 7433 | 614 | 0 | 08/16/1974 | 1 CARD |
| ARTICLES OF DISSOLUTION- BUSINESS | 6426 | 128 | • | 09/18/1964 | |
| CHANGE OF REGISTERED OFFICE | 5408 | 690 | • | 01/21/1954 | |

Back

Home I Site Map i View as Text Only

*Visit the*
PA Pouve ´Poi t

Copyright O 2002 Pennsylvania Department of State. All Rights Reserved.
Commonwealth of PA Privacy Statement

hips:' w%\ u˙.clos.beta.state.pa.tisICorpsAppl'CorpsₘeblSearehlₗᵢEntityDetails.aspx?T:ntity/to=272714&Film... 02/09/0:

# EXHIBIT 6



**MiTt ROMNLY**
Gm-E2ynrt

**KERRY HEALEY**
LJP.CTENANTGI37 flNOR

**FDWARD** A: **FLYNN**
MCRM-f AT

**COLONEL THOMAS G. ROBBINS**
.vuPrmNTENDENT

*f9  e9*aG+,a~tate 9o~rit~e

C-.⁰6ee%+s.'n, C%"  0f501

**C~r~h aa,  2,** *2005*

Captain Thomas G. Greene, #1126
Massachusetts State Police Detective Unit / Worcester County

**AbM:**         Trooper John M. Conron, #_2720
Massachusetts State Police Detective Unit / Worcester County

SUBJECT:      Investigation of request by Dennis Shelton, also known as Shakir Mans
ABDULLAH, B/M, DOB: 11-01-1961 of Old Colony Correctional
Center, One Administration Road, i3ridgewater, MA 02324 to establish
legal fund with corporate debentures.
Case #05-115-0037

On Tuesday, January 25, 2005 at approximately 4:00PM, the undersigned was advised of
A possible financial crime by Sergeant Stephen Kelly. Sergeant Kelly outlined the following
fact for me. Shakir Maris ABDULLAH is prisoner at Old Colony Correctional Center serving a
li  sentence for murder. ABDULLAH alleges he has been wrongfully convicted and posted an
appeal on a website seeking either legal assistance or donations to fight his conviction.. In
response to his appeal ABDULLAH received two corporate debentures from Brother Dan Izzo
of 5?  Onondaga Avenue in Syracuse, New York. ABDULLAH forwarded the corporate
debentures to the Clerk of Courts and asked the debentures be deposited into a legal fund on his
behalf

2.       On Wednesday, January 26, 2005 the undersigned contacted the Virginia Division of
ecurities and Retail. Franchising regarding the debenture issued by the Fidelity Corporation.
The debenture states that it is a 5 '/z percent convertible subordinated debenture issued on
'petdber 13, 1978 for one hundred and eight thousand dollars. The debenture bears a serial
puumber of RU29181. The debenture appears to be issued to CEDE & CO. The certificate's
issue date reads October 13. 1978. Immediately below the issue date of the certificate is another

HURBAU OF INVESTIGATIVE SERVICES
MASS. STATE POLICE
**2005-115-0037**
----------------------------------
YEAR/DIST/CRIME/CASE    ,
SERIAL*  1

~ a
q-o6

*16M* OΘ e  @M     **O**      c ua    'AA &-'7

date of October 17, 1978. The certificate also indicates the debenture's due date in May 1, 1988. The debenture indicates that the Fidelity Corporation is a Virginia company. The debenture bears an apparent cancellation mark on the right edge of the paper. The mark consists of a series of holes punched in the paper that spell out "CITP' and "1017 78". At approximately 1153 hours the undersigned spoke with Tom Bayly a senior investigator for the Virgiinia State Corporation Commission. At approximately 1445 hours Mr. Bayly faxed the undersigned a copy of series of documents outlining the history of. the Fidelity Corporation.   Most notable of the documents is the Termination of Corporate Existence issued on September 4, 1.991.

3    On Thursday, January 27, 2004 the undersigned met with Assistant District Attorney (ADA.) James Lemire regarding the corporate debentures. ADA Lemire handed the undersigned the original mailing from ABDULLAH to the Clerk of Courts which contained the original copies of, the debentures.

4.    On Friday, January, 28, 2005 and on Tuesday, February 01, 2005 the undersigned conducted LEAPS/NCIC queries relative to the debentures. LEAPS/NCIC responded with "No Record" for either debenture.

5.    On Tuesday, February 01, 2005 at approximately 1420 hours, the undersigned contacted the Delaware Department of State Division of Corporations concerning the 9 percent Sinking Fund Debenture issued by the Pennsylvania Corporation. The debenture bears a serial number of RV3389. The debenture is issued to W.P. Carr. The certificate indicates the debenture's due date is 1.994. The debenture bears an apparent cancellation mark on the lower right hand corner of the certificate. The mark consists of a series of four holes punched through the certificate at, or ,adjacent to, the signatures of the company's secretary and. president. The debenture's issue date appears to be August 28,1970. The debenture also bears the date January 2, 1974 on the upper right hand corner of the certificate_ The debenture indicates the Pennsylvania Company was incorporated in Delaware. The undersigned was advised by the Delaware Division of Corporations that the Pennsylvania Corporation merged with American Premiere Underwriters in 20021 American Premiere Underwriters is a company incorporated in P. enn.sylvania.

6.    On Wednesday, February 02, 2005 at approximately 1307 hours, the undersigned contaacted the Pennsylvania Department of. State Corporation Bureau. The undersigned was informed that the Pennsylvania Corporation had merged with American Premiere Underwriters on October 15, 2002. The representative from the Corporation Bureau was able to tell me that American Premiere Underwriters survived the merger, however, she was unable to tell me v icthcr The Pennsylvania Corporation survived the merger or not. The undersigned was provided with the agent information for American Premiere Underwriters. The agent was listed as.;CT Corporation System 1515 Market Street Suite 1210 Philadelphia, Pennsylvania 19102.

7.    On Thursday, February 03, 2005 at approximately 1144 hours, Trooper Thomas Poirier and.the undersigned met with. Karen Bishop and James Grey of Merrill Lynch at 446 Main Street in Worcester.  Mr. Grey, the Operations Controller at the Worcester Merrill Lynch office, was able to tell the undersigned that the certificates were authentic. Additionally, Mr. Grey informed the undersigned that the perforations to both certifcates indicated their cancellation_  Mr. Grey wenfpn to explain a variety of reasons why **the certificates might have been cancelled.**

O    es    C ~ &e vi e L rwu    uɑ .ʟ C~a

8.      On Monday, February 07, 2005 at approximately 0925 hours, the undersigned contacted
Brother Dan Tzzo of 512 Onondaga Avenue in Syracuse, New York. Brother Izzo told the
undersigned that he had purchased the certificates of corporate debenture on EBAY two years
ago_  Brother Izzo acknowledged that the certificates were valueless. Brother Izzo stated he did
not alter or mark any of the certificates he sent them to prisoners, "as is".

9.      In conclusion, the certificate of debenture issued by the Fidelity Corporation appears
authentic.   However, markings on the certificate indicate the debt has been cancelled.
Furthermore the company no longer exists and presumably cannot make good on the debenture.
Similarly, the certificate of debenture issued by the Pennsylvania Corporation also appears
authentic; however, markings on the certificate indicate its cancellation.

10.     The undersigned respectfully requests that this case be forwarded to the Worcester
County District Attorney's Office for review.


Respectfully Submitted

#2720

Troo      ohn M.  **Conron #2720**
**Massach sctts State Police**
**State Police Detective Unit - Worcester**


INDEX BY. NAME_

Tom Bayly.
Commonwealth of Virginia
State Corporation Commission
Division of Securities and Retail
**Franchising**
**P.O. Box** 1197
Richmond, VA 23218
(804) 371-9051

Karen. Bishop
Merrill Lynch Pierce Fenner & Smith Inc
446 Main Street Floor 12
Worcester, MA 01608
(508)798-7200

Tom Grey
Merrill_ Lynch Pierce Fenner & Smith Inc
446 Main Street Floor 12
Worcester, MA 01608
(508) 798-7200

Brother Dan Izzo
512 Onondaga Avenue
Syracuse, NY 13207
(315) 472-5088

**Dennis Shelton, a.k.a. Shakir Maris**
Abdullah
Old Colony Correctional Center
One Administration Road
Bridgewater, MA 02324


kenos    $V$    $^{an}$    &XVU?j
$c$ _$a$ $_a$ $_c$ $_{61}$ $c$   of tor?

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHAKIR MARLS ABDULLAH,      )
      Plaintiff,          )
v.                              )         C_A. NO. 05-1.1539-DPW

FRANCIS H. FORD, Clerk, CATHERINE    )
BRENNAN, Assistant Clerk, and REVEREND )
DANIEL IZZO,            )
      Defendants.       )

## AFFIDAVIT OF EMMA EVA.NS-HOWARD

1. My name is Emma Evans-Howard. I am the Records Manager at the Old Colony

   Correctional Center, Bridgewater, MA.

2. Attached to this affidavit as Exhibit I are true *and accurate* copies of the visitor/mail log

   for Shakir Abdullah for the period of December 1, 2001 to the present day.

3. Most entries on this log specify.only the months and days **in** which they occurred, not the

   year

4. The records attached. as Exhibit 1 set forth the outgoing mail for Mr. Abdullah as well as

   his visits during the aforementioned time period.


**Signed Under the pains and penalties of perjury this 21st day of February, 2007.**


*£j,i4-//&o,saL*

Emma Evans-Howard

# EXHIBIT 1

**BRDGEWATER C*RItECTIONAL C•M?LEX**

[ ] State Hospital ( I Treatment Center

] O.C.C.C. [ ] S.E.C.C. [ ] $oot Camp

CARD NO.: NMM

MCI, Nas.: UJ 5()1.3

[redacted]

,~~, ~2aAVw~~+~

IV. V' ,)r 4.f roe f





**BRIDGEWATER CORRECTIONAL COMPLEX**

[ ] State Hospital          [ ] Treatment Center

[ ] O.C.C.C.

Boot Camp

CARD NO.,

NAME, _ROdtll_ ~ _5 hAki t_ MAM5

M.C.I. Nos.: . 0,570~+3

FATHER

MOTHER

WIFE

SIBLINGS and RELATIVES (indicate Reladonehi )

mother Funds Po Box 4701 Providence RI 02904    10-2

Michael J Dovovan 90 Devonshire ST 9th Floor Boston MA 02919    10-2  10-29

Bessie Shelton Po Box 1852 Tuscaloosa ALA 35401    10-2  11-7  11-19

Atty Regina Mullen 2232 South Main # 364 Ann Albor MI 48103    10-2

Prt Mike Avery 41 Temple St Boston MA 02114    12-1

Dan Givelber 400 Huntington AVE Boston MA 02446    12-1

**BRIDGEWATER CORRECTIONAL COMPLEX**

[ J State **Hospital**          [ ) Treatment **Cedter**          ( J **MASAC**          ( ( **O.C.C.C.**

CARD NO.:                                    NAME: *Abd_t IIr h    :~h(IJd)-*

M.C.L Neg.: *jl  ,1O' 3*





**BR)DGEWATER CORIRECTIONAL COMPLEX**

[ ] State Hospital          ( I Treatment Center

[ ) O.C.C.C.          I ) S.E.C.C.          Boot Camp

CARD NO. r _____          NAME: _____  & Ag-I A" A-46

M.C.I. Was.: _____

FATHER

MOUERR

WIFE

0211512007 15:01     5087911201          FLETCHER TILTON          PAGE     02102

Case 1:05-cv-11539-DPW     Document 74-7     Filed 02/23/2007     Page 1 of 1
From: e17 7273078     **Page:** 212     Date: 2115/2007 9;58:02 AM

UNITED STATES DISTRICT COURT
FOR THE **DISTRICT OF MASSACHUSETTS,**

| | |
|---|---|
| SHA   IP. MARTS ABDULLAH, ) | |
| Plaintiff. ) | |
| v.                     ) | C.A. *NO.* 05-11539-DPW |
| ) | |
| FRANCIS H. FORD, Clerk CATHB I B ) | |
| BRENNAN, Assistant Clerk, and **REVEREND )** | |
| **DANIEL IZZO,**          ) | |

## Defendants.

### AFFIDAVIT OF FRANCIS-FORD

1. My name is Francis Ford. Until January, 2007,1 was the Clerk of the Worcester Superior

   Court. I am now **an attorney at** the **law** firm of **Fletcher,** Tilton **and Wbipple in**

   **Worcester, MA.**

2. I never saw any original corporate debentures sent by Shaltir Maria Abdullab.

3. I never took any corporate debentures or other property belonging to Shaldr Mails

   **Abdu]lah.**

4. All of my personal banking accounts are held jointly with my wife, Shirley A . Doyle

**Signed under the pains and penalties of perjury this IJ⁻ᵒ day of February, 2007.**

Francis Ford

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHAD MARLS ABDULLAH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO. 05-11539-DPW |
| | ) | |
| FRANCIS A. FORD, Clerk, CATHERINE | ) | |
| BRENNAN, Assistant Clerk, and REVEREND | ) | |
| DANIEL IZZO, | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT FRANCIS FORD'S  ANSWERS TE PLAINTIFF'S FOURTH SET, OF INTERROGATORIES

## GENERAL OBJECTIONS

1.      The Defendant, Francis Ford, objects to any interrogatory to the extent that it seeps

information protected by the work product doctrine, attorney-client privilege, or any other

privilege.

2.      Francis Ford objects to any interrogatory to the extent that it seeks to impose discovery

obligations that exceed those imposed by the Federal Rules of Civil Procedure.

3.      Francis Ford objects to any interrogatory to the extent that it seeks to discover

information that is irrelevant and/or is not reasonably calculated to lead to the discovery of

admissible evidence.

4.      Francis Ford objects to any interrogatory that is not reasonably limited as to time and/or

fails to identify the pertinent time period.

5_      Francis Ford objects to any interrogatory that is overly broad and/or unduly burdensome.

6.      By making these responses, Francis Ford does not concede that the information produced

I

is properly discoverable or admissible and the defendant reserves the right to object to additional discovery with respect to the subject matter and to object to the introduction of these responses into evidence. A response made despite a stated objection may not be construed as a waiver of the stated objection and such a response is made iift a effort to provide responsive information based on a fair reading of the interrogatory's intended meaning_ In addition, Francis Ford's discovery and investigation herein are ongoing and the responses set forth here are based upon current information. Francis Ford reserves the right to present further or different evidence at hearings or trials on this matter.

7.      Francis Ford hereby incorporates each of the preceding objections into each of his specific responses that are set forth below.

8.      Francis Ford reserves the right to supplement these responses at a later date as more responsive information becomes available.

**INTERROGATORY NO.**26

Did Ford or Brennan provide any documents, material or two corporate debentures associated with this matter to a Sergeant Stephen Kelly for investigation at anytiixke?

**ANSWER NO** 26

   No. '

**INTERROGATORY NO. 27**

Did Ford or Brennan provide any documents, material or two corporate debentures associated with this matter to Trooper John M. Conron for investigation at anytime?

ANSWER N-0.27

   No.

INTERROGATORY NO. 29

2

Did Ford or Brennan provide any documents, material or two corporate debentures associated with this matter to Assistant District Attorney James Lemire for investigation at anytime?

### ANSWER NO..28

No.

### INTERROGATORY NO. 29

Does Ford or Brennan know of anyone within the Clerk's office that provided any documents, material or two corporate debentures associated with this matter to ADA James Lemire, Trooper John M. Conron and Sergeant Stephen Kelly at anytime?

### ANSWER NO.29

I have been informed that First Assistant Clerk Coriune Gozman and Office Manager Matthew LeFebvre gave the documents to Superior Court Judge John McCann who, I am told, delivered these documents to the Office of the District Attorney.

Signed tinder the pains and penalties of perjury, this $12'$ day of February, 2007.

Francis Ford

As to Objections:

Mary O Neil, **BBO** #
Anne Sterman, BEO #650426
Assistant Attorneys General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200 x 2109

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| SHAKIR MARIS ABDULLAH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | C.A. NO. 05-11539-DPW |
| | ) | |
| FRANCIS H. FORD, Clerk, CATHERINE | ) | |
| BRENNAN, Assistant Clerk, and REVEREND | ) | |
| DANIEL IZZO, | ) | |
|     Defendants. | ) | |

---

## AFFIDAVIT OF CORINNE GORMAN

1. My name is Corinne Gorman. I am the First Assistant Clerk of the Worcester Superior Court.

2. To the best of my recollection sometime in December 2004 or January 2005, 1, along with office me m ger Matt Lefebvre, opened correspondence from Shakir Maris Abdullah that enclosed two corporate debentures and associated documents requesting that the Court establish a legal defense fund on his behalf.

3. We gave the entire contents of the correspondance, including the enclosures, to Regional Administrative Justice John McCann.

**Signed under the pains and penalties of perjury this 14th day of February, 2007.**

_____ i.t.r.      _M_____
Corinne Go     n
First Assis    Clerk, Worcester Superior Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHAKIR MARIS ABDULL kH,                    )
     Plaintiff,                            )
v.                                         )            C.A. NO. 05-11539-DPW

FRANCIS H. FORD, Clerk, CATHERINE          )
BRENNAN, Assistant Clerk, and REVEREND     )
DANIEL IZZO,                               )
     Defendants.                           )
———————————————————)

## AFFIDAVIT OF STEPHEN KELLY

1. My name is Stephen Kelly. I am a Trooper with the Massachusetts State Police.

2. Sometime in December 2004 or January 2005, then-Assistant District Attorney James
   Lemire alerted me to a possible financial crime, relating to corporate debentures that were
   sent by a prisoner, Sliakir Maris Abdullah, to the Worcester Superior Court.

3. 1 assigned the invest gation to Trooper John Conron and gave him copies of the
   documents.

4. I was never in posse;sion of the original corporate debentures.

**Signed under the pains an! penalties of perjury this**     r     **day of February, 2007.**

Steph    elly
Sergeant, Massachusetts State Police

UNITED STATES DISTRICT COURT
FOR THE DISTRICT Of MASSACHUSETTS

SHAKTR MARTS ABDULLAH,                )
     Plaintiff,                          )
v.                                    )          C.A. NO. 05-11539-DPW
                                      )
FRANCIS H_ FORD, Clerk, CATHERINE     )
BRENNAN, Assistant Clerk, and REVEREND )
DANIEL IZZO,                          )
     Defendants.                         )

## AFFIDAVIT OF JENNIFER LAVERTY

I, Jennifer Laverty, upon oath depose and state as follows:

1.  I am an Assistant Attorney General for the Office of the Attorney General.

2.  On or about October 6, 2006, I went to the Worcester Superior Court and picked up the contents of the Court's file with regard to Shakir Maris Abdullah. These contents included two original corporate debentures.

3.  Attached as Exhibit 1 hereto is the Court's inventory list, which I signed, indicating the contents of the file I picked up.

4_  I gave the entirety of the file, including the original corporate debentures, to Cathleen Collins, a paralegal, in the Attorney General's Office for the Commonwealth of Massachusetts.

**Signed under the pains and penalties of perjury thi 2 / $^{L)L)}$ day of February, 2007.**

Jennifer Laverty
Assistant Attorney General

200[A                                              %V3 9C:TZ 311L LOOZ/OZ'/ZO

# EXHIBIT 1

# Commonwealth of Massachusetts
## Worcester County Superior Court

### Acknowledgment of Release of Documents
### In Re: Shakir Maris Abdullah a/k/a: Dennis Shelton
### Worcester Superior Court numbers: 90-1148; 90-1150-51

### October 6, 2006

Per request of Assistant Attorney General Ernest Sarason, the Worcester Superior Court Clerk's Office hereby produces and releases the following documents for the above captioned matter:

1.  Greeting card from Br. Dan Izzo (received by Clerk's office December 13, 2004).

2.  Correspondence from Br. Dan Izzo (dated November 19, 2004) addressed to Prison Officials with attachments totaling 4 pages.

3.  Copy of correspondence (dated December 6, 2004) of Shakir Maris Abdullah with handwritten marker notations and stamped in lower right hand corner with" Br. Dan Izzo" address in Syracuse, NY with attachments totaling 9 pages.

4.  Correspondence from Shakir Maris Abdullah (filed with Clerk's Office December 20,2004) re: establishing legal fund with attachments totaling 8 pages.

5.  One Million dollar bill, Serial number B03231025A, Series 2001 with print stating "This certificate is not legal tender, nor is it a representation of any existing or previous US Government capital note".

6.  Registered stock certificate entitled "Pennsylvania Company", numbered RV 3389, in the amount of $5,000. (Dated August 28, 1970)

7.  Registered stock certificate entitled "Fidelity Corporation", numbered RU 29181, in the amount of $108,000. (Dated October 13, 1978)

8.  Copy of correspondence of Shakir Maris Abdullah (received by Clerk's Office February 7, 2005) re: status of establishing legal fund with attachments totaling 7 pages.

9.  Memorandum from Assistant District Attorney James R. Lemire to Francis Ford, Clerk Worcester Superior Court (Dated July 19, 2005) re: Dennis Shelton a/k/a Shakir Maris Abdullah, concerning two stock/bond certificates.

10. Letter from Matthew S. Lefebvre, Office Manager, Worcester Superior Court to Mr. Shakir Maris Abdullah a/k/a Dennis Shelton (dated July 22, 2005) re: Clerk's Office's inability to establish a legal fund as requested.

I hereby release the above referenced documents this 6`ʰ day of October, 2006 to the custody of Jennifer Laverty, Assistant Attorney General .

_____
Corinne L. Gorman
First Assistant Clerk

I hereby acknowledge the receipt and take into custody the above referenced documents this 6` ʰ day of October, 2006.

_____
Jennifer      e , Assista   Attorney General
(For      est Sarason, Assistant Attorney General)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| SHAKIR MARLS ABDULLAH, )<br>    Plaintiff, )<br>v. ) | |
| | C.A. NO. 05-11539-<br>DPW |
| FRANCIS H. FORD, Clerk, CATHERINE )<br>BRENNAN, Assistant Clerk, and REVEREND )<br>DANIEL IZZO, )<br>    Defendants. ) | |

### AFFIDAVIT OF MATTHEW LEFEBVRE

1. My name is Matthew Lefebvre. I am an office manager in the Worcester Superior Court.

2. Sometime in December 2004 or January 2005, I, along with First Assistant Clerk Corinne Gorman, opened a letter from Shakir Maris Abdullah that enclosed two corporate debentures and requested that the Court establish a legal defense fund on his behalf.

3. Attached as Exhibit A are copies of those corporate debentures.

4. We gave the entire contents of the letter, including the enclosures, to Regional Administrative Justice John McCann.


**Signed under the pains and penalties of perjury this** <u>~~</u> **day of February, 2007.**


Matthew Lefebvre

**EXHIBIT** A

CoNVE" ICBL,E SUBO DINA `DDEEEENTURE

DUE MAY 1, 1986

c :1110 the r,gmdllu '1 1:": G,lmnnm ill, of Y,ylnia. (, -6-1. po,· to

[fill Rr?VIIRSCi 01t
CE1I'r,11N. OI I ONO I'IC IS

.U U 3 ) ill 2914!l „'CEDE & CO

CU`1P 31[[1\1 A; C.

,ulI,,LI III m'moaal su t of 'k134S4.179 9,1 W0 011 22'o

DOLLARS

.,too, lah+:ul tv "A"a en 111001;lit I, yprill',I A. tI/t.itIt",dila,l,',, o"dy1itI lito I l.leeutlow.dO,II 'as her VI(ours,III, It'I,rol, Hrl u,.ldeh
hd,:.. u ue f -to thr ld ne .ul, o . 11 s 'h, "It'! h!rool 's l et e, A4 It ,1 i pinpnl 1 t, °9 O..I1 ,ha;
J. + Y e y 1 , 9 l veldt
dup Yms,Ins,1,.u,.r 'JIIIto3hmalAto~smdta(, of p earvine,fifelts.Thennl-lt,o Ynveniv[~..a
Se" .1 111 r 1ln1y of'.'lll ,no¢ , h 'a A.r.Posy . i
he iL nilto vh SC Yi tt J the ,flit 'C, 'Jru',
„n s 1 thi llrr srlfe, ds he in d I~ + -s f, , ..Half o' f + C..a anf
Addrt o nol I ln1,;, p m. Iv+tA , Il m t e oof' ,halll nd' ae l uo~L ,oily a For „ m.
r, 'hoh,wf hx n Ip, o_ br, L, u,pass,r I Ic e L. uC_ur r -or ie +, l e :.h,., lv lu'1rx
IN ISS WVIEIIEOF Rf1LIJTY C07p. hf i 10N tav lad ,h '0lhmd n'~ an Veda s fnl tJ r Ax., li'e.
ht'¢on ll U 11' by It'll ln

UATEJ ~" 3

F1DEL1TY CORPORATION

ITusVFit' S^C?Mli I; A:rr01 AUTIIIsvnlATI0IN

o,",,LUF.~~.~ro„e".a~n,..rl,.,eu~,l,lln++,ulln..,ewnul~<u

ATTEST

OY

I1PIITRI7 STATE TRUST CObW ANY OF NEW YORK

,a E . nnulr.10

/1

URiZFp JrFICGII

BFCf1SIAAy

I"M CSILIENT

N



Illili": I! y ".w my a. Mow, p:.

uwn

pw: por ;,, up;r, aul

a =a_,m WA to 9-0 Win- am Quamst MIM VO_

.q) !,

MM IMMI,

MMM am R!

o~lf -ofaq ?aqpack uymd 243 w) nm=Tg 1.41 umm; m unp wuna pam"n Q

Alrja~zj "j,

.1.1HA' *0D 01 N01 1011i 30

FSES

03=uNw)

met 4 AWN WZ

ounwoo3o CGIVNIGEOGFIS 118083ANOD Sli

Nommodmoo wi3ow

# NSYLVPNIA COMPANY
## SMKMG FUND DEBENTURE G'..!E 1°54



## ASSREVIATIONS

SIM VANN RMMWK IV W&=<: hc, 11 - -111·     and     u&tri.

TAN d :

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| SHAKIR MARIS ABDULLAH, | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) |
| FRANCIS H. FORD, Clerk, CATHERINE | ) |
| BRENNAN, Assistant Clerk, and REVEREND | ) |
| DANIEL IZZO, | ) |
|     Defendants. | ) |

C.A. NO. 05-11539-DPW

### AFFIDAVIT OF JAMES R. LEMIRE

1. My name is James R. Lemire. I am currently a Massachusetts Superior Court judge.

2. In 2004 and 2005, I was an Assistant District Attorney in Worcester, Massachusetts.

3. Sometime in December 2004 or January 2005, Superior Court Judge John McCann gave me a letter from Shakir Maris Abdullah that enclosed two corporate debentures.

4. I asked the Massachusetts State Police to conduct an investigation of the corporate debentures to see if a financial crime had occurred.

5. I subsequently gave the original materials I had received from Judge McCann to Trooper John Conron, who was conducting the investigation.

6. When Trooper Conron concluded his investigation, he returned the original materials, including the two original corporate debentures, to me.

7. I returned the original materials, including the two original corporate debentures, to the Worcester Superior Court clerk's office, in an envelope addressed to Clerk Francis Ford.

**Signed under the pains and penalties of perjury this** _____ **day of February, 2007.**

%
h'''e''ᵏ  ..,    - 0*1 . A
                12      .!f/
.n. James R. L mᴾe
assachusetts Superi r Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| SHAKIR MARLS ABDULLAH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | C.A. NO. 05-11539-DPW |
| | ) | |
| FRANCIS H. FORD, Clerk, CATHERINE | ) | |
| BRENNAN, Assistant Clerk, and REVEREND | ) | |
| DANIEL IZZO, | ) | |
|     Defendants. | ) | |

### <u>AFFIDAVIT OF JOHN MCCANN</u>

1. My name is John S. McCann. I am a Judge at the Massachusetts Superior Court.

2. Sometime in December 2004 or January 2005, I took from Corinne Gorman and Matthew Lefebvre a letter from Shakir Maris Abdullah that enclosed two corporate debentures and requested that the Court establish a legal defense fund on his behalf.

3. I gave the entire contents of the letter, including the enclosures, to James R. Lemire, who was then an Assistant District Attorney.

**Signed under the pains and penalties of perjury this** /V **ay of February, 2007.**

_____
Honorable John McCann

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHAKIR MARIS ABDULLAH,                )
    Plaintiff,                           )
v.                                                   )                    C.A. NO. 05-11539-DPW

FRANCIS H. FORD, Clerk, CATHERINE    )
BRENNAN, Assistant Clerk, and REVEREND )
DANIEL IZZO,                               )
    Defendants.                        )

**AFFIDAVIT OF ANNE STERMAN**

1. My name is Anne Sterman. I am an Assistant Attorney General for the Commonwealth of Massachusetts.

2. In late December, 2006, I was assigned to represent Defendants Francis Ford and Catherine Brennan in the instant matter.

3. At that time, Cathleen Collins gave me the case file, which I reviewed.

4. Since late December, 2006, Ms. Collins has been on an extended leave from the office.

5. On February 9, 2007, I was speaking with Ms. Collins and she told me that there were additional documents pertaining to the case that were not in the case file. She told me that those documents were in a manila envelope in her file drawer.

6. I retrieved those documents and discovered that among them were two original corporate debentures, copies of which are attached to Mr. Lefebvre's affidavit.

**Signed under the pains and penalties of perjury this** 〱⊙ **day of February, 2007.**

Anne Sterman
Assistant Attorney General