UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | ) |
|---|---|
| SHAKIR MARIS ABDULLAH, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| FRANCIS H. FORD, Clerk, CATHERINE | ) |
| BRENNAN, Assistant Clerk, and REVEREND | ) |
| DANIEL IZZO, | ) |
| Defendants. | ) |

C.A. NO. 05-11539-DPW

_____)

## MEMORANDUM OF LAW IN SUPPORT OF FRANCIS FORD AND CATHERINE BRENNAN'S MOTION FOR SUMMARY JUDGMENT

Defendants Francis Ford and Catherine Brennan submit this memorandum of law in support of their motion for summary judgment on all counts of Plaintiff's Complaint. Plaintiff Shakir Maris Abdullah alleges that Defendants Ford and Brennan converted his property in violation of his civil rights under 42 U.S.C. §1983. However, Plaintiff's claims fail because:

(1) Plaintiff admits that he possessed the allegedly converted property as recently as February 28, 2007;

(2) To the extent Plaintiff claims that Ford and Brennan converted other documents sent to them, Plaintiff's claims are moot because the documents in question can, and will, with the Court's approval, be returned to him so there is no conversion;

(3) Plaintiff's damages, if any, are de minimus because the property alleged to have been converted is valueless;

(4) Plaintiff's claim for conversion under 42 U.S.C. §1983 fails as a matter of law, because he has an adequate postdeprivation remedy in the state courts.

(5) Plaintiff cannot meet his burden of proof at summary judgment to prove the claims he alleges; mere unsupported allegations are insufficient as a matter of law to permit the case to

proceed.

Accordingly, summary judgment should enter for the Defendants.

## FACTS

Plaintiff alleges that the Clerk and the Assistant Clerk of the Worcester Superior Court unconstitutionally converted documents sent to them by the plaintiff, Shakir Maris Abdullah, who is, and at all relevant times has been incarcerated at Old Colony Correctional Center. Complaint, ¶¶1, 2. Abdullah claims that he sent a $100,000 note and instructed the Worcester Clerk's office to open a bank account for his legal defense fund for an appeal of his first degree murder conviction. Complaint, ¶1. A brother Dan Izzo of the Church of Resurrection, Division of Cryogenics, sent Abdullah the alleged $100,000 note and instructed him to open a defense fund with the Clerk's office. Complaint, ¶5.

1. The $100,000 Novelty Note

For the first time, in his opposition to Defendant's Motion for Reconsideration, Abdullah makes clear exactly what he claims was converted: a $100,000 novelty note "under U.S.C. Title 12 Sec. 412." [Opp. ¶2] Remarkably, Abdullah also makes clear that he still possessed the note and sent it to this court on March 1, 2007. [Opp. ¶2]

On its face, it is clear that this is not legal tender: it is what Brother Izzo referred to as a "novelty note." [Brother Izzo's November 19, 2004 letter to Abdullah's prison mailroom, attached hereto as Exhibit 1] Abdullah alleges that Assistant Clerk Brennan never established the requested legal defense fund, and also never returned the $100,000 bank note to him, instead mailing back a brand new counterfeit one million dollar bill. Complaint, ¶¶ 13, 14. Plaintiff filed this suit seeking the return of his money and claimed emotional distress damages as a result of the alleged failure to return the $100,000 note. Complaint, ¶¶ 26, 28.

2

2.      The Other Documents: The Cancelled Corporate Debentures

Although Plaintiff now clearly argues the conversion of the novelty note, as an aid to the

Court, the Defendants present the facts regarding the corporate debentures.

a.      Brennan's Involvement

Sometime in December, 2004 or January, 2005, Defendant Catherine Brennan, an

assistant clerk at the Worcester Superior Court, was opening the court's mail when she saw a

letter from the plaintiff, Shakir Maris Abdullah.  [Brennan Affidavit, ¶2].  The letter contained

two corporate debentures[1] – one issued by the Fidelity Corporation and one issued by the

Pennsylvania Corporation – and Mr. Abdullah asked the court to deposit them in a bank to fund

his legal defense. [Brennan Affidavit, ¶2].  He requested a fund to finance the appeal of his

murder conviction.  [Conron Affidavit, Exhibit 1].  Knowing that the clerk's office did not have

the authority to create such a fund, Ms. Brennan returned the letter and its contents to Mr.

Abdullah.  [Brennan Affidavit ¶2]

But, within several weeks, Mr. Abdullah again sent the letter with the same contents

(including the two debentures) to the Worcester Superior Court clerk's office.  [Brennan

Affidavit ¶2]  Again, Ms. Brennan returned the letter and its contents to Mr. Abdullah at the Old

Colony Correctional Center.  [Brennan Affidavit ¶2] This was the last Ms. Brennan saw of the

letter and the two debentures, until over a year later when Mr. Abdullah sued her. [Brennan

Affidavit ¶4]

b.      Clerk's Office Gives Documents to District Attorney

---

[1] A debenture is a "long term unsecured debt instrument, issued pursuant to an indenture.  A promissory note or bond backed by the general credit and earning history of a corporation…"  BLACK'S LAW DICTIONARY, 6th Ed., P. 401.

On or about January, 2005, unbeknownst to Ms. Brennan, Mr. Abdullah sent a third letter and the same two debentures (issued by the Fidelity Corporation and the Pennsylvania Corporation) to the Worcester Superior Court clerk's office.  [Brennan Affidavit ¶4]  This time Corinne Gorman, the First Assistant Clerk of the Worcester Superior Court, and office manager Matt Lefebvre, reviewed the letter and debentures.  [Gorman Affidavit ¶¶ 1, 2, & 3] Ms. Gorman and Mr. Lefebvre gave them to Superior Court Judge John McCann. [Lefebvre Affidavit ¶ 3]

Judge McCann brought the correspondence and the debentures to the attention of Assistant District Attorney James R. Lemire. [Judge McCann Affidavit ¶¶ 1, 2, & 3]  Assistant District Attorney (now Superior Court Judge) Lemire then requested a State Police investigation into the authenticity of the debentures, how the plaintiff came to possess them, and whether any crime had been committed.  [Judge Lemire Affidavit ¶ 4]

c.    Ford's Involvement

At the time of Mr. Abdullah's correspondence with the court, the Clerk of the Court was defendant Ford.[2] He was aware that the clerk's office had received Mr. Abdullah's correspondence, but had no personal involvement with the matter or specific knowledge of the contents of the correspondence.  Subsequently, Mr. Ford learned at some point that the correspondence, including the debentures, had been turned over to the District Attorney and State Police for investigation.[3]  [Ford Affidavit, ¶¶2-3].

d.    State Police Investigation

In late January 2005, Sergeant Kelly of the Massachusetts State Police assigned Trooper John Conron to the investigation.  [Kelly Affidavit ¶¶ 2 & 3]  First, Trooper Conron inventoried Mr. Abdullah's letter and its contents: two corporate debentures – one issued by the Fidelity

---

[2] Mr. Ford no longer holds that position.  He is now an attorney in private practice.
[3] In fact, Mr. Abdullah refers to Mr. Ford as a female in his complaint. [See Complaint ¶ 3]

4

Corporation, and the other a Pennsylvania sinking fund debenture – with cancellation marks that Mr. Abdullah received from Brother Dan Izzo of Syracuse, New York; a copy of Mr. Abdullah's online appeal, a copy of United States Code Title 12, Chapter 3, Subchapter XII, Section 412 (image of a $100,000 bill is incorporated in the copy), and a copy of a card from the "Rev. Dan Izzo." [Conron Affidavit ¶¶ 5 & 7]

Trooper Conron conducted a LEAPS/NCIC[4] query concerning the two debentures. The response to the query was that there was "No Record" for either debenture. [Conron Affidavit ¶ 11] The Trooper also investigated just how Mr. Abdullah got the debentures.

Trooper Conron learned, from reviewing the materials given to him by Sergeant Kelly, that Mr. Abdullah posted a request for legal donations and assistance in his murder appeal on an Internet website. [Conron Affidavit ¶ 5] Several months later Brother Dan Izzo, of the Cryonic Life Insurance Company's Department of General Resurrection, sent him a Christmas card with the debentures and a copy of a Federal Reserve note enclosed. [Conron Affidavit ¶ 5; Complaint ¶ 5] Brother Izzo instructed Mr. Abdullah to send the debentures to the court to set up a legal defense fund. [Conron Affidavit ¶ 5] Mr. Abdullah followed Brother Izzo's instruction.

Trooper Conron interviewed Brother Izzo. Brother Izzo admitted that he got the debentures on EBAY two years before, and told the trooper that they no longer had any value. [Conron Affidavit ¶ 17]

Brother Izzo's statement that the debentures were valueless was confirmed by Trooper Conron's independent investigation into the status of the debentures. [Conron Affidavit, ¶¶8-16] Trooper Conron learned that the two debentures, one from the Fidelity Corporation and the other from the Pennsylvania Corporation, had been cancelled, indicating their redemption, in the

---

[4] LEAPS/NCIC is the Law Enforcement Agencies Processing System / National Crime Information Computer.

1970s.  Because Fidelity Corporation was a Virginia corporation, Trooper Conron contacted the Virginia Division of Securities and Retail Franchising regarding the debenture issued by the Fidelity Corporation.  This particular debenture is a 5 ½ % convertible subordinated debenture that was issued on October 13, 1978 for one hundred and eight thousand dollars.  It has a serial number of RU29181, and states that it was issued to CEDE & CO.  While the debenture's due date is May 1, 1988, the cancellation marks on the debenture indicate it was cancelled four days after it issued: on October 17, 1978.  [Conron Affidavit, ¶15]  In any event, the Fidelity Corporation terminated its existence over fifteen years ago, on September 4, 1991.  [Conron Affidavit ¶¶ 8 & 9]

The other debenture was a Pennsylvania 9 % sinking fund debenture with a face value of five thousand dollars.  It was equally valueless.  It had a due date of 1994, but it had been cancelled on January 2 of 1974. [Conron Affidavit ¶¶ 12-16]  Having determined that the debentures had been cancelled and no longer were of value, Trooper Conron concluded his investigation and returned all of the original documents to the District Attorney's Office. [Conron Affidavit ¶ 20]

        e.      <u>Chain of Custody of the Two Debentures In Question</u>

As noted above, Catherine Brennan twice returned Mr. Abdullah's letters with their contents to his attention at Old Colony Correctional Center. [Brennan Affidavit ¶¶ 1-3]  That was the extent of her involvement with his correspondence. [Brennan Affidavit ¶¶3-4]

As previously referenced, in January, 2005, Mr. Abdullah sent the same letter and debentures to the Court for a third time.  This time, First Assistant Clerk Corinne Gorman and office manager Matt Lefebvre gave the letter and debentures to Worcester Superior Court Judge John McCann, who gave it to then-Assistant District Attorney James R. Lemire.  [Judge McCann

Affidavit ¶¶ 2 & 3]  Lemire gave these documents to Trooper Conron, [Judge Lemire Affidavit ¶ 5], who returned them to the District Attorney's Office at the end of the State Police investigation. [Conron Affidavit ¶ 20]

At this point, then-ADA Lemire returned the originals (including the original cancelled debentures and photocopy of what purported to be a one hundred thousand dollar note) to the Worcester Superior Court clerk's office in an envelope addressed to Clerk Francis Ford. [Judge Lemire Affidavit ¶ 7]  The original material was then placed in a court file. After this suit was filed, on October 6, 2006 Assistant Attorney General Jennifer Laverty went to the Worcester Superior Court and obtained the Court's file, as well as an itemized list of documents, from the Clerk's office.  [Laverty Affidavit ¶¶ 2 & 3]  She then hand-delivered the items, including the debentures, to Cathleen Collins, a paralegal in the Office of the Attorney General in Boston who placed the file in her desk drawer. [Collins Affidavit ¶¶ 2 & 3]  As of December 22, 2006, Ms. Collins left the office on extended leave.  Also on or about December 22, 2006, Ernest Sarason, the attorney assigned to Plaintiff's case, left the office after being appointed to the bench of the Boston Municipal Court.  The case was then assigned to Assistant Attorney General Anne Sterman, and she was given the case file.  However, that file did not include the two original debentures.  [Sterman Affidavit ¶3]  On Friday, February 9, 2007, Ms. Sterman contacted Ms. Collins to ask a question about the case, and Ms. Collins informed her that there were additional materials relevant to the case in an envelope in Ms. Collins' desk drawer.  [Sterman Affidavit ¶5]  Ms. Sterman subsequently located the original Worcester Superior Court file (including the original cancelled debentures and photocopy) in Ms. Collins' desk.  [Sterman Affidavit ¶6] To date, that file, including the debentures that had originally been sent to the Worcester clerk's office, remains with Assistant Attorney General Sterman.

## ARGUMENT

### I.    Standard of Review

Summary judgment should be granted where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists.  See Fed. R.Civ. P. 56.  Although disputed facts are viewed in the light most favorable to the opposing party, the court does not credit "conclusory allegations, improbable references, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F. 2d a5, 8 (1st Cir. 1990).

The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those portions "of the record showing the absence of a genuine dispute of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." Price v. General Motors Corp., 931 F. 2d 162, 164 (1st Cir. 1991) (italics in original).  The nonmoving party cannot simply rest upon mere allegations.  Instead the nonmoving party must produce specific, provable facts, which establish there is a triable issue.  If the evidence is merely colorable or not significantly probative, summary judgment must be granted.  Cronin v. Town of Amesbury, 895 F. Supp. 375, 382-383 (D. Mass. 1995).  A dispute is genuine if it "may reasonably be resolved in favor of either party." Cadle Co. v. Hayes, 116 F. 3d 957, 960 (1st Cir. 1997).  "A fact is material if it has the capacity to sway the outcome of the litigation under the applicable law." Id.

II.   **Plaintiff Admits That He Possessed The Allegedly Converted Property As Recently As March 1, 2007, Negating His Claims Against Ford And Brennan.**

Plaintiff's claims are rendered moot and without merit by his own admission. In opposing Ford and Brennan's Motion for Reconsideration, Plaintiff "enclosed the original envelope and contents that he received from Br. Dan Izzo on December 4, 2004" including, among other items, "the 'original $100,000 Note for the Court.'" Opposition, ¶2. Defendants Ford and Brennan cannot have converted property in 2005 which was in the Plaintiff's possession as recently as February, 2007, and which the Plaintiff sent to this Court with his Opposition. Taking Plaintiff's Opposition at face value, there can be no genuine issue of material fact remaining – Ford and Brennan cannot have converted the Plaintiff's property.

III.  **To The Extent The Plaintiff's Complaint Concerns Property Other Than That Which He Sent This Court On February 28, 2007, Attorneys for the Defendants Have Located And Can Return Plaintiff's Property, Rendering the Suit Moot.**

The heart of Plaintiff's case appears to be the allegation that he sent a "$100,000 note" to the Worcester Superior Court clerk's office, and that the note was never returned to him. He now denies any other conversion. After investigation, the Attorney General's office has located two original cancelled corporate debentures, as well as a $100,000 "novelty note," both of which the Worcester Superior Court received in reference to Abdullah's request to establish a legal defense fund. Sterman Affidavit, ¶6. In his opposition to Ford and Brennan's Motion for Reconsideration, Abdullah indicates that he is not seeking return of the corporate debentures, but rather of the novelty note. Opposition, ¶1-2. However, Abdullah then indicates that he sent the original novelty note to the Court along with his Opposition on March 1, 2007. Opposition, ¶2. Thus, Abdullah has filed a conversion claim for a document he had in his possession. In any event, Ford and Brennan can provide, with the Court's guidance, the entire contents of the

9

Worcester Superior Court's file regarding Abdullah's correspondence. Thus, whether Plaintiff

seeks the novelty note or any other document, it is available to him. Ford and Brennan seek the

Court's guidance in returning whatever items Abdullah is seeking.

When Plaintiff's property is returned, his claims will be moot; thus no controversy

remains. As federal court jurisdiction lies only where an actual case or controversy exists for

resolution by the court, see U.S. Const. Art. III, §2, cl. 1, judgment should enter for the

Defendants. Further, the case or controversy requirement endures throughout the lifetime of an

action, so that "Article III considerations require that an actual case or controversy 'must be

extant at all stages of review, not merely at the time the complaint is filed.'" Ramirez v. Sanchez

Ramos, 438 F.3d 92, 100 (1st Cir. 2006), quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974).

Where it is now clear that the Plaintiff admits he possessed the $100,000 novelty note he

complained of, judgment should enter for the Defendants.

To establish mootness, "the challenger must show that, after the case's commencement,

intervening events have blotted out the alleged injury and established that the conduct

complained of cannot reasonably be expected to recur. If it is sufficiently plain that intervening

events have wiped the slate clean, the case has become moot." Id. (internal citations omitted).

Here, Abdullah's sole complaint is that his property was not returned to him after he sent it to the

Worcester Superior Court. Either Plaintiff had the property all along and has now filed it with

this Court (thus he has no claim), or he sent it to the Worcester Superior Court Clerk's office,

and upon this Court's direction, it can be returned to him. Under either scenario, his claim is

moot. Upon return of the property, Plaintiff's claimed injury will end, and the controversy will

be extinguished.

10

**IV.    Plaintiff Cannot Recover Damages For His Conversion Claim Because The Property Alleged to Have Been Converted Has No Value.**

Conversion is the "intentional exercise of dominion and control over personal property or a chattel, that so seriously interferes with the right of another to control that property that the tortfeasor may justly be required to pay the other the full value of the property." 18 AM. JUR. 2d, *Conversion* §1 (2006); RESTATEMENT (SECOND) OF TORTS §222A (1965). Damages for conversion are the fair market value of the property converted. 18 AM. JUR. 2d, *Conversion* §116 (2006).

Plaintiff cannot, as a matter of law, recover damages on his claim for conversion because, as argued above, his property can be returned. Moreover, this property has de minimus value. The debentures are cancelled, so any value they had expired decades ago. Conron Aff., ¶15. The novelty note is obviously a photocopy of a page from the United States Code and thus, is not legal tender. F. R. Evid. 201 (allowing the Court to take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.")[5]

This is fatal to his claim for damages. Defendants have presented affidavit testimony demonstrating that the debentures were cancelled and without value. See generally Conron Aff. Reverend Izzo, who provided the debentures to the Plaintiff, has acknowledged that the debentures are valueless. Conron Aff. at ¶17. Trooper Conron's investigation independently

_____

[5] The U.S. Treasury's Bureau of Engraving and Printing produced a $100,000 Gold Certificate for only three weeks, from December 18, 1934 through January 9, 1935. These Gold Certificates, which were literally gold in color, were issued by the Treasurer of the United States to Federal Reserve Banks against gold bullion held by the Treasury. At no point were these Gold Certificates ever circulated among the general public; in fact, it is illegal to possess this note. U.S. Treasury and Bureau of Engraving and Printing website, portions of which are attached hereto as Exhibit 2.

11

concluded that the debentures were valueless.  Conron Aff. at ¶15.  The debentures had marks indicating their cancellation.  Id.    Plaintiff cannot prove that the debentures have value, and so cannot, as a matter of law, recover damages on his conversion claim, even if he could argue that he had been deprived of his documents.  Nor can the Plaintiff show that the novelty note has any value.

Further, Plaintiff, on three occasions, gave these documents to the Clerk's office, the third time after knowing that the Clerk's office could not use them for the alleged defense fund. He repeatedly relinquished control of his property.  He cannot reasonably maintain, under these facts, that his property was taken from him or that he was intentionally deprived of his property. As such, judgment should enter for the Defendants.

## V.    Plaintiff Cannot Sustain His §1983 Claim Because He Has An Adequate Postdeprivation Remedy In State Court.

Even if the property in question was not returned, and even if the property had value, the Plaintiff is unable to meet the legal requirements for a claim under 42 U.S.C. §1983, because he was not denied the due process of a state remedy: a tort action in state court.

To succeed on a claim under 42 U.S.C. §1983, Abdullah must show that "(1) [] the conduct complained of was committed by a person acting under color of state law; and (2) [] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  Parratt v. Taylor, 451 U.S. 527, 535 (1981).  Abdullah will be unable to meet the second requirement.

In Parratt v. Taylor, the Supreme Court held that a deprivation of property by a state actor is not actionable under §1983 if the state, through its tort law, provides "a remedy to persons who believe they have suffered a tortious loss at the hands of the state."  451 U.S. 527, 543

12

(1981).  That state tort law places limits on the tort liability of the state or state actors "does not mean that the state remedies are not adequate to satisfy the requirements of due process."  <u>Parratt</u> at 544.

Indeed, the facts in <u>Parratt</u> are quite similar to the facts here.  In <u>Parratt</u>, the plaintiff, a prisoner, placed ordered hobby products to be sent by mail.  The packages arrived at the prison and were signed for by prison officials, but the Plaintiff never received the packages.  It was unclear whether the loss was accidental or purposeful.  Nonetheless, the court held that the plaintiff had not alleged a violation of the Fourteenth Amendment for the purposes of sustaining a §1983 claim.  The Court found that relief under §1983 was unavailable to the Plaintiff because "[t]he State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the state."  <u>Parratt</u> at 532.  To hold otherwise, the court reasoned, "would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under §1983...[p]resumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under §1983." <u>Parratt</u> at 544.

Like the plaintiff in <u>Parratt</u>, Mr. Abdullah has a remedy in Superior Court under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch.258.  As such, he cannot sustain a claim in the federal courts under §1983 and judgment should enter for the Defendants.

## <u>CONCLUSION</u>

WHEREFORE, Defendants Ford and Brennan respectfully request that this Court enter judgment in their favor on all counts of the Complaint.

## REQUEST FOR A HEARING

Defendants Francis Ford and Catherine Brennan respectfully request a hearing on their

Motion for Summary Judgment.

Respectfully Submitted,

FRANCIS FORD and CATHERINE BRENNAN

By their Attorneys,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Mary O'Neil
Mary O'Neil, BBO #379430
Anne Sterman, BBO #650426
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
Date:   April 26, 2007                          (617) 727-2200 x 2737

## CERTIFICATE OF SERVICE

I, Anne Sterman, hereby certify that on April 26, 2007, I served a copy of the above
memorandum upon the pro se plaintiff, by mailing a postage pre-paid copy to:

Shakir Maris Abdullah
Old Colony Correctional Center
One Administration Road
Bridgewater, MA  02324

/s/ Anne Sterman
Anne Sterman
Assistant Attorney General

14

*To the Court Clerk*

Dear Prison Officials:                    Nov 19th 2004

Mailroom;    *Donation Note For a General Legal Fund*

Concerning the American Art Classic (AAC ) $10,000 Note Specimen series 2004 and or a worthless Stock Certificate.

I mailed a letter to some prisoners because

last week USA Today had an Internet news story concerning America's 2.2 Million People in US Jails, the article had a link to " Prison Pen Pals " with names and Prison addresses of @65 people seeking Legal and or monetary help and @ 35 kids under 21with jail time over 3 years, out of @2100 prisoner postings.

I wrote to this group asking them to ask the Court to endorse the specimen note under USC Title 12 sec 412 and Deposit the note with the Court Clerk for a Legal Fund ( and to some a Trust and Text to Speech Software for Courts and Prisons )

If the Court has Special Drawing Right certificates/powers it maybe able to establish limited Legal Fund Trusts under USC Title 12 sec 412.

I did want to inform the prisoners that I hold bearer instruments that the Court could use as collateral under USC Title 12 sec 342 In the form of National Bank Notes or Guaranteed National Bank Notes.

I do not know much about prison or that other Trust programs do exist , my goal is to provide the Courts with Text to Speech Software and a possible EXHILE OF PRISONER program to volunteer mining prison work camps in one of America's 1000s of abandoned silver mines.

As a member of the clergy I thought I should do something productive for the Courts and possible the prisoners.

It seems the entire mailing was a failure because the novelty note.

If you have the $10,000 note specimen and or stock certificate you can keep it or throw it away.

*No Reply Needed*

*( I'm scared of jail )*

Br. Dan Izzo
512 Onondaga Ave.
Syracuse, NY 13207

SMA 0031



About the BEP | The BEP Store | Locations and Tours | Classroom    PRIVACY STATEMENT

CONTACT US | CAREER OPPORTUNITIES | PROCUREMENT | FOIA | MEDIA | FAQ | ESPAÑOL

FACTS & TRIVIA: **Select Page**    QUICK SEARCH: **Select Keyword**

[ Back ]

U.S. Banknotes

Anti-Counterfeiting

Money Facts

Shredded & Mutilated

For Collectors

Collector Fact Sheets

**Large Denominations**

Small Denominations

Fractional Currency

No Longer In Circulation

E-mail Updates

SEARCH:

[GO>]

SITE MAP >

**For Collectors**

Large Denominations

**One Hundred Thousand Gold Certificate**

▶ **Related Topics:**

Large-Size Five Hundred Dollar Federal Reserve Note (Blue Seal)

Small-Size Five Hundred Dollar Federal Reserve Note (Green Seal)

One Thousand Blue Seal

One Thousand Green Seal

Five Thousand Green Seal

Ten Thousand Green Seal (Series 1918)

Ten Thousand Green Seal (b)

One Hundred Thousand Gold Certificate

Series: 1934
Portrait: Woodrow Wilson
Back Vignette: The United States of America - 100,000 - One Hundred Thousand Dollars

The $100,000 Gold Certificate was never released into general circulation and was only used in fiscal channels. This note cannot be legally held by currency note collectors.

[ print ] [ back to top ]

© 2007 The United States Treasury Bureau of Engraving and Printing
Accessibility Statement

 



HOME   CONTACT US   SITE INDEX   FAQ   FOIA   ESPAÑOL   ACCESSIBILITY   PRIVACY & LEGAL

UNITED STATES
DEPARTMENT OF
THE TREASURY

EDUCATION                                                     *Treasury's Learning Vault*

search   [SEARCH]

News
Direct Links
Key Topics
Press Room
About Treasury
Offices
Bureaus
Education
  Duties & Functions
  History of the Treasury
  Tour the Treasury Building
  Frequently Asked Questions
    Coins
    ▸ Currency
      Personal Finance
      International
    Taxes
    Financial Markets
    Accounting & Budget
    Treasury Department
  Fact Sheets
  For Kids
  Office of Executive Secretary
Site Policies and Notices

## FAQs: Currency

### DENOMINATIONS

What denominations of currency are in circulation today? Will any new denominations be produced?

What was the highest denomination of United States currency ever produced?

What denominations of currency notes is Treasury Department no longer printing?

Did the Treasury Department ever produce $1 million currency note? I have one I want to know about.

Why did the Treasury Department remove the $2 bill from circulation?



Buying, Selling &
Redeeming
▸ Denominations
Legal Tender Status
Portraits & Designs
Production &
Circulation

Fact Sheets: Currency
& Coins

---

*Question* – What denominations of currency are in circulation today? Will any new denominations be produced?

*Answer* – The present denominations of our currency in production are $1, $2, $5, $10, $20, $50 and $100. The purpose of the United States currency system is to serve the needs of the public and these denominations meet that goal. Our present currency in circulation satisfies the public at large, and the Bureau of Engraving and Printing (BEP) has no plans to change the denominations in use today.

^ TOP

---

*Question* – What was the largest currency denomination ever produced?

*Answer* – The largest denomination of currency ever printed by the Bureau of Engraving and Printing (BEP) was the $100,000 Series 1934 **Gold Certificate** featuring the portrait of President Wilson. These notes were printed from **December 18, 1934** through **January 9**, 1935 and were issued by the Treasurer of the United States to Federal Reserve Banks only against an equal amount of gold bullion held by the Treasury Department. The notes were used only for official transactions between Federal Reserve Banks and were not circulated among the general public.

^ TOP

---

*Question* – What denominations of currency notes is the Treasury Department no longer printing?

*Answer* – On July 14, 1969, David M. Kennedy, the 60th

Secretary of the Treasury, and officials at the Federal Reserve Board announced that they would immediately stop distributing currency in denominations of $500, $1,000, $5,000 and $10,000. Production of these denominations stopped during World War II. Their main purpose was for bank transfer payments. With the arrival of more secure transfer technologies, however, they were no longer needed for that purpose. While these notes are legal tender and may still be found in circulation today, the Federal Reserve Banks remove them from circulation and destroy them as they are received.

^ TOP

*Question* – Did the Treasury Department ever produce a $1 million currency note? I have one that I want to know about.

*Answer* – We receive many inquiries asking if the Treasury Department ever produced a $1 million currency note. People have sent in copies of these notes. We have found that they are nonnegotiable platinum certificates known as a "One Million Dollar Special Issue." These notes were from a special limited copyrighted art series originally sold by a Canadian firm for $1.00 each as a collectible item. They are not official United States currency notes manufactured by our Bureau of Engraving and Printing (BEP). As such, they are not redeemable by the Department of the Treasury.

You may be interested to know that the BEP learned of these certificates in the spring of 1982. All related correspondence was forwarded to the United States Secret Service to decide if there were any violations of Federal currency laws. The Secret Service subsequently advised, however, that these certificates did not violate any United States law.

^ TOP

*Question* – Why did the Treasury Department remove the $2 bill from circulation?

*Answer* – We receive many letters asking why the $2 bill is no longer in circulation. Contrary to the impression of many people, the Treasury Department did not stop circulating the $2 bill. On **September 12**, 1996, Robert E. Rubin, the 70th Secretary of the Treasury, was presented with a new series $2 bill. The Series 1995 notes were printed at the Bureau of Engraving and Printing's (BEP) Western Currency Facility and bear the seal of the Federal Reserve Bank of Atlanta.





The $2 bill remains one of our circulating currency denominations. According to BEP statistics, 590,720,000 Series 1976 $2 bills were

printed and as of **February 28**, 1999, there was $1,166,091,458 worth of $2 bills in circulation worldwide.

The key for successfully circulating the two-dollar bill is for retailers to use them just like any other denomination in their daily operations. In addition, most commercial banks will readily supply their retail customers with these bills if their customers request them in sufficient volume to justify stocking them in their vaults. However, neither the Treasury Department nor the Federal Reserve System can force the distribution or use of any denomination of currency on banks, businesses or individuals.

^ TOP

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

SHAKIR MARIS ABDULLAH,                 )
     Plaintiff,                            )
v.                                     )         C.A_ NO. 05-1 1539-
                                       )         DPW

FRANCIS H. FORD, Clerk, CATHERINE      )
BRENNAN, Assistant Clerk, and REVEREND )
DANIEL IZZO,                           )
     Defendants.                           )

## AFFIDAVIT OF CATHERINE BRENNAN

1. My name is Catherine Brennan. I am an assistant clerk at the Worcester Superior Court_

2. On two occasions, I received correspondence from Shakir Mans Abdullah that enclosed two original corporate debentures.

3. On both occasions, I returned all original materials to Mr. Abdullah.

4. Unbeknownst to me, Mr. Abdullah apparently sent his materials to the Court a third time, at which point I'm told the materials were received by Con nne Gorman and Matt Lefebvre, and passed on to the District Attorney's office by Judge McCann. I was unaware that this transpired until I was told a few days ago

5. I have two personal banking accounts, and **an** additional account jointly with my mother.

**Signed under the pains and penalties of perjury this**       **day of** February, 2007.

_____
Catherine Brennan

UNITED STATES DISTRICT CO
FOR THE DISTRICT OF MASSACHUS T⁻

| | | |
|---|---|---|
| | t | |
| SHAKIR MARIS ABDULLAti,<br> Piaintirr. | t | |
| v. | l | C.A. NO. 05-11539-DPW |
| FRANCIS H. FORD. Clerk. CATHERINE<br>BRENNAN. Assistant Clerk. and REVEREND<br>DANIEL IZZO. | l | |
| Defendants. | 1 | |
| | 1 | |

## AFFIDAVIT OF CATHLEEN COLLINS

1. My name is Cathleen Collins. I am a paralegal in the Office of the Attorney General for the Commonwealth of Massachusetts.

2. In October, 2006, Jennifer Laverty, Assistant Attorney General, brought me the Worcester Superior Court's file regarding Shakir Maris Abdullah's request to establish a legal defense fund on his behalf. This file included two original corporate debentures.

3. I placed the file in my file drawer.

Signed under the pains and penalties of perjury this ~07 day of February, 2007.

_____

Cathleen Collins
Paralegal

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | | |
|---|---|---|
| SHAKIR MARIS ABDULLAH, | ) | |
|     Plaintiff, | ) | |
| v. | ) | C.A. NO. 05-11539-DPW |
| | | |
| FRANCIS H. FORD, Clerk, CATHERINE | ) | |
| BRENNAN, Assistant Clerk, and REVEREND | ) | |
| DANIEL IZZO, | ) | |
|     Defendants. | ) | |

### AFFIDAVIT OF TROOPER JOHN M. CONRON

1. My name is John M. Conron. I am currently a Trooper in the Massachusetts State Police, a position I have continuously held for the past seven years.

2. Presently, I am assigned to the State Police Detective Unit for Worcester County, Criminal Section, located at 19 Midstate Drive, Auburn, Massachusetts and have been so for the past two (2) years. Previous assignments have included the Uniform Branch of the State Police, having been assigned to the Northampton and Sturbridge Barracks.

3. During my tenure as a Trooper I have conducted and participated in numerous investigations relative to murder, rape, sexual assault, child abuse, child pornography, computer related crimes, Internet related crimes, and other felony investigations. The following is a detailed record of an investigation I conducted.

4.    On Tuesday, January 25, 2005 at approximately 4:00PM, Sergeant Stephen Kelly advised me of a possible financial crime.

5.    Sergeant Kelly outlined the following facts for me: Shakir Mar's ABDULLAH is prisoner at Old Colony Correctional Center serving a life sentence for murder. ABDULLAH alleges he has been wrongfully convicted and posted an appeal on a website seeking either legal assistance or donations to fight his conviction. In response to his appeal ABDULLAH received two corporate debentures from Brother Dan Izzo of 512 Onondaga Avenue in Syracuse, New York. ADBULLAH forwarded the corporate debentures to the Clerk of Courts and asked the debentures be deposited into a legal fund on his behalf.

6.    I was assigned case number 2005-115-0037 relative to the investigation.

7.    Sergeant Kelly provide me with copies of the corporate debentures, a letter from Shakir Mans Abdullah to the Clerk of the Court of Worcester,' a copy of Shakir Mans Abdullah's online appeal, a copy of United States Code Title 12, Chapter 3, Subchapter XII, Section 412 (a image of $100,000 bill is incorporated in the copy), and a copy of a card from the "Rev Dan Izzo". See Exhibit 1.

8.    On Wednesday, January 26, 2005 I contacted the Virginia Division of Securities and Retail Franchising regarding the debenture issued by the Fidelity Corporation. The debenture states that it is a $5\frac{1}{2}$ percent convertible subordinated debenture issued on October 13, 1978 for one hundred and eight thousand dollars. The debenture bears a serial number of RU29181. The debenture appears to be issued to.CEDE & CO. The

2

certificate's issue date reads October 13, 1978. Immediately below the issue date of the certificate is another date of October 17, 1978. The certificate also indicates the debenture's due date in May 1, 1988. The debenture indicates that the Fidelity Corporation is a Virginia company. The debenture bears an apparent cancellation mark on the right edge of the paper. The mark consists of a series of holes punched in the paper that spell out "CITI" and "10 17 78".

9.  At approximately 1153 hours I spoke with Tom Bayly, a senior investigator for the Virginia State Corporation Commission. At approximately 1445 hours Mr. Bayly faxed me a copy of series of documents outlining the history of the Fidelity Corporation.   Most notable of the documents is the Termination of Corporate Existence issued on September 4, 1991. See Exhibit 2.

10.  On Thursday, January 27, 2005 I met with Assistant District Attorney (ADA) James Lemire regarding the corporate debentures. ADA Lemire handed me the original mailing from ABDULLAH to the Clerk of Courts, including the two original corporate debentures.

11.  On Friday, January, 28, 2005 and on Tuesday, February 01, 2005 this affiant conducted LEAPS/NCIC queries relative to the debentures. LEAPS/NCIC responded with "No Record" for either debenture.  See Exhibit 3.

12.  On Tuesday, February 01, 2005 at approximately 1420 hours, I contacted the Delaware Department of State Division of Corporations concerning the 9 percent Sinking Fund Debenture issued by the Pennsylvania

3

Corporation. The debenture bears a serial number of RV3389. The debenture is issued to W.P. Carr. The certificate indicates the debenture's due date is 1994. The debenture bears an apparent cancellation mark on the lower right hand corner of the certificate. The mark consists of a series of four holes punched through the certificate at, or adjacent to, the signatures of the company's secretary and president. The debenture's issue date appears to be August 28, 1970. The debenture also bears the date January 2, 1974 on the upper right hand corner of the certificate. The debenture indicates the Pennsylvania Company was incorporated in Delaware.

13.    I was advised by the Delaware Division of Corporations that the Pennsylvania Corporation merged with American Premiere Underwriters in 2002. American Premiere Underwriters is a company incorporated in Pennsylvania.

14.    On Wednesday, February 02, 2005 at approximately 1307 hours, I contacted the Pennsylvania Department of State Corporation Bureau. I was informed that the Pennsylvania Corporation had merged with American Premiere Underwriters on October 15, 2002. The representative from the Corporation Bureau was able to tell me that American Premiere Underwriters survived the merger, however, she was unable to tell me whether The Pennsylvania Corporation survived the merger or not. I was provided with the agent information for American Premiere Underwriters. The agent was listed as CT Corporation System 1515 Market Street Suite 1210 Philadelphia, Pennsylvania 19102.

4

15.   On Thursday, February 03, 2005 at approximately 1144 hours, Trooper Thomas Poirier and I met with Karen Bishop and James Grey of Merrill Lynch at 446 Main Street in Worcester. Mr. Grey, the Operations Controller at the Worcester Merrill Lynch office, was able to tell me that the certificates were authentic.  Additionally, Mr. Grey informed this affiant that the perforations to both certificates indicated their cancellation. Mr. Grey went on to explain a variety of reasons why the certificates might have been cancelled.

16.   1 received a letter from Deutsche Bank that was postmarked on February 4th, 2005. The letter referenced this affiant's request for information relative to the Pennsylvania Company. See Exhibit 4.

17.   On Monday, February 07, 2005 at approximately 0925 hours, I contacted Brother Dan Izzo of 512 Onondaga Avenue in Syracuse, New York. Brother Izzo told me that he had purchased the certificates of corporate debenture on EBAY two years ago. Brother Izzo stated he did not alter or mark any of the certificates; he sent them to prisoners "as is". Brother Izzo acknowledged that the certificates were valueless.

18.   I received a letter from Deutsche Bank that was postmarked on February 9th, 2005. The letter provided information relative to the Pennsylvania Company.  See Exhibit 5.

19.   At the conclusion of my investigation, I wrote a report detailing my findings.  See Exhibit 6.

20.   I returned the original debentures to the District Attorney's Office.

5

21.     I received a letter from Shakir Maris Abdullah that was postmarked on

September 23 $^{rd}$, 2006 in Providence, Rhode Island. See Exhibit 7.


**Signed under the pains and penalties of perjury this<u>Lo</u>     day of February, 2007.**

# 2720

i roo er onn lvi. Lonron, *41720*

6

# EXHIBIT 1



FIDELITY CORPORATION

5⅛% CONVERTIBLE SUBORDINATED DEBENTURE

DUE MAY 1, 1996

[body text illegible]

TMTWE OF ELECTION TO CONVERT

[illegible form text]

lost 117.121 to

FOR VALUE RECEIVED, Be undeowd he"y _du, wyn mij [afu&, z,-

FIDELITY

THE SIGNATURE(S) TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE DEBENTURE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER.

THE SIGNATURE(S) SHOULD BE GUARANTEED BY A COMMERCIAL BANK OR TRUST COMPANY, OR BY A NEW YORK, BOSTON, MIDWEST, PHILADELPHIA-BALT MORE-WASHINGTON OR PACIFIC COAST STOCK EXCHANGE MEMBER OR FIRM, WHOSE SIGNATURE IS KNOWN TO THE REGISTRAR.

NOTICE

REGISTERED REGISTERED

5000 5000

NUMBER

# PENNSYLVANIA COMPANY

9% SINKING FUND DEBENTURE DUE 1994

9% DUE 1994 9% DUE 1994

FIVE THOUSAND DOLLARS

DATED

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

Pennsylvania Company

# PENNSYLVANIA COMPANY

## 9'.^ SINKPIJG FUND *DEEENTURE CUE 1294,*



*ASBREMATIONS*

on:; Pdow--m the hooks o,' the W.nn"- ħ GiV,       `MQ:wiol,--- ιⁿc

ⱶ 1 he        ⱶ Oli-                    ;0: ?::u
.;:hi: 1  `⟨n....⟩ e ⟨⟩ c.c. y paI---1 Arg--,.Crt m ,7.v r¹-Iz~

FRANCIS A. FORD

Cellook  CV~        ~f-

**120**-iii                    I

**IN**  0'  *1116*-                    *1-2 -- // -*

Shakir Maris Abdullah
OCCC
One Administration 41.
Bridgewater, MA.

RE: Shakir Maris Abdullah          **FILED**
     aka Dennis Shelton
     # 90-1148 - 1150 - 1151        DEC 2 ᵤ 29114

"lmej

Enclosed please          .4111  **FOR.**              ⁄ =
          laced                 Ae   7'              -j

/-S46, AJf c?.      Clc~"Va    j    S'

    IN response to this request I              **6J,**
Federal Note for the Court Clerk
deposit with the Court Clerk for     A' "?o
my behalf.

I have also provided herein a copy of t
that accompanied the Federal Note directing me
forward this currency to
Legal Fund established

Once this process is completed by your office I would request that no funds be withdrawn from this account by anyone without my approval and signature.

Thank you for your time a[illegible] to this very important matter and I [illegible] d to to Reply.

Sincerely,

Shakir Maris Abdullah
aka Dennis Shelton
90-1148-1150-1151

Rev. Don

# Justice Denied – legal Ads

*tiitrewived r='n ntl*

 

Dear ˡeaders:

*My name is Shakir Marie Abdullah, and I'm writing about unresolved events that occurred at my August 1991 trial. I have attached as an exhibit a four-paq-z '.etter, which was written by my trial attorney Greg T. Schubert, that e_,sentially proviles many aetaiis about these ev_ -its (condensed into ore page below).*

AS trig lettei' indicate there waS a SeYOeant DeriiliS Towhee of th? Worcester Police Department having a SextiaI rely ti;nsliili with a Naomi Papale who was believed to have fathered MS. Pa6ale'S two children, Kara avid Denriis Papaie.

On *two* separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester *t;lty* Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon inquiry of Naomi Papale's children birta records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papal(. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further investigate-in was conducted on the issue at that dine and I ᵂᵃₛ subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. Eabitch that there was "no record on file" for Dennis Papale and indicated that there *may* have been a name change ti-rough adoption and or marriage. I have these documents available for anyone's inspection.

ᶦn fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17189. He further stated, in his affidavit that a d ark at the Bureau of Vital Statistics told him that . ara Papale, dob OS/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never Instructed to proceed to the police Internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naontl Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*aftor fro.: Tria. Ai:crneyji*

PnocTOr,. P,ws-i-irtc ₜₜ, GoLwr–

| 3CN4N H GOES I:y | COtndtFEt.ttTRS A: LAW | YELCW4oties |
| laARVsei Λ. RAS343C" | TIN aiʳ ct+Attic S7R9 ⱦ `9VrTt 340` | AHEA C.OOt 5o. |
| CnrC T SCHUGERY | it'e)Ftt;Y~ 1'T 1;. t l  S$'ACii1:Mr'1⁻rɟi 01+.011 | 1QH 9T09 |
|  |  | 70-5-203-A |
|  |  | 7940-s0A4 |

TⱭnKCOPIER
 line    7W+602

wilₗ3111 .7. Lcaiiy, Esquire
*Chief Covnset*
Crtttltitt    for Public, cowlsel Svzvicet
Ᵽ-Ⅰito OO
00 i ll3tca   SV'ʳ  ⱦ
   tco, Win. 02116

ice:  W2'.NXS SMA"CAN    7A-1% SUAKIR RIMS AMFUAR
   Iiia der Ctravictio): ﹪ ⅙    a 1  l i timm

{ i Cm NO =-,.:I:. - SWAC MAW

Suri-,rior

ly:

At tho'sup gestied Of Dwl~ jvant= I `XII` Writing to :)Iltlj'nia what
Matters are ~presently~ UnreSGlVed *with regard to this case.* Pearinis
n wets originally charged with the nox-dar Ifelony tjorder rJeory)
rthbery ci one, Greg White. He was also charqnd with armed
azauult with intent to rob and assault and battery wV:h a dangerous
weapon jHa;w3qLvt1 of Nacxpi- Papale-t. hale alleged events occurred several
hourq apart 4l O at different locaticas.

I `XII` the third 00unsel ap'Unted to Hr. ST Itoll, Previously he
uzs represeated by Jzures Gribowski and Bernard Gras :berg pursuant to
Ccnrdttee appointmknt. T have just finished an eight day trial by combat
with the Conrjotw&al th and wore signif igantly Associate Justice Jilted P
fW11me.

Prior to trial I filed extensive motions for relief under Rule 9
(a 1 131 and 9 ld I Its̲ joinder and prej˜dicial joknder 1. I attempted to
have theme motiandw l°afd and deci-dad two Week% prior to trial. onMaAe,
wi̶ w" specially ossigned, denied US reguzat off tha rucaM. Oa the
opaUng day of tzial jodqe Dooohne ooUd :',ot sallow m to aC"_uate: y
ho axd (if at all j on these motions 1which were of a cmcial nature io
*the case]. Without the papole javident, the CuAmoawamlth was withuut nary
evidence* ᴛᴏ prove 14r, Sheh.on had a gun. Additionally, I had filed a
Ywtion for a 48 hour continpaDve due to the Commonwealth informing me of
a new alleged admission witness ImorniOng of trial I and another *witness*
who had changed her Antimony entirely and t=hereon gave very
incr̶iminating new testimony .she later recanted her alleged new
testimony aml endorvmea her initial t"tiraxiy at the trial I. `his` lufrottlicco
was denied sumaoxily--the 9 a & d vo boos were hold under adviseoent. I
cated that that ruling was unacceptable to the defense. War a
parti Mealy bitter !hut always respectfuI exchanQe between myself amid
his he=L, he denied all my pre-trial in limixbe motions. I declined to
Start the trial without single *Justice reviwa To say that his* honor was
incensed is an ccMderable understatement.

Justice Wilkins was of no assistance upon my Chapter 211, .3
**petition. Iie** wouldn't oven assist we pursuant to my *law clerk who had*
practicing papers, but wl o Judge Donohue would not allow to participate
at side bar conferences. I can only imagine tie reception I would have
had with Justice Nolan! The trial camrjwx-d with the selection of a al I
white jury . libere were no black persons in the 85 person veaire. Ferns
this is a matter that hr. Ruvis might irquixe into rind take appropriate
action.

van wunsawsalth prooeeded on a theory 10i: felony h1&6-_r. At the
camlusicn of tl)e CMOYdealth's case, I uxwed for a directed fiidirig on
the arm robbery indictment of Greg White . This motion was granted
after much agrument. ?hereon, by implication, so would the murder
indictment die of consequential causes. The Commor4wealth argued at
le vqM after tl a ME, that t!=e w*s --t sufficient evidmoe to suhrit
the case to the jury on premeditation and malice aforetl"I)t or nanny
theory other than felony murder. The judge then informed the
Commonwealth that if IN did not wish to pros x3 under his new theory of
tM case, he would direct on the murder. The Commonwealth--lights
flashing cage to Mogp Judge Dowbue's rwal theory"-wholeheomdly. Thhe
defense waz Down locked into further battle with both the O~uw.*nwealth
sdd he h.

The Mfolye though 50me client information supplied by pinyx; of
'Adch I am f ria41 Y, Wowed me tat Ms. Q, le, who had testif Ad as
to the sec,-A*.d alleged bicidentt which connected any client with a gin, had
in fact, buts having sewal relations with the chief opemtiorls officer
of the Worcester Police Moarty ment Vice= Suvtd for a lone norlod of timo-

itip-!tNvv^v.frieisdsbeyondthewqll.c4ofiii'ppbcAv,lads-nialdwabdullati shakir   w51043 leg.himl

This informtion *was particulaxq* gignifiqRht *in light tbat-As. PPapale had, at the pxobable cause* hearing, invoked her fifth amendment privilege sare t~~ tty~** Wis *amx*l prior to he testi=Aiy, I Lad sought, a to ascertain wbeths she v=ld trm*e her priviler, *erri* at the trial- 'Itv A.D.A. and Mat -euvnsel [a former A.D.A.1 who stood with her through out her bestioctly agreed that she wmad rat if no questi<;ns v-are naked al=t V&-r gullet and *tteix* father. I ass* nted to Ois in good fait and in o:xtplianova with xfrlaxt beycrA reps .t, as T had no reason to believpe said 13-m- of irquirry waz relownt.

1 imq-'diately ᵃˡˡᵉʸⁱ tee newly discovered information *caid* acccA"nyinq and ran -A for dismAsal thereon. 'Me Court vms oblivitvs. ₙ ! Om~Lt did order *hc.'b* $cjt.      ₕ gear and Ms- Papale back for a voix dire examinatioc'. Towner denied sexual relations but aftdttod to tatinq, refusing to and his relationship with W. Papale such that be was relieved of his vice squad position tNe maintained his rank upon transfer), paternity of Ms. Papala's youngest child [coincidentially tim6d tennis], and denied a police internal Affairs investigation. 15. Papale took the fifth xiWasit upon advise

of counsel as to secual relations, admitted having numerous criminal char aqwWad by lWwwr and denied paternity as to the child r-emn--d Der.nis. *The Court informx~d counsel that it* ₜ³ⱼₐᵤld ₜₑₐₜ ₐₗₗₒw ᴵᵇᵉ ᴵ — s(_-cual relations between the two before the jury. Objection was noted and I did not call terse witnesses as part of the defense. I have good reason to believe that both of these individozAs perjured themselves and cannot in writing comit my reasons for Otis view. Suffice it to say this matter my provide an excellent basis for RuIL- 30 relief.

T'le defense deironstrated by ball expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary 11im,xvealth witness, Ekrlnes Bald not have heard or seen the client as alleged. His own CCMWn law wife disputed his testimony and she vas in a posit ion to s(Wh better hear or sAe W. shalWwro-Axenr testimmy had hiz leaving the critwe scene prior to Not Allagemd admi"Son bli shaltcn. Fear, wo produced evidenm that We Jliolmeasj had been, threAtened by the police =I gave new evidence. against Mr.. Shel ton only upon such cUress. 11he defense also offered unrefuted evidence of two individuals that had motive and opportunity to omrdt the murder--one be" detained by the pol ice on the night of the killing because he physically matchad the victim's description and was clothed in black sweat shirt an black sweat its- -

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he MAW ied his assailant as 5 ' 11' black male, wearing a black sweatshirt and black s% oAtvants. He        stag that he did not Rmw his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. ate. 'lam; M's characterized twee as alert and fully ccnscious when he gave those stawmmwws. I

Suffice it to say, that if X had not bt      obliterated by guilty verdicts of this -ilk in the past, I would have put both Sgt. 'MCWTUM and Papale back on the stand. it was my decision at the time that they represented an insurance policy against any rw,d" caiviction. I believe, that dMision was camem lod aill Maintaul its dorXecbr-mms. me-Wglt1Y0 out WMfor yqJWWWMQMX 0°MfXCnWJ1g the CcMitwe- is to mko a deçisicu as to b;; aukilit appellate review which Might well elicit     M!V.Za or Saleame type decision or move on Rule 30 relief upon proof of tM perjury. I w~mt inform yon that Mr. Shelton has throughout this caste insisted tart his ifumeénce. Personally I have never bem acre d of naivete--I most point out that the likelihood of this is upon title evidence substantially in his favor. This bothers me greatly. In fact--more than qtly.

- S,ior A61u1,C-i                                                                                    A¹ U33 A

*I belie;e hot if the ease goes to the APPeals* COXt then ¹⁰w
I Lqbly axp4rienand appellate counsel should be appobited. his ux:A)ld

best Protee't, Mr. Shelton strjkAd I have erred seriotisly sore --where - If ti-A--Me *30 rate is endorsed* then I would like to continue in this re?resx-ntation. *I am acavely aware of budget conside-ratims and that* t*his defense is already been ilawswely expensive for the Q~fulittee. I* Ove aver 200 hco±s involved. Private investigation expenses are going to be high-Mr- Lajoie was extrWely valuable snd touch of the 3smanstrative evidence presented     s a result of his total dedication *to this case. My c..erk will* also Cost sme additional can e.

As an asi&, the Worcester County Distriot Attorney ij; now not jvIng probable cause hearings [serious felonies] is only qo:~tq to further raise investigative expenses substantially. At least, those unisions will not haunt m- I             that a transcript be ordered iwvAlately midj pi ocurred with *all due haste.* My persona), qainion is that reversible error is rife tllrot4mt these prongs, Ina: a ᵣAW **WAI** ᵥₑy not be Oat best sexes qtr, Sheltcr. and t N time attuvqdent to end may require him r-n remin ⁴--car  :a  d ev °: ld**iq** r than he 19 ay     has pre. ent ly serve serve i5~aitiaq trj-'!

I believe this gives you a broad onveovvieev: of the situation, I will make myself available in Boston to you or Mr. Speer ᶜᵐ specifies anyᵗⁱᵒᵉ- *this week if yco* believe further discussion would be fruitful_ Rottomline-I 'm frustrated over my present iAVoterxx--. I realize that this *is ;wt* occurpAlawl hazard, but it does not quell my anger at this result.

Very truly yours,

Greg F. Schubert

Dated: I t 16, 1991
GTS*fu*k
= Theodore Harris, Esq.

Write to *file* at:

Shakir Marts AbdUetaf
VVVSI043
MCI -Cedar )unction
PO Box 100
South 'Nalpole, MA 02071

Send Entail

kNia bal_Av.~Ujon



TITLE 12 > CI-1AP YER 3 > ᴸMCIJIAPTEip X11 > § 412

## 412. Application for notes; coHateral requked

acccrnf:aried with a tender to ⊂ local Federal Reserve agem of CONNOW W.-I amount equal to dh.2 sum, of the Federal ResEirve. ,sites thus appiic ~: "or and issued pursuM to such" applitcation.

i t~ thus offered     Le mtes, dlra-,Ls, !s of e)~chaarge, or accepts :- es acquired under se~:ticn 92, 342 tc 343, 343 to 352, 361, 371 ɪx 373 of this ode, ;x Wsof ᵉˣᶜʰᵃⁿᵍᵉ aniorse,] by i bark of ;-..y Federal Reserve dli 3trict ᵅ ᵈd purchased uᶠ idie.r- the proᵛisicr-s of sections 348a anc 353 to 359 cf Ms tit leₜₑₚ or b3-n1.k'E:-:rS' acceptances purchased under     e     of     s  t cns 348a and 353 to 359 of Ms title, ᶜʷ gold certiflcat tes, or Special Drs -iving Right certificates,-or any otligahcons ⁻ʰⁱ⁻ʰ are direct oUga%ns ch, or are fully guaranteed alS to Principal acid interest by, the Unitec States tates or any agei.cy thereof, or assets ₋ₕᵢₐₜ Federal ᴿᵉˢᵉʳᵛᵉ ranks i-„ay purchasz or hold under sechomi 348a and 353 to 359 of this title, in no event shall such collateral SₑCL qty be less than the amour,_ of Federal Reserve notes applied- f6 ʳ⁻ ᵀ⁻ ⁺²ᶻ si-aiᵢ each day notify the Board of Governors Cr the Federal Reserve Systeim.m of ail issues a.-id .withdrawals of Federal Res&-ve ⁿᵒᵗᵉˢ to aind Ly ᵤᵗⁱe ᶠᵉᵈᵉʳᵃˡ Posove bank to which he is acc-redited. T ht:~ said, Doarc- of Gcver--.--'orS or' the Federal Raserve System m.Ey at any timne _ail uper. a ᶠᵉᵈᵉʳᵃˡ Reserve bank for additional sec,-fly to protect, fide F eder a; Reserve notes issued to it. Collateral Mai not be i ·equ:red' for ᶠᵉᵈᵉʳᵃˡ ᴿᵉˢᵉʳᵛᵉ notes which are held in the vaults of Federal Saserve banks.



Hi, ask the Court
to endorse the
Note under
USC Title 12 sec 41
and Deposit it
with the
Court Clerk
for a Legal
Fund

512 Onondaga Ave
Syracuse, NY 13207

CO

ugilaak.Rtsay Imauao to ulaa
azzy u¢fa naE -

anal a48Goruy

' ?1V

,v'g:j1Uf

i't1'" s(I (IV'J£' ,Vfl

',r~- 9 TI TO 14 $'

# EXHIBIT 2



WEALTR 0    lit,
WAs

Ronald w- Thomas
Director

*Thomas AL couldin*
*Depity Ditectur*

Alafling addrisT
EN 8" 1197
Richmond, VA 23213
Telephone: (804) 371-9051
F= (904) 37j-"11

**STATE CORPORATION COMMISSION**

**DIVISION OF SECURITIES AND RETfJ FRANCHISING**

PLEASE DELIVER THE FOLLOWING PAGES)

Pages) Including This Cover Page
Cal you have trouble receiving transmission.

**To:**        *00,020*

**Fax Number:**

**From:**      Torn Bayly
              Phone:  040 371-9176
              Fax:      (804) 371-9911

**Date Sent:**    On: 6 . 05

**Time Sent:**  _____

**Comments:**

45,  ⊿, ,  V 0   tp~'~   A   9!          *delity*
                                          *5X*

*llbr`f-*
                                   7
           7                      *elp*

01/26/2005 14:45 FAX 8043719 11          ST CORP COMMISSION                    FFJ 002

cO    O          OF        m4IA .

## STATE COitPbftATIOI4. O   |   SStON

### STATEMENT OF 111i CISTEIIED OFF1(Z  AND AC        OF A CORPORATION TIWt HAS
### CIIAIYGED T          K

hlte prcscnt ":line III  the cnrpttrAtinn io (give cayct name-.>,h n in 9rtkfes of artttndtnnt)

( dcllty Co  oratlon ~ - _____

The former name of the cnrporatsen wst (give exact rants 6Itol tt.iti axtides of amsadment)

__Fidelity__ Bankers Kite __Insurance__ Company                    _____

*The corporation is incorporated under the laws of the state of.*        __ViMInia__

The addrean of its registered office is

rldelitvBankers L1fe Buildn , Ninth & Main Street , Richmond     23219     , Virginis.
6N¢.abttí       ttï"aa~ti                                (Pest Office)    (Zone)

*Thc name of the county or city in which its registered offce i-a Incatrd is the'* _____   City   __ of
                                                                      tínsvrt "county" or "city")

__Richmond__

`)'hr nanu'   !raí.tctrd ap~nt i~        llarod , F~ichards

lie is a rraidrnt Dl Virginia.

He ir. ® an officer of the cnrporation or M a director of the corporation or {'] a member of the Virginia State Bar.
| Check the applicable square nr spore,.(

*If an officer. state titir:*        __President__

*The address of the registered office and the address of the W inese office of the* registered agent are identical.

*The establishment of the registered office and the appointment of the registered agent were authorized by ss resolu-*
tion duly adopted by the board of directors of the corporation.

The registered office and  agent of the corporation immediately prior to its change of name werct (If there bas
been nn change, write the word "unchanged" on both liner)

_____Unchang__ed_____     ____ _____

_____Unchanged__                 _____ , Virginis.
‡Momt.-rí       fltr s)                                (Pest Office)    (Zone)

This statement is executed in the pre'ent name of the corporation by its prtrident or vice-president, echo dechns
under the penaltif-A at perjury that the facts therein stated are true.

Fldelity Corporatlon

By _____
                                        President

Nom May not be signed by any officer except the president or a rice-prr,sident.

01/20/2005 14:46 FAX 80&719911     ST CORP COMMISSION     Rou

I

## FIDELITY CORPORATION
### AR TICUS - CF ASWENT'

Pursuant to section W."I-SWA Utha AN   VVIrginig of 1150 as amended, we hereby

(a)   The name of the corporation is 'fidelity Corporation.

(h)   The amendment adppyp       that Article (a) of the Articles of Amendment Restating the Articles of Incorporation of Fidelity Bankers life insurance "Company,,, dated- December 31, 1967, be deleted in its entirety and in its mace and stead shall be stibsi-Itotem d LhO following:

> The name of the Corporation is Drum Financial Corporation.

(c)   The nnc-ndment was found to be in thee best interest of the corporation by its <u>Board</u>      Directors at its regular. meeting on January 24, 1979; and at which gWing such amendment was directed to be submitted to a vote of stockholders at the 1979 Annual Uceting of the Corporation.  'Notice of such stockholders' meeting was given in the manner provided ;for in the Virginia Stock Corporation Act to each stockholder of record entitled to vote, by mailing a notice of such'i6eting with proxy statement and proxy card attached on April 12, 1979. · Such notice was accompanied by a copy of the Vropos;d amendment.

(d)   On April 11, 1979,  the-record date established by the Board of Directors for the aforesaid meeting, there were 4,743,371 shares of common stock outstanding and entitled to vote on the amendment_.

(c)   At the Annual Meeting of stockholders, held on May 30, 1979, the amendment was adopted and, in connection therewith, 3,701,379 sharps of the common stock of the corporation were voted for the amendment and  123,277-shares of such common stock were voted against Chu amendment.' VN·

The amendMent ff s rig: change ire _stated capital.

(g)    The amendment doe ; too **effect** a rpseaeement of the ArCiCIOR of lncorporkiftoiT

DATED;    July 19, 1979

xo$^M$   11010

_____

lo.qCph MMi.Zo e    C!nlor
Vice President and Secretiry

# COt 1(M { ' OF FG A

## STATE CORPORATION COM'MSSION

gT      OF REGISTERED OFFICE AND AGENT OF A CORPORATION THAT UAS
CHANGED rIS NAME

The present name of the eorpor rion is (give enact name shown iii articles of  smeorlr»rot)

**DRUM F NANCIAL CORPORATION**

The former name of the corporation wVVas (give exact name shosrn in articles of amendment)

**Fidelity Cor** poration

71e corporation a incorporated under the 1an^i of the stare of      Virgin

The addre of it3 registered ofScc u

'1z  5rir  t:itikeli.nF~'+th     Main Streets Richmond          23219       t    t
tir~b1      iat~)                                             (F-c dust

The name of the county or city in which by registered oflict is locate,{ is the        Ttsa 4 ˉt..W er ^gsm·)          of
r :df1ril  tlSl

The natnc of its registered agtnr o      Al ran  C   FJsi ache

7le is a rrtident of Virginia_

He i it an officer of the corporation or  M  a director of the corporation or  pg  a member of the Virginia State Bar.

[Check the applicable squstre or squar8.l

If an officer, 3ta:e title: _____

The address of the rcgtstcrcd ottto: and the address3 of the businei ofct of the registered agent are identical.

The catabti.shment of the registered office and the appc.ntmcnt of the registered agent sire authorized by a rtsolu-
rion duly adopted by the board of directors of the corporation.

The registered oficc and agent of the corporation immediately prior to its change or name were: (if there has
beert no change. wrirt (tie word "nnchanded" on both lines)

ll nc(lrttii· C |                          _____

— j-acfianp.no —             ————  —  —  —  —
tlr v~kcvl      rttlrve'tl                              tt'C M 0&'3)              t2-smat   Virginie.

Tlm statement mtTst be exetutett ;n the pUncnt name or the corporation by my'Anr of rhr, follAing: the chairman
or vlcr'.hasrmJrt   l he bn1Td Of drrecrUrt ↲r lFtc prrStient or vtrc-prcndent, who declalee under the penalties or perjury
that -  ·.I ,.-. _' !1°..., A          L'T:!%R Jt FIC1;'% ~IAY iu!%l.

DRUM FINANCIAL CORPORATION

9·                                                              Title

rf f 09 ⁷¹       7 9 ⁱ8

;CH' OF ViRG N₁

COM    ~¹N

rill **t̶h̶t̶t̶l̶i̶l̶** ι \ltrlittll<)\  lʇ
ι li \4R'\l t,

ι u'tvtI.' fr:.l ⁱl
lttt~cth C SHANVr,
ι n\i yI'>tti\i ll

C1.ERX OF Tmp COMMISSION
**P. b. Box** 1ı01
RIC 1ISIONMVIUCIHlAll7f 1101
(f.O4) IM-17M

STATE CORPORATION     OMMISSION

SEPTEMBER   4, 1991

ALAN G. FLEISCHER
MAIN STREET CENTRE
629 EAST MAIN STREET
RICHMOND, VA   73219

*HOTICV OF TERMINATION OF CORPORATE EXISTENCE*

RE:   DRUM FINANCIAL CORPORATION
ID1   0066853-55

   *IN EARLT JUNE OF THIS YEAR, THE STATE CORPORATION COMMISSION
MAILED THE ABOVE-HANED CORPORATION A NOTICE OF IMPENDING TERMINA-
TION OF CORPORATE EXISTENCE. ACCORDING TO THE RECORDS OF THE COM-
MISSION, THE CORPORATION FAILED TO COMPLY BEFORE S6ITNNER I WITH THE
STATUTORY REOVIRE3IENTS REFERRED TO IN THE NOTICE. CONSEQUENTLY,
OH SEPTEMBER I* OF THIS YEAR, THE CORPORATION~$ EXISTENCE WAS TER-
MIHATED BY OPERATION OF LAW.

   AMONG OTHER THINGS, THIS TERMINATION MEANS THAT *THE CORPORA-*
TION CAN HO LONGER LAWFULLY CONDUCT BUSINESS AND ITS DIRECTORS ARE
REQUIRED TO LIQUIDATE ITS BUSINESS AND AFFAIRS.

   AS THERE *MIGHT* BE OTHER CONSEQUENCES RESULTING FROM- THE TERMI-
*NATION, IT IS* SUGGESTED THAT THE CORPORATION, ITS OFFICERS *AND ITS*
DIRECTORS *SEEK THE* ADVICE OF COUNSEL.

   IF THE *CORPORATION* WISHES TO REINSTATE, IT MAT DO 50 BY COM-
*PLYING WITH THE APPLICAALE STATUTES. FOR MORE INFORMATION* CQHCER-
**MING** REINSTATEMENT. WRITE TO

          *STATE CORPORATION COMMISSION
          CORPORATE OPERATIONS DIVISION
          P. 0, BOX 1197
          RICHMOND, VA 23209
          (801) 786-3733*

05717.

# EXHIBIT 3

Oils

DISPLAY FOR LWCC01 ON *ol/~ -1* .04C
D HOT FOUHO          HSG ID
        REF/          OCA/              SEP/
        SRO/                      TV PiBD DER/

        *PCIC QUEY"y*    W师      I C          WARDEL

297413    !O?; 8/20®5 1640    S0751/6689.
        . LEAPS WIS'OJJ (JTED ADMIN        MESSAGE
        FOR    : *LWO*!          UIATE,; 042PL05    TIME: i646
        ACTI.Off z N(') C          RESPONSE

лл") RE-CO V

KEYS USED = PS              ↓ RiR 11291 18J. D,BA    !8000
MSG NO - ⁱⁿ 9006083
C3IS 298532    01/28/2005 16⁴ ʌ    S16189/668").

TSP
**** C30 DISPLAY IVOR iWCC2)l ON 01128i@5 !G:44 EST
_✓ RECORD NOT FVRIND      HSli ID = (Z.009)6
  KEYS USED =    REF!    0 C A          SEE!          RV3389
              SRG/                /85 DEN!          Hic/

        ROIL ?WRY  ↓ 00000000:,5055Y FORWARDED TO HUI(:

0316 296532    01/28i2OOb 1644    S0751/6669.
        ᴀ LEAPS UNSOLICITED ADMIN        MESSAGE
        FOR      LWCCO-l          filhl'E 01280~~        ₃-⁴
        ACTION    ↓ᵢᵢCD-'l,':ᵣᵢJFT,·ᵖ RESPONSE
        SENT BY;

                q TYfl/BD DIF',tl/,5000.

KEYS USED - US    VAM              55815056
AS'G 1 n

TRP
**** CJIS DISPLAY FOR i.WCC01  ON 02/01/05  12:54 EST
*** RECORD NOT FC      MSG ID = QS.0008
 KEYS USED = REF/      OCA/           SER/         RU29181
           SRG/             TYP/AU DEN/   100000 RIC/


        WCTC **QUER**Y # 000000008,QUERY FORWARDED TO NCIC


      2005 1254   S075176689.
              CITED ADMIN      MESSAGE
                     DATE: 020105   TIME: 1254

          H    QUERY
      SEW BY; AFMAWO


,.=:r h E G U k   h"k"N


     u sE®              Ty, I ₄ 0. 5 E R   J.2_ ₄8;   b ER i
     '401  -      ∠⁄₁

```
**** CJIS DISPLAY FOR LWCC01  ON 02/01/05  12:53 EST
*** RECORD NOT FOUND         MSG ID = US.0007
  KEYS USED = REF/           OCA/              SER/          Rv3ao"--;
              SRG/                        TYP/AO DEN/    5000 HIG/
```

*MAC QUERY*          '          WMWV' FORWARDED To NCI=._

```
CJIS 301356   02/01/2005 1253   S0751/6689.
             A LEAPS UNSOLICITED ADMIN     MESSAGE
          FOR   : LWCC01              DATE: 020105
          ACTION : NCIC QUERY RESPONSE
          SENT BY: DCFBIWA00
```

*NO iiMiklhl*          *9 T",;*

```
KEYS USED. US .MAMSF3600. NNW OR/
MSG No_ wow?0000080
CJIS 301qW  02/01/05 1254 GBC.
```

MW                WWAA1 -mly"ow  n    nu - ~~ - ~~

*MATUTI*

Mlya                1@13mi

A LEADS UNSOLICITED ADMIN

folivy" P&A

vnwA.i

GUMA"I                    1AAA  ~ CQKT
1000  91 , to  £mu      ip"vo JDP QM09A
90/19/70 pq   WAY¹ NCO 19104¹ A!"

:.. foff

```
**** CJIS DISPLAY FOR LWCC01  ON 02/01/05  12:49 EST
*** RECORD NOT FOUND       MSG ID = QS.0002
 KEYS USED =  REF/        OCA/            SER/
              SRG/              TYP/DB OEN/   1


              NCIC QUERY # 000000002,QUERY FORWARDED ro 01:10

CJIS 300299  02/01/2005 1249   S0751/6689.
          A LEAPS UNSOLICITED ADMIN      MESSAGE
      FOR   : LWCC0J              DATE: 020105
      ACTION : NCIC QUERY RESPONSE
      SENT BY: DCFBIWA00

NO RECORD SER/RU29181 TYP/0

KEYS USED = QS  . MANSP3600. *"YP if'9, S1-14/RU29J81D1-;W   08
MSG NO = 00000000083
CJIS 300482  02/01/2005 12bk   S168916689,

TRP
     (AIs LQ PILhY ^)]i~ i
    RECORD RUIT fa't)W!b            M - go ow"
     USED = NEK/
          bIIM                         roir


          WGIC  WERY 9                        '0'1 WC Ic

 riMS       Ca2   20  125o   ~A  S1/6689.
           WH! UNUIM mo ADHIN
      F(JI-I                DATE: _20)  5   TIHE: 1250
      ACTIOR    McII", WiJEWY ROSTIWISE
      SENT BY: DUFAWMOO

      SEMY3389 'fYPIH J WOW

KEYS USED = QS  . MANSP3600. TYP/RT. SER
MSG NO = 00000000080
CJIS 300621  02/01/2005 1251   S1689


                              021011olf)
   R , LCOid NO. F00-plio        = D& 0004
   IMYS USED -   AF/        MW                      H U291 6 i
                                        Moslil


                              v

Gj ~: no- ~j   w2/002MI v. .    ! a..t

      RU,1L                   DATE: wowna    POP
      AGTION   MAL QW i
      SENT BY: DuFBIWA00

NO RECORD

KEYS USED -                      urli 0 I    h H
1ISG ho v 0040(i  MOOTS'I
Wis 300877   Q&TWoos o4""
```

TRP
**** CJIS DISPLAY FOR LWCC01 ON 02/01/05 12:52 EST
*** RECORD NOT FOUND      MSG ID = QS.0005
 KEYS USED = REF/        OCA/            SER/        RV3389
              SRG/              TYP/RW DEN/    5000 HIC/

               MAC UUM # 000000005,QUERY FORWARDED TO NCIC

CJIS 30007   02/01/2005 1252   S0751/6689.
             A LEAPS UNSOLICITED ADMIN      MESSAGE
             FOR   : LWCC01            DATE: 020105   TIME: 1252
             ACTION : NCIC QUERY RESPONSE
             SENT BY: DCFBIWA00

NO RECORD SER/RV3389 TYP/RW DEN/5000.

    USED -- QS  .MAHSP3600.TYP/RW.SER/RV3389.DEN/5000
    "H - AMC000080
LJIS 30IW39   02/01/2005 1252   S1689/6689.

TRP
**** Gils DISPLAY FOR LWCC01 ON 02/01/1             i"ST
*** RECORD NOT FOUND      MSG ID
 KF c  DIED = REF/        OCA/           SET           Know
                                        Ge i      , e fir  u;

              ,          00000-                   To RGW~

       Won    b-- /V)!/2fro05
              pi         Lflr S~01-lcil'Ejo
              FOR
              ACTION    NIJU WULR-i
              SENT BY

NO EECUT'i f-i.ikU29181 TYP/Riy

KEYS       - OS   HAHSJ'360-0, TYPi.'Wel.          fo
 uSC W.: - 0000(b

# EXHIBIT 4

Deutsche Bank

A-
Tomsnc.""Savm--
rO W.,
A,"oo '"3723C

TROOPER JOHN M CONRON
19 MIDSTATE DRIVE
AUBURN, m^onn/

February 04, 2005
File . 48815

RE~

Dear Sir /Mav"w:

We acknowledge receipt of your recent correspondence concerning the issue referenced above.
I/Ve are woi king On Your inquiry and will provide the information requested as soon as possible

Sincerely

CONTROL UNIT
o*n/Nuv*mle
¡8001735'rrrr

oz/ r) i L_        10:  3 5



C  F)

?1STT RROMNEV

**KERRY HE: L,FY**
*tree=r.v.i. rc:mirrRnoR*

*EDWARD A, FIA N, ·*
*rECFF7.t r r*

**COLONTLTHOMAS G. ROIMJI NS**
gp)rF.Rr+n~snr.A~r

State Police Detective Unit - Worcester
19 Midstate Drive
Auban, MA 01501

| | |
|---|---|
| To | Carl Shepherd |
| Prom: | Trooper Jolui M. Conron #2:720 |
| | ᴍassachU:ietis to e Police DetcctiYe tJ:tii - Worcester |
| Subject: | Pennsylvania Company- Corporate Bond |

   I am conducting an investigation regarding several corporate bonds that might have been falsely uttered. Through a local Mcrrill Lynch branch I was able to deteinmine that your company acted as the transfer agent for a corporate debenture issued by the Pennsylvania Company, a Delaware corporation. T believe the certificate I have in evidence is authentic and likely cancelled.  Attached is a copy of the front and back of the corporate debenture. Any information you could provide concerning the history of this particular debenture would be greatly appreciated.

2.     If you are able to locate information concerning this corporate bond please feel free to contact me at the numbers listed on the face sheet of the fax. Thank you for your time and efforts.

*Excellence In Service Through  uality Policing*



REGISTERED                                                REGISTERED

**5000**                                                      **5000**

NUMBER                                                        NUMBER
RV  3389                                                  RV  3389

# PENNSYLVANIA COMPANY
### 9% SINKING FUND DEBENTURE DUE 1994

EXCHANGEABLE FROM NOVEMBER 1, 1978 TO APRIL 15, 1979, INCLUSIVE, UNLESS PREVIOUSLY REDEEMED, FOR SHARES OF COMMON STOCK OF NORFOLK AND WESTERN RAILWAY COMPANY.

Pennsylvania Company, a corporation organized and existing under the laws of the State of Delaware (hereinafter called the "Company"), for value received, hereby promises to pay to — W.F. CARR TRUSTEE UTA DTD. 10-15-68 F-S-O M. WEATHERBY CARR—

9%                                                            9%
DUE                                                          DUE
1994                                                        1994

DATₒ'b:  LUG 2 8 1970
TRUSTEE: CERIMC&TE
9?;;NKERS           COMPANY

## PENNSYLVANIA COMPANY
### 9". SINKING fUND DEnFNTURE DUE 19,S4

A13BRE-VIAT10fiS

FOR N,\TUF PfCT,(VT.D, the unAer,;snzd hereby  scl15, n5signs  and  fjNnnsf•r:  tiolo

Be within Debenture,  =Tal  Qm rftwreurvlct   hc,c6)          wwwKy and n,pWp~;=

ic, tin W" Wd Dchm m r con the books of thi Company. with F~ n pn~ c r . ( -,        in the
                                                                                      Awirncv
[]A!ed:

NOTICF: The -.;6n.i-rc to this -;gnr;)r,it ryiWc l0r,(.,p<-nd with the name is it appear: upon the f acc of
the within Drbent-c ;n every pi,rt!co-,          , ltem6on qr zillr.rrcn,Cmt or any change whrat.vnr.

# EXHIBIT 5



Deutsche Bank Trust Company Americas
CTAS Operations  Trust & Securities Services
P. O. Box 305050
Nashville, TN 37230

CornInontivealth of Massachusetts                    February 9. 2005
Department of State Police                           |⁷1LE7        4881.5
AT-N : Trooper John M. `onron
t9 Midstate Drive
Auburn. Ma 0`15M

RE:     PENNSYLVANIA COMPANY
        9%;, S NKING VND DEBENTURE UE 199"

Dear ?'cooper Conron:

Our records do not indicate the issue referenced above. Per the Department of State
website for the State of Pennsylvania, this company submitted documentation for
issolution on `09i" 181'"1964.  For you review enclosed is a copy y of the "Entit' Detaiis ⁻ for
Pennsylvania Company

We suggest you contact the Department of State between the hours of Sam -- 5pm
Mlondati⁺ through. Friday at the following.

                Department of State
                Corporation Bureau
                P.O. Box 8722
                Harrisburg, PA      i U3-8⁷y˜
                  7Ι 7i   87-105'"

    Please visit our website at Imps:.'wwwass.db.coni'shr for commonly asked questions and standard forms.
        Collateralized Mortgage Obligation rates aie now available on the  uiernzi bty typing:
            hops:; .vww.tss db.con>lim r. then agree to the terms and select Deal Inquiry

If" further assistance s required, please contact our office.

Sincerer

Tilda L. Pettis
Security Holder Relations

Trooper John Conlon
Massachusetts State Police
Worcester Detective Unit
19 Mid State **Drive**
*Auburn, MA 01501*                                    Sept. 22, 2006


RE:  Need information on an investigation that has eitherr
concluded or never started


Dear Trooper Conlon,

    My **name is Shakir** Maris Abdullah W51043 and I am a state
prisoner.   I **am** trying to recover through litigation in United
States District Court approximately $100,000.00 that was slated
to go to a fund to procure appellate counsel for me and some
others.    The money was allegedly converted, (stolen) by a
Worcester County Court Clerk.
    I was told in writing by one of the suspect clerks,
Catherine Brennan, that she had some discussion with you over
this matter at some unspecified date after February 2006, but
her answer was so vague it might have happened, (if at all)
after May 2005.
    PLEASE.    Could you please write **to** me and try to tell me
the following:

1.    When did the Massachusetts State police stop using the
term CPAC?   (it was in one of Catherine Brennan's answers)

2.    Any details of the alleged conversation between you and
Catherine Brennan concerning the missing $100,000.00?

    I most sincerely thank you in advance for any assistance
you could offer in shedding light on who did this.


                              very truly yours,

                              Shakir Maris Abdullah W51043
                              O.C.C.C.
                              One Administration Rd.
                              Bricdgewater, MA 02324

**EXHIBIT** 7

Corporate Records Application



## Entity De its

Request
- *New* Request

Free Search
- General flame Search
- *aid* Name Search
- orphan Search

### Basic Entity Information

| | |
|---|---|
| Entity Type | WITHDRAWN INCORPORATED BUSINESS |
| Entity Name | PENNSYLVANIA COMPANY |
| **Entity No.** | 272714 |
| Filing Date | 01/21/1954    Letter of Consent    No |
| Address | 43 HAVERFORD STATION RD |
| | HAVERFORD Pennsylvania USA |
| County | Montgomery    Jurisdiction    PA |
| Purpose | BROAD |
| Limited Authority | No |

### Instrument History

| Doc Type | Microfill11V | Micro ;r Start | Micro4r trncl | Filing Date | C:oiTlm .nt |
|---|---|---|---|---|---|
| STATEMENT OR CERT. OF SUMMARY OF RECORD | 7433 | 614 | 0 | 08/16/1974 | 1 CARD |
| ARTICLES OF DISSOLUTION-BUSINESS | 6426 | 128 | • | 09/18/1964 | |
| CHANGE OF REGISTERED OFFICE | 5408 | 690 | • | 01/21/1954 | |

| Back |
|---|

Home I Site Map i View as Text Only

*Visit the*
PAPouve ˙Poi t

Copyright O 2002 Pennsylvania Department of State. All Rights Reserved.
Commonwealth of PA Privacy Statement

# EXHIBIT 6



MiTt ROMNLY
Gm-E2ynrt

KERRY HEALEY
LJP. CTENANTGI37 flNOR

FDWARD A: FLYNN
MCRM-f AT

COLONEL THOMAS G. ROBBINS
.vuPrmNTENDENT

f9 e9aG+,a~tate 9o~rit~e

C-.⁰6ee%+s.'n, C%"  0f501

C~r~h aa,  2, 2005

Captain Thomas G. Greene, #1126
Massachusetts State Police Detective Unit / Worcester County

**AbM:**    Trooper John M. Conron, #_2720
Massachusetts State Police Detective Unit / Worcester County

SUBJECT:    Investigation of request by Dennis Shelton, also known as Shakir Mans
ABDULLAH, B/M, DOB: 11-01-1961 of Old Colony Correctional
Center, One Administration Road, i3ridgewater, MA 02324 to establish
legal fund with corporate debentures.
Case #05-115-0037

On Tuesday, January 25, 2005 at approximately 4:00PM, the undersigned was advised of a possible financial crime by Sergeant Stephen Kelly. Sergeant Kelly outlined the following fact for me. Shakir Maris ABDULLAH is prisoner at Old Colony Correctional Center serving a li sentence for murder. ABDULLAH alleges he has been wrongfully convicted and posted an appeal on a website seeking either legal assistance or donations to fight his conviction.. In response to his appeal ABDULLAH received two corporate debentures from Brother Dan Izzo of 5? Onondaga Avenue in Syracuse, New York. ABDULLAH forwarded the corporate debentures to the Clerk of Courts and asked the debentures be deposited into a legal fund on his behalf

2.    On Wednesday, January 26, 2005 the undersigned contacted the Virginia Division of ecurities and Retail. Franchising regarding the debenture issued by the Fidelity Corporation. The debenture states that it is a 5 '/z percent convertible subordinated debenture issued on 'petdber 13, 1978 for one hundred and eight thousand dollars. The debenture bears a serial puumber of RU29181. The debenture appears to be issued to CEDE & CO. The certificate's issue date reads October 13. 1978. Immediately below the issue date of the certificate is another

~ a
q-o6

16M OO e @M    O    .c ua  'AA&-'7

date of October 17, 1978. The certificate also indicates the debenture's due date in May 1, 1988. The debenture indicates that the Fidelity Corporation is a Virginia company. The debenture bears an apparent cancellation mark on the right edge of the paper. The mark consists of a series of holes punched in the paper that spell out "CITP' and "1017 78". At approximately 1153 hours the undersigned spoke with Tom Bayly a senior investigator for the Virgiinia State Corporation Commission. At approximately 1445 hours Mr. Bayly faxed the undersigned a copy of series of documents outlining the history of. the Fidelity Corporation.   Most notable of the documents is the Termination of Corporate Existence issued on September 4, 1.991.

3       On Thursday, January 27, 2004 the undersigned met with Assistant District Attorney (ADA.) James Lemire regarding the corporate debentures. ADA Lemire handed the undersigned the original mailing from ABDULLAH to the Clerk of Courts which contained the original copies of, the debentures.

4.      On Friday, January, 28, 2005 and on Tuesday, February 01, 2005 the undersigned conducted LEAPS/NCIC queries relative to the debentures. LEAPS/NCIC responded with "No Record" for either debenture.

5.      On Tuesday, February 01, 2005 at approximately 1420 hours, the undersigned contacted the Delaware Department of State Division of Corporations concerning the 9 percent Sinking Fund Debenture issued by the Pennsylvania Corporation. The debenture bears a serial number of RV3389. The debenture is issued to W.P. Carr. The certificate indicates the debenture's due date is 1.994. The debenture bears an apparent cancellation mark on the lower right hand corner of the certificate. The mark consists of a series of four holes punched through the certificate at, or ,adjacent to, the signatures of the company's secretary and. president. The debenture's issue date appears to be August 28,1970. The debenture also bears the date January 2, 1974 on the upper right hand corner of the certificate_ The debenture indicates the Pennsylvania Company was incorporated in Delaware. The undersigned was advised by the Delaware Division of Corporations that the Pennsylvania Corporation merged with American Premiere Underwriters in 20021 American Premiere Underwriters is a company incorporated in P. enn.sylvania.

6.      On Wednesday, February 02, 2005 at approximately 1307 hours, the undersigned contaacted the Pennsylvania Department of. State Corporation Bureau. The undersigned was informed that the Pennsylvania Corporation had merged with American Premiere Underwriters on October 15, 2002. The representative from the Corporation Bureau was able to tell me that American Premiere Underwriters survived the merger, however, she was unable to tell me v icthcr The Pennsylvania Corporation survived the merger or not. The undersigned was provided with the agent information for American Premiere Underwriters. The agent was listed as.;CT Corporation System 1515 Market Street Suite 1210 Philadelphia, Pennsylvania 19102.

7.      On Thursday, February 03, 2005 at approximately 1144 hours, Trooper Thomas Poirier and.the undersigned met with. Karen Bishop and James Grey of Merrill Lynch at 446 Main Street in Worcester.  Mr. Grey, the Operations Controller at the Worcester Merrill Lynch office, was able to tell the undersigned that the certificates were authentic. Additionally, Mr. Grey informed the undersigned that the perforations to both certifcates indicated their cancellation_  Mr. Grey wenfpn to explain a variety of reasons why **the certificates might have been cancelled.**

O    es    C ~ &e vi e **L** rwu    uα .L  C~a

8.    On Monday, February 07, 2005 at approximately 0925 hours, the undersigned contacted Brother Dan Tzzo of 512 Onondaga Avenue in Syracuse, New York. Brother Izzo told the undersigned that he had purchased the certificates of corporate debenture on EBAY two years ago_ Brother Izzo acknowledged that the certificates were valueless. Brother Izzo stated he did not alter or mark any of the certificates he sent them to prisoners, "as is".

9.    In conclusion, the certificate of debenture issued by the Fidelity Corporation appears authentic.  However, markings on the certificate indicate the debt has been cancelled. Furthermore the company no longer exists and presumably cannot make good on the debenture. Similarly, the certificate of debenture issued by the Pennsylvania Corporation also appears authentic; however, markings on the certificate indicate its cancellation.

10.    The undersigned respectfully requests that this case be forwarded to the Worcester County District Attorney's Office for review.

Respectfully Submitted

#2720

Troo    ohn M.  **Conron #2720**
**Massach sctts State Police**
**State Police Detective Unit - Worcester**

INDEX BY. NAME_

Tom Bayly.
Commonwealth of Virginia
State Corporation Commission
Division of Securities and Retail
**Franchising**
**P.O. Box** 1197
Richmond, VA 23218
(804) 371-9051

Karen. Bishop
Merrill Lynch Pierce Fenner & Smith Inc
446 Main Street Floor 12
Worcester, MA 01608
(508)798-7200

Tom Grey
Merrill_ Lynch Pierce Fenner & Smith Inc
446 Main Street Floor 12
Worcester, MA 01608
(508) 798-7200

Brother Dan Izzo
512 Onondaga Avenue
Syracuse, NY 13207
(315) 472-5088

**Dennis Shelton, a.k.a. Shakir Maris**
Abdullah
Old Colony Correctional Center
One Administration Road
Bridgewater, MA 02324

kenos    $V$    an    &XVU?j    c _a c c    of tor?

UNITED STATES DISTRICT COURT
FOR THE **DISTRICT OF MASSACHUSETTS,**

| | | |
|---|---|---|
| SHA   **IP.** MARTS ABDULLAH,<br>        Plaintiff. | )<br>)<br>) | |
| v. | )<br>) | C.A. *NO.* 05-11539-DPW |
| FRANCIS H. FORD, Clerk CATHB I B<br>BRENNAN, Assistant Clerk, and **REVEREND**<br>**DANIEL IZZO,** | )<br>)<br>) | |

## **Defendants.**

### **AFFIDAVIT OF FRANCIS-FORD**

1. My name is Francis Ford. Until January, 2007, 1 was the Clerk of the Worcester Superior Court. I am now **an attorney at** the **law** firm of **Fletcher,** Tilton **and Wbipple in Worcester,** MA .

2. I never saw any original corporate debentures sent by Shaltir Maria Abdullab.

3. I never took any corporate debentures or other property belonging to Shaldr Mails **Abdu]lah.**

4. All of my personal banking accounts are held jointly with my wife, Shirley A . Doyle

**Signed under the pains and penalties of perjury this IJ⁻ᵒday of February, 2007.**

Francis Ford

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| SHAKIR MARIS ABDULLAH, )<br>     Plaintiff, )<br>v. )<br><br>FRANCIS H. FORD, Clerk, CATHERINE )<br>BRENNAN, Assistant Clerk, and REVEREND )<br>DANIEL IZZO, )<br>     Defendants. ) | C.A. NO. 05-11539-DPW |

---

**AFFIDAVIT OF CORINNE GORMAN**

1. My name is Corinne Gorman. I am the First Assistant Clerk of the Worcester Superior

    Court.

2. To the best of my recollection sometime in December 2004 or January 2005, 1, along

    with office me m ger Matt Lefebvre, opened correspondence from Shakir Maris Abdullah

    that enclosed two corporate debentures and associated documents requesting that the

    Court establish a legal defense fund on his behalf.

3. We gave the entire contents of the correspondance, including the enclosures, to Regional

    Administrative Justice John McCann.


**Signed under the pains and penalties of perjury this 14th day of February, 2007.**

                                 _____
                                 Corinne Go     n
                                 First Assis     Clerk, Worcester Superior Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHAKIR MARIS ABDULL kH,            )
        Plaintiff,                 )
v.                                 )            C.A. NO. 05-11539-DPW
                                   
FRANCIS H. FORD, Clerk, CATHERINE  )
BRENNAN, Assistant Clerk, and REVEREND )
DANIEL IZZO,                       )
        Defendants.                )
_____)

**AFFIDAVIT OF STEPHEN KELLY**

1.  My name is Stephen Kelly. I am a Trooper with the Massachusetts State Police.

2.  Sometime in December 2004 or January 2005, then-Assistant District Attorney James
    Lemire alerted me to a possible financial crime, relating to corporate debentures that were
    sent by a prisoner, Sliakir Maris Abdullah, to the Worcester Superior Court.

3.  1 assigned the invest gation to Trooper John Conron and gave him copies of the
    documents.

4.  I was never in posse;sion of the original corporate debentures.

r
**Signed under the pains an! penalties of perjury this         day of February, 2007.**

Steph      elly
Sergeant, Massachusetts State Police

UNITED STATES DISTRICT COURT
FOR THE DISTRICT Of MASSACHUSETTS

| | | |
|---|---|---|
| SHAKTR MARTS ABDULLAH, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. NO. 05-11539-DPW |
| | ) | |
| FRANCIS H_ FORD, Clerk, CATHERINE | ) | |
| BRENNAN, Assistant Clerk, and REVEREND | ) | |
| DANIEL IZZO, | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF JENNIFER LAVERTY

I, Jennifer Laverty, upon oath depose and state as follows:

1.  I am an Assistant Attorney General for the Office of the Attorney General.

2.  On or about October 6, 2006, I went to the Worcester Superior Court and picked up the contents of the Court's file with regard to Shakir Maris Abdullah. These contents included two original corporate debentures.

3.  Attached as Exhibit 1 hereto is the Court's inventory list, which I signed, indicating the contents of the file I picked up.

4_  I gave the entirety of the file, including the original corporate debentures, to Cathleen Collins, a paralegal, in the Attorney General's Office for the Commonwealth of Massachusetts.

**Signed under the pains and penalties of perjury thi 2 / L)L)day of February, 2007.**

Jennifer Laverty P,
Assistant Attorney General

# EXHIBIT 1

# Commonwealth of Massachusetts
## Worcester County Superior Court

### Acknowledgment of Release of Documents
### In Re: Shakir Maris Abdullah a/k/a: Dennis Shelton
### Worcester Superior Court numbers: 90-1148; 90-1150-51

### October 6, 2006

Per request of Assistant Attorney General Ernest Sarason, the Worcester Superior Court Clerk's Office hereby produces and releases the following documents for the above captioned matter:

1.    Greeting card from Br. Dan Izzo (received by Clerk's office December 13, 2004).

2.    Correspondence from Br. Dan Izzo (dated November 19, 2004) addressed to Prison Officials with attachments totaling 4 pages.

3.    Copy of correspondence (dated December 6, 2004) of Shakir Maris Abdullah with handwritten marker notations and stamped in lower right hand corner with" Br. Dan Izzo" address in Syracuse, NY with attachments totaling 9 pages.

4.    Correspondence from Shakir Maris Abdullah (filed with Clerk's Office December 20,2004) re: establishing legal fund with attachments totaling 8 pages.

5.    One Million dollar bill, Serial number B03231025A, Series 2001 with print stating "This certificate is not legal tender, nor is it a representation of any existing or previous US Government capital note".

6.    Registered stock certificate entitled "Pennsylvania Company", numbered RV 3389, in the amount of $5,000. (Dated August 28, 1970)

7.    Registered stock certificate entitled "Fidelity Corporation", numbered RU 29181, in the amount of $108,000. (Dated October 13, 1978)

8.    Copy of correspondence of Shakir Maris Abdullah (received by Clerk's Office February 7, 2005) re: status of establishing legal fund with attachments totaling 7 pages.

9.    Memorandum from Assistant District Attorney James R. Lemire to Francis Ford, Clerk Worcester Superior Court (Dated July 19, 2005) re: Dennis Shelton a/k/a Shakir Maris Abdullah, concerning two stock/bond certificates.

10.   Letter from Matthew S. Lefebvre, Office Manager, Worcester Superior Court to Mr. Shakir Maris Abdullah a/k/a Dennis Shelton (dated July 22, 2005) re: Clerk's Office's inability to establish a legal fund as requested.

I hereby release the above referenced documents this 6 h day of October, 2006 to the custody of Jennifer Laverty, Assistant Attorney General .

_____
Corinne L. Gorman
First Assistant Clerk

I hereby acknowledge the receipt and take into custody the above referenced documents this 6` h day of October, 2006.

_____
Jennifer      e , Assista   Attorney General
(For     est Sarason, Assistant Attorney General)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

SHAKIR MARLS ABDULLAH,                     )
      Plaintiff,                              )
v.                                         )          C.A. NO. 05-11539-
                                           )          DPW

FRANCIS H. FORD, Clerk, CATHERINE          )
BRENNAN, Assistant Clerk, and REVEREND     )
DANIEL IZZO,                               )
      Defendants.                             )

## AFFIDAVIT OF MATTHEW LEFEBVRE

1. My name is Matthew Lefebvre. I am an office manager in the Worcester Superior Court.

2. Sometime in December 2004 or January 2005, I, along with First Assistant Clerk Corinne Gorman, opened a letter from Shakir Maris Abdullah that enclosed two corporate debentures and requested that the Court establish a legal defense fund on his behalf.

3. Attached as Exhibit A are copies of those corporate debentures.

4. We gave the entire contents of the letter, including the enclosures, to Regional Administrative Justice John McCann.


**Signed under the pains and penalties of perjury this ⁓⁓    day of February, 2007.**


Matthew Lefebvre

# EXHIBIT A

CoNVE" ICBL,E SUBO DINA `DDEEEENTURE

## DUE MAY 1, 1986

CEDE & CO

**DOLLARS**

F1DEL1TY CORPORATION

ATTEST                                  OY

!!PIITRI7 STATE ⁿ TRUST CO&W ANY OF NEW YORK



NOTICE

THE SIGNATURE TO THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT, OR ANY CHANGE WHATEVER. THE SIGNATURE(S) SHOULD BE GUARANTEED BY A COMMERCIAL BANK OR TRUST COMPANY, OR BY A NEW YORK, BOSTON, MIDWEST, PHILADELPHIA-BALT-WASHINGTON OR PACIFIC COAST STOCK EXCHANGE MEMBER OR FIRM, WHOSE SIGNATURE IS KNOWN TO THE REGISTRAR.

lllili": I! y ".w my a. Mow, p:.

uwn

pw: por ;,, up;r, aul

a =a_,m WA to 9-0 Win- am Quamst MIM V0_

.q) !,

MM IMMI,

MMM am R!

o~lf -ofaq ?aqpack uymd 243 w) nm=Tg .41 umm; m unp wuna pam"n Q

Alrja~zj "j,

1HA' *0D 01 N01 1011i 30

FSES

03=uNw)

met 4 AWN WZ

ounwoo3o CGIVNIGEOGFIS 118083ANOD Sli

Nommodmoo wi3ow

# NSYLVPNIA COMPANY
## SMKMG FUND DEBENTURE G'..IE 1°54

## ASSREVIATIONS

natr

I - I    — as tenants in common
         — as tenants by the entireties
         — as joint tenants with right of survivorship
           and not as tenants in common
           Additional abbreviations may also be

‡ f-- GM,

**SIM VANN RMMWK IV W&=<: hc,11· -111·**    and    u(Ern,

"OK5 01 .T,ë    Att, Jzn.-

TAN d :

N(l) T(F: '311-I    sig--ltmr., it, (Ili· !fNIig'.rtlcm "us,    ·•r.t.    !ht nacre as it arj.vz'5 epan vie *lace of*
o', hw%    ïc in C'ev.1    "ih, .t 'j.- 'li'-· r·.    ar - -| chard ·¡ ti.telcr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| SHAKIR MARIS ABDULLAH, ) | |
|     Plaintiff, ) | |
| v. ) | C.A. NO. 05-11539-DPW |
| | |
| FRANCIS H. FORD, Clerk, CATHERINE ) | |
| BRENNAN, Assistant Clerk, and REVEREND ) | |
| DANIEL IZZO, ) | |
|     Defendants. ) | |

**<u>AFFIDAVIT OF JAMES R. LEMIRE</u>**

1. My name is James R. Lemire. I am currently a Massachusetts Superior Court judge.

2. In 2004 and 2005, I was an Assistant District Attorney in Worcester, Massachusetts.

3. Sometime in December 2004 or January 2005, Superior Court Judge John McCann gave me a letter from Shakir Maris Abdullah that enclosed two corporate debentures.

4. I asked the Massachusetts State Police to conduct an investigation of the corporate debentures to see if a financial crime had occurred.

5. I subsequently gave the original materials I had received from Judge McCann to Trooper John Conron, who was conducting the investigation.

6. When Trooper Conron concluded his investigation, he returned the original materials, including the two original corporate debentures, to me.

7. I returned the original materials, including the two original corporate debentures, to the Worcester Superior Court clerk's office, in an envelope addressed to Clerk Francis Ford.

**Signed under the pains and penalties of perjury this _____ day of February, 2007.**

%
h"'e"ᵏ  ..,    - 0*1 . A
          12      .!f/
.n. James R. L mᴾe
assachusetts Superi r Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

SHAKIR MARLS ABDULLAH,                )
    Plaintiff,                             )
v.                                                   )            C.A. NO. 05-11539-
                                                      )            DPW

FRANCIS H. FORD, Clerk, CATHERINE  )
BRENNAN, Assistant Clerk, and REVEREND )
DANIEL IZZO,                                  )
    Defendants.                           )

## <u>AFFIDAVIT OF JOHN MCCANN</u>

1. My name is John S. McCann. I am a Judge at the Massachusetts Superior Court.

2. Sometime in December 2004 or January 2005, I took from Corinne Gorman and
   Matthew Lefebvre a letter from Shakir Maris Abdullah that enclosed two
   corporate debentures and requested that the Court establish a legal defense fund
   on his behalf.

3. I gave the entire contents of the letter, including the enclosures, to James R.
   Lemire, who was then an Assistant District Attorney.

**Signed under the pains and penalties of perjury this** /V **ay of February, 2007.**

Honorable John McCann

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHAKIR MARIS ABDULLAH,　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　　　C.A. NO. 05-11539-DPW

FRANCIS H. FORD, Clerk, CATHERINE　)
BRENNAN, Assistant Clerk, and REVEREND　)
DANIEL IZZO,　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　)

**AFFIDAVIT OF ANNE STERMAN**

1. My name is Anne Sterman. I am an Assistant Attorney General for the Commonwealth of Massachusetts.

2. In late December, 2006, I was assigned to represent Defendants Francis Ford and Catherine Brennan in the instant matter.

3. At that time, Cathleen Collins gave me the case file, which I reviewed.

4. Since late December, 2006, Ms. Collins has been on an extended leave from the office.

5. On February 9, 2007, I was speaking with Ms. Collins and she told me that there were additional documents pertaining to the case that were not in the case file. She told me that those documents were in a manila envelope in her file drawer.

6. I retrieved those documents and discovered that among them were two original corporate debentures, copies of which are attached to Mr. Lefebvre's affidavit.

**Signed under the pains and penalties of perjury this ___ day of February, 2007.**

_Anne Ste_

Anne Sterman
Assistant Attorney General