UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

C.A. No. 05CV1733 A 11:45 DPW

U.S. DISTRICT COURT
DISTRICT OF MASS.

Shakia Maris Abdullah
    Plaintiff,

    V.

Francis A. Ford, et al.,
    Defendants.

PLAINTIFF'S MOTION TO WAIVE
LOCAL RULE 7.1

Now comes the Plaintiff, who respectfully
Request that this Court waive Local Rule 7.1
on the ground that the plaintiff is currently
incarcerated at the Old Colony Correctional
Center in Bridgewater MA., and is unable to confer
with the Defendants in compliance with this
Rule.

Certificate of Service

I hereby certify that I
Served the foregoing motion
on Anne Stermon, Assistant
Attorney General, one Ashburton
Place, 18th Floor, Boston, MA.
02108 by first class mail.

Respectfully Submitted,
Shakir Maris Abdullah, Pro Se
Old Colony Correction Center
One Administration Road
Bridgewater, MA. 02324

October 17, 2007

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


C.A. NO. 05-11539-DPW


Shakir Maris Abdullah
   Plaintiff,

V.

Francis A. Ford, et. al.,
   Defendants.


PLAINTIFFS

AFFIDAVIT OPPOSING MOTION

FOR SUMMARY JUDGMENT


The plaintiff, Shakir Maris Abdullah, in
opposition to the defendant's Francis A. Ford
and Catherine Brennan motion for summary
judgment, on oath deposes and says that:


1. The Affidavit of paralegal Cathleen Collins
signed on the 12th day of February, 2007 and the
Affidavit submitted by Assistant Attorney
General Anne Sterman signed on the 16th day
of February, 2007 are both completely false,

1.

inaccurate and misleading.  _See exhibit A._

2. As early as May 8, 2006 paralegal Cathleen Collins forwarded to plaintiff 66 exhibits she had received from other than Assistant Attorney General, Jennifer Laventy in October, 2006.  _See exhibit B._

3.  In plaintiffs' June, 2006, Second Request For Production of Documents. Plaintiff was told that, "All relevant documents in the defendants' possession, custody or control have been previously produced to the plaintiff, Bates Labeled Numbers SMA 0001- 0066."  _See exhibit C._

4. In Fed.R.Civ.P. 26(a)(C): Time for Initial Disclosures – In General. A party _must_ make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order. This Court issued a Scheduling Order on July 12, 2006; that required all disclosures pursuant to Rule 26(a)(1) to be made by July 30, 2006 and all interrogatory and production of documents requests to be answered by November 30, 2006.  _See exhibit D._

2.

5. Fed. R. Civ. P. 37(c)(1) states: A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as Required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed......

6. The documents that the Defendants are seeking to return, with the Court's approval, so there is no conversion, did not come from the Plaintiff. <u>See</u> <u>exhibit</u> E, as evidence of what Plaintiff sent to Worcester Superior Court Clerk's Office. The Court has the original envelope in it's file for examination.

7. Bro. Don Izzo did send additional Requests to Francis Ford containing another donation for a legal fund. <u>See</u> <u>exhibit</u> F. These exhibits reveals that there were a substantial amount of material sent to Francis Ford from Br. Dan Izzo around December 13, 2004, or later. The volume of the envelope's contents can be gathered from the amount of the postage attached. The purpose of the contents of the envelope can be gathered from the statement

3.

ON the outside of the envelope (General Legal Fund, Court Donation). The fact that the Defendants have a copy of the outside of the envelope sent to them by Br. Don Izzo then concealed the contents strongly suggest that they themselves received the (2) Fidelity Corporation Notes totaling $100,000.00 and switch them for a $108,000.00 Fidelity Corporation debenture and a $5,000.00 Pennsylvania Corporation debenture that Br. Don Izzo Never sent to the Worcester Clerk's Office by his own admission. See SMA 0027 to exhibit B. And finally, the fact that there is a counterfeit $1,000,000.00 attached to these exhibits further suggest that it was substituted for the 2 Fidelity Corporation Notes totaling $100,000.00.

8. Additionally, the $100,000.00 donation that Plaintiff sent to the Clerk's Office was not valueless as the Defendants have alleged. The $100,000.00 Note required collateral to be deposited before the certificate could be issued for the amount of the note contained in the application. See exhibit G.

4.

9. On March 23, 2006 this Court issued a
Memorandum and Order stating that it had
subject matter jurisdiction over Plaintiff's claim
pursuant to 42 U.S.C. § 1983. Therefor, Defendant's
argument that Plaintiff cannot sustain a claim
under 42 U.S.C. § 1983 because he has an adequate
post-deprivation Remedy in the state courts is
without merit. Further, Massachusetts General
Laws cite 258 § 10: states - The provisions of
sections one to eight, inclusive, shall not apply
to:

(c) any claim arising out of an intentional
tort, including assault, battery, false
imprisonment, false arrest, intentional
mental distress, malicious prosecution,
malicious abuse of process, libel, slander,
misrepresentation, deceit, invasion of privacy,
interference with advantageous relations
or interference with contractual relations;

The Defendants conduct in the action has risen
above or transcended a ordinary tort to the
level of a major civil rights violation because
the monies the Defendants converted by deceit
and fraud was an intentional act.

10. The Defendant, Catherine Brennan, has not
explained where and why the brand new $1,000,-
000.00 was sent to the plaintiff. Attorney Gordon
W. Spencer still has possession of the original Million

5.

Dollar Bill. See SMA 0034 to exhibit B.

11. Additionally, the Affidavit of Emma Evans-Howard, who is not the mail officer, signed on the 21st day of February, 2007. Does not contain any record that plaintiff received any mail from Br. Don Izzo. But see exhibit E. Nor does the Affidavit of Emma Evans-Howard contain any record that plaintiff Received mail from Worcester's Clerk Office. However, see exhibit H. Nor are there any Recorded entries of the mail plaintiff sent to Bro. Don Izzo. The absence of this evidence creats the appearance that the Defendants are trying to hide something.

12. The above specific facts are made on the personal knowledge of the Plaintiff, Shakir Maris Abdullah, and indicate that there is a genuine issue for trial and that the Court should deny the Defendant's Motion for Summary Judgment and permit Plaintiff to continue his discovery.

Shakir Maris Abdullah Pro Se

6.

Certificate of Service

I, Shakir Manis Abdullah, hereby certify that I served upon Anne Sterman, Assistant Attorney General, One Ashburton Place, 18th Floor, Boston, MA. 02108, Plaintiff's Affidavit Opposing Motion For Summary Judgment by first class mail.

7.

EXHIBIT

A

EXHIBIT

B

PARTIES

2) The Plaintiff, Shakir Maris Abdullah, is incarcerated at Old Colony Correctional Center at Bridgewater Massachusetts and at all time relevant to the facts as stated in the complaint was confined at Old Colony Correctional Center.

3) Defendant, FRANCIS A. Ford, is the Clerk of Court for Worcester County and is Responsible for the overall operation of the Clerks office. Clerk Ford is also responsible for establishing a Requested general legal fund with the Clerks' office. She is equally responsible for wrongfully withholding donations, attempting to mislead plaintiff about the donations and failing to Supervise her subordinate assistant clerk Catherine Brennan. She is being sued in her official and individual capacity.

4) Defendant, Catherine Brennan, is the Assistant Clerk for Worcester County and is Responsible for wrongfully withholding donations, attempting

2.

## FACTS

6) IN January 27, 2004, plaintiff placed a Justice Denied legal Ad on Friends Beyond The Wall website. See attachment.

7) Then on December 5, 2004 plaintiff received a Christmas Card **from** defendant IZZO containing a One Hundred Thousand Dollar ($100,000) Federal Reserve Bank Note instructing him to forward the item to the Court Clerk for the establishment of a Legal fund.

8) Then on December 6, 2004 plaintiff mailed to Clerk of Court Francis A. Ford a copy of the Christmas card and a copy of the ONE Hundred Thousand Dollar ($100,000) bank note Requesting Clerk Ford to establish a legal fund consistent with the instructions given in the Christmas card.

4.

SMA 0005

19) Plaintiff forthwith forwarded the ONE Million Dollar Bill ($1,000,000) to Attorney Spencer by certified mail for his inspection and received a reply letter showing and illustrating how and why the money was counterfeit!

20) Plaintiff immediately forwarded a letter to Clerk of Court Francis H. Ford on May 9, 2005 seeking a explanation about the counterfeit money. See exhibit B attached hereto.

21) At the same time plaintiff mail letters to defendant Daniel Izzo on May 6, 2005, May 9, 2005 and May 11, 2005 concerning what had taken place with the money. He refused to accept any of plaintiffs letters.

22) Then on June 16, 2005 plaintiff received a letter from Assistant Clerk Catherine Brennan stating again that their office does not establish legal funds but she never explained how or why she sent the counterfeit money. See exhibit C attached hereto.

8.

SMA 0009

23) Nor did Assistant Clerk Catherine Brennan state or explain what happen to the One Hundred Thousand Dollar ($100,000) bank note plaintiff initially forwarded to the clerks office.

24) Nor did Assistant Clerk Catherine Brennan state or explain what happen to the additional One Hundred Thousand Dollar ($100,000) forwarded to the clerks office.

## LEGAL CLAIMS

25) Plaintiff states a claim for relief based on the adverse treatment he has been subjected to and the mental anguish and emotional stress he has experience throughout this ordeal. And will continue to experience unless this Court grant the requested relief sought.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully request that this Honorable Court grant him the following Relief:

9.

SMA 0010

(26) Order the defendants Ford and Brennan to turn over the $200,000.00 donation they have in their possession to the plaintiff since they have determined their office does not establish legal funds.

(27) Order the defendant Izzo if it's concluded that he participated in deceiving the plaintiff with counterfeit money to pay plaintiff the $100,000.00 to pay for his defense.

(28) Grant mental anguish and emotional distress damages of $25,000.00 from each of the defendants.

(29) Award plaintiff the cost for prosecuting this action.

(30) Grant such other relief as the Court deems just and equitable.

Respectfully Submitted this 10th day of November 2005.

Shakir Maris Abdullah Pro Se
Shakir Maris Abdullah Pro Se
Old Colony Correctional Center
One Administration Road
Bridgewater, MA. 02324

18.

SMA 0011

02/15/2006  09:18  FAX                                                                    ⌀013/037
1/27/04 11 33 AM

Information  Shakir Abdullah



# Justice Denied — Legal Ads

*Exhibit "A"*

**Unresolved Events**





Dear Readers:

My name is Shakir Maris Abdullah, and I'm writing about unresolved events that occurred at my August 1991 trial. I have attached as an exhibit a four-page letter, which was written by my trial attorney Greg T. Schubert, that essentially provides many details about these events (condensed into one page below).

As this letter indicate there was a Sergeant Dennis Towner of the Worcester Police Department having a sexual relationship with a Naomi Papale who was believed to have fathered Ms. Papale's two children, Kara and Dennis Papale.

On two separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester City Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon inquiry of Naomi Papale's children birth records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papale. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further investigation was conducted on the issue at that time and I was subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. Babitch that there was "no record on file" for Dennis Papale and indicated that there may have been a name change through adoption and or marriage. I have these documents available for anyone's inspection.

In fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17/85. He further stated, in his affidavit that a clerk at the Bureau of Vital Statistics told him that Kara Papale, dob 05/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never instructed to proceed to the police internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naomi Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*(Letter from Trial Attorney):*

### PROCTOR, RASNICK & GOEWEY
#### COUNSELLORS AT LAW
#### TEN MECHANIC STREET · SUITE 300
#### WORCESTER, MASSACHUSETTS 01608

JOHN H GOEWEY
MARVIN F. RASNICK
GREG T SCHUBERT

TELEPHONES
AREA CODE 508
798 6706
798 2034
798-1060

TELECOPIER
800 798-4692

William J. Leahy, Esquire
Chief Counsel
Committee for Public Counsel Services
Suite 600
80 Boylston, Street
Boston, MA. 02116

RE: DENNIS SHELTON  AKA SHAKIR MARIS ABDULLAH
      Murder Conviction / Appeal Decisions

Dear Mr. Leahy:

At the suggestion of Diane Hanson I am writing to outline what matters are presently unresolved with regard to this case. Dennis Shelton was originally charged with the murder [felony murder theory] and armed robbery of one, Greg White. He was also charged with armed assault with intent to rob and assault and battery with a dangerous weapon [Handgun] of Naomi Papale. These alleged events occurred several hours apart and at different locations.

I am the third counsel appointed to Mr. Shelton. Previously he was represented by James Gribowski and Bernard Grossberg pursuant to Committee appointment. I have just finished an eight day trial by combat with the Commonwealth and more signifigantly Associate Justice James P. Donohue.

Prior to trial I filed extensive motions for relief under Rule 9 [a] [3] and 9 [d] [Misjoinder and prejudicial joinder]. I attempted to have these motions heard and decided two weeks prior to trial. Donohue, who was specially assigned, denied this request off the record. On the opening day of trial Judge Donohue would not allow me to be adequately heard [if at all] on these motions [which were of a crucial nature to the case]. Without the Papale incident, the Commonwealth was without any evidence to prove Mr. Shelton had a gun. Additionally, I had filed a motion for a 48 hour continuance due to the Commonwealth informing me of a new alleged admission witness [morning of trial] and another witness who had changed her testimony entirely and thereon gave very incriminating new testimony [she later recanted her alleged new testimony and endorsed her initial testimony at the trial]. This motion was denied summarily—the 9 a & d motions were held under advisement. I indicated that that ruling was unacceptable to the defense. After a particularly bitter [but always respectful] exchange between myself and his honor, he denied all my pre-trial in limine motions. I declined to start the trial without Single Justice review. To say that his honor was incensed is an considerable understatement.

Justice Wilkins was of no assistance upon my Chapter 211, 3 petition. He wouldn't even assist me pursuant to my law clerk who had practicing papers, but who Judge Donohue would not allow to participate at side bar conferences. I can only imagine the reception I would have had with Justice Nolan! The trial commenced with the selection of a all white jury. There were no black persons in the 85 person venire. Perhaps this is a matter that Mr. Harris might inquire into and take appropriate action.

The Commonwealth proceeded on a theory of felony murder. At the conclusion of the Commonwealth's case, I moved for a directed finding on the armed robbery indictment of Greg White. This motion was granted after much agrument. Thereon, by implication, so would the murder indictment die of consequential causes. The Commonwealth argued at length after the ruling that there was not sufficient evidence to submit the case to the jury on premeditation and malice aforethought or any theory other than felony murder. The judge then informed the Commonwealth that if it did not wish to proceed under his new theory of the case, he would direct on the murder. The Commonwealth—lights flashing chose to adopt Judge Donohue's new theory—wholeheartedly. The defense was now locked into further battle with both the Commonwealth and the bench.

The defense through some client information supplied by pimps of which I am friendly, informed me that Ms. Papale, who had testified as to the second alleged incident which connected my client with a gun, had in fact, been having sexual relations with the chief operations officer of the Worcester Police Department Vice Squad for a long period of time. This information was particularly signifigant in light that Ms. Papale

SMA 0013

This information was particularly significant in light that Ms. Papale had, at the probable cause hearing, invoked her fifth amendment privilege some twenty-two times and prior to her testimony, I had sought a ruling to ascertain whether she would invoke her privilege, now at the trial. The A.D.A. and her counsel [a former A.D.A.] who stood with her throughout her testimony agreed that she would not if no questions were asked about her children and their father. I assented to this in good faith and in compliance with conduct beyond reproach, as I had no reason to believe said line of inquiry was relevant.

I immediately alleged the newly discovered information and accompanying prosecutorial misconduct and moved for dismissal thereon. The Court was oblivious. The Court did order both Sgt. Dennis Towner and Ms. Papale back for a voir dire examination. Towner denied sexual relations but admitted to dating, refusing to end his relationship with Ms. Papale such that he was relieved of his vice squad position [he maintained his rank upon transfer], paternity of Ms. Papale's youngest child [coincidentially named Dennis], and denied a police internal affairs investigation. Ms. Papale took the fifth amendment upon advise

of counsel as to sexual relations, admitted having numerous criminal charges squelched by Towner and denied paternity as to the child named Dennis. The Court informed counsel that it would not allow inquiry into sexual relations between the two before the jury. Objection was noted and I did not call these witnesses as part of the defense. I have good reason to believe that both of these individuals perjured themselves and cannot in writing commit my reasons for this view. Suffice it to say this matter may provide an excellent basis for Rule 30 relief.

The defense demonstrated by both expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary Commonwealth witness, Holmes could not have heard or seen the client as alleged. His own common law wife disputed his testimony and she was in a position to much better hear or see Mr. Shelton—her testimony had him leaving the crime scene prior to the alleged admission by Shelton. Further, we produced evidence that he [Holmes] had been threatened by the police and gave new evidence against Mr. Shelton only upon such duress. The defense also offered unrefuted evidence of two individuals that had motive and opportunity to commit the murder—one being detained by the police on the night of the killing because he physically matched the victim's description and was clothed in black sweat shirt and black sweat pants.

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he identified his assailant as 5´ 11´ black male, wearing a black sweatshirt and black sweatpants. He further stated that he did not know his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. White. The EMT's characterized White as alert and fully conscious when he gave those statements.

Suffice it to say, that if I had not been obliterated by guilty verdicts of this ilk in the past, I would have put both Sgt. Towner and Papale back on the stand. It was my decision at the time that they represented an insurance policy against any murder conviction. I believe that decision was correct and still maintain its correctness. Presently, the major question confronting the Committee is to make a decision as to whether to await appellate review which might well elicit a Mazza or Salemme type decision or move on Rule 30 relief upon proof of the perjury. I must inform you that Mr. Shelton has throughout this case insisted upon his innocence. Personally I have never been accused of naivete—I must point out that the likelihood of this is upon the evidence substantially in his favor. This bothers me greatly. In fact—more than greatly.

SMA 0014

have over 200 hours involved. Private investigation expenses are going to be high--Mr. Lajoie was extremely valuable and much of the demonstrative evidence presented was a result of his total dedication to this case. My clerk will also cost some additional expense.

As an aside, the Worcester County District Attorney is now not giving probable cause hearings [serious felonies] is only going to further raise investigative expenses substantially. At least, those decisions will not haunt me. I recommend that a transcript be ordered immediately and procured with all due haste. My personal opinion is that reversible error is rife throughout these proceedings, but a new trial may not be what best serves Mr. Shelton and the time attendent to that end may require him to remain incarcerated even longer than the 19 months he has presently served awaiting trial.

I believe this gives you a broad overview of the situation, I will make myself available in Boston to you or Mr. Speer on specifics anytime this week if you believe further discussion would be fruitful. Bottomline--I´m frustrated over my present impotence. I realize that this is an occupational hazard, but it does not quell my anger at this result.

Very truly yours,

Greg T. Schubert

Dated: August 16, 1991
GTS/mk
cc: Theodore Harris, Esq.

**Write to me at:**

Shakir Maris Abdullah
#W51043
OCCC
One Administration Rd
Bridgewater, MA 02324

**Send Email**

Justice Denied
Main Section

Shakir Maris Abdullah
OCCC
One Administration Road
Bridgewater, MA 02324

Exhibit B

Francis A. Ford
Clerk/Magistrate
Worcester County Superior Court
2 Main Street
Worcester, MA 01608

# FILED

**MAY 1 2 2005**

ATTEST:

From A Ford

CLERK

Dear Madam:

On December 6, 2004 I forwarded to you a letter requesting that you establish a legal fund on my behalf. See exhibit A attached.

However, you wrote me back and asked me to provide you with the docket number to my case which I did. See attached exhibit B.

After receiving no reply I forwarded you another letter on February 4, 2005 inquiring about the December 6, 2004 and December 14, 2004 letters that I had written to you. See exhibit C attached hereto.

Then on February 28, 2005 I received a package of letters from Assistant Clerk Catherine Brennan stating that the clerks' office does not establish legal funds. See enclosed package as exhibit D.

Along with this package I received from Assistant Clerk Catherine Brennan a 1,000,000.00 (One Million Dollar Bill) that turned out to be Counterfeit! See exhibit E to Attorney Gordon W. Spencer who I forwarded this item to in hope of retaining his services.

What I need to know from you is what happen to the 100,000.00 Federal Reserve Bank Note attached to my December 6, 2004 and my December 14, 2004 letters to you that Assistant Clerk Catherine Brennan never returned in her February 28, 2005 letter to me.

1.

I also need to know what happen to the 2 Fidelity Corporation Notes totaling a $100,000.00 worth of National Bank Notes forwarded to you for a General Legal Fund.    These items were missing from Assistant Clerk Catherine Brennan February 28, 2005 letter to me as well.

Would you also explain to me why Assistant Clerk Catherine Brennan sent me a Counterfeit $1,000,000.00 instead of the real money I need to pay attorney Gordon W. Spencer to represent me in this unjust matter.

Please be advise that upon receiving Mr. Izzo's letter to forward the 100,000.00 Federal Reserve Bank Note to you for the establishment of a legal fund I had my legal Ad - Justice Denied article removed from the internet because innocence citizens were still writing that wanted to help me and Mr. Izzo's donation was sufficient enough to address my unjust conviction. See exhibit F attached hereto.

However, I'm placing this Legal Ad back on the internet and will leave it there until my unjust conviction is fully resolved.

I look forward to your reply right away.

- Sincerely yours,

cc: Attorney Gordon W. Spencer
    Reverend Daniel Izzo

Shakie Mario Abdullah

Dated: May 9, 2005

2.

SMA 0017

Francis A. Ford
Clerk/Magistrate                              Exhibit A
Worcester County Superior Court
2 Main Street
Worcester, MA. 01608

                              December 6, 2004

Shakir Maris Abdullah
BCCC
ONE Administration R.d.
Bridgewater, MA. 02324


Dear Mrs. Ford:

Enclosed please find my Justice Denied legal
& I had placed on the internet seeking legal
assistance or donations.

In response to this request I received the enclosed
note for the Court Clerk to endorse and deposit
with the Court Clerk for a legal Fund on my behalf.

I have also provided herein a copy of the message that
accompanied the Note directing me to forward this item
to you that I may have a legal Fund established to
resolve the many issues contained in my Justice Denied
Legal Act.

                    1.

SMA 0018

Once this process is completed by your office
would you please notify me forthwith.

Thank you for your time and attention into this
very important matter.

Sincerely yours,

Shakir Maris Abdullah

cc: File

2.

Hi, ask the Court
to endorse the
Note under
USC Title 12 sec 412
and Deposit it
with the
Court Clerk
for a legal
Fund





As we thank God
for his many blessings this
Christmas,
let us also pray for
Peace on Earth.

Have a Merry Christmas
and Blessed New Year!

**Cryonic Life Insurance Company**

**Rev Dan Izzo**
Dept of General Resurrection

512 Onondaga Ave
Syracuse, NY 13207

FRANCIS H. FORD

CLERK OF THE COURT

ROOM 21 -- COURT HOUSE

2 MAIN STREET

WORCESTER, MASSACHUSETTS

01608 - 1176

Exhibit B

12-14-04

Shakir Manis Abdullah

J.C.C.C.

ONE Administration Rd.

Bridgewater, MA. 02324

RE: Shakir Manis Abdullah

aka Dennis Shelton

# 90-1148 - 1150 - 1151

Dear MRS. FORD:

Enclosed please find my Justice Denied Legal
Ad I had placed on the internet seeking legal
assistance or donations.

IN response to this request I received the
enclosed Federal Note for the Court Clerk to
endorse and deposit with the Court Clerk to
a Joan held on my behalf.

SMA 0022

I have also provided herein a copy of the messag
that accompanied the Federal Note directing m[?]
to forward this currency to you that I may [?]av[?]
a Legal Fund established on my behalf.

Once this process is completed by your office
I would request that no funds be withdrawn
from this account by anyone without my approva[?]
and signature.

Thank you for your time and attention to this
very important matter and I look forward to
your reply.

Sincerely,

Shakir Maris Abdullah
aka Dennis Shelton
#90-1148-1150-1151

CC: File
Rev. Dan Izzo

Shakir Maris Abdullah          *Exhibit C*
OCCC
1 Administration Road
Bridgewater, MA. 02324

February 4, 2005

FRANCIS A. FORD
CLERK OF THE COURT
ROOM 21 - COURT HOUSE
2 MAIN STREET
WORCESTER, MA. 01608-1176

Dear Mrs. Ford:

On December 6, 2004 I forwarded to your office a request
to establish a legal fund on my behalf with the clerk's
office. However, this request was returned on December
10, directing me to provide a docket entry number. There-
after, I forwarded you another letter on December 14, 2005
containing this requested information. But, I have received
no reply from you concerning this matter to date. Please
see attachments.

Would you kindly inform me of the status of this request
that I may proceed to retain a attorney to correct these
injustices.

Shakir Maris Abdullah
AKA Dennis Shelton
No(s); 90-1148; 1150-51

                              Sincerely yours,

                              *Shakir Maris Abdullah*
                              Shakir Maris Abdullah

cc: file
Rev  Dan Izzo

SMV 0024

02/15/2006 09:24 PAX

# FRANCIS A. FORD

CLERK MAGISTRATE

ADDRESS ALL COMMUNICATIONS
TO
CLERK OF COURTS
ROOM 21 COURT HOUSE
2 MAIN STREET
WORCESTER MA 01608-1176



County of Worcester

In The

Commonwealth of Massachusetts

Office of Clerk of the Courts

Telephone 508-770-1899

CORINNE L GORMAN
FIRST ASSISTANT CLERK

OTHER ASSISTANT CLERKS
THOMAS F GAHAN
KEVIN M GOLDEN
ALEXANDER BURGESS IE J a
KAREN TYMONUS IUS
EUGENE G SULLIVAN
DENISE D FOLEY
MARY F STRATTON
JOANNE E HEGGIS
CATHERINE M BRENNAN
GAIL M DEMPSEY

February 28, 2005

Dear Sir:

We are returning these papers to you as our office

does not establish legal funds.

Exhibit D

Sincerely yours

Catherine Brennan

Catherine Brennan
Assistant Clerk

*Donation letter* [handwritten]

*For a: Court General Fund* [handwritten, left margin]

Shakir Maris Abdullah
OCCC
1 Administration Road
Bridgewater, MA. 02324

February 4, 2005

FRANCIS A. FORD
CLERK OF THE COURT
ROOM 21 - COURT HOUSE
2 MAIN STREET
WORCESTER, MA. 01608-1176

*Relating to this Letter issue;* [handwritten]

Dear Mrs. Ford:

On December 6, 2004 I forwarded to your office a request to establish a legal fund on my behalf with the clerk's office. However, this request was returned on December 10, directing me to provide a docket entry number. Thereafter, I forwarded you another letter on December 14, 2005 containing this requested information. But, I have received no reply from you concerning this matter to date. Please see attachments.

Would you kindly inform me of the status of this request that I may proceed to retain a attorney to correct these injustices.

Shakir Maris Abdullah
AKA Dennis Shelton
No(s); 90-1148; 1150-51

*I do not Know Petitioner The Donation is For the Court For a "General Legal Fund" Rev Izzo* [handwritten]

Sincerely yours,

*Shakir Maris Abdullah,* [signature]
Shakir Maris Abdullah

cc: file

Rev. Dan Izzo,

SMA 0026

02/15/2006

FORM LETTER

## ASSIGNMENT AND TRANSFER
## of NATIONAL BANK NOTES
USC Title 12 sec 342  DEPOSITS

NOTICE THIS LETTER IS CONNECTED TO A DONATION

OF 2 FIDELITY CORPORATION NOTES MAILED TO THE COURT CLERK

FOR A **GENERAL LEGAL FUND** FOR THE COUNTY COURTS

DONATION OF @ **$100,000.00** total **NATIONAL BANK NOTES**

**DEPOSIT like a paper coin, add to your bank account**

" *It* **was** *new money, created by the bank* ..... "

TO THE County Court of *Worchester; Francis Ford,*
Court Clerk as Trustee

FOR VALUE RECEIVED, the undersigned hereby sells, assigns

and transfers  @ **$100,000.00**   total  **NATIONAL BANK NOTES** to

**for DEPOSIT,**
under-------------------------------------------------------------------------------
---------------**US CODE**
TITLE 12§ 342. Deposits; exchange and collection, member and
nonmember banks or other depository institutions; charges

(US CODE TITLE 31  § 3302 Custodians of (Public) money )

NATIONAL BANK NOTES standing in the name of

( for most other donations: the FEDERAL GOVERNMENT agency CEDE & CO,

street name for **The $19 Trillion Depository Trust Company**

the Security Exchange Commission's trust company. )

Holder NATIONAL BANK NOTES represented by:

(1) FIDELITY CORPORATION Certificate  No

and (2) FIDELITY CORPORATION Certificate  No

**USC Title 12 § 342. Deposits; exchange and collection; member and nonmember banks or other depository institutions; charges**

**Any Federal Reserve bank may receive from any of its member banks, or other depository institutions, and from the Unites States, deposits of current funds in... national-bank notes,...... solely for purposes of exchange, ....** may receive from any nonmember bank or trust company or other depository institution deposits of current funds in lawful money, **national-bank notes**,

NATIONAL BANKING ASSOCIATION NOTES issued after 1935 are not Lawful Money but may or may not be **Legal tender, I am not sure exactly.**

USC Title 31 Sec. 5103. – **Legal tender**

SMA 0028

" *United States coins and currency (including* Federal reserve notes and *circulating notes of* Federal reserve banks and *national banks*) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts "

---

The undersigned hereby and irrevocably constitutes and appoints

THE COUNTY COURT OF **Worchester, MA**

attorney-in-fact, to DEPOSIT said NATIONAL BANK NOTES under USC TITLE 12 SEC 342 DEPOSITS
with full power of substitution in the premises.

If the COUNTY can use more of these monetary NBN instruments let me know

*Rev Dnl L dyn* ©

Cryonic Life Insurance Company
Dept of General Resurrection
Reverend Daniel Izzo
512 Onondaga Ave
Syracuse, NY 13207
1-315-472-5088

**PS You Can
Throw out Donation,
if you like,
No Reply NEEDED**

References

**US CODE**
TITLE 12 > CHAPTER 3 > SUBCHAPTER IX > § 342 Prev | Next

§ 342. **Deposits; exchange and collection; member and nonmember banks or other depository institutions; charges**

Any Federal Reserve bank may receive from any of its member banks, or other depository institutions, and from the Unites States, **deposits of**

**current funds** in lawful money, **national-bank notes**, Federal reserve notes, or checks, and drafts, payable upon presentation or other items, and also, for collection, maturing notes and bills; or, **solely for purposes of exchange** or of collection may receive from other Federal reserve banks deposits of current funds in lawful money, **national-bank notes**, or checks upon other Federal reserve banks, and checks and drafts, payable upon presentation within its district or other items, and maturing notes and bills payable within its district; or, solely for the purposes of exchange or of collection, may receive from any nonmember bank or trust company or other depository institution deposits of current funds in lawful money, **national-bank notes**, Federal reserve notes, checks and drafts payable upon presentation or other items, or maturing notes and bills: Provided, Such nonmember bank or trust company or other depository institution maintains with the Federal Reserve bank of its district a balance in such amount as the Board determines taking into account items in transit, services provided by the Federal Reserve bank, and other factors as the Board may deem appropriate: Provided further, That nothing in this or any other section of this chapter shall be construed as prohibiting a member or nonmember bank or other depository institution from making reasonable charges, to be determined and regulated by the Board of Governors of the Federal Reserve System, but in no case to exceed 10 cents per $100 or fraction thereof, based on the total of checks and drafts presented at any one time, for collection or payment of checks and drafts and remission therefor by exchange or otherwise; but no such charges shall be made against the Federal reserve banks.

---

**REFERENCES;**

**US CODE**
**TITLE 15**
**§ 77ppp. Directions and waivers by bondholders; prohibition of impairment of holder's right to payment; record date**

---

**"Those unaware are unaware of being unaware."**
**(Merrill Jenkins)**

**Do you mean that banks, in buying Government**

**To the Court Clerk**

Dear Prison Officials:                                    Nov 19th 2004

Mailroom;        **Donation Note For a General Legal Fund**

Concerning the American Art Classic (AAC ) $10,000 Note Specimen series 2004 and or a worthless Stock Certificate.

I mailed a letter to some prisoners because

last week USA Today had an Internet news story concerning America's 2.2 Million People in US Jails, the article had a link to " Prison Pen Pals " with names and Prison addresses of @65 people seeking Legal and or monetary help and @ 35 kids under 21 with jail time over 3 years, out of @2100 prisoner postings.

I wrote to this group asking them to ask the Court to endorse the specimen note under USC Title 12 sec 412 and Deposit the note with the Court Clerk for a Legal Fund ( and to some a Trust and Text to Speech Software for Courts and Prisons )

If the Court has Special Drawing Right certificates/powers it maybe able to establish limited Legal Fund Trusts under USC Title 12 sec 412.

I did want to inform the prisoners that I hold bearer instruments that the Court could use as collateral under USC Title 12 sec 342 In the form of National Bank Notes or Guaranteed National Bank Notes.

I do not know much about prison or that other Trust programs do exist , my goal is to provide the Courts with Text to Speech Software and a possible EXILE OF PRISONER program to volunteer mining prison work camps in one of America's 1000s of abandoned silver mines.

As a member of the clergy I thought I should do something productive for the Courts and possible the prisoners.

It seems the entire mailing was a failure because the novelty note.

If you have the $10,000 note specimen and or stock certificate you can keep it or throw it away.

( I'm scared of some )

**No Reply Needed**

Br. Dan Izzo
512 Onondaga Ave.
Syracuse, NY 13207

SMA 0031

Reference Letter

DEAR UNITED STATES SENATOR:

THIS LETTER IS NOT A JOKE
AMERICA HAS EXTRA TRILLIONS OF CAPITAL UNUSED
I SAY MORE THAN $50 TRILLION IN 2004 DOLLARS
THIS EMAIL MAYBE A EASY WAY TO LEGALLY SINK THE UNITED
STATES DEBT WITHOUT CIRCULATING EXTRA MONEY
AND ALSO SECURING US GOVERNMENT BONDS BUT IN INTEREST
BEARING TRUST HOW TO LEGALLY
SINK THE NATIONAL DEBT
**The Unknown $19 Trillion**
**Depository Trust Company  Part of the SEC US Gov Trust**
**Simple Formula to Secure and Sink the National Debt:**
USE
**(1) USC Title 12 sec 412; Apllication for Notes Collateral Required:**
Then
**(2) USC TITLE 12 SEC § 342. Deposits; exchange and collection; member and
nonmember banks or other depository institutions; charges**
THEN
(3) DEPOSIT THE $19 TRILLION DOLLAR NOTE FROM USC TITLE 12 SEC
412, 342, SECURED BY THE $19 TRILLION DEPOSITORY TRUST
COMPANY  AS SIMPLE COLLATERAL
THEN
(4) DEPOSIT SAID $19 TRILLION DOLLAR NOTE;  BUT IN TRUST ; ( NOTE
NOT TO BE CIRCULATED ) WITH THE UNITED STATES TREASURY
THEN
(5) REMOVE THE UNITED STATES DEBT OBLIGATIONS FROM THE
GENERAL FUND
OBLIGATIONS OF THE UNITED STATES AND SEPARATE THESE DEBT
PAYMENTS FROM THE GENERAL FUND
THEN
(6) MAKE A PAYMENT PLAN TO SLOWLY PAY THE UNITED STATES
DEBT OBLIGATION FROM THE $19 TRILLION DOLLAR TREASURY
TRUST FROM NUMBER 3 ABOVE
WHEREAS THE ENTIRE UNITED STATES DEBT IS NOW SUNK, SECURED
AND IN THE PROCESS OF PAYMENT THRU TREASURY TRUST FUND OF
PART 3
WHEREAS FURTHER MONEY IS CREATED FROM THE TRANSMUATION
OF SILVER METAL INTO CREATED 10KT GOLD COIN ( SPECIE ) AND
SILVER ORE MINES ARE TREATED AS UNDER GROUND FORT KNOX
SILVER HOLDING MINES AND UNITED STATES SILVER CERTIFICATES
ARE ALSO ISSUED
THEREFORE MONEY IS PSYCHOLOGICAL,

**Money is Created by Human Beings**

SMA 0032

The United States Postal Savings Bank can create money notes and sink National debt

THE $19 TRILLION DOLLAR DEPOSITORY TRUST COMPANY a SEC GOV TRUST, as collateral under USC Title 12 sec 412 can sink the National Debt
(1) Reissue: UNITED STATES Notes as Legal tender,
(2) the United States Postal Savings Bank can create money notes and load money to Amtrak -Railroad bonds in exchange for US Postal Savings Bank money notes.
Dear Member of Congress, President Bush and Vice President Cheney and Staff:

The Depository Trust & Clearing Corporation (DTCC), established in 1999, is a new holding company that is the parent of and provides services to two principal subsidiaries - The Depository Trust Company (DTC) and National Securities Clearing Corporation (NSCC). These two firms provide the primary infrastructure for the clearance, settlement and custody of the vast majority of all equity, corporate debt and municipal bond transactions in the United States.
DTC is the world's largest securities depository and a major clearinghouse for institutional post-trade processing and settlement. DTC holds and services almost $23 trillion in assets for its participants and their customers. During 1999, DTC processed over 189 million book-entry deliveries valued at almost $94 trillion.
NSCC is the leading provider of centralized post-trade comparison, trade guarantee, trade netting, settlement and information services for equities, bonds, Unit Investment Trusts, mutual fund and insurance transactions in the U.S. In 1999, NSCC processed more than 1.5 billion transactions valued at almost $70 trillion
For more information, check web sites at www.dtcc.com, www.dtc.org, or www.nscc.com.

View Jobs for Depository Trust & Clearing Corporation

--------- -------- ------------LEGALLY SINK THE UNITED STATES DEBT WITHOUT CIRCULATING EXTRA MONEY

AND ALSO SECURING US GOVERNMENT BONDS BUT IN TRUST
HOW TO LEGALLY SELF FUND THE US MILITARY AND MAYBE SINK THE NATIONAL DEBT
The Unknown $19 Trillion
Depository Trust Company  Part of the SEC US Gov Trust
Simple Formula to Secure and Sink the National Debt:
USE
(1) USC Title 12 sec 412; Apllication for Notes Collateral Required:
Then
(2) USC TITLE 12 SEC § 342. Deposits; exchange and collection; member and nonmember banks or other depository institutions; charges

SMA  0033

## GORDON W. SPENCER

*Attorney at Law*

1256 Park Street, Suite 104
Stoughton, MA 02072

(781) 297-9293
Fax: (781) 297-9295

*Exhibit E*

May 2, 2005

Mr. Shakir Maris Abdullah
Old Colony Correctional
One Administration Road
Bridgewater, MA 02324

Dear Mr. Abdullah:

I am writing to follow up on our meeting today at Old Colony. I managed to get over to the post office by five-o'clock today in order to pick up the correspondence you sent me (along with the 1M dollar currency). After review of the currency, I am 100% certain that the currency is fake. I took the liberty to copy the currency (along with a genuine 100$ bill), and you can see that the currency you sent me has stark differences as it relates to the data on the currency.

For example, the black seal on the left side of your currency reads "Millionaire Bank USA", where the black seal on my currency reads, "United States Federal Reserve System". Even more compelling is the notation underneath the black seal of your currency, which reads, "This certificate is **not legal tender, nor is it a presentation of any existing or previous U.S. Government note"**. My currency reads, "this note is legal tender....". In essence, there is nothing on your currency which would give me any reason to believe that your currency is genuine.

Quite frankly, this is information that you should have realized before thinking the currency was real. Even the green seal on the right side of your currency reveals that your currency comes from the Department of "Funny Money".

Kindly advise how you want to proceed. I will hold on to the original until further instructions.

Very truly yours,

Gordon W. Spencer

Enc.

*Exhibit F*

Friends Beyond The Wall, Inc.
Poughkeepsie Plaza
2600 South Road, Suite 44-244
Poughkeepsie, NY 12501

**Subscription Expiration Notice ...**

☐ Expiration Date: ___ / ___ / ___

**Renew today—less than1/2 PRICE! Only $14.95 for 1 Full Year!**
Hurry, substantial discounts available only through date above! Payment must be received by or before expiration, or full price will apply (if payment is not received, your subscription will be deleted the day after expiration date!)

**Confirmation** *...the following has been completed!*

☐ Counter: ___  ☐ Counter Removed  ☐ Counter Reset'd
☐ Address Change  ☐ Alternate Address
☐ Ad Renewal  · Received $ _____
☐ New & Resumed · Received $ _____
☐ Mail Account · Received $ _____
*(not available for NY State prisoners)*
☑ Cancellation of Subscription ___ thank you!
☑ Other _Ed Copies - F-11 Page ⌣_
___ $3.00 each

**New Subscriptions...**

*Your subscription request has been received; however, the following has not yet arrived at our office. Item(s) below are needed to complete your order(s).*
**MISSING INFO** – Send items below to: **ATTN: PENDING ORDER**
☐ Payment in amount of $ _____  ☐ Text  ☐ Photo
☐ _____
Please Note: Thank Staff of this new subscription ___

SEND TO:

Shakir Abdullah
#W51043
OCCC
One Administration Rd.
Bridgewater, MA 02324

*Exhibit "C"*

# FRANCIS A. FORD

CLERK MAGISTRATE

ADDRESS ALL COMMUNICATIONS
TO
CLERK OF COURTS
ROOM 21 COURT HOUSE
2 MAIN STREET
WORCESTER, MA 01608-1176



County of Worcester

in the

Commonwealth of Massachusetts

Office of Clerk of the Courts

Telephone 508-770-1899 .

CORINNE L GORMAN
FIRST ASSISTANT CLERK

OTHER ASSISTANT CLERKS
THOMAS F. GALLEN
KEVIN M. GOLDEN
ALEXANDER HERDERMAN, PH.
KAREN TYMON ZONA
EUGENE G. SULLIVAN
DENISE D. FOLEY
MARY F. STRATFORD
JOANNE F. HERRING
CATHERINE M. BRENNAN
GAIL M. COMETTY

June 16, 2005

Shakir Maris Abdullah
OCCC
One Administration Road
Bridgewater,    MA   02324

Dear Sir:

        We are returning to you all materials mailed to the
Worcester Superior Court Clerk's Office., As previously stated in
our letter dated February 28th, our office does not establish
or keep legal funds.

                              Sincerely yours

                              Catherine Brennan

                              Catherine Brennan
                              Assistant Clerk

SMA 0036



General
Legal
Fund
Court
Donation

Br. Dan Izzo
512 Onondaga Ave.
Syracuse, NY 13207

To Francis Ford
Clerk/Magistrate
Worcester County Superior Court
2 Main Street
Worcester MA
01608

SMA 0037



Joy To The World



SMA 0038



SMX 0039



FRANCIS A. FORD
CLERK OF THE COURT
ROOM 21 - COURT HOUSE
2 MAIN STREET
WORCESTER, MASSACHUSETTS
01608-1174

12-14-04

Shakir Maris Abdullah
OCCC
One Administration Rd.
Bridgewater, MA. 02324

RE: Shakir Maris Abdullah
aka Dennis Shelton
# 90-1148-1150-1151

FILED

DEC 2 0 2004

Dear Mrs. Ford:

Enclosed please find my Justice Denied Legal
Ad I had placed on the internet seeking legal
assistance or donations.

In response to this request I received the enclosed
Federal Note for the Court Clerk to endorse and
deposit with the Court Clerk for a legal Fund on
my behalf.

1.

SMA 0041

I have also provided herein a copy of the message that accompanied the Federal Note directing me to forward this currency to you that I may have a legal Fund established on my behalf.

Once this process is completed by your office. I would Request that No funds be withdrawn from this account by anyone without any approval and signature.

Thank you for your time and attention to this very important matter and I look forward to to reply.

Sincerely.

Shakir Maris Abdullah

aka Dennis Shelton,

90-1148-1150-1151

CC: File

Rev. Dan Izzo

SMA 0042

# Justice Denied - Legal Ads

## Unresolved Events





Dear Readers:

My name is Shakir Maris Abdullah, and I'm writing about unresolved events that occurred at my August 1991 trial. I have attached as an exhibit a four page letter, which was written by my trial attorney Greg T. Schubert, that essentially provides many details about these events (condensed into one page below).

As this letter indicate there was a Sergeant Dennis Towner of the Worcester Police Department having a sexual relationship with a Naomi Papale who was believed to have fathered Ms. Papale's two children, Kara and Dennis Papale.

On two separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester City Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon inquiry of Naomi Papale's children birth records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papale. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further investigation was conducted on the issue at that time and I was subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. Babitch that there was "no record on file" for Dennis Papale and indicated that there may have been a name change through adoption and or marriage. I have these documents available for anyone's inspection.

In fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17/89. He further stated, in his affidavit that a clerk at the Bureau of Vital Statistics told him that Kara Papale, dob 05/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never instructed to proceed to the police internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naomi Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*(Letter from Trial Attorney):*

### PROCTOR, RASNICK & GOEWEY

| | | |
|---|---|---|
| JOHN H. GOLWEY | COUNSELLORS AT LAW | TELEPHONES |
| MARVIN P. RASNICK | TEN MECHANIC STREET · SUITE 300 | AREA CODE 508 |
| GREG T. SCHUBERT | WORCESTER, MASSACHUSETTS 01608 | 798 9706 |
| | | 798 2034 |
| | | 799 2040 |
| | | TELECOPIER |
| | | 508 799 4092 |

William J. Leahy, Esquire
Chief Counsel
Committee for Public Counsel Services
Suite 600
80 Boylston, Street
Boston, MA. 02116

RE: DENNIS SHELTON AKA SHAKIR MARIS ABDULLAH
Murder Conviction / Appeal Decisions

SMA 0043

Dear Mr. Leahy:

At the suggestion of Diane Hanson I am writing to outline what matters are presently unresolved with regard to this case. Dennis Shelton was originally charged with the murder [felony murder theory] and armed robbery of one, Greg White. He was also charged with armed assault with intent to rob and assault and battery with a dangerous weapon [Handgun] of Naomi Papale. These alleged events occurred several hours apart and at different locations.

I am the third counsel appointed to Mr. Shelton. Previously he was represented by James Gribowski and Bernard Grossbery pursuant to Committee appointment. I have just finished an eight day trial by combat with the Commonwealth and more significantly Associate Justice James P. Donohue.

Prior to trial I filed extensive motions for relief under Rule 9 [a] [3] and 9 [d] [misjoinder and prejudicial joinder]. I attempted to have these motions heard and decided two weeks prior to trial. Donohue, who was specially assigned, denied this request off the record. On the opening day of trial Judge Donohue would not allow me to be adequately heard [if at all] on these motions [which were of a crucial nature to the case]. Without the Papale incident, the Commonwealth was without any evidence to prove Mr. Shelton had a gun. Additionally, I had filed a motion for a 48 hour continuance due to the Commonwealth informing me of a new alleged admission witness [morning of trial] and another witness who had changed her testimony entirely and thereon gave very incriminating new testimony [she later recanted her alleged new testimony and endorsed her initial testimony at the trial]. This motion was denied summarily—the 9 a & d motions were held under advisement. I indicated that that ruling was unacceptable to the defense. After a particularly bitter [but always respectful] exchange between myself and his honor, he denied all my pre-trial in limine motions. I declined to start the trial without Single Justice review. To say that his honor was incensed is an considerable understatement.

Justice Wilkins was of no assistance upon my Chapter 211, 3 petition. He wouldn't even assist me pursuant to my law clerk who had practicing papers, but who Judge Donohue would not allow to participate at side bar conferences. I can only imagine the reception I would have had with Justice Nolan! The trial commenced with the selection of a all white jury. There were no black persons in the 85 person venire. Perhaps this is a matter that Mr. Harris might inquire into and take appropriate action.

The Commonwealth proceeded on a theory of felony murder. At the conclusion of the Commonwealth's case, I moved for a directed finding on the armed robbery indictment of Greg White. This motion was granted after much agrument. Thereon, by implication, so would the murder indictment die of consequential causes. The Commonwealth argued at length after the ruling that there was not sufficient evidence to submit the case to the jury on premeditation and malice aforethought or any theory other than felony murder. The judge then informed the Commonwealth that if it did not wish to proceed under his new theory of the case, he would direct on the murder. The Commonwealth--lights flashing chose to adopt Judge Donohue's new theory--wholeheartedly. The defense was now locked into further battle with both the Commonwealth and the bench.

The defense through some client information supplied by pimps of which I am friendly, informed me that Ms. Papale, who had testified as to the second alleged incident which connected my client with a gun, had in fact, been having sexual relations with the chief operations officer of the Worcester Police Department Vice Squad for a long period of time

SMA 0044

had, at the probable cause hearing, invoked her fifth amendment privilege some twenty-two times and prior to her testimony, I had sought a ruling to ascertain whether she would invoke her privilege, now at the trial. The A.D.A. and her counsel (a former A.D.A.) who stood with her throughout her testimony agreed that she would not if no questions were asked about her children and their father. I assented to this in good faith and in compliance with conduct beyond reproach, as I had no reason to believe said line of inquiry was relevant.

I immediately alleged the newly discovered information and accompanying prosecutorial misconduct and moved for dismissal thereon. The Court was oblivious. The Court did order both Sgt. Dennis Towner and Ms. Papale back for a voir dire examination. Towner denied sexual relations but admitted to dating, refusing to end his relationship with Ms. Papale such that he was relieved of his vice squad position [he maintained his rank upon transfer], paternity of Ms. Papale's youngest child [coincidentially named Dennis], and denied a police internal affairs investigation. Ms. Papale took the fifth amendment upon advise

of counsel as to sexual relations, admitted having numerous criminal charges squelched by Towner and denied paternity as to the child named Dennis. The Court informed counsel that it would not allow inquiry into sexual relations between the two before the jury. Objection was noted and I did not call these witnesses as part of the defense. I have good reason to believe that both of these individuals perjured themselves and cannot in writing commit my reasons for this view. Suffice it to say this matter may provide an excellent basis for Rule 30 relief.

The defense demonstrated by both expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary Commonwealth witness, Holmes could not have heard or seen the client as alleged. His own common law wife disputed his testimony and she was in a position to much better hear or see Mr. Shelton—her testimony had him leaving the crime scene prior to the alleged admission by Shelton. Further, we produced evidence that he [Holmes] had been threatened by the police and gave new evidence against Mr. Shelton only upon such duress. The defense also offered unrefuted evidence of two individuals that had motive and opportunity to commit the murder—one being detained by the police on the night of the killing because he physically matched the victim's description and was clothed in black sweat shirt and black sweat pants.

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he identified his assailant as 5' 11' black male, wearing a black sweatshirt and black sweatpants. He further stated that he did not know his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. White. The EMT's characterized White as alert and fully conscious when he gave those statements.

Suffice it to say, that if I had not been obliterated by guilty verdicts of this ilk in the past, I would have put both Sgt. Towner and Papale back on the stand. It was my decision at the time that they represented an insurance policy against any murder conviction. I believe that decision was correct and still maintain its correctness. Presently, the major question confronting the Committee is to make a decision as to whether to await appellate review which might well elicit a Mazza or Salemme type decision or move on Rule 30 relief upon proof of the perjury. I must inform you that Mr. Shelton has throughout this case insisted upon his innocence. Personally I have never been accused of naivete—I must point out that the likelihood of this is upon the evidence substantially in his favor. This bothers me greatly. In fact—more than greatly.

I believe that if the case goes to the Appeals Court than new highly experienced appellate counsel should be appointed. This would

best protect Mr. Shelton should I have erred seriously somewhere. If the Rule 30 route is endorsed then I would like to continue in this representation. I am accutely aware of budget considerations and that this defense is already been immensely expensive for the Committee. I have over 200 hours involved. Private investigation expenses are going to be high--Mr. Lajoie was extremely valuable and much of the demonstrative evidence  presented was a result of his total dedication to this case. My clerk will also cost some additional expense.

As an aside, the Worcester County District Attorney is now not giving probable cause hearings [serious felonies] is only going to further raise investigative expenses substantially. At least, those decisions will not haunt me. I recommend that a transcript be ordered immediately and procurred with all due haste. My personal opinion is that reversible error is rife throughout these proceedings, but a new trial may not be what best serves Mr. Shelton and the time attendant to that end may require him to remain incarcerated even longer than the 19 months he has presently served awaiting trial.

I believe this gives you a broad overview of the situation, I will make myself available in Boston to you or Mr. Speer on specifics anytime this week if you believe further discussion would be fruitful. Bottomline--I'm frustrated over my present impotence. I realize that this is an occupational hazard, but it does not quell my anger at this result.

Very truly yours,

Greg T. Schubert

Dated: August 16, 1991
GTS/mk
cc: Theodore Harris, Esq.

**Write to me at:**

Shakir Maris Abdullah
#W51043
MCI - Cedar Junction
PO Box 100
South Walpole, MA 02071

**Send Email**

Justice Denied
Main Section

Hi, ask the court
to endorse the
Note under
USC Title 12 sec 412
and Deposit it
with the
Court Clerk
for a legal
Fund

As we thank God
for his many blessings this
Christmas,
let us also pray for
Peace on Earth.

Have a Merry Christmas
and Blessed New Year!



**Cryonic Life Insurance Company**

**Rev Dan Izzo**
Dept of General Resurrection



512 Onondaga Ave
Syracuse NY 13207

SMA 0047

UNITED STATES AMERICA                                    Search

TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 412

## § 412. Application for notes; collateral required

Release date: 2004-03-19

Any Federal Reserve bank may make application to the local Federal
Reserve agent for such amount of the Federal Reserve notes,
hereinbefore provided for, as it may require. Such application shall be
accompanied with a tender to the local Federal Reserve agent of
collateral in amount equal to the sum of the Federal Reserve notes thus
applied for and issued pursuant to such application. The collateral
security thus offered shall be notes, drafts, bills of exchange, or
acceptances acquired under section 92, 342 to 348, 349 to 352, 361,
372, or 373 of this title, or bills of exchange endorsed by a member
bank of any Federal Reserve district and purchased under the
provisions of sections 348a and 353 to 359 of this title, or bankers'
acceptances purchased under the provisions of said sections 348a and
353 to 359 of this title, or gold certificates, or Special Drawing Right
certificates, or any obligations which are direct obligations of, or are
fully guaranteed as to principal and interest by, the United States or
any agency thereof, or assets that Federal Reserve banks may
purchase or hold under sections 348a and 353 to 359 of this title. In no
event shall such collateral security be less than the amount of Federal
Reserve notes applied for. The Federal Reserve agent shall each day
notify the Board of Governors of the Federal Reserve System of all
issues and withdrawals of Federal Reserve notes to and by the Federal
Reserve bank to which he is accredited. The said Board of Governors of
the Federal Reserve System may at any time call upon a Federal
Reserve bank for additional security to protect the Federal Reserve
notes issued to it. Collateral shall not be required for Federal Reserve
notes which are held in the vaults of Federal Reserve banks.



REGISTERED:   X

SMA 0048

Francis A. Ford
Clerk/Magistrate
Worcester County Superior Court
2 Main Street
Worcester, MA. 01608

Copy

December 6, 2004

Shakir Maris Abdullah
OCCC.
ONe Administration Rd.
Bridgewater, MA. 02324

(I don't Know)
Petitioner

SMA 0049

Dear Mrs. Ford:

Enclosed please find my Justice Denied legal
'd I had placed on the internet seeking legal
issistance or donations.

In response to this request I received the enclosed
lote for the Court Clerk to endorse and deposit
sith the Court Clerk for a legal fund on my behalf.

I have also provided herein a copy of the message that
accompanied the Note directing me to forward this item
o you that I may have a legal fund established to
esolve the matter. ~~General legal fund~~ Justice Denied
egal Ad.

To The Court:

Deposit under USC Title 12 sec 342
National Bank Notes as, For
the Same Collected under USC 12sq412

Once this process is completed by your office
would you please notify me forthwith.

Thank you for your time and attention into this
very important matter.

Sincerely yours,

Shakir Maris Abdullah

CC: File

2.

SMA 0050

# Justice Denied – Legal Ads

## Unresolved Events




Dear Readers:

My name is Shakir Maris Abdullah, and I'm writing about unresolved events that occurred at my August 1993 trial. I have attached as an exhibit a four page letter, which was written by my trial attorney Greg T. Schubert, that essentially provides many details about these events (condensed into one page below).

As this letter indicate there was a Sergeant Dennis Towner of the Worcester Police Department having a sexual relationship with a Naomi Papale who was believed to have fathered Ms. Papale's two children, Kara and Dennis Papale.

On two separate occasions a private investigator attempted to retrieve the birth certificates of both these children from Worcester City Hall and were denied on different grounds.

On the first occasion, during the course of my trial, the investigator went to Worcester City Clerk's office and upon inquiry of Naomi Papale's children birth records. Was told by Assistance City Clerk, David Rushford, that there was a birth record for Kara and Dennis Papale. But, that the birth record of Dennis Papale had been sealed by an order of the court. Therefore, no further investigation was conducted on the issue at that time and I was subsequently convicted shortly thereafter.

My appeals attorney had the same investigator reinvestigate this matter in December 1996 and was told by a Worcester City Hall Clerk name Mrs. Babitch that there was "no record on file" for Dennis Papale and indicated that there may have been a name change through adoption and or marriage. I have these documents available for anyone's inspection.

In fact, the investigator stated in his affidavit that he proceeded to the Bureau of Vital Statistics, Commonwealth of Massachusetts, 470 Atlantic Ave., Boston, MA and found no record of birth for Dennis Papale, dob 08/17/89. He further stated, in his affidavit that a clerk at the Bureau of Vital Statistics told him that Kara Papale, dob 05/24/87, birth record was impounded but her name remained the same.

Also, the investigator was never instructed to proceed to the police internal affairs division and obtain whatever records there may have existed concerning Sgt. Dennis Towner and Naomi Papale's relationship.

Given all the above facts I'm seeking some legal assistance or donations to hire a trained and skilled investigator to uncover these facts.

## Additional Information
*(Letter from Trial Attorney):*

### PROCTOR, RASNICK & GOEWEY
COUNSELLORS AT LAW
TEN MECHANIC STREET · SUITE 300
WORCESTER, MASSACHUSETTS 01608

JOHN H GOEWEY
MARVIN P RASNICK
GREG T SCHUBERT

TELEPHONES
AREA CODE 508
798 8706
788 2034
798 2040

TELECOPIER
808 798 4802

William J. Leahy, Esquire
Chief Counsel
Committee for Public Counsel Services
Suite 600
80 Boylston, Street
Boston, MA. 02116

SMA 0051

RE: DENNIS SHELTON  AKA SHAKIR MARIS ABDULLAH
Murder Conviction / Appeal Decisions

Dear Mr. Leahy:

At the suggestion of Diane Hanson I am writing to outline what matters are presently unresolved with regard to this case. Dennis Shelton was originally charged with the murder (felony murder theory) and armed robbery of one, Greg White. He was also charged with armed assault with intent to rob and assault and battery with a dangerous weapon (Handgun) of Naomi Papale. These alleged events occurred several hours apart and at different locations.

I am the third counsel appointed to Mr. Shelton. Previously he was represented by James Gribowski and Bernard Grossberg pursuant to Committee appointment. I have just finished an eight day trial by combat with the Commonwealth and more significantly Associate Justice James P. Donohue.

Prior to trial I filed extensive motions for relief under Rule 9 (a) (3) and 9 (d) (Misjoinder and prejudicial joinder). I attempted to have these motions heard and decided two weeks prior to trial. Donohue, who was specially assigned, denied this request off the record. On the opening day of trial Judge Donohue would not allow me to be adequately heard (if at all) on these motions (which were of a crucial nature to the case). Without the Papale incident, the Commonwealth was without any evidence to prove Mr. Shelton had a gun. Additionally, I had filed a motion for a 48 hour continuance due to the Commonwealth informing me of a new alleged admission witness (morning of trial) and another witness who had changed her testimony entirely and thereon gave very incriminating new testimony (she later recanted her alleged new testimony and endorsed her initial testimony at the trial). This motion was denied summarily—the 9 a & d motions were held under advisement. I indicated that that ruling was unacceptable to the defense. After a particularly bitter (but always respectful) exchange between myself and his honor, he denied all my pre-trial in limine motions. I declined to start the trial without Single Justice review. To say that his honor was incensed is an considerable understatement.

Justice Wilkins was of no assistance upon my Chapter 211, 3 petition. He wouldn't even assist me pursuant to my law clerk who had practicing papers, but who Judge Donohue would not allow to participate at side bar conferences. I can only imagine the reception I would have had with Justice Nolan! The trial commenced with the selection of a all white jury. There were no black persons in the 85 person venire. Perhaps this is a matter that Mr. Harris might inquire into and take appropriate action.

The Commonwealth proceeded on a theory of felony murder. At the conclusion of the Commonwealth's case, I moved for a directed finding on the armed robbery indictment of Greg White. This motion was granted after much agrument. Thereon, by implication, so would the murder indictment die of consequential causes. The Commonwealth argued at length after the ruling that there was not sufficient evidence to submit the case to the jury on premeditation and malice aforethought or any theory other than felony murder. The judge then informed the Commonwealth that if it did not wish to proceed under his new theory of the case, he would direct on the murder. The Commonwealth—lights flashing chose to adopt Judge Donohue's new theory—wholeheartedly. The defense was now locked into further battle with both the Commonwealth and the bench.

The defense through some client information supplied by pimps of which I am friendly, informed me that Ms. Papale, who had testified as to the second alleged incident which connected my client with a gun, had in fact, been having sexual relations with the chief operations officer of the Worcester Police Department Vice Squad for a long period of time.

SMA 0052

This information was particularly significant in light that Ms. Papale had, at the probable cause hearing, invoked her fifth amendment privilege some twenty-two times and prior to her testimony, I had sought a ruling to ascertain whether she would invoke her privilege, now at the trial. The A.D.A. and her counsel (a former A.D.A.) who stood with her throughout her testimony agreed that she would not if no questions were asked about her children and their father. I assented to this in good faith and in compliance with conduct beyond reproach, as I had no reason to believe said line of inquiry was relevant.

I immediately alleged the newly discovered information and accompanying prosecutorial misconduct and moved for dismissal thereon. The Court was oblivious. The Court did order both Sgt. Dennis Towner and Ms. Papale back for a voir dire examination. Towner denied sexual relations but admitted to dating, refusing to end his relationship with Ms. Papale such that he was relieved of his vice squad position [he maintained his rank upon transfer], paternity of Ms. Papale's youngest child [coincidentially named Dennis], and denied a police internal affairs investigation. Ms. Papale took the fifth amendment upon advise

of counsel as to sexual relations, admitted having numerous criminal charges squelched by Towner and denied paternity as to the child named Dennis. The Court informed counsel that it would not allow inquiry into sexual relations between the two before the jury. Objection was noted and I did not call these witnesses as part of the defense. I have good reason to believe that both of these individuals perjured themselves and cannot in writing commit my reasons for this view. Suffice it to say this matter may provide an excellent basis for Rule 30 relief.

The defense demonstrated by both expert opinion testimony and photographs adduced as a result of its extensive crime scene investigation that the primary Commonwealth witness, Holmes could not have heard or seen the client as alleged. His own common law wife disputed his testimony and she was in a position to much better hear or see Mr. Shelton—her testimony had him leaving the crime scene prior to the alleged admission by Shelton. Further, we produced evidence that he [Holmes] had been threatened by the police and gave new evidence against Mr. Shelton only upon such duress. The defense also offered unrefuted evidence of two individuals that had motive and opportunity to commit the murder—one being detained by the police on the night of the killing because he physically matched the victim's description and was clothed in black sweat shirt and black sweat pants.

Regarding the victim's dying declaration, there was evidence that while the victim was being transported to the hospital he identified his assailant as 5' 11' black male, wearing a black sweatshirt and black sweatpants. He further stated that he did not know his attacker. Shelton was known to the victim and he was wearing clothing not similar in color or style to that described by Mr. White. The EMT's characterized White as alert and fully conscious when he gave those statements.

Suffice it to say, that if I had not been obliterated by guilty verdicts of this ilk in the past, I would have put both Sgt. Towner and Papale back on the stand. It was my decision at the time that they represented an insurance policy against any murder conviction. I believe that decision was correct and still maintain its correctness. Presently, the major question confronting the Committee is to make a decision as to whether to await appellate review which might well elicit a Mazza or Salemme type decision or move on Rule 30 relief upon proof of the perjury. I must inform you that Mr. Shelton has throughout this case insisted upon his innocence. Personally I have never been accused of naivete—I must point out that the likelihood of this is upon the evidence substantially in his favor. This bothers me greatly. In fact—more than greatly.

/www.friendsbeyondthewall com.pphtw.ads male/a/abdullah-shakir-w'1043-fcr.html

I believe that if the case goes to the Appeals Court than new highly experienced appellate counsel should be appointed. This would

best protect Mr. Shelton should I have erred seriously somewhere. If the Rule 30 route is endorsed then I would like to continue in this representation. I am accutely aware of budget considerations and that this defense is already been immensely expensive for the Committee. I have over 200 hours involved. Private investigation expenses are going to be high--Mr. Lajoie was extremely valuable and much of the demonstrative evidence presented was a result of his total dedication to this case. My clerk will also cost some additional expense.

As an aside, the Worcester County District Attorney is now not giving probable cause hearings [serious felonies] is only going to further raise investigative expenses substantially. At least, those decisions will not haunt me. I recommend that a transcript be ordered immediately and procurred with all due haste. My personal opinion is that reversible error is rife throughout these proceedings, but a new trial may not be what best serves Mr. Shelton and the time attendent to that end may require him to remain incarcerated even longer than the 19 months he has presently served awaiting trial.

I believe this gives you a broad overview of the situation, I will make myself available in Boston to you or Mr. Speer on specifics anytime this week if you believe further discussion would be fruitful. Bottomline--I'm frustrated over my present impotence. I realize that this is an occupational hazard, but it does not quell my anger at this result.

Very truly yours,

Greg T. Schubert

Dated: August 16, 1991
GTS/mk
cc: Theodore Harris, Esq.

*Write to me at:*

Shakir Maris Abdullah
#W51043
MCI - Cedar Junction
PO Box 100
South Walpole, MA 02071

**Send Email**

Justice Denied
Main Section

www.friendsbeyondthewall.com/pphtw/ads/maicta/abdullah_shakir_w51043_ltr.html

Search

TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 412

## § 412. Application for notes; collateral required

Release date: 2004-05-23

Any Federal Reserve bank may make application to the local Federal
Reserve agent for such amount of the Federal Reserve notes,
hereinbefore provided for as it may require. Such application shall be
accompanied with a tender to the local Federal Reserve agent of
collateral in amount equal to the sum of the Federal Reserve notes thus
applied for and issued pursuant to such application. The collateral
security thus offered shall be notes, drafts, bills of exchange, or
acceptances acquired under section 92, 342 to 348, 349 to 352, 361,
372, or 373 of this title, or bills of exchange endorsed by a member
bank of any Federal Reserve district and purchased under the
provisions of sections 348a and 353 to 359 of this title, or bankers'
acceptances purchased under the provisions of said sections 348a and
353 to 359 of this title, or gold certificates, or Special Drawing Right
certificates, or any obligations which are direct obligations of, or are
fully guaranteed as to principal and interest by, the United States or
any agency thereof, or assets that Federal Reserve banks may
purchase or hold under sections 348a and 353 to 359 of this title. In no
event shall such collateral security be less than the amount of Federal
Reserve notes applied for. The Federal Reserve agent shall each day
notify the Board of Governors of the Federal Reserve System of all
issues and withdrawals of Federal Reserve notes to and by the Federal
Reserve bank to which he is accredited. The said Board of Governors of
the Federal Reserve System may at any time call upon a Federal
Reserve bank for additional security to protect the Federal Reserve
notes issued to it. Collateral shall not be required for Federal Reserve
notes which are held in the vaults of Federal Reserve banks.



Hi, ask the Court
to endorse the
Note under
USC Title 12 Sec 412
and Deposit it
with the
Court Clerk
FD a legal
Fund

As we thank God
for his many blessings this
Christmas,
let us also pray for
Peace on Earth.

Have a Merry Christmas
and Blessed New Year!



**Cryonic Life Insurance Company**

**Rev Dan Izzo**
Dept of General Resurrection

512 Onondaga Ave
Syracuse, NY 13207



SMA 0056



December 6, 2004

Rev Dan Izzo:

I'm very grateful and overwhelm by your generous contribution towards my legal situation.

I have followed your instructions and am now awaiting the Court's Reply.

May God continue to bless you to be instrumental toward good causes and I can never thank you enough for your benevolence. May God reward you success on the Day of Judgment.

Your Brother In Faith

Shakir Maris Abdullah

SMA 0057

Dear Prison Officials                    Nov 19th 2004

Mailroom:

Concerning the American Art Classic (AAC ) $10,000 Note
Specimen series 2004 and or a worthless Stock Certificate
    I mailed a letter to some prisoners because
    last week USA Today had an Internet news story concerning
America's 2.2 Million People in US Jails, the article had a link to
" Prison Pen Pals " with names and Prison addresses of @65
people seeking Legal and or monetary help and @ 35 kids under
21 with jail time over 3 years, out of @2100 prisoner postings.
    I wrote to this group asking them to ask the Court to endorse the
specimen note under USC Title 12 sec 412 and Deposit the note
with the Court Clerk for a Legal Fund ( and to some a Trust and
Text to Speech Software for Courts and Prisons )
    If the Court has Special Drawing Right certificates/powers it
maybe able to establish limited Legal Fund Trusts under USC Title
12 sec 412.
    I did want to inform the prisoners that I hold bearer instruments
that the Court could use as collateral under USC Title 12 sec 342
In the form of National Bank Notes or Guaranteed National Bank
Notes.
    I do not know much about prison or that other Trust programs do
exist , my goal is to provide the Courts with Text to Speech
Software and a possible EXHILE OF PRISONER program to
volunteer mining prison work camps in one of America's 1000s of
abandoned silver mines.
    As a member of the clergy I thought I should do something
productive for the Courts and possible the prisoners.
    It seems the entire mailing was a failure because the novelty
note.
    If you have the $10.000 note specimen and or stock certificate
you can keep it or throw it away.

SMA 0058

Br. Dan Izzo
512 Onondaga Ave.
Syracuse, NY 13207

http: www.neodlight.org-theory flaherty / ntm                                              11 18.04
$10,000 00 "Authentic" BILL - This bill begins a new chapter in the series of American A...  Page 1 of 2

**DIRECTORY**

Home

AAC NOVELTY
MONEY

DVD MEMBERSHIP

FAST MONEY
MAKERS!!

FLEA
MARKET/EBAY

GAGS AND
PRANKS

HOT HOT HOT

PLAYING CARDS

SHOCKING
PRODUCTS

SPECIAL DEALS

STICKERS/DECALS

WHOLESALE
BANDANAS

WHOLESALE
GLOW PRODUCTS

WHOLESALE
INFLATABLES

WHOLESALE
JEWELRY

WHOLESALE
KEYCHAINS

WHOLESALE
KNIVES

WHOLESALE
LIGHTERS

WHOLESALE
SUNGLASSES

WHOLESALE
TATTOOS

WHOLESALE
WATCHES

View Cart

Check Out

About Us



Home    E-Store    About Us

Search Our Store [                    ]    Go

○ Item #  ⦿ Description







Item #:  191

Item Name:  $10,000.00 "Authentic" BILL

Description:  This bill begins a new chapter in the series of American A
"Authentic" looking $10,000.00 bill could have been produ
Mint! It may look real but don't take it to WalMart!

Unit:  low as 7.5 cents each!

Price:  [100 for $ 24.00  ▼]

[ Add To Cart ]    [ Keep Shopping ]

Home | E-Store | About Us | Contact Us

AMERICAN ART CLASSICS, INC.
PMB 20, 3665 East Bay Dr., Ste. 204
Largo, Florida 33771-1965 - United States
Tel: 1-727-461-4991 * Fax: 1-775-582-3971
Email: frank@americanartclassics.com

SMA 0059

Case 1:05-cv-11539-DPW    Document 110-3    Filed 10/23/2007    Page 55 of 61

AI ? - Q. Are they legal? A. Yes! This is the most often asked question ...    Page 1 of 1



JRY

NOVELTY
KEY

/D MEMBERSHIP

FAST MONEY
MAKERS!!

FLEA
MARKET/EBAY

GAGS AND
PRANKS

HOT HOT HOT

PLAYING CARDS

SHOCKING
PRODUCTS

SPECIAL DEALS

STICKERS/DECALS

WHOLESALE
BANDANAS

WHOLESALE
GLOW PRODUCTS

WHOLESALE
INFLATABLES

WHOLESALE
JEWELRY

WHOLESALE
KEYCHAINS

WHOLESALE
KNIVES

WHOLESALE
LIGHTERS

WHOLESALE
SUNGLASSES

WHOLESALE
TATTOOS

WHOLESALE
WATCHES

View Cart

Check Out

About Us

Search Our Store [                    ]  [ GO ]

○ Item #  ◉ Description

| | |
|---|---|
| Item #: | FAQ |
| Item Name: | ARE THEY LEGAL? |
| Description: | Q. Are they legal? A. Yes! This is the most often asked qu person seeing one of our bills for the first time. Our Collec not only legal, they have official U.S. Government approva approved Copyright from the Library of Congress. You ca Collectible Dollar Bills with complete confidence that you a any U.S. law. |
| Unit: | Info |
| Price: | CALL FOR PRICE |

[ Add To Cart ]  [ Keep Shopping ]

Home | E-Store | About Us | Contact Us

AMERICAN ART CLASSICS, INC.
PMB 20, 3665 East Bay Dr., Ste. 204
Largo, Florida 33771-1965 - United States
Tel: 1-727-461-4991 * Fax: 1-775-582-3971
Email frank@americanartclassics.com



aboutus&returnic http%3A%2F%2Fameri...    11 18 04
AL? - Q: Are they legal?  A: Yes! This is the most often asked question ..    Page 1 of 1

JRY

NOVELTY
JEY

/D MEMBERSHIP

FAST MONEY
MAKERS!!

FLEA
MARKET/EBAY

GAGS AND
PRANKS

HOT HOT HOT

PLAYING CARDS

SHOCKING
PRODUCTS

SPECIAL DEALS

STICKERS/DECALS

WHOLESALE
BANDANAS

WHOLESALE
GLOW PRODUCTS

WHOLESALE
INFLATABLES

WHOLESALE
JEWELRY

WHOLESALE
KEYCHAINS

WHOLESALE
KNIVES

WHOLESALE
LIGHTERS

WHOLESALE
SUNGLASSES

WHOLESALE
TATTOOS

WHOLESALE
WATCHES

View Cart

Check Out

About Us



Home    E-Store    About Us

Search Our Store [            ]    Go

○ Item #  ◉ Description

Item #:  FAQ

Item Name:  ARE THEY LEGAL?

Description:  Q. Are they legal? A. Yes! This is the most often asked qu
person seeing one of our bills for the first time. Our Collec
not only legal, they have official U.S. Government approva
approved Copyright from the Library of Congress. You ca
Collectible Dollar Bills with complete confidence that you a
any U.S. law.

Unit:  Info

Price:  CALL FOR PRICE

Add To Cart    Keep Shopping

Home | E-Store | About Us | Contact Us

AMERICAN ART CLASSICS, INC.
PMB 20, 3665 East Bay Dr , Ste. 204
Largo, Florida 33771-1965 - United States
Tel: 1-727-461-4991 * Fax: 1-775-582-3971
Email: frank@americanartclassics.com



SMA 0061

UNITED STATES OF AMERICA                    Search

TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 412

## § 412. Application for notes; collateral required

*Release date 2004-03-18*

Any Federal Reserve bank may make application to the local Federal
Reserve agent for such amount of the Federal Reserve notes
hereinbefore provided for as it may require. Such application shall be
accompanied with a tender to the local Federal Reserve agent of
collateral in amount equal to the sum of the Federal Reserve notes thus
applied for and issued pursuant to such application. The collateral
security thus offered shall be notes, drafts, bills of exchange, or
acceptances acquired under section 92, 342 to 348, 349 to 352, 361,
372, or 373 of this title, or bills of exchange endorsed by a member
bank of any Federal Reserve district and purchased under the
provisions of sections 348a and 353 to 359 of this title, or bankers'
acceptances purchased under the provisions of said sections 348a and
353 to 359 of this title, or gold certificates, or Special Drawing Right
certificates, or any obligations which are direct obligations of, or are
fully guaranteed as to principal and interest by, the United States or
any agency thereof, or assets that Federal Reserve banks may
purchase or hold under sections 348a and 353 to 359 of this title. In no
event shall such collateral security be less than the amount of Federal
Reserve notes applied for. The Federal Reserve agent shall each day
notify the Board of Governors of the Federal Reserve System of all
issues and withdrawals of Federal Reserve notes to and by the Federal
Reserve bank to which he is accredited. The said Board of Governors of
the Federal Reserve System may at any time call upon a Federal
Reserve bank for additional security to protect the Federal Reserve
notes issued to it. Collateral shall not be required for Federal Reserve
notes which are held in the vaults of Federal Reserve banks.



*County Clerk*                              *County Judge*

REGISTERED :  X                              X

SMA  0062

X  *County Treasurer*

REGISTERED

REGISTERED

RU 29181

# FIDELITY CORPORATION

## 5½% CONVERTIBLE SUBORDINATED DEBENTURE

### DUE MAY 1, 1988

FIDELITY CORPORATION (hereinafter called the "Company") a corporation of the Commonwealth of Virginia, for value received hereby promises to pay to

*108000* RU    29181    .CEDE & CO

, or registered assign, the principal sum of    *134587991RU07972** 

SEE REVERSE FOR
CERTAIN DEFINITIONS

DOLLARS

CUSIP 316081 AA

on May 1, 1988, and to pay interest thereon at the rate specified...

DATED

United States Trust Company of New York

INDENTURE.    THIS IS ONE OF THE DEBENTURES DESCRIBED IN THE WITHIN MENTIONED

**O**  CERTIFICATE OF AUTHENTICATION

UNITED STATES TRUST COMPANY OF NEW YORK
AS SUCCESSION TRUSTEE

BY

AUTHORIZED OFFICER

FIDELITY CORPORATION

BY

ATTEST

SECRETARY

PRESIDENT



SMA 0064

# FIDELITY CORPORATION

## 5½% CONVERTIBLE SUBORDINATED DEBENTURE

## DUE MAY 1, 1988

(CONTINUED)

This debenture is one of a duly authorized issue of debentures of the Company (hereinafter called the "debentures") limited to an aggregate principal amount of $15,000,000 at any one time outstanding, excluding debentures issued in substitution for lost, stolen or destroyed debentures, and all issued or to be issued under and pursuant to and equally entitled to the benefits of an indenture dated as of May 1, 1968 (hereinafter called the "Indenture") between the Company and First National City Bank, Trustee (hereinafter called the "Trustee"), to which Indenture and any indentures supplemental thereto reference is hereby made for a statement of the rights, duties and immunities thereunder of the Trustee and the rights and limitations of rights thereunder of the holders of the debentures and of the Company.

Subject to the provisions of the Indenture, the registered holder hereof at his option may at any time to and including May 1, 1988 (except that if this debenture or a portion hereof shall have been called for redemption, then as to this entire debenture or the portion hereof so called for redemption, as the case may be, such right shall terminate at the close of business on the date fixed for such redemption, unless the Company shall default in payment due upon such redemption) convert the principal amount of this debenture, or any portion thereof which is an integral multiple of $1,000, into as many fully paid and nonassessable shares of Common Stock, $1 par value, of the Company as the principal amount so to be converted is a multiple of the conversion price of $19.50 per share, upon surrender of this debenture to the Company at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, accompanied by written notice of such holder's election to convert and (if so required by the Company or the conversion agent) by instruments of transfer, in form satisfactory to the Company and to the conversion agent, duly executed by the registered holder hereof or by his duly authorized attorney, and transfer tax stamps or funds therefor if required. Such surrender shall, if made during the period from the close of business on the record date next preceding any May 1 or November 1 to the opening of business on such May 1 or November 1 (unless this debenture or the portion hereof being converted has been called for redemption on a redemption date during such period), also be accompanied by payment in New York Clearing House funds or other funds acceptable to the Company of an amount equal to the interest thereon from the conversion date to the next succeeding interest payment date. The conversion price and the number of shares issuable on conversion are subject to adjustment as provided in the Indenture. Subject to the requirement for a payment in the event of conversion after the close of business on a record date as set forth above, no adjustments in respect of interest or dividends will be made upon any conversion. No fractional shares or scrip representing fractional shares will be issued upon any conversion, but an adjustment in cash will be made, as provided in the Indenture, in respect of any fraction of a share which would otherwise be issuable upon the surrender of any debenture or debentures for conversion.

The debentures are issuable only as registered debentures without coupons in denominations of $1,000 and integral multiples of $1,000. The debentures may be exchanged for a like aggregate principal amount of debentures of other authorized denominations at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, in the manner and subject to the limitations provided in the Indenture, but without payment of any charge other than a sum sufficient to reimburse the Company for any stamp tax or other governmental charge incident thereto.

The transfer of this debenture is registrable by the registered holder hereof or by his attorney duly authorized in writing upon surrender of this debenture for registration of transfer at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, a new debenture or debentures of authorized denominations for a like aggregate principal amount will be issued to the transferee, subject to the limitations provided in the Indenture, but without payment of any charge other than a sum sufficient to reimburse the Company for any stamp tax or other governmental charge incident thereto.

The indebtedness evidenced by the debentures is, to the extent and in the manner provided in the Indenture, subordinate and subject in right of payment to the prior payment in full of all Senior Debt (as defined in the Indenture) of the Company, whether outstanding at the date of the Indenture or thereafter incurred. Each holder of this debenture, by his acceptance hereof, agrees to and shall be bound by all the provisions of the Indenture relating to such subordination.

In case a default, as defined in the Indenture, shall have occurred and be continuing, the principal hereof may be declared, and upon such declaration shall become, due and payable, and such declaration may in certain events be rescinded by the holders of a majority in aggregate principal amount of the debentures at the time outstanding, all in the manner, with the effect and subject to the conditions provided in the Indenture.

No reference herein to the Indenture and no provision of this debenture or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of and premium, if any, and interest on this debenture at the times and place and at the rate and in the currency herein prescribed.

The Indenture contains provisions permitting the Company and the Trustee, with the consent of the registered holders of not less than two-thirds in aggregate principal amount of the debentures at the time outstanding, evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to, or changing in any manner or eliminating any of the provisions of, the Indenture; PROVIDED HOWEVER, that no such supplemental indenture shall (1) extend the fixed maturity of any of the debentures, or reduce the rate or extend the time of payment of interest thereon, or reduce the amount of the principal thereof, or reduce any premium payable on the redemption thereof, or extend the time of payment of or reduce the amount of any sinking fund payment, or impair any right to convert debentures without the consent of each registered holder of debentures affected thereby, or (2) affect the rights of the holders of some of the debentures without similarly affecting the rights of the holders of all the debentures at the time outstanding without the consent of the registered holders of all debentures at the time outstanding, or (3) reduce the percentage of debentures the consent of the registered holders of which is required to approve any supplemental indenture or any waiver hereinafter referred to without the consent of the registered holders of all debentures at the time outstanding, or (4) change or eliminate any of the provisions of the Indenture relating to the subordination of the debentures in right of payment to Senior Debt (as defined in the Indenture), without the consent of the holder or holders of such Senior Debt. It is also provided in the Indenture that the registered holders of a majority in aggregate principal amount of the debentures at the time outstanding may waive on behalf of the holders of all of the debentures, with certain exceptions, any past default under the Indenture and its consequences. Any such consent or waiver by the registered holder of this debenture (unless effectively revoked as provided in the Indenture) shall be conclusive and binding upon such holder and upon all future holders and owners of this debenture or of any debenture issued in lieu hereof or in exchange herefor, irrespective of whether any notation of such consent or waiver is made upon this debenture.

The debentures are subject to redemption at the option of the Company, upon at least 30 days' notice in the manner provided in the Indenture, in whole at any time or from time to time in part, at the office or agency of the Company for such purpose in the Borough of Manhattan, City and State of New York, at the applicable percentage of the principal amount so redeemed set forth below, together with accrued interest to the date fixed for redemption:

If redeemed during the twelve-month period ending with the last day of April,

| Year | Percentage of Principal Amount | Year | Percentage of Principal Amount | Year | Percentage of Principal Amount |
|---|---|---|---|---|---|
| 1969 | 105.50% | 1976 | 102.25% | 1983 | 100.50% |
| 1970 | 105.00% | 1977 | 102.00% | 1984 | 100.25% |
| 1971 | 104.50% | 1978 | 101.75% | 1985 | 100.00% |
| 1972 | 104.00% | 1979 | 101.50% | 1986 | 100.00% |
| 1973 | 103.50% | 1980 | 101.25% | 1987 | 100.00% |
| 1974 | 103.00% | 1981 | 101.00% | 1988 | 100.00% |
| 1975 | 102.50% | 1982 | 100.75% | | |

The debentures are also subject to redemption in like manner through the operation of the sinking fund provided for in the Indenture on each May 1, commencing May 1, 1976, prior to maturity at 100% of the principal amount thereof, together with accrued interest to the date fixed for redemption.

Every holder hereof agrees that, prior to due presentment for registration of transfer of this debenture, the Company, the Trustee, any debenture registrar, any paying agent and any conversion agent may deem and treat the registered holder hereof as the absolute owner of this debenture (whether or not the same shall be overdue and notwithstanding any notation of ownership or other writing hereon made by anyone other than the Company, the Trustee or any debenture registrar), for the purpose of receiving payment hereof or on account hereof and for all other purposes (subject to the provisions of the first paragraph appearing on the face hereof respecting any record date), and neither the Company, the Trustee, any debenture registrar, any paying agent nor any conversion agent shall be affected by any notice to the contrary.

No recourse shall be had for the payment of the principal of or premium, if any, or interest on this debenture, or of any part hereof, or for any claim based hereon or thereon, or otherwise in any manner in respect hereof or in respect of the Indenture, to or against any incorporator, stockholder, officer or director, past, present or future, as such, of the Company or of any predecessor or successor corporation, either directly or through the Company or such predecessor or successor corporation, whether by virtue of any constitution or statute or rule of law, or by the enforcement of any assessment or penalty, or in any other manner, all such liability being expressly waived and released by the acceptance hereof and as part of the consideration for the issue hereof.

## NOTICE OF ELECTION TO CONVERT

TO FIDELITY CORPORATION:

The undersigned owner elects to convert this Debenture (or the portion specified below) into shares of Common Stock.

Dated: ____________________, 19____

____________________
Signature

INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER

| Portion to be converted (if less than all): $ | |
|---|---|

(If the Common Stock or any unconverted portion of the Debenture is to be issued other than in your name, attach written instructions with signature guaranteed. Special instructions for denominations or delivery should also be attached.)

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this Debenture, shall be construed as though they were written out in full according to applicable laws or regulations.

TEN COM — as tenants in common
TEN ENT — as tenants by the entireties with right of survivorship and not as tenants in common
JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT— ______ Custodian ______
(Cust) (Minor)
under Uniform Gifts to Minors Act ______
(State)

Additional abbreviations may also be used though not in the above list

FOR VALUE RECEIVED the undersigned hereby

SMA 0066

# PENNSYLVANIA COMPANY

## 9% SINKING FUND DEBENTURE DUE 1994

This Debenture is one of a duly authorized issue of Debentures of the Company designated as its 9% Sinking Fund Debentures Due 1994 (hereinafter called the "Debentures"), limited to the aggregate principal amount of $50,000,000, all issued or to be issued under and pursuant to an indenture dated as of December 1, 1969 (hereinafter called the "Indenture") duly executed and delivered by the Company to Bankers Trust Company, Trustee, to which Indenture and all indentures supplemental thereto reference is hereby made for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Debentures.

Subject to the provisions of the Indenture, at the option of the holder hereof, this Debenture (or any portion hereof which is a multiple of $1,000) may, at any time after the opening of business on November 1, 1973 and before the close of business on April 15, 1979, or, in case this Debenture shall be called for redemption on or after December 1, 1974, then until and including but (unless the Company shall default in payment due upon the redemption hereof) not after, the close of business on the redemption date, be exchanged for 12.2 duly authorized, validly issued, fully paid and non-assessable shares of Common Stock (calculated to the nearest 1/100th of a share) of Norfolk and Western Railway Company for each $1,000 principal amount hereof, subject to such adjustments, if any, of the exchange rate and the securities or other property deliverable upon exchange as may be required by the provisions of the Indenture, upon delivery of this Debenture to the office or agency of the Company for such purpose in the Borough of Manhattan, The City of New York, accompanied (if so required by the Company) by instruments of transfer, in form satisfactory to the Company, duly executed by the holder or by his duly authorized attorney and written notice that the holder elects so to exchange this Debenture (or any portion hereof which is a multiple of $1,000). No payment or adjustment shall be made on account of interest accrued on any Debenture (or portion) so exchanged or on account of any dividends on the shares delivered upon such exchange. No fractional shares shall be delivered upon exchange but the Company shall pay a cash adjustment in lieu thereof.

In case an Event of Default, as defined in the Indenture, shall have occurred and be continuing, the principal of all the Debentures may be declared and upon such declaration shall become due and payable, and such declaration may in certain events be rescinded by the holders of a majority in aggregate principal amount of the Debentures at the time outstanding, in the manner, with the effect and subject to the conditions provided in the Indenture. The Indenture also provides that the holders of a majority in aggregate principal amount of the Debentures at the time outstanding may waive (with certain exceptions) any past default under the Indenture and its consequences.

The Indenture contains provisions permitting the Company and the Trustee, with the consent of the holders of not less than 66⅔% in aggregate principal amount of the Debentures at the time outstanding, evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights and obligations of the holders of the Debentures and of the Company, provided, however, that no such supplemental indenture shall (i) extend the fixed maturity of any Debentures, or reduce the rate or extend the time of payment of interest thereon, or reduce the principal amount thereof or premium thereon, or impair the right to exchange the same at the rate and upon the terms provided in the Indenture, without the consent of the holder of each Debenture so affected, or (ii) reduce the aforesaid percentage of Debentures, the holders of which are required to consent to any such supplemental indenture, without the consent of the holders of all Debentures then outstanding.

Any such consent or any waiver or other action by the holder of this Debenture shall be conclusive and binding upon such holder and upon all future holders and owners of this Debenture and of any Debenture issued in exchange herefor or in place hereof, irrespective of whether any notation of such consent or waiver or other action is made upon this Debenture.

No reference herein to the Indenture and no provision of this Debenture or of the Indenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of (and premium, if any) and interest on this Debenture at the time and place and at the rate and in the coin or currency herein prescribed.

As provided in the Indenture, the Debentures may be redeemed, at the option of the Company, as a whole or from time to time in part, on any date on or after December 1, 1974, prior to maturity, upon the notice referred to below, at the following redemption prices (expressed in percentages of the principal amount thereof):

| Redemption Date | Optional Redemption Price |
|---|---|
| On and after December 1, 1974 and on or before November 30, 1979 | [illegible] |
| Thereafter and on or before November 30, 1980 | [illegible] |
| Thereafter and on or before November 30, 1981 | [illegible] |
| Thereafter and on or before November 30, 1982 | [illegible] |
| Thereafter and on or before November 30, 1983 | [illegible] |
| Thereafter and on or before November 30, 1984 | [illegible] |
| Thereafter and on or before November 30, 1985 | [illegible] |
| Thereafter and on or before November 30, 1986 | [illegible] |
| Thereafter and on or before November 30, 1987 | [illegible] |
| Thereafter and on or before November 30, 1988 | [illegible] |
| Thereafter and on or before November 30, 1989 | [illegible] |
| Thereafter and on or before November 30, 1990 | [illegible] |
| Thereafter and on or before November 30, 1991, | [illegible] |

and thereafter at 100% of the principal amount thereof, together in each case with interest accrued thereon to the date fixed for redemption. Notice to the holders of Debentures to be redeemed shall be given by mail [illegible] notice of such redemption, not later than the thirtieth day and not earlier than the sixtieth day, before the date fixed for redemption, at their last addresses as they shall appear on the register, all as provided in the Indenture.

The Debentures are also subject to redemption in part pursuant to the terms of the sinking fund provided in the Indenture on December 1, 1979 and on each December 1 thereafter to and including December 1, 1993 [illegible] as set forth above, at 100% of the principal amount thereof, together with interest accrued to the date fixed for redemption.

If this Debenture (or, if this Debenture is of a larger denomination than $1,000, any portion hereof which is $1,000 or a multiple of $1,000) is duly called for redemption and payment thereof duly provided, this Debenture (or such portion hereof as aforesaid) shall cease to bear interest from and after the date fixed for such redemption.

Upon due presentment for registration of transfer of this Debenture at the office or agency to be maintained by the Company in the Borough of Manhattan, The City of New York, a new Debenture or Debentures of authorized denominations for the same aggregate principal amount will be issued to the transferee in exchange herefor, and done in the manner and subject to the limitations provided in the Indenture.

The Debentures are issuable as registered Debentures without coupons in denominations of $1,000 and any multiple thereof. As provided in the Indenture, Debentures of any denomination are exchangeable for other Debentures of any authorized denomination or denominations of an equal aggregate principal amount, as requested by the holder surrendering the same, at the office or agency to be maintained by the Company in the Borough of Manhattan, The City of New York.

No service charge shall be made for any exchange or registration of [illegible] sufficient to reimburse it for any stamp or other tax or governmental charge in connection therewith.

The Company, the Trustee and any escrow or exchange agent may deem and treat the person in whose name this Debenture is registered as the absolute owner hereof for all purposes, and neither the Company nor the Trustee nor any escrow or exchange agent shall be affected by any notice to the contrary.

No recourse shall be had for the payment of the principal of (or premium, if any) or the interest on this Debenture, or for any claim based hereon or otherwise in respect hereof, or based on or in respect of the Indenture or any indenture supplemental thereto, against any incorporator, stockholder, officer or director, past, present or future, as such, of the Company or of any predecessor or successor corporation, whether by virtue of any constitution, statute or rule of law or equity, or by the enforcement of any assessment or penalty or otherwise, all such personal liability of every such incorporator, stockholder, officer or director as such being, by the acceptance hereof and as part of the consideration for the issue hereof, expressly waived and released by every holder or owner hereof, as more fully provided in the Indenture.

## ABBREVIATIONS

The following abbreviations, when used in the inscription on the face of this Debenture, shall be construed as though they were written out in full according to applicable laws or regulations:

TEN COM — as tenants in common
TEN ENT — as tenants by the entireties
JT TEN — as joint tenants with right of survivorship and not as tenants in common

UNIF GIFT MIN ACT — ............ Custodian ............
(Cust) (Minor)
under Uniform Gifts to Minors
Act ............
(State)

Additional abbreviations may also be used though not in the above list.

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers unto

PLEASE INSERT SOCIAL SECURITY OR OTHER IDENTIFYING NUMBER OF ASSIGNEE

**EXHIBIT**

**C**

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SHAKIR MARIS ABDULLAH,<br>    Plaintiff, | )<br>)<br>)<br>) |
| v. | )<br>) |
| FRANCIS A. FORD. Clerk, CATHERINE<br>BRENNAN, Assistant Clerk, and REVEREND<br>DANIEL IZZO,<br>    Defendants. | )<br>)<br>)<br>)<br>) |

C.A. NO. 05-11539-DPW

## **DEFENDANTS FRANCIS FORD AND CATHERINE BRENNAN'S RESPONSE TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

### **GENERAL OBJECTIONS**

1.     The Defendants object to any request to the extent that it seeks information protected by the work product doctrine, attorney-client privilege, or any other privilege.

2.     The Defendants object to any request to the extent that it seeks information protected from disclosure by G.L.c. 4, § 7, clause 26; G.L.c. 66, § 10; or G.L.c. 66A, § 2. G.L.c. 4, § 7, clause 26, specifically exempts, among other things, documents:

   (a)     specifically or by necessary implication exempted from disclosure by statute;[1]

   (b)     personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of privacy;

   (c)     notebooks and other materials prepared by an employee of the Commonwealth and which are personal to him and not maintained as part of the files of the government unit.

3.     The Defendants object to any request to the extent it seeks to impose discovery obligations that exceed those imposed by the Federal Rules of Civil Procedure.

---

[1]The Massachusetts Attorney General's Office ("AGO") has interpreted these provisions of the statute to include that documents protected by the attorney-client privilege and attorney work product doctrines are exempt from disclosure.

1

4.  ·  The Defendants object to any request to the extent it seeks to discover information that is irrelevant and/or is not reasonably calculated to lead to the discovery of admissible evidence.

5.    The Defendants object to any request that is not reasonably limited as to time and/or fails to identify the pertinent time period.

6.    The Defendants object to any request that is over broad and/or unduly burdensome.

7.    By making these responses, the Defendants do not concede that the information produced is properly discoverable or admissible and the Defendants reserve the right to object to additional discovery with respect to the subject matter and to object to the introduction of these responses into evidence. A response made despite a state objection may not be construed as a waiver of the stated objection and such a response is made in an effort to provide responsive information based on a fair reading of the requests intended meaning. In addition, Defendant's discovery and investigation herein are ongoing and the responses set forth here are based upon current information. Defendants reserve the right to present further or different evidence at hearings or trials on this matter.

8.    The Defendants hereby incorporate each of the preceding objections into each of its specific responses that are set forth below.

9.    The Defendants reserve the right to supplement these responses at a later date as more responsive documents become available.

## RESPONSES

### REQUEST NO. 1

Any and all documents, reports and/or recordings containing statements by any defendant or agent, servant or employee of the defendants, which relate to the occurrences alleged in the plaintiff's complaint, including transcriptions of oral statements.

### RESPONSE NO. 1

All relevant documents in the defendants' possession, custody or control have been previously produced to the plaintiff, Bates Labeled Numbers SMA 0001-0066.

### REQUEST NO. 2

Any and all documents, reports and/or recordings containing statements by any person, including the defendants which relate to the occurrences alleged in plaintiff's complaint, including transcriptions of oral statements.

## RESPONSE NO. 2

All relevant documents in the defendants' possession, custody or control have been previously produced to the plaintiff. Bates Labeled Numbers SMA 0001-0066.

## REQUEST NO. 3

Copies of any and all reports or investigative reports, in your possession, that were prepared in connection with the occurrences alleged in plaintiff's complaint, including any statements by the defendants.

## RESPONSE NO. 3

The defendants have no documents responsive to this request.

## REQUEST NO. 4

Copies of any and all documents, correspondence, letters, memos, bank notes, bonds, etc. sent by Reverend Daniel Izzo to any defendant or employee of the Worcester County Superior Court Clerk's Office to the issues raised in plaintiff's complaint.

## RESPONSE NO. 4

All relevant documents in the defendants' possession, custody or control have been previously produced to the plaintiff. Bates Labeled Numbers SMA 0001-0066.

## REQUEST NO. 5

Copies of any and all documents, correspondence, letters, memos, writings from any defendant or employee of the Worcester County Superior Court Clerk's Office pertaining to the issues raised in plaintiff's complaint.

## RESPONSE NO. 5

All relevant documents in the defendants' possession, custody or control have been previously produced to the plaintiff, Bates Labeled Numbers SMA 0001-0066.

## REQUEST NO. 6

Copies of any and all documents, correspondence, letters, memos, writings, etc., which support the claims raised in the complaint in any manner.

3

EXHIBIT

E







Br. Dan Izzo
512 Onondaga Ave.
Syracuse, NY 13207

Shanie Marie McMillan
#W51043
CCCC
One Administration Rd.
Bridgewater, MA 02324

102324+3298  33



Cryonic Life Insurance Company

Rev Dan Izzo
Dept of General Resurrection

512 Onondaga Ave
Syracuse, NY 13207

*As we thank God
for his many blessings this
Christmas,
let us also pray for
Peace on Earth.*

*Have a Merry Christmas
and Blessed New Year!*



Hi, ask the Court
to endorse the
Note under
USC Title 12 sec 411 2
and Deposit it
with the
Court Clerk
for a legal
Fund

*From the:*

Cryonic Life Insurance Co
Dept of General Resurrection

http://www.newadvent.org/cathen/12792a.htm                                    2/26/04
CATHOLIC ENCYCLOPEDIA: General Resurrection                                    p 1 of 5



**Click here to support this site and buy the
CATHOLIC ENCYCLOPEDIA on CD-ROM
Buy with Credit Card | Buy using PayPal | More Info...**

# New Advent

Home  Encyclopedia | Summa · Fathers  Library | Bible  Shop

Home > Catholic Encyclopedia > R > General Resurrection
C|D|E|F|G  H|I|J  K  L  M|N|O|P  Q  R  S  T  U  V|W  X  Y  Z

Visit CatholicCulture.org

**Get free catalogs, magazines
and more from Free for Catholics**     **Single? Catholic? There's reason
for hope at Ave Maria Singles**

# General Resurrection

Resurrection is the rising again from the dead, the resumption of life. The Fourth Lateran Council teaches that all men, whether elect or reprobate, "will rise again with their own bodies which they now bear about with them" (cap. "Firmiter"). In the language of the creeds and professions of faith this return to life is called resurrection of the body (*resurrectio carnis, resurrectio mortuorum, anastasis ton nekron*) for a double reason: first, since the soul cannot die, it cannot be said to return to life; second the heretical contention of Hymenæus and Philitus that the Scriptures denote by resurrection not the return to life of the body, but the rising of the soul from the death of sin to the life of grace, must be excluded. (We shall treat of the Resurrection of Jesus Christ in a separate article; here, we treat only of the General Resurrection of the Body.)

"No doctrine of the Christian Faith", says St. Augustine, "is so vehemently and so obstinately opposed as the doctrine of the resurrection of the flesh" (In Ps. lxxxviii, sermo ii, n. 5). This opposition had begun long before the days of St. Augustine: "And certain philosophers of the Epicureans and of the Stoics ", the inspired writer tells us (Acts, xvii, 18, 32 . . . . . . . [Paul] ...and when they had heard of the . . . . . . . . . . . . e indeed mocked, but others said: We will . . . . . . . . . . atter." Among the opponents of the . . . . . . . . ose who denied the immortality of . . . . . . . lato, regarded the body as the . . . . . . . from the bondage of matter; . . . . . . chaeans who looked upon all . . . . . hese latter sects the . . . genses; fifthly, the Rationalists, . . . . nes. Against all these we shall first . . . . ction, and secondly consider the . . . . body.

## A. DOGMA OF THE RESURRECTION

new sletter
Your e-mail

The creeds and professions of faith and conciliar definitions do not leave it



### TITLE 12 > CHAPTER 3 > SUBCHAPTER XII > § 412
### § 412. Application for notes; collateral required

*Release date: 2004-03-18*

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 92, 342 to 348, 349 to 352, 361, 372, or 373 of this title, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of sections 348a and 353 to 359 of this title, or bankers' acceptances purchased under the provisions of said sections 348a and 353 to 359 of this title, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under sections 348a and 353 to 359 of this title. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of Federal Reserve banks.



REGISTERED:  X

County Clerk                                    County Judge

X   County Treasurer

EXHIBIT

F





Joy To The World



SMA 0038





SMA 0040

EXHIBIT

G



# PRISON SERVICES PROJECT

**2232 South Main Street #364**
**Ann Arbor, Michigan 48103-6938**

January 7, 2005

Mr. Shakir Maris Abdullah
( DOC/DIN # W51043 )
Old Colony Correctional Center
1 Administration Road
Bridgewater, Massachusetts   02324

Dear Mr. Abdullah:

Thank you for your letter of December 7, 2004. Enclosed please find the original documents sent to this office, which have been scanned and added to your Application materials.

With respect to the letter inquiry about the $100,000 note sent to the Clerk of Court, I think you might want to find out more about the philanthropist before asking the Court to accept as legal tender an instrument for such a large amount. While you may be familiar with this person, please recognize that your request of the Court was highly unusual. A better course of action would have been to have your benefactor establish a bank account trust for your benefit. A legal trust account needs to be handled carefully, so I recommend that you authorize someone you trust as an administrator and make sure that an accountant conducts a periodic review.

If you wish this office to be involved, please let me know and I will follow up with the Court to see what the status of your request is at present.

Sincerely,

Regina A. Mullen
Director

EXHIBIT

H



FRANCIS A. FORD
CLERK OF THE COURTS
ROOM 21 - COURT HOUSE
2 MAIN STREET
WORCESTER, MASSACHUSETTS 01608-1176

LEGAL MAIL

UNITED STATES POSTAGE
$ 01.06°
MAILED FROM ZIP CODE

Shakit M▭ris Abdullah
OCCC
One Administration Road
Bridgewater,    MA   02324

**FRANCIS A. FORD**
**CLERK OF THE COURTS**



Shakir Maris Abdullah aka Dennis Shelto
OCCC
1 Administration Rd
Bridgewater, MA. 02324



02324+3238 33

**FRANCIS A. FORD**
**CLERK OF THE COURTS**





Mr. Shakir Maris Abdullah (W-51043)
AKA: Dennis Shelton
Old Colony Correctional Center
One Administration Road
Bridgewater, MA 01608

01608+1176  02