UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHAKIR MARIS ABDULLAH,        )
    Plaintiff,                )
                         )
            v.                )
                         )    C.A. No. 05-11539-DPW
                         )
FRANCIS A. FORD, et al.,      )
    Defendants.               )

MEMORANDUM AND ORDER

WOODLOCK, D.J.

For the reasons set forth below, I will grant defendants'
Motion for Summary Judgment (#83), direct that defendants return
documents to the plaintiff, and deny all pending motions in this
case involving bizarre allegations which prove unsupportable.

**I. BACKGROUND**

    A.    <u>Plaintiff's Version</u>

Plaintiff Shakir Maris Abdullah, a/k/a Dennis Shelton, a
prisoner at the Old Colony Correctional Center in Bridgewater,
Massachusetts, filed this civil action naming three defendants:
(1) Francis A. Ford, Clerk of Court for Worcester County; (2)
Assistant Clerk of Court Catherine Brennan, and (3) Reverend
Daniel Izzo, of the Cryonic Life Insurance Corporation,
Department of Resurrection, located in New York.  Abdullah
alleges that the Worcester County Superior Court clerks converted
monies (in the form of a bank note and debentures) which he sent
to them for the purpose of establishing of a legal fund on his
behalf so that he could collaterally challenge his first degree

murder conviction.[1]  Plaintiff also claimed fraud by the
individual who he alleges mailed him the funds, Reverend Daniel
Izzo.

The case presents strange and unusual factual allegations,
as set forth in detail below.  It all began when plaintiff placed
an advertisement in the "Justice Denied Legal Ad" page on the
"Friends Beyond the Wall" internet website.  Abdullah was seeking
donations in order to retain legal counsel to contest his
criminal conviction.  The posting solicited funds or monies to be
donated to a general legal defense fund, which would, in turn,
provide funds for counsel to pursue his challenge.  On December
5, 2004, Abdullah received a response to his request, in the form
of a Christmas card from Defendant Reverend Daniel Izzo (a/k/a
Brother Izzo), purportedly containing a $100,000 bank note.  On
December 6, 2004, Abdullah mailed a copy of that note and

---

[1]There is some discrepancy concerning the nature and amount
of alleged funds provided by plaintiff.  Plaintiff claimed he
sent a $100,000 note under 12 U.S.C. § 412 (referred to by
defendant Izzo as a "novelty note").  Plaintiff also contended he
sent defendants a $100,000 Fidelity note (*i.e.,* a debenture).  It
is not entirely clear who possesses the original "novelty note."
Plaintiff seeks the return of this document but defendants
contend he still possesses the original.  Further, as discussed
in more detail herein, defendants contend plaintiff submitted two
corporate debentures (a long-term unsecured debt instrument),
along with the novelty note.  One debenture was issued by the
Fidelity Corporation for $108,000, and the other by the
Pennsylvania Corporation, for $5,000.  Defendants contend none of
the instruments constituted legal tender and no longer had any
monetary value at the time relinquished by plaintiff to the
defendant clerks.

2

Christmas card to the Clerk of Court of Worcester County, with instructions to create a legal defense fund in his name. Abdullah received no reply, other than an initial request for the docket number of the pertinent case. After six weeks, Abdullah again mailed to the Clerk of Court and to Reverend Izzo an inquiry about the establishment of his legal fund.

On February 28, 2005, Abdullah received a letter from defendant Brennan stating that the Court did not have a legal fund. Abdullah contends that in the return letter, there was enclosed a phony one million ($1,000,000) dollar bill. Abdullah believed the $1,000,000 bill to have been valid legal tender and so proceeded to contact Attorney Gordon W. Spencer, in order to retain his legal services. Thereafter, Attorney Spencer reviewed the $1,000,000 bill and notified Abdullah that the $1,000,000 bill was not genuine currency. By way of explanation, Attorney Spencer pointed out to Abdullah that the document stated it was from "Millionaire Bank USA" (as opposed to "United States Federal Reserve System") and that the document also stated on its face that it was "not legal tender." More tellingly, the document stated on its face that it was from "the Department of 'Funny Money.'" *See* Letter from Attorney Spencer dated May 2, 2005, exhibit attached to the Complaint.

Abdullah at this point realized that the $1,000,000 bill allegedly sent to him by defendant Brennan was indeed a bogus

3

document, and then wrote to defendant Ford regarding the receipt of the fake bank note. On June 16, 2005, Abdullah received a letter from defendant Brennan again informing Abdullah that there had not been a legal fund established for him.

Abdullah claimed that the defendant clerks Ford and Brennan stole his bank note (the "novelty note"), along with another $100,000 Fidelity Corporation debenture from an unspecified source, and instead returned to him a fake $1,000,000 bill. He also asserted that, in reliance on the donation he believed to have been made by Izzo to him to establish a defense fund, he withdrew his posting on the Beyond the Wall website. In the alternative, Abdullah conceded the possibility that defendant Reverend Izzo may have intentionally provided him with a fake instrument in the amount of $100,000, but claimed that if defendant Izzo did indeed do so, he should be required to pay plaintiff $100,000 for his legal defense.

### B. Procedural History

On January 3, 2006, I issued a Memorandum and Order (#5) dismissing all claims against defendant Daniel Izzo. Thereafter, on March 10, 2006, the defendants Ford and Brennan filed a Motion to Dismiss for Lack of Jurisdiction (#15). On March 23, 2006, I issued a Memorandum and Order (#20) denying the Motion to Dismiss, treating plaintiff's claims as claims for conversion of funds by state actors, under 42 U.S.C. § 1983. Thereafter,

4

numerous discovery disputes arose, and various pretrial motions
were filed and resolved.  Abdullah requested the appointment of
*pro bono* counsel.  I allowed the request for *pro bono* counsel,
however, after concerted efforts made by the *pro bono*
coordinators to secure counsel proved to be unsuccessful, I
revoked the Order of Appointment and directed that Abdullah must
proceed *pro se* in this action.

Thereafter, on April 26, 2007, defendants Ford and Brennan
filed a Motion for Summary Judgment (#83) causing a further
flurry of motions and objections.  Abdullah filed an Opposition
to the Motion for Summary Judgment (#83) asserting further
discovery was necessary, and seeking appointment of *pro bono*
counsel.  On September 25, 2007, I entered an Electronic Order
Staying the case pending resolution of the Motion for Summary
Judgment.

On November 19, 2007, Abdullah filed a further Opposition to
the Motion for Summary Judgment (#111), incorporating his
previously asserted claims that the defendants have perjured
themselves by denying involvement in any wrongdoing, and
maintaining that he provided something of value to them.  In
support of this proposition, Abdullah relied on a newspaper
article in which he claims an individual attempted to pass a one
million dollar bill and "was jailed."  He further contends that
the defendants' bank statements should be examined and their

depositions taken, and states: "Plaintiff has not been charged with any crime in connection with the $1 M bill he received from the Defendants. Nor has plaintiff had any opportunity to acquire a $1M bill while being incarcerated." Memorandum in Opposition (#111-1) at 2.

    C.   <u>The Defendants' Version</u>

    The defendants' version of the facts of this case, submitted in support of their Motion for Summary Judgment, fill in the gaps left by plaintiff's version of events. Apart from an unsupported, general allegation that the defendants committed perjury, and an unsupported, bald assertion that the instruments provided to defendants constituted legal tender, Abdullah has not taken issue with the bulk of the defendants' recitation of undisputed facts concerning the instruments at issue and the investigation into their value.

    Defendants contend that Catherine Brennan, an assistant clerk, opened the mail and received the letter from plaintiff along with two corporate debentures.[2] Knowing the Clerk's Office did not have the authority to create a legal defense fund, she returned the letter and its contents to plaintiff. Several weeks later, Abdullah again sent the same package of materials to the

---

    [2]It is unclear whether the novelty note was also included in this package, however, there does not appear to by any genuine dispute the there were three instruments submitted for the establishment of a legal defense fund: the novelty note and the two debentures.

Worcester Superior Court Clerk's Office. Again, defendant
Brennan returned the materials to plaintiff. Defendant Brennan
avers that this was the last she saw of the letter and the two
debentures, until a year later when Abdullah filed the instant
action. Brennan Affidavit, (#84-4, ¶ 2-4). Unbeknownst to
defendant Brennan, Abdullah re-sent the package of materials for
a third time. This time, Corinne Gorman, the First Assistant
Clerk, received the materials, and she reviewed them with the
office manager, Matt Lefebvre. Defendant Ford, then the Clerk of
the Court (and now an attorney in private practice), claims that
he was aware that the Clerk's Office had received correspondence
from Abdullah, but avers he had no personal involvement with the
matter, nor did he have any specific knowledge of the contents of
the correspondence until after the matter had been turned over to
the District Attorney and State Police for investigation. Ford
Affidavit (#84-7, at ¶¶ 2-3).

At some point Ms. Gorman then turned plaintiff's letter and
debentures over to Superior Court Judge John McCann, the Regional
Administrative Justice. Gorman Affidavit (#84-8, at ¶¶ 1, 2, &
3); Lefebvre Affidavit, (#84-11, at ¶ 4). Judge McCann then
informed Assistant District Attorney James Lemire of the
situation. Judge McCann Affidavit (#84-13, at ¶¶ 2-3). Lemire
(now a Superior Court Judge) alerted the State Police, prompting
an investigation into the matter to determine the authenticity of

the debentures, how the plaintiff came to possess them, and
whether any crime had been committed.  Judge Lemire Affidavit
(#84-12, at ¶ 4).  Sergeant Kelly of the Massachusetts State
Police assigned Trooper John Conron to the investigation to
determine whether a financial crime had been committed.  Kelly
Affidavit, (#84-9) at ¶ 3).

Thereafter, Trooper Conron conducted an investigation and
discovered that Abdullah had received two corporate debentures
from Reverend Izzo, of New York.[3]  Conron Affidavit, (#84-6, at
¶ 5).  Trooper Conron contacted the Virginia Division Securities
and Retail Franchising regarding one of the debentures, issued by
the Fidelity Corporation (a Virginia company).  That debenture
stated its terms and indicated that it was issued on October 13,
1978, and the amount was for $108,000.  It was issued to CEDE &
CO and indicated the debentures due date as May 1, 1988.  *Id.* at
¶¶ 8-9.  It also indicated it was cancelled on October 17, 1978.
*Id.* at ¶ 8.  Additionally, the debenture bore an apparent
cancellation mark on the right edge of the paper and the document
contained punched holes.  Trooper Conron spoke with a senior
investigator for the Virginia State Corporation Commission, and

---

[3]Trooper Conron was provided copies of the corporate
debentures, a letter from plaintiff to the Worcester Clerk's
Office, a copy of 12 U.S.C. Ch. 3, Subchapter XII, § 412, an
image of a $100,000 bill (the novelty note), and a copy of a card
from Reverend Izzo.  He later obtained from District Attorney
Lemire the original mailing from plaintiff, which included the
two original corporate debentures.

discovered that the Fidelity Corporation was no longer in existence, in accordance with a document entitled Termination of Corporate Existence issued on September 4, 1991. *Id.* Further, Trooper Conron conducted a LEAPS/NCIC[4] query relative to both corporate debentures, and discovered there was "No Record" for either debenture. *Id.* at ¶ 11.

With respect to the second debenture, Trooper Conron contacted the Delaware Department of State Division of Corporations. That debenture was a 9 percent Sinking Fund Debenture issued by the Pennsylvania Corporation (a Delaware Corporation) to a W.P. Carr on August 28, 1970, for $5,000. The certificate indicated the debenture's due date was 1994. The debenture also bore an apparent cancellation mark on the lower right hand corner of the certificate, and holes punched through it indicating that it had been cancelled as of January 2, 1974. *Id.* at ¶¶ 12-16.

Trooper Conron was advised by the Delaware Division of Corporations that the Pennsylvania Corporation merged with American Premiere Underwriters (a Pennsylvania corporation) on October 15, 2002. He contacted the Pennsylvania Department of State Corporation Bureau but was unable to determine whether the Pennsylvania Corporation survived the merger. Thereafter,

---

[4]LEAPS/NCIS stands for "Law Enforcement Agencies Processing System/National Crime Information Computer."

however, Trooper Conron met with the Operations Controller at Merrill Lynch in Worcester, and was advised that the certificates were authentic, but the perforations on both certificates indicated that they had been cancelled. *Id.* at 12-15.

Trooper Conron also contacted Reverend Daniel Izzo in Syracuse, New York. Reverend Izzo stated that he had purchased the certificates of corporate debenture on E-Bay two years previously, that he did not alter or mark any of the certificates, and that he sent them to prisoners "as is." *Id.* at ¶ 17. Izzo also acknowledged that the certificates were valueless. *Id.*

Trooper Conron later returned the original documents to the District Attorney's Office at the end of his investigation. Conron Affidavit ¶ 20. At this point, Lemire returned the originals to the Worcester Superior Court clerk's office. Lemire Affidavit (#84-12, at ¶ 7).

After this suit was filed, on October 6, 2006, Assistant Attorney General Jennifer Laverty went to the Worcester Superior Court Clerk's office and retrieved the documents. Laverty Affidavit (#84-10, at ¶¶ 2-3). She then delivered them to paralegal Cathleen Collins, who placed the file in her desk drawer. Collins Affidavit (#84-10, at ¶¶ 1-3). Assistant Attorney General Anne Stearman retrieved the file following the institution of this lawsuit, and the documents remain in her

possession.    Stearman Affidavit (#84-14, at ¶¶ 3-6).

    D.    <u>The $100,000 Note Donated by Reverend Izzo to Abdullah</u>

An attachment in support of the complaint includes a letter to "prison officials" dated November 19, 2004 apparently sent by Defendant Izzo.  The letter states, in relevant part:

> Concerning the American Art Classic (AAC) $10,000 Note Specimen series 2004 and or a worthless Stock Certificate.  I mailed a letter to some prisoners because last week USA Today had an Internet news story concerning America's 2.2 Million People in US Jails, the article had a link to "Prison Pen Pals" with names and Prison addresses of @65 people seeking Legal and or monetary help ....I wrote to this group asking them to ask the Court to endorse the specimen note under USC Title 12 sec 412 and Deposit the note with the Court Clerk for a Legal Fund (and to some a Trust and Text to Speech Software for Courts and Prisons.)  If the Court has Special Drawing Right certificates/powers it maybe [sic] able to establish a limited Legal Fund Trusts under USC Title 12 sec 412.  I did want to inform the prisoners that I hold bearer instruments that the Court could use as collateral under USC Title 12 sec 342 In the form of National Bank Notes or Guaranteed National Bank Notes.  I do not know much about prison or that other Trust programs do exist, my goal is to provide the Courts with Text to Speech Software and a possible EXILE OF PRISONER program to volunteer mining prison work camps in one of America's 1000s of abandoned silver mines.  As a member of the clergy I thought I should do something productive for the Courts and possible [sic] the prisoners.  <u>It seems the entire mailing was a failure because [of] the novelty note. If you have the $10,000 note specimen and or stock certificate you can keep it or throw it away</u>.

Exhibit, letter dated November 4, 2004 (emphasis added).[5]

---

[5]The letter from Reverend Izzo references an alternative intention for his donation--to create a fund for "Text to Speech Software" and possibly for a release program for prisoners to work in silver mines.

In another exhibit referencing 12 U.S.C. § 342, there is a handwritten notation purportedly from Reverend Izzo which reads "PS You can throw out donation if you like; no reply needed."

## II. DISCUSSION

### A.    Standard of Review

In addressing the claims under 42 U.S.C. § 1983, I apply the customary protocol for summary judgment motions.  Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists.  *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103 (1995).  Once the movant makes such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trial-worthy issue.  *Id.*

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law."  *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). *See Calvi v. Knox County*, 470 F.3d 422, 426 (1st Cir. 2006).  "A 'genuine' issue is one supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it

in favor of the *nonmoving party.*" *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)(quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir. 1996)).  Facts which do not affect the outcome of the lawsuit will not preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted....[I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.").  Moreover, "conclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact.  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).  *See also Bennett v. Saint-Gobain Corporation*, --- F.3d ---, 2007 WL 3227393 at *5 (1st Cir. (Mass.) Nov. 2, 2007)("...the evidence adduced on each of the elements of [plaintiff's] cause of action must be significantly probative in order to forestall summary judgment.").

"The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 12 (1st Cir. 2007) *quoting Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 7 (1st Cir. 2004) *quoting Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992).

B.    <u>There Are No Genuine Issues of Fact</u>

Upon review of the record, I adopt, with a limited exception,[6] the arguments set forth by the defendants in their Memorandum in support of the Motion for Summary Judgment.

Boiling the case down to the essence, Abdullah asserts he gave the defendants two debentures and a note with a presumed value in excess of $100,000 in order for the defendants to create a legal defense fund on his behalf.  Defendants assert that Abdullah failed to give them anything of value, and they deny conversion of any monies belonging to him.

It is clear from the record before me that there is no <u>genuine</u> issue of material fact in this case because the evidence is overwhelming that Abdullah was mistaken in his belief that he was providing something of value (*i.e.*, legal tender) to the defendants.  I find defendants have made the requisite preliminary showing that no genuine issue of material fact exists with respect to the value of the novelty note and the two debentures, and further find that Abdullah has failed to meet his burden to point to specific facts demonstrating that there is a

_____

[6]I do not, however, adopt the defendants' position that, because Abdullah repeatedly sent the instruments to the Worcester Superior Court on several occasions (even after they were sent back to him), he "voluntarily relinquished" any property interest he may have had in the instruments.  It is clear that any surrender to the clerks was contingent upon the use of those instruments to establish a legal defense fund on his behalf, and that Abdullah would not have surrendered those instruments otherwise.

trial-worthy issue.

In order to state a § 1983 claim, a plaintiff must allege
(1) that the conduct complained of was committed by a person
acting under color of state law; and (2) that this conduct
deprived the plaintiff of rights, privileges or immunities
secured by the Constitution or laws of the United States.
*Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996,
998 (1st Cir. 1992). Here, Abdullah cannot meet the second
requirement because he cannot show that he was deprived of any
constitutional right.[7] *See Price v. General Motors Corp.*, 931
F.2d 162, 164 (1st Cir 1991)(nonmoving party must demonstrate
that each element of the claim is trialworthy).

I credit that Abdullah has proceeded in this action at all
times with a good faith, if misbegotten, belief in his cause;
however, I find the evidence submitted by the defendants in the
form of affidavits by the defendants and others, including the
affidavit of State Trooper Conron (who investigated the origins
of the instruments submitted by plaintiff) provides more-than-
ample probative evidence supporting summary judgment in
defendants' favor. After careful scrutiny of Abdullah's
pleadings, exhibits, and arguments in support of his position, I

_____

[7]To the extent that Abdullah's claims are construed as
presenting a pendant state tort conversion claim (a matter
addressed in the defendants' Memorandum in Support of the Motion
for Summary Judgment (#84 at 11)), any conversion claim also
fails for the same reason—-no legal tender was converted, the
debentures and note were valueless, and there was no monetary
damage incurred by Abdullah.

find that his assertions are, at best, fanciful, speculative, and conclusory in nature, without any conceivable factual support to rebut the defendants' evidence.  Further, I find no reasonable jury, even drawing favorable inferences to the plaintiff, could resolve this matter in his favor.

There are, to be sure, loose ends.  There is a lack of information concerning Abdullah's receipt of the $1 million fake bill, from the "Department of Funny Money."  Both clerk defendants deny any knowledge or participation in this matter, and there is no evidence from which I could infer that the named defendant clerks participated in such a scheme.  In the final analysis, however, the mystery surrounding the "Funny Money" $1 million bill is immaterial.  It is apparent that this fake $1 million note has caused confusion on the part of Abdullah, and has distracted his focus from the material issues raised by his claims.  To clarify the matter for Abdullah's benefit, I find that the $1 million fake note sent (as what could only be considered a lame joke) to Abdullah by persons unknown has no bearing whatsoever on the merits of his § 1983 civil rights claim for conversion of funds, or on the determination of the legal issues raised in defendants' motion for summary judgment.[8]  The

---

[8]Similarly, the fact that no legal defense fund was created pursuant to Abdullah's instructions to the Worcester Superior Court clerks is not material to this action.  There is no support for the proposition that the clerks were under any legal obligation to create such a defense fund for the plaintiff.

16

only issue before me now is whether there is a genuine issue of material fact with respect to the allegation that Abdullah was constitutionally deprived of property of value which <u>he</u> allegedly sent to the Worcester Superior Court clerks.  Whether or not the defendant clerks sent him a phony $1 million note does not implicate any civil rights violations.

In sum, I find that Abdullah has not, and can not, rebut sufficiently the defendants' claim that they never converted any monetary instruments of value belonging to him because no such instruments were ever provided to them in the first place. Therefore, Abdullah cannot show that the defendants deprived him of any constitutional property right, and as a matter of law, defendants are entitled to summary judgment.

In reaching this conclusion, I have considered Abdullah's contention that further discovery is needed, including depositions of the defendants, and that investigation of their personal bank accounts is necessary.  Although Abdullah no doubt hopes to find some smoking gun, I reject this notion as there is

---

Thus, there is no cognizable cause of action for which relief could be granted to Abdullah as to this issue.  There is also no cognizable cause of action with respect to Abdullah's assertion that he took his advertisement off the website on the misapprehension that Reverend Izzo provided him with the funds he needed.  In view of Reverend Izzo's letter stating that the instruments he sent might be valueless, and in view of the clerks' advice to Abdullah that the Clerk's Office could not establish a legal fund in his behalf, any reliance by Abdullah in this regard would not have been reasonable.

no reasonable basis to believe further discovery would yield anything remotely relevant to the material issues in this case. Since I have found that Abdullah gave nothing of value in the first place, then nothing could be gained by further inquiry into the defendants' personal assets.

Finally, I agree with the defendants that, to the extent Abdullah gave the clerks anything of value, the value is so *de minimis* as to be virtually non-existent.  The only intrinsic value of the instruments is the value of the paper upon which the instruments are printed.  The defendants have agreed to return any documents belonging to Abdullah which are currently in their possession or control.  They contend that once Abdullah plaintiff's property is returned, any issue, even a *de minimis* one, in this action will be moot.  *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006) (Article III case and controversy considerations must exist at all stages and not merely at the time the complaint is filed).

The defendants' offer is sensible.  The return of property currently in the defendants' possession is all the relief to which Abdullah is arguably entitled in this action.  Accordingly, to regularize this return, I will Order that the defendants or their counsel shall return to Abdullah any documents sent to the Worcester Superior Court which are currently in their possession or control, within 14 days of the date of this Memorandum and

Order.[9]  Additionally, the defendants shall file a certification of compliance with this directive within that 14 day period.

In light of the above, I will grant the defendants' Motion for Summary Judgment (#83) and will direct the clerk to enter judgment in this action.[10]

C.    Pending Motions

In view of the grant of the Motion for Summary Judgment

---

[9]If they choose for official record-keeping purposes, copies of any documents returned may be retained by the defendants or their counsel.

[10]Because I have found there to be no genuine issue of material fact presented in this action, I need not address at length, nor base my allowance of defendants' motion for summary judgment on the defendants' contention that Abdullah does not have a cognizable § 1983 civil rights claim because he has an adequate state remedy (*e.g.*, a state tort action or a claim under the Massachusetts Tort Claims Act) to address his claims.  When an alleged deprivation of liberty or property is the result of the random and unauthorized conduct of a state official, and the state has provided an adequate post-deprivation remedy, there is no denial of due process.  *See Hudson v. Palmer*, 468 U.S. 517, 531-37 (1984); *Parratt v. Taylor*, 451 U.S. 527, 538-44 (1981); *O'Neill v. Baker*, 210 F.3d 41, 50 (1st Cir. 2000). *See also Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs;  it is not complete unless and until the State fails to provide due process.... [t]his inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."); *Riordan v. Martin*, 51 F.3d 264, at *1 (1st Cir. 1995) (unpublished disposition)("Since inadequacy of the state's remedy is a material element of the § 1983 claim, plaintiff had the burden of setting forth supporting factual allegations, either direct or inferential, to sustain an actionable legal theory.") citing *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

(#83), I DENY the several other pending motions in this action
(## 82, 87, 90, 91, 92, 94, 95, 96, 99, 100, 102, 104) as
follows:

> 1.  <u>Defendants' Motions to Waive Local Rule 7.1
>     (#82, #90, #94, and #99)</u>

These motions are DENIED as moot.

> 2.  <u>Plaintiff's Motion for Sanctions (#87)</u>

This motion is DENIED, plaintiff having failed to show good
cause for the motion.

> 3.  <u>Plaintiff's Motion for Leave to File Amended Complaint
>     (#92)</u>

In his Motion for Leave to File Amended Complaint, plaintiff
seeks to add two additional clerk defendants.  In view of the
grant of Summary Judgment for the reasons stated herein, I find
no basis to permit plaintiff to amend his complaint by asserting
unfounded claims of conspiracy against Matthew Lefebvre and
Corine Gorman.  There are no factual grounds nor reasonable
inferences presented for including these two individuals as
defendants in this action, and at this juncture, the request must
be viewed as a futile fishing expedition.  As previously
discussed, even if these two individuals had some involvement in
the mailing of the phony $1 million bill, there still would be no
cognizable federal cause of action against them, as this is not
germane to the question whether Abdullah gave the Clerk's Office
anything of value.  Accordingly, the Motion for Leave to File

Amended Complaint (#92) is DENIED.

    4.   <u>Plaintiff's Motion to Stay Motion for Summary Judgment (#95)</u>

I will construe this Motion as one for further discovery pursuant to Fed. R. Civ. P. 56(f). As noted above, the record is sufficient to overcome fanciful suggestions by Abdullah that further discovery is necessary. In short, I find that there is no reasonable likelihood that further discovery will lead to anything which would undermine the rulings made herein, to raise a genuine issue of material fact. Accordingly, the Motion to Stay Motion for Summary Judgment (#95) is DENIED.

    5.   <u>Plaintiff's Motion to Compel (#96)</u>

This motion is DENIED, no good cause having been shown.

    6.   <u>Plaintiff's Motion to Stay (#100) Until Counsel is Appointed</u>

As noted above, although Court staff made diligent efforts to obtain *pro bono* counsel for Abdullah, none could be secured. On April 19, 2007, I issued an Order revoking the Order for Appointment of *Pro Bono* Counsel (#81), and directed that Plaintiff must proceed *pro se*. Accordingly, in view of this Memorandum and Order and the Order (#81), this motion is moot, and is hereby DENIED.

    7.   <u>Plaintiff's Motion to Set Aside (to waive Local Rule 7.1) (#102) and Motion to Waive Local Rule 7.1 (#104)</u>

These motions are both DENIED as moot.

9.    Plaintiff's Motion for a Hearing (#91).

This motion is DENIED as moot.

## III.    ORDER

Based on the foregoing, it is hereby Ordered that:

1.    Defendants' Motion for Summary Judgment (#83) is ALLOWED;

2.    All other pending motions (## 82, 87, 90, 91, 92, 94, 95, 96, 99, 100, 102, 104) are DENIED;

3.    Within 14 days of the date of this Memorandum and Order the defendants shall return to Abdullah all documents belonging to him which are in their possession or control.  The defendants shall file a certification of compliance with this directive within that 14 day period; and

4.    Final Judgment shall issue for the defendants.[11]


SO ORDERED.



                                        /s/ Douglas P. Woodlock
                                        DOUGLAS P. WOODLOCK
                                        UNITED STATES DISTRICT JUDGE


DATED: December 21, 2007

---

[11]In this connection, the Judgment shall issue for the defendant Reverend Izzo based on the Memorandum and Order (#5) dismissing all claims against him, and the Judgment shall issue with respect to defendants Ford and Brennan based on this Memorandum and Order.